```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
```

------------------------------X **Docket#**
BENBOW,                       : 17-cv-06457-AMD-LB
        Plaintiff,    :
                      :
   - versus -           : U.S. Courthouse
                      : Brooklyn, New York
                      :
                      :
FEELY, et al.,                : June 4, 2019
        Defendants    : 11:14 AM
------------------------------X

    TRANSCRIPT OF CIVIL CAUSE FOR PROCEEDINGS
      BEFORE THE HONORABLE LOIS BLOOM
      UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

| | |
|---|---|
| <u>**For the Plaintiff**</u>: | **Aymen A. Aboushi, Esq.**<br>The Aboushi Law Firm<br>1441 Broadway<br>5th floor<br>New York, NY 10018 |
| <u>**For the Defendant**</u>: | **Joshua Alan Weiner, Esq.**<br>New York City Law Department<br>100 Church Street<br>New York, NY 10007 |
| <u>**Transcription Service**</u>: | **Transcriptions Plus II, Inc.**<br>61 Beatrice Avenue<br>West Islip, New York 11795<br>laferrara44@gmail.com |

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1  THE CLERK: Civil Cause for Status Conference,
2 17-cv-6457, Benbow v. Feely, et al.
3  Will the parties please state your names for
4 the record.
5  MR. ABOUSHI: Good morning, your Honor.
6  Aymen Aboushi on behalf of the plaintiff Mr.
7 Benbow.
8  MR. WEINER: Good morning, your Honor.
9  Josh Weiner, Corporation Counsel on behalf of
10 all defendants.
11  THE CLERK: The Honorable Lois Bloom presiding.
12  THE COURT: Good morning, Mr. Aboushi, and Mr.
13 Weiner. Please be seated.
14  This is a status conference in plaintiff's
15 Section 1983 action and I'm thrilled, Mr. Aboushi, that
16 Mr. Benbow has retained counsel because the case was
17 filed pro se, and I had a conference with plaintiff by
18 telephone on March 21st and he told me that he was coming
19 up for his parole board hearing. Was he released?
20  MR. ABOUSHI: Yes, your Honor, he was.
21  THE COURT: That's wonderful. And I thought it
22 would be easier for him to find counsel once he was
23 released. Mr. Aboushi, they did file your notice of
24 appearance but I am just going to caution, you reversed
25 the numbers on the docket of the case. You wrote 6547,

and it's 6457.  So just be careful in the future.  They must have caught it because it was filed in the right case, but on the caption, you have the wrong number.  So if you're going to cut and past your caption, you better get that caption correct.

      MR. ABOUSHI:  Yes, your Honor.

      THE COURT:  Okay.

      MR. ABOUSHI:  Thank you.

      THE COURT:  So at the last conference, we talked about how the case had been stayed while plaintiff's underlying criminal proceeding was pending, and Mr. Benbow was candid at the conference.  He and defendant's counsel related the circumstances leading up to the shooting.

      So plaintiff stated that he left the lounge that he was in with a friend, and he saw a car with guns out the window, and when he was shot, he realized it was the police, and he said why did you shoot me, and he was handcuffed and taken to the hospital, and he was indicted while at the hospital, and didn't have an opportunity to go before the grand jury.  And he was induced to take a plea after three years in prison, and he was told by the judge that he would later be able to withdraw his plea.  I can't really imagine that a judge told him that but that's what he said at the conference.

1   And at the conference, Mr. Weiner said that a
2 security guard named James Marshall (ph.), who was either
3 a part-time or former NYPD officer had an interaction at
4 the lounge with plaintiff who was disorderly and
5 inappropriate, and because James Marshall saw a gun, he
6 called Rubin Cespedes (ph.), at NYPD.  The tip was
7 relayed to a defendant Daib, in the anticrime unit at the
8 77th Precinct, who then arrived at the lounge as part of
9 a team of six officers.
10   Marshall, the off-duty or part-time former NYPD
11 officer provided a description of plaintiff, and the team
12 was in two parked cars, and they saw two men fitting
13 plaintiff and Bradley (ph.), the person that he was with
14 at the lounge, leaving the lounge.  The first car of
15 officers said, "Police, put your hands up."  Bradley went
16 to the floor but plaintiff ran.  Plaintiff then
17 encountered the second car, was told to stop, ran again,
18 pulled a gun and was shot.
19   Four shots were fired, plaintiff was hit twice
20 in the back and once in the elbow.  Plaintiff states that
21 Marshall was fired for lying on the job when he was at
22 NYPD.  Plaintiff is also in a wheelchair and has a bullet
23 lodged in his back, and his doctors believe it cannot be
24 safely removed.  He was 34 at the time of the incident.
25 He's now 38.

1    So I explained to Mr. Benbow that because he
2 took a plea, that he would not be able to pursue the
3 false arrest claim, but he could still pursue an
4 excessive force claim, and I encouraged him to find a
5 good civil rights attorney, and I also told him that he
6 should get in touch with the Osborne Association, which
7 helps people who have been released from jail to try to
8 find a meaningful reentry.
9    I instructed the corporation counsel to have
10 the relevant files and reports numbered and ready to
11 provide to plaintiff today, as well as four medical
12 releases for DOCs, Kings County Hospital, whoever was
13 driving the ambulance, and the City.
14    Plaintiff then wrote and said his release date
15 was May 16th, and I set the conference for today,
16 instructed the clerk of court to send plaintiff the pro
17 se manual at his new address.  And I still wanted you to
18 come with the copies of the information.
19    Did you do that?
20    MR. WEINER:  Yes, your Honor, I have.
21    THE COURT:  Okay.  Have you turned it over to
22 Mr. Aboushi?
23    MR. WEINER:  Well, I just met him, so I haven't
24 had a chance but I -- what we have done is I've composed
25 my initial disclosures, and I have identified the two

1 major investigations which was a CCRB investigation, and
2 it was also a firearms -- there was a firearms discharge
3 investigation.  That's another internal -- that's an
4 internal NYPD investigation, as well as other documents.
5 I've listed them, I also brought a CD with the document
6 contents.  And I've also brought HIPAA releases for all
7 the relevant medical records, providers, that I can think
8 of.  However, since we haven't really done any discovery
9 in this case, there could be more that I don't know
10 about.
11          THE COURT:  Well, Mr. Aboushi just held up, let
12 the record reflect, that he has signed releases that
13 he'll provide to you today so we could get the ball
14 rolling.
15          MR. ABOUSHI:  Okay.
16          THE COURT:  Are you requiring there to be a
17 protective order in order to turn over the records from
18 the CCRB and the file regarding the shooting?
19          MR. WEINER:  No, your Honor.
20          THE COURT:  Okay.  But I will recommend that
21 you do enter into a protective order because with Mr.
22 Benbow's medical records being produced, he'll want to
23 make sure that they're not used for other purposes.
24 Rather than being kept solely for the purpose of the
25 litigation, and likewise, on Mr. Weiner's part, you're

7
                           Proceedings

1  undoubtedly going to ask for records regarding the police
2  person who did the shooting.  We do have the names of the
3  right people as defendants in the case?
4           MR. WEINER:  Well, your Honor, the answer is
5  partially because the two officers who fired at Mr.
6  Benbow are defendants, and they are -- I think are --
7  they're properly named as defendants in an excessive
8  force claim but there are four other defendants who did
9  not shoot at Mr. Benbow, and my theory, although I don't
10 know, is that they were named because of there was a
11 false arrest claim.
12          Now that your Honor has said that there can be
13 no false arrest claim because plaintiff was convicted, I
14 think those four defendants, Anderson, Minucci, Mitchell,
15 and Daib, should be dropped from the complaint.
16          THE COURT:  Well, let me just say that usually
17 the practice is when somebody gets counsel after being
18 pro se, there is time given, so that he could explore
19 filing an amended complaint with his client.
20          I was trying to make the point to Mr. Benbow
21 that once you take a plea, unless you are able to
22 overturn that plea, under Heck v. Humphrey, you don't
23 have a false arrest claim against the officers.
24          That doesn't mean that I know whether or not he
25 would make another type of claim against these officers.

1  If he is going to claim that, I don't know, he --
2             MR. WEINER:  Failure to intervene.
3             THE COURT:  Exactly, he demonstrated that he
4  was going to comply with their instructions, and yet he
5  was shot, and the other officers could have told them,
6  weapons down, weapons down.  I don't know what the chain
7  of events are but I will tell you that it doesn't always
8  make sense to have more people involved.
9             And if your client doesn't have a good faith
10 basis to name everyone -- now again, we have detectives,
11 we have sergeants, we have police officers.  I'm not
12 really sure who did what.  You have turned over the
13 shooting records.  You're turning over the CCRB files.
14 Let him have a chance to look through everything.  Let
15 him consult with his client.
16            Mr. Benbow said he was shot in the back.  Your
17 client's position, if I understand, Mr. Weiner, is that
18 he was running away?
19            MR. WEINER:  Yes.  Yes, your Honor, that is our
20 position.  And I should also add, I don't think I
21 mentioned this at the last time we spoke about this case
22 is that there's a video of Mr. Benbow running with a gun,
23 which is going to strongly -- it's been produced as of,
24 you know, when I -- the moment I hand plaintiff's counsel
25 the CD, that shows -- that's going to corroborate the

Proceedings

1 officer's stories.
2     THE COURT: Well again, video sometimes
3 corroborates, and sometimes doesn't. And let Mr. Aboushi
4 have a chance to meet with his client. Bottom line, he's
5 in a wheelchair. Whether or not he had a gun at this
6 point in time, it's clear to me he's a man who has served
7 his time, and he's saying that he shouldn't have been
8 shot, that that was excessive force.
9     Now I will tell you that even though the false
10 arrest claim wouldn't stand, that he has this angle that
11 the guy who called to the precinct was a -- I don't know
12 if you would say disgraced cop, but somebody who had been
13 fired, and it was through that guy that somebody else
14 gave -- it wasn't a regular 911 call from somebody, a
15 patron in the bar, was it, Mr. Weiner?
16     MR. WEINER: No, your Honor. It was a security
17 guard who was also at the same time, a part-time NYPD
18 officer, and he as you said, observed Mr. Benbow acting
19 disorderly, and he also noticed a holster on him, and he
20 intentionally sidled up to Mr. Benbow to feel if there
21 was a gun inside the holster and that was confirmed.
22     THE COURT: So again, I'll ask Mr. Aboushi to
23 review all of the materials you have. I note that that
24 person was not named as a defendant, and under the
25 telling of the tale, right?

1  MR. WEINER: I don't believe so, your Honor.
2  THE COURT: Under the telling of the tale, he
3  might be somebody who would be named.
4  MR. WEINER: Well, your Honor, I suppose that
5  would be a legal inquiry as to whether he was acting
6  under the color of law, as a security officer, and I --
7  my hunch is that he was not but --
8  THE COURT: Well, part-time, and part-time and
9  that he had some access to get the police to come in a
10 way that a normal citizen wouldn't have access.
11 MR. WEINER: Well, your Honor, still -- I don't
12 believe he was on -- he was clocked in but --
13 THE COURT: I have no idea, and that would be
14 his problem, and not yours. And I'm not saying that he
15 necessarily violated anybody's rights. If he is employed
16 with the purpose of trying to protect people at this
17 particular lounge and bar, and he sidled up to him, and
18 felt that there was a gun, and called to somebody he
19 knows, it's just this back route of police calling to
20 police. That's the only thing that I am saying raises a
21 sort of issue of if I was in that bar, I wouldn't have
22 that phone number or I wouldn't have that access. And by
23 virtue of him being a part-time police officer did that
24 change.
25 You know we have many off-duty Section 1983

cases in the district, so it's not as if I am deciding it. I'm just raising the question. Okay.

We do have a statute of limitations problem here on amending. The complaint was filed on November 2017. The events happen in March of 2015. So anybody who is named and served within that time frame is good but anybody new, since it was 2015 -- March of 2015 and we're in 2019, that would be an issue for you.

So be mindful that again if there's not a good faith basis to argue relation back, that you're out of the box even if he's pro se, that doesn't give you the right to name people outside of the statute of limitations.

So with that being said, even though there has been an answered filed to the complaint, how long would you like to look over the papers that are being produced to you, so that I could set a reasonable schedule for you to amend if you are going to file an amended complaint?

MR. ABOUSHI: Thank you, your Honor. Given that essentially the summer is upon us and some of Mr. Benbow's physical limitations, I would just ask for at least 60 days.

THE COURT: I will give you exactly 60 days. That's the outer limit of what I would give you. He --

MR. ABOUSHI: Thank you, your Honor.

1            THE COURT:  He wants things to move.  He
2    brought the case back in 2017.  It was stayed because of
3    the criminal case.  I'm happy that he got an attorney but
4    that's the outside of the amount of time.  Okay?
5            MR. ABOUSHI:  And of course, your Honor, if we
6    could do it sooner, we will.
7            THE COURT:  So Mr. Weiner could not consent to
8    the filing of an amended complaint without viewing an
9    amended complaint, of course.  So what I generally do in
10   these cases is I will set a date by which you'll -- and
11   it could be earlier than that, that you serve on him the
12   amended complaint.  And that way if he consents to it,
13   then we don't need a motion.  If he consents, and Mr.
14   Weiner, you should know that in the Second Circuit under
15   Rule 15, leave to amend should be granted freely.  He was
16   pro se.  Now he's represented by counsel.  Unless it's
17   really a futility, there shouldn't be an argument.  Okay?
18   Even if he's bringing claims like failure to intervene,
19   even if that claim wasn't alleged before, if the facts
20   alleged could have given rise to it, and the defendants
21   were given notice that it's a pro se complaint, I don't
22   think that that would be a basis to object.
23           Giving you the 60 days that you asked, puts us
24   to August.  The intern's last day, August 9th.  You'll
25   amend by August 9th.

1          So I would like a status letter by the same
2  date with your proposal for discovery because I haven't
3  gotten a 26(f) plan from both of you.
4          I will say that I do want confidentiality
5  earlier.  So I want confidentiality by -- we're in June,
6  so I would think in three weeks would be sufficient.
7  Three weeks puts us to the 25th.
8          Will that work for both of you?
9          MR. ABOUSHI:  That should be fine for the
10 plaintiff, your Honor.  Thank you.
11         MR. WEINER:  That's fine, your Honor.
12         THE COURT:  Okay.  So 6/24, mutual protective
13 order.  And you're turning over today, the releases for
14 the medical records.
15         MR. ABOUSHI:  That is correct, your Honor.
16         THE COURT:  And you'll give over the CCRB file
17 and the videos, everything that you brought today. Is
18 that correct?
19         MR. WEINER:  Yes, your Honor.
20         THE COURT:  Okay.  Was there other things that
21 needed to be addressed on behalf of Mr. Benbow today, Mr.
22 Aboushi?
23         MR. ABOUSHI:  Not at this time, your Honor.
24         THE COURT:  And how about on behalf of the City
25 defendants?

1                MR. WEINER:  One thing, your Honor.  Given, I
2    am not trying to fault plaintiff's counsel, but given
3    that he just appeared last night, I think it's probably
4    understandable that he hasn't turned over any initial
5    disclosures to the defendants.
6                THE COURT:  How about by the same, the 6/24
7    date?
8                MR. WEINER:  That would be fine.
9                MR. ABOUSHI:  Yes, your Honor, we'll --
10               THE COURT:  Under Rule 26, it's --
11               MR. ABOUSHI:  Okay.
12               THE COURT:  -- ho knows.
13               MR. ABOUSHI:  Yep.
14               THE COURT:  And again, he's already disclosed,
15   I imagine the guy that was in the bar with him, Eric
16   Bradley.  If there's anybody else who is a witness to the
17   events, he'll turn that over.  It's not an onerous
18   disclosure, so --
19               MR. ABOUSHI:  Yes.
20               THE COURT:  So initial disclosures --
21               MR. ABOUSHI:  Not a problem, your Honor.
22               THE COURT:  -- and mutual protective order.
23   Was that it, Mr. Weiner?
24               MR. WEINER:  Yes, your Honor.
25               THE COURT:  Okay.  So I am requiring the

1  parties to submit a status letter with a proposed 26(f)
2  plan for how they'll complete discovery by August 9th.
3  I'm also allowing plaintiff to amend the complaint, since
4  I'm stating August 9th will be the date by which you
5  amend, I'm going to require that you send the proposed
6  amended complaint to Mr. Weiner by the 6th to give him
7  several days so he could then tell you whether they
8  consent, and that way when you file it on the 9th, you'll
9  tell me whether or not the defendants consent, obviating
10 any need for a motion.
11          Then it doesn't need to be submitted as the
12 proposed amended complaint.  It will just be filed as
13 plaintiff's amended complaint on consent of defendants.
14 Otherwise, you're going to have to request permission to
15 amend and attach the proposed amended complaint, and say
16 that the defendants do not consent.
17          So I will put out an order setting these dates.
18 Good luck to you both, and I hope that you, in addition
19 to amending the complaint and talking about discovery,
20 talk about whether there would be any way to resolve the
21 case.  Thank you.
22          MR. WEINER:  Thank you, your Honor.
23              (Matter concluded)
24                  -o0o-
25

# C E R T I F I C A T E

      I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

      I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

      IN WITNESS WHEREOF, I hereunto set my hand this **18th** day of **July**, 2019.

      *Linda Ferrara*
Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.