UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENBOW,<br><br>        Plaintiff,<br><br>vs.<br><br><br>FEELY, et. al.<br><br>        Defendants. | Civil Case No. 1:17-CV-6457<br><br>(AMD)(LB)<br><br>Amended Complaint and Jury Demand |

## I. Jurisdiction and Venue

1. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

2. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in Kings County, NY.

3. Plaintiff asserts the following claims pursuant to the United States Constitution, New York Constitution, and Section 42 U.S.C.1983.

## II. Parties

4. Plaintiff is a resident of Kings County, New York.

5. Defendant Brian W. Feely is a resident of New York, a police officer for the NYPD, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

6. Defendant Matthew J. Rosiello is a resident of New York, a police officer for the NYPD, and at all times was acting within his official capacity as a police officer, including but

not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

7. Defendant Kenneth L. Anderson is a resident of New York, a police officer for the NYPD, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

8. Defendant Shaniel A. Mitchell is a resident of New York, a police officer for the NYPD, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

9. Defendant Stephen T. Minucci is a resident of New York, a police officer for the NYPD, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

10. Defendant William Diab is a resident of New York, a police Sargent for the NYPD, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

11. At all times herein, Defendant City of New York was and is a municipal entity created pursuant to the laws of the State of New York. Defendant City of New York operates and maintains the New York City Police Department ("NYPD"). The NYPD is an agency, arm, and extension of the City of New York. Defendant City of New York and NYPD are the employers of the Defendant Officers.

12. At all relevant times the Defendant Officers were acting under color of State Law, including acting as police officers for the City of New York.

13. Officers and individuals John and Jane Does 1-10, are named individually and in their official capacity as Officials and/or Police Officers ("Defendant Police Officers" or "Officer(s)") and were at all relevant times acting under the color of state law as Police Officers. These officers engaged in conduct that violated the Plaintiff's rights, but whose identities are not yet known.

14. Defendant Police Officers are being sued in their individually and official capacities.

## II. Facts

15. On or about March 7, 2015, Plaintiff was shot by the Defendant police officers without any legal justification for doing so.

16. Defendants Feely, Rosiello and Anderson all drew their weapons and fired at the Plaintiff, striking him several times.

17. Plaintiff was unarmed at the time he was shot and posed no threat to the officers.

18. The use of force was patently excessive and not justified under the circumstances.

19. Plaintiff did not pose a threat to any of the Defendant officers, and the discharge of their weapons upon Plaintiff was excessive and unnecessary.

20. Plaintiff suffered severe injuries, pain, and suffering as a result of the Defendants' actions.

21. Plaintiff's injuries include severe emotional and psychological trauma.

22. Plaintiff's injuries also include disfigurement, and loss of mobility.

23. Plaintiff has bullets still lodged in his body, and feels pain on a near constant basis.

24. Each Defendant officer had an opportunity to intervene and prevent the use of excessive force but failed to do so.

25. The officers were standing within proximity to each other and in constant communication.

26. Each Defendant officer could have prevented the unlawful use of force by instructing the other officers to not discharge their firearms at the Plaintiff, and/or physically stopping the other Defendants from doing so.

27. Instead, each officer engaged in a cover up in which they falsely claimed at Plaintiff was armed and pointed a weapon at them.

28. In fact, at no point in time did Plaintiff point a weapon at the Defendants.

<u>Count I-Excessive Force/Assault/Battery</u>
<u>(Against Defendant Officers)</u>

29. Plaintiff repeats each and every Paragraph as if fully set forth herein.

30. Upon information and belief, each Defendants, but with certainty Defendants Feely, Rosiello, and Anderson, intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiff, including but not limited to, shooting Plaintiff several times, thereby depriving Plaintiff of his right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution and laws of the State of New York.

31. Defendants' actions were without any legal justification, and the force used upon Plaintiff was excessive.

32. Defendants use of force against Plaintiff was not privileged as he posed no threat to the Defendants that required the discharge of their firearms at him.

33. As a direct and proximate result of each Defendants' acts and/or omissions, Plaintiff suffered significant and severe physical and emotional injuries. This includes requiring surgery and disfigurement.

Count II
Count IV-*Monell*/Failure to Supervise/Failure to Monitor/Municipal Liability
(Against Municipal Defendant)

34. Plaintiff repeats each and every Paragraph as if fully set forth herein.

35. The City of New York/NYPD have effectively ratified the misconduct of the Defendant officers, and the violation of Plaintiff's rights and associated injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to the City of New York, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are subject to excessive force and other misconduct by officers the NYPD know have demonstrated history of misconduct.

36. The City of New York and the NYPD failed to use reasonable care in the selection and retention of its employees, and/or servants, failed to and/or negligently properly monitor, retention, and/or supervise the individual Defendants, and failed to provide the appropriate safeguards to prevent the assault and use of excessive force in violation of the rights of Plaintiff.

37. It is clear that there is a need for monitoring and supervision regarding the use of force, and that there is deliberate indifference to the use of same, particularly for the Defendant officers, who had histories prior to their interaction with Plaintiff that required interdiction, investigation, supervision, and monitoring.

38. The City of New York and the NYPD, failed to teach their officers that even if Plaintiff was a suspect of some crime, they are not permitted assault/use force upon that

individual, particularly deadly force such as shooting Plaintiff, and if they see other officers engaged in misconduct, they must intervene to prevent it.

39. As in the case of Defendant officers' past unlawful use of force and employment of excessive force, there was no need to use any force, let alone deadly force, even if Plaintiff was suspected of committing a crime.

40. City of New York and the NYPD, including its Police Chief, thus created a tacit policy and custom of permitting the Defendant officers' unlawful actions to continue with their imprimatur and approval.

41. City of New York and the NYPD knew that their officers continually misuse force and employ excessive force, particularly the Defendant officers, and that there is an obvious need to properly investigate, discipline, supervise and monitor these officers in use of force.

42. Indeed, the Defendant officers involved have had numerous lawsuits filed against them for use of unlawful/excessive force.

43. Upon information and belief, the Defendant officers also had several complaints lodged against them for excessive force before they used excessive force against the Plaintiff.

44. Despite the lawsuits and complaints for excessive force before they used excessive force against Plaintiff, the Defendants officers were not retrained, provided additional supervision and monitoring, or placed in a program to monitor their performance so as to prevent the unlawful use of force upon Plaintiff.

45. The failure of the City of New York and the NYPD to monitor, supervise, and retrain the Defendant officers was glaring in light of their histories of being complaints and lawsuits for excessive force and other misconduct. Moreover, these officers should also have had

Internal Affairs files that corresponded to these lawsuits and complaints, and investigated the uses of force.

46. Upon information and belief, the City of New York and the NYPD failed to track and meaningfully investigate the uses of force by the Defendant officers such that the City of New York and the NYPD failed to monitor, supervise, and control the Defendants. These acts and omission were deliberately indifferent to the propensity of the Defendant officers and the all but guarantee that they would eventually use excessive force against the Plaintiff.

47. The City of New York and the NYPD were aware, or should have been aware with a modicum of diligence, of the shockingly high incidents involving unlawful use of force, misconduct, and excessive force by its officers, and in particular the Defendants named herein, but took no action to rectify the obviously deficient IA process, monitoring, and supervision.

48. What is more, the City of New York and the NYPD failed to monitor, supervise, and discipline its officers, including the Defendant Officers, such that they were deliberately indifferent to the rights of Plaintiff and constituted a custom, policy, and procedure, that directly caused the violation of Plaintiff's rights as describer herein.

49. The acts and omissions of the City of New York/NYPD provided approval of Defendant Officers' past conduct of engaging in excessive force, and the Defendant Officers knew that they would not be held accountable in any meaningful way if they used excessive force such as in the case of Plaintiff.

50. Upon information and belief, the City of New York and the NYPD do not meaningfully investigate CCRB and Internal Affairs Complaints.

51. The City of New York and the NYPD purport to investigate complaints, but in reality, conduct sham investigations that are aimed at covering up police misconduct.

52. The City of New York and the NYPD's failure to meaningfully investigate use of force, complaints, and other misconduct is further evidenced by the significantly low rates it sustains complaints.

53. Rather than properly adjudicate Internal Affairs/CCRB investigations, and meaningfully investigate complaints, City of New York and the NYPD skew the investigation in favor of the officer so that the complaint is either not-sustained due to alleged equipoise in evidence, or incapable of being adjudicated against the officer. Moreover, in many cases, including ones involving the Defendant officers, a review of a complaint is cursory at best, and usually closed soon thereafter without any meaningful investigation.

54. Upon information and belief, the deficient investigations also include not retaining evidence relevant to Internal Affairs investigations, such as video, not speaking to relevant witnesses, failing to interview complainants, misinterpreting data, ignoring evidence, giving officers an opportunity to change their stories to so as to escape liability, misclassifying IA complaints so that they are not investigated, crediting an officer's version of events simply because it is an officer, discounting eyewitness testimony in favor of officers, and simply not investigating all complaints.

55. Defendant City of New York and the NYPD maintained a policy whereby, upon information and belief, they failed to meaningfully investigate IA/CCRB complaints, if they investigated them at all, thereby creating a policy and custom whereby officers felt that they could violate the rights of citizens with impunity and they would not be held accountable, particularly in the case of the Defendant Officers.

56. Indeed, Defendants each have histories of being sued for the violation of civil rights.

57. Defendant Rosiello, for example, upon information and belief, has been sued at least seven times in Federal Court since 2014 for the use of unlawful force.

58. By way of further example, Defendant Feeley, upon information and belief, has been sued at least eight times in Federal Court since 2015 for the unlawful use of force.

59. Defendants Rosiello and Feeley likely have additional lawsuits pending in State Court for excessive force and similar actions. Yet nether of them were disciplined and monitored, and no steps were taken to ensure that they did not continue to employ excessive force, as they untimely did against the Plaintiff.

60. Defendants Rosiello and Feeley each discharged their weapons upon Plaintiff during the excessive use of force.

61. Upon information and belief, Defendants Rosiello and Feeley both have numerous complaints lodged against them prior to the incident with Plaintiff. Yet those incidents do not appear to have been meaningfully investigated, and despite the obvious need for intervention, the NYPD failed to take any corrective action related to these officers, including increasing supervision, training, taking them off the street, and reassigning them to non-enforcement duties.

62. Upon information and belief, Defendant officers have been sued numerous times for the unlawful use of force for incidents prior to the unlawful use of force against Plaintiff. Yet Defendant City of New York/NYPD failed to investigate these unlawful uses of force and failed to take any meaningful steps to ensure that the unlawful use of force would not continue, such that the Defendant City of New York was indifferent to the right of

Plaintiff to be free from excessive force, and all but guaranteeing that those who encountered these individuals, would be subject to excessive force.

63. City of New York and the NYPD, including the Chief of Police, knew, or with any diligent inquiry should have known, and had actual and/or constructive notice that Defendants Rosiello and Feeley were prone to use excessive force, but failed to do anything to monitor, supervise, or properly investigate these officers so as to prevent the predictable use of excessive force upon Plaintiff.

64. Notwithstanding such notice and/or knowledge, the City of New York/NYPD failed to take any meaningful supervisory action or otherwise reasonably respond to Defendants' conduct, particularly Defendants Rosiello and Feeley, covered up their misconduct, and left them in pace to continue their pattern and practice of constitutional behavior.

65. The failure of the City of New York and the NYPD to meaningfully respond and investigate these complaints (while there are no doubt others), is tantamount to a policy of tolerance of excessive force and encouraging same.

66. Despite the obvious need to intervene, supervise, and properly monitor the Defendants officers, the City of New York and the NYPD, including the Police Chief, have taken no steps to rectify the deficient Internal Affairs process, supervision, discipline process, and use of excessive force.

67. Indeed, there are numerous cases in this District as well as the Southern District that have been filed regarding the unlawful pattern and practice of the City of New York.

68. In fact, in a similar case, Judge Dearie recently held that, in sum and substance, the City of New York and the NYPD failed to monitor and supervise one of its officers such that a reasonable jury could conclude that the City of New York and the NYPD were condoning

the use of excessive force. See <u>Jenkins v City of New York</u>, 15 CV 5889 (RJD), 2019 WL 2367060, at *6 (E.D.N.Y. June 5, 2019)

69. That case is identical to the one at hand, including that the officers have lengthy histories of lawsuits. That case also illustrates the ineptness of the NYPD's Internal Affairs process, including its systemic refusal to monitor, supervise, discipline, and hold their officers accountable despite the obvious need to do so, as is the case here.

70. What is more, upon information and belief, the Defendant officers in this matter have lengthy Internal Affairs and CCRB histories.

71. Yet nothing was done to meaningfully investigate and interdict the unlawful use of force by the Defendants, which translated to the eventual unlawful use of force against Plaintiff.

72. The City of New York/NYPD's refusal to impose any discipline, or conduct meaningful investigations, or otherwise intervene in the Defendants' prior history of excessive force and misconduct was a clear endorsement of their misconduct and use of excessive force that can only be understood as ratifying this unlawful conduct and encouraging same.

73. This includes sham Internal Affairs investigations, if any is done at all, that are aimed at insulating an offending officer, including the Defendant Officers, rather than holding that officer accountable and preventing such unlawful conduct from occurring.

74. The violation of Plaintiff's rights as described herein are also an expected and natural consequence of City of New York/NYPD's failure to discipline, monitor, and supervise its officers.

75. Given the lengthy lawsuit, apparent Internal Affairs and CCRB histories of the Defendant officers, the City of New York, NYPD, its Chief of Police and policy makers knew that

Defendant officers needed discipline, supervision, and monitoring, but they failed to do so to provide same.

76. In light of the foregoing, the City of New York/NYPD and its policy makers were required to provide additional monitoring and supervision for the Defendant officers. If they did, Defendants would either not be on the streets or be subject to supervision so as to prevent the violation of the rights of citizens. In either event, the violation of Plaintiff's rights could have been prevented but for the Defendant's deliberate indifference to the obvious risk posed by Defendant officers.

77. The City of New York and the NYPD and its Officers acted under color of law pursuant to an official policy or custom and practice of the NYPD whereby the use of excessive for was permitted, tolerated, and condoned, and intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control and discipline on a continuing basis their employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully using excessive force upon Plaintiff in violation of the rights, privileges and immunities guaranteed to Plaintiff.

<u>Count III-Failure to Intervene</u>
<u>(Against Defendant Officers)</u>

78. Plaintiff repeats each and every Paragraph as if fully set forth herein.

79. Each of the Defendant officers engaged in the use of excessive force and assault of the Plaintiff.

80. While each Defendant officer was engaged in the use of excessive force and the violation of Plaintiff's rights as alleged herein, the others failed to intervene to prevent the use of excessive force and violation of Plaintiff's rights despite an opportunity to do so.

81. The Defendant officers watched as Plaintiff was unlawfully subject to excessive force.

82. Each of the Defendants had an opportunity to intervene as the use of excessive force was being deployed in front of them and within their immediate area. They could have intervened by, amongst other things, instructing other officers to not use force or physically restraining the officers from using force.

83. Rather than intervene to stop the use of excessive force and the violation of Plaintiff's rights as alleged in this Complaint, as the law requires, the Defendant officers did nothing and then attempted to conceal the use of excessive force.

Count IV. Unlawful Arrest, Malicious Prosecution, False Arrest, Unlawful Search and Seizure

84. Plaintiff repeats each and every Paragraph as if fully set forth herein.

85. Defendant officers engaged in an unlawful arrest and search of Plaintiff.

86. Each Defendant officer detained and arrested Plaintiff without probable cause to do so.

87. Each Defendant seized Plaintiff without any probable cause or legal justification to do so.

88. Each Defendant then searched Plaintiff without any probable cause or legal justification for doing so. Defendants caused Plaintiff to be maliciously prosecuted without probable cause or evidence to support the prosecution, and falsely and with malice claimed that he possessed a weapon and pointed it at them in order to cover up their actions.

89. No Defendant obtained a warrant for Plaintiff's arrest, or had any legal justification to stop, seize, detain, arrest, and prosecute Plaintiff.

90. Plaintiff did not consent to the unlawful arrest, search, and seizure.

WHEREFORE, Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages against the individual Defendant Police Officers;

(c) interest, both pre-judgment and post-judgment;

(d) attorney's fees;

(e) costs; and

(f) all other such other relief as this court may deem appropriate, equitable, and just.

## JURY DEMAND

Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: August 14, 2019

Respectfully submitted,
s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: 212.391.8500
Fax: 212.391.8508
Email: Aymen@Aboushi.com
www.Aboushi.com