UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BENBOW,

        Plaintiff,

vs.

FEELY, et. al.

        Defendants.

Civil Case No. 1:17-CV-6457

(AMD)(LB)

Second Amended Complaint and Jury Demand

## I. Jurisdiction and Venue

1. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events and omissions giving rise to these causes of action all occurred in Kings County, NY.

4. Plaintiff asserts the following claims pursuant to the United States Constitution, New York Constitution, Section 42 U.S.C.§ 1983, New York State law, as well as common law.

5. Plaintiff has complied with all requirements for asserting his claims, including filing a notice of claim, thirty days having elapsed since presentation of the claim, and compliance with GML 50 Section and the relevant subsections.

## II. Parties

6. Plaintiff is a resident of Kings County, New York.

7. Defendant Brian W. Feeley is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

8. Defendant Matthew J. Rosiello is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

9. Defendant Kenneth L. Anderson is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

10. Defendant Shaniel A. Mitchell is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

11. Defendant Stephen T. Minucci is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

12. Defendant William Diab is a resident of New York, a Police Sergent and Agent for the NYPD and City of New York, and at all times was acting within his official capacity as a

police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

13. At all times herein, Defendant City of New York was and is a municipal entity created pursuant to the laws of the State of New York. Defendant City of New York operates and maintains the New York City Police Department ("NYPD"). The NYPD is an agency, arm, and extension of the City of New York. Defendant City of New York and NYPD are the employers of the Defendant Officers and liable for their conduct.

14. At all relevant times the Defendant Officers were acting under color of State Law, including acting as police officers for the City of New York. Defendants were acting within the scope of their employment as police officers and agents for the City of New York when they engaged in the conduct described herein.

15. Officers and individuals John and Jane Does 1-10, are named individually and in their official capacity as Officials and/or Police Officers ("Defendant Police Officers" or "Officer(s)") and were at all relevant times acting under the color of state law as Police Officers. These officers engaged in conduct that violated the Plaintiff's rights, but whose identities are not yet known.

16. Defendant Police Officers are being sued in their individual and official capacities, as well as agents and employees of the City of New York.

## II. Facts

17. On or about March 7, 2015, Plaintiff was shot by the Defendant police officers without any legal justification for doing so.

18. Defendants Feeley, Rosiello and Anderson, while in police uniform, all drew their police issued weapons, pointed them at the Plaintiff, and fired at the Plaintiff, striking him several times, including in the back.

19. Plaintiff was unarmed at the time he was shot and posed no threat to the officers.

20. The use of force was patently excessive and not justified under the circumstances.

21. Plaintiff did not pose a threat to any of the Defendant officers, and the discharge of their weapons upon Plaintiff was excessive and unnecessary.

22. Plaintiff suffered severe injuries, pain, and suffering as a result of the Defendants' actions.

23. Plaintiff suffered fear and apprehension as a result of the Defendants' conduct, and caused him great alarm and fear for his personal safety and fear of injury and death.

24. Plaintiff's injuries include severe emotional and psychological trauma.

25. Plaintiff's injuries also include disfigurement and loss of mobility.

26. Plaintiff has bullets still lodged in his body, and feels pain on a near constant basis.

27. Each Defendant officer had an opportunity to intervene and prevent the use of excessive force, assault, and battery, but failed to do so.

28. The officers were standing within proximity to each other and in constant communication.

29. Each Defendant officer could have prevented the unlawful use of force by instructing the other officers not to discharge their firearms at the Plaintiff, and/or physically stopping the other Defendants from doing so.

30. Instead, each officer engaged in a cover up in which they falsely claimed that Plaintiff was armed and pointed a weapon at them.

31. In fact, at no point in time did Plaintiff point a weapon at the Defendants. Moreover, at no point did Plaintiff pose a threat to the Defendant officers.

32. The Defendants actions violated NYPD and prevalent guidelines for use of force.

33. The Defendants violated the standard of care by pointing their weapons at Plaintiff and shooting him in the back despite the fact that he posed no threat to them.

Count I-Excessive Force/Assault/Battery

34. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

35. Upon information and belief, each Defendant, but with certainty Defendants Feeley, Rosiello, and Anderson, intentionally and/or recklessly used and attempted to use unreasonable, unlawful and/or excessive force on Plaintiff, including but not limited to, shooting Plaintiff several times, thereby depriving Plaintiff of his right to be free from assault, battery, the use of unreasonable, unlawful, excessive, and improper force, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, NYS Constitution, New York State laws, and the common laws of New York.

36. Defendants' actions were without any legal justification, and the force used upon Plaintiff was excessive, unwarranted, inappropriate, reckless, negligent, and wholly improper.

37. Defendants' use of force against Plaintiff was not justified as he posed no threat to the Defendants that required the unholstering, pointing, use, and discharge of their firearms at him.

38. Defendants' actions caused Plaintiff to fear for his life and safety; at no point was any of the contact and attempted contact consensual or privileged.

39. As a direct and proximate result of each Defendants' acts and/or omissions, Plaintiff suffered and continues to suffer significant severe physical and emotional injuries, including requiring surgery, disfigurement, permanent disability and inability to walk, and ongoing treatment.

40. As a direct and proximate result of the above unlawful conduct, Plaintiff was caused to suffer personal injuries, violation of his rights under Federal, State, and common law, rights to be free from unlawful use of force, assault, and battery, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

41. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

Count II
Count IV-*Monell*/Failure to Supervise/Failure to Monitor/Municipal Liability

42. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

43. The City of New York via the NYPD, has effectively ratified the misconduct of the Defendant-Officers. The violation of Plaintiff's Federal, State, and common law rights and resulting injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to the City of New York. Said conduct included, but is not limited to, the acts of the Defendant agents and officers in the performance of their duties, which amounted to deliberate indifference to the rights of persons, including Plaintiff, who was subject to excessive force, unlawful force and arrest, negligence, and other misconduct by the Defendant officers, who the NYPD knew had demonstrated a history of misconduct involving similar violations of common law, State, and Federal rights and causes of action.

44. The City of New York and the NYPD also failed to use reasonable care and/or was negligent in the hiring and retention of its employees, officers, and/or servants, failed to and/or was negligent in the retention, monitoring, and/or supervision of the individual Defendants, and failed to provide the appropriate safeguards to prevent the negligent use of force, assault, battery, and use of excessive force in violation of Plaintiff's rights as complained of herein.

45. It is clear that there is a need for monitoring and supervision regarding the use of force, assault, battery, and negligence, and that there is deliberate indifference to the use of same, particularly for the Defendant-Officers, who had histories of similar misconduct prior to their interaction with Plaintiff of misuse of force, excessive force, assault and battery that required interdiction, investigation, supervision, and monitoring.

46. The City of New York and the NYPD failed to train officers that even if Plaintiff was a suspect in some crime, they nonetheless cannot commit an assault or battery, and cannot employ unreasonable, unlawful, and excessive force upon that individual, particularly deadly force such as shooting Plaintiff. The City of New York also failed to train its officers that if they see other officers engaged in misconduct/unlawful activity, such as the unlawful use of their weapons in this matter, they must intervene to prevent it.

47. As in the case of Defendant-Officers' past unlawful use of force and employment of unlawful and excessive force, there was no need to use any force, let alone deadly force, even if Plaintiff was suspected of committing a crime.

48. City of New York and the NYPD, including its Police Chief, thus created a tacit policy and custom of permitting the Defendant-Officers' unlawful actions to continue with their imprimatur and approval.

49. Indeed, the Defendant-Officers involved have had numerous lawsuits filed against them for use of unlawful and excessive force.

50. Upon information and belief, the Defendant-Officers also had several CCRB/IA complaints lodged against them for false arrest, unlawful, unnecessary, and excessive force, before they used the unlawful force and employed a false arrest against the Plaintiff.

51. Despite the lawsuits and complaints for excessive force and unlawful arrest prior to the complaint at hand, the Defendant-Officers were not retrained, provided additional supervision, or additional monitoring of their performance so as to prevent the unlawful use of force upon Plaintiff.

52. Had the Defendant-Officers been retrained, monitored, and supervised given their histories, the unlawful use of force and actions against Plaintiff could have been prevented as the Defendant-Officers knew that they would be held accountable and would not engage in the conduct complained of herein.

53. The failure of the City of New York and the NYPD to monitor, supervise, and retrain the Defendant officers was glaring in light of their histories of complaints and lawsuits for excessive, unlawful, and unnecessary use of force and other misconduct.

54. Upon information and belief, the City of New York and the NYPD also failed to track and meaningfully monitor and investigate the uses of force by the Defendant-Officers such that the City of New York and the NYPD failed to monitor, supervise, and control the Defendants. These acts and omission were demonstrated callous disregard with respect to the propensity of the Defendant-Officers, and all but guaranteed that they would eventually use excessive and unlawful force against the Plaintiff.

55. The City of New York and the NYPD were aware, or should have been aware with a any level of diligence, of the shockingly high number of incidents involving unlawful use of force, misconduct, and excessive force by its officers, and in particular the Defendant-Officers named herein, but took no action to rectify the obviously deficient IA process, monitoring, and supervision.

56. The acts and omissions of the City of New York and NYPD effectively condoned Defendant-Officers' past conduct of engaging in unlawful and excessive force, and the Defendant-Officers knew that they would not be held accountable in any meaningful way if they used unlawful and excessive force, such as in the case of Plaintiff.

57. Upon information and belief, the City of New York and the NYPD do not meaningfully investigate CCRB and Internal Affairs Complaints. The City of New York and the NYPD purport to investigate complaints, but in reality, conduct sham investigations that are aimed at covering up police misconduct.

58. Rather than properly adjudicate Internal Affairs/CCRB investigations, and meaningfully investigate complaints, the City of New York and the NYPD skew the investigations in favor of officer so that the complaint is either not-sustained due to alleged equipoise in evidence, or incapable of being adjudicated against the officer. Moreover, in many cases, including ones involving the Defendant-Officers, a review of a complaint is cursory at best, and usually quickly closed without any meaningful investigation.

59. Upon information and belief, the deficient Internal Affairs investigations, including those involving the Defendant-Officer's previous conduct, also include not retaining evidence relevant to Internal Affairs investigations, (e.g. such as video), failing to speak with relevant witnesses, failing to interview complainants, misinterpreting data, ignoring

evidence, giving officers an opportunity to change their stories so as to escape liability, misclassifying IA complaints so that they are not investigated, crediting an officer's version of events simply because it is an officer, discounting eyewitness testimony in favor of officers, and simply not investigating all complaints. Upon information and belief, this defective way of conducting IA investigations was how investigations into the unlawful use of force by the Defendant-Officers were handled.

60. Defendant City of New York and the NYPD maintained a policy whereby, upon information and belief, they failed to meaningfully investigate IA and CCRB complaints, if they investigated them at all, thereby creating a policy and custom whereby officers felt that they could violate the rights of citizens with impunity and they would not be held accountable, particularly in the case of the Defendant-Officers.

61. Indeed, Defendants each have histories of being sued for violations of civil rights. Defendant Rosiello, for example, upon information and belief, has been sued at least seven times in Federal Court since 2014 for the use of unlawful force. By way of further example, Defendant Feeley, upon information and belief, has been sued at least eight times in Federal Court since 2014 for the unlawful use of force.

62. Defendants Rosiello and Feeley likely also have additional lawsuits pending in State Court for excessive force and similar actions that predate the incident with Plaintiff. However, neither of them was disciplined and monitored, and no steps were taken to ensure that they did not continue to employ excessive force, as they ultimately did against the Plaintiff.

63. Defendants Rosiello and Feeley each unlawfully and improperly discharged their weapons upon Plaintiff constituting improper, unlawful, and excessive use of force.

64. Upon information and belief, Defendants Rosiello and Feeley both have numerous complaints lodged against them prior to the incident with Plaintiff. The City Of New York and NYPD had ample notice of the Defendant-Officers' histories, propensities, and misconduct, similar to the unlawful conduct they subjected Plaintiff to. Those incidents do not appear to have been meaningfully investigated, and despite the obvious need for intervention, the NYPD failed to take any corrective action related to these officers, such as increased supervision, training, taking them off the street, and reassigning them to non-enforcement duties, or revoking their authority to use a service weapon.

65. Upon information and belief, Defendant officers have been sued numerous times for the unlawful use of force for incidents prior to the unlawful use of force against Plaintiff. Yet Defendant City of New York and NYPD failed to investigate these unlawful uses of force and failed to take any meaningful steps to ensure that the unlawful use of force would not continue, such that the Defendant City of New York was indifferent to the right of Plaintiff to be free from excessive force, and all but guaranteeing that those citizens who encountered these individuals would be subject to excessive force.

66. The City of New York and the NYPD are liable for the conduct of the Defendant Officers pursuant to respondeat superior as Defendant-Officers we acting within the scope of their employment, in furtherance of their job duties and on behalf of the City of New York when they engaged Plaintiff and committed the acts complained of herein.

67. The City of New York and the NYPD, including the Chief of Police, knew, or with any diligent inquiry should have known, and had actual and/or constructive notice that Defendants Rosiello and Feeley were prone to the use of unlawful and excessive force, as well as commit assault and battery, but failed to do anything to train, monitor, supervise,

11

or properly investigate these officers so as to prevent the predictable use of excessive force upon Plaintiff as a continuation of their pattern of unlawful use of force.

68. The failure of the City of New York and the NYPD to meaningfully respond and investigate these complaints is tantamount to a policy of encouragement and tolerance for excessive and unlawful force.

69. The violation of Plaintiff's rights as described herein are also an expected and natural consequence of City of New York/NYPD's failure to discipline, monitor, and supervise its officers.

70. Given the lengthy lawsuit, apparent Internal Affairs and CCRB histories of the Defendant officers, the City of New York, NYPD, its Chief of Police and policy makers knew that Defendant-Officers needed discipline, training, supervision, and monitoring, but they failed to provide the same.

71. In light of the foregoing, had the City of New York and NYPD and its policy makers provided additional monitoring, training and supervision for the Defendant officers, the individual Defendant officers would not have had occasion to violate Plaintiff's rights and commit the acts complained of herein, and but for the Defendant City's deliberate indifference to the obvious risk posed by individual Defendant officers, Plaintiffs rights would not have been violated. This includes not only providing additional training, but also removing these officers from contact with the public and/or ensuring that a supervisor was consulted before the use of any force or arrest.

72. In addition, the City of New York and the NYPD and the Defendant-Officers acted under color of law pursuant to an official policy or custom and practice of the NYPD whereby the use of unlawful and excessive for was permitted, tolerated, and condoned, and

intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control, monitor, and discipline on a continuing basis their employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully using unlawful and excessive force upon Plaintiff.

73. As a direct and proximate result of the above-described impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, as well as State and common law rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

74. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### Count III-Failure to Intervene

75. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

76. Each of the Defendant-Officers engaged in the use of excessive force and assault of the Plaintiff.

77. While each Defendant-Officer was engaged in the use of excessive force and the violation of Plaintiff's rights as alleged herein, those who were not using force against Plaintiff failed to intervene to prevent the use of excessive force in violation of Plaintiff's rights, despite an opportunity to do so.

78. The Defendant-Officers watched as Plaintiff was unlawfully subject to excessive, unnecessary, and unlawful force.

79. Each Defendant had an opportunity to intervene as the use of excessive, unnecessary and unlawful force was being deployed against Plaintiff in front of them and within their

immediate area. Each Defendant failed to instruct other officers not to use force or physically restrain the officers from using force.

80. Rather than intervene to stop the use of excessive force and the violation of Plaintiff's rights as alleged in this Complaint and as the law requires, the Defendant officers did nothing and then attempted to conceal the use of excessive force by making false statements about what occurred in seeking to justify the unlawful use of force.

81. As a direct and proximate result of the above conduct, Plaintiff was caused to suffer personal injuries, violation of his common law, State, and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

82. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

Count IV. Unlawful Arrest, Malicious Prosecution, False Arrest, Unlawful Search and Seizure

83. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

84. Defendant-Officers engaged in an unlawful arrest and search of Plaintiff.

85. Each Defendant-Officer detained and arrested Plaintiff without probable cause to do so.

86. Each Defendant seized Plaintiff without any probable cause or legal justification to do so.

87. Each Defendant then searched Plaintiff without any probable cause or legal justification for doing so. Defendants caused Plaintiff to be maliciously prosecuted without probable cause or evidence to support the prosecution, and falsely and with malice claimed that he possessed a weapon and pointed it at them in order to cover up their actions.

88. No Defendant obtained a warrant for Plaintiff's arrest, and nor did they have any legal justification to stop, seize, detain, arrest, and prosecute Plaintiff.

89. Plaintiff did not consent to the unlawful arrest, search, and seizure.

90. As a direct and proximate result of the above impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his common law, State, and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

91. As a result of Defendants' unlawful conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## Count V. Negligence

92. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

93. Defendants were negligent in their interaction with the Plaintiff, including but not limited to, using force inappropriately, accidently, and recklessly.

94. Defendants were negligent in unholstering their weapons and pointing it at Plaintiff without any justification for doing so.

95. Defendants should not have unholstered their weapons, pointed it at Plaintiff, or caused their weapons to be discharged in the Plaintiff's direction.

96. Defendants deviated from the acceptable standards in using force and their firearms, including unholstering their weapons, pointing them at Plaintiff, and causing their weapons to discharge, all without any legal justification for doing so and without any threat to themselves or others from Plaintiff.

97. Additionally, Defendants deviated from acceptable standards in using force in the way that they did, including but not limited to, pointing their weapons at Plaintiff and discharging their weapons at Plaintiff in his direction.

98. To the extent that Defendants subjected Plaintiff to unintentional or unnecessary use of force, Defendants acts were per se negligent and grossly negligent.

99. The Defendants' actions were not within NYPD guidelines and other prevalent guidelines for the use of force.

100. Moreover, in these circumstances, where Plaintiff was not pointing a weapon at the Defendants or posing a threat to them, a reasonable officer would not have pointed his/her weapon at Plaintiff and cause it to discharge.

101. Indeed, Plaintiff did not point a weapon at the Defendants and there was no legally cognizable reason why they discharged their weapons upon him.

102. Defendants' actions were the proximate cause of Plaintiff's significant injuries.

103. Defendants' actions caused Plaintiff severe permeant physical injuries and significant emotional distress.

104. As a direct and proximate result of the above conduct, Plaintiff was caused to suffer personal injuries, violation of his rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

105. As a result of Defendants' conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE, Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages against the individual Defendant-Officers where permissible by law;

(c) interest, both pre-judgment and post-judgment;

(d) attorney's fees and costs; and

(f) all other such relief as this Court may deem appropriate, equitable, and just.

## JURY DEMAND

Plaintiff demands a trial by jury in this action for all issues triable by a jury.

| | |
|---|---|
| Dated: November 11, 2019 | Respectfully submitted,<br>s/Aymen A. Aboushi<br>Aymen A. Aboushi, Esq.<br>The Aboushi Law Firm<br>1441 Broadway, 5th Floor<br>New York, NY 10018 |