SERVED AUGUST 11, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JAMES BENBOW,

                                Plaintiff,

            -against-

THE CITY OF NEW YORK, POLICE OFFICER BRIAN
FEELEY, POLICE OFFICER MATTHEW ROSIELLO,
POLICE OFFICER KENNETH ANDERSON,
SERGEANT WILLIAM DIAB, DETECTIVE SHANIEL
MITCHELL, AND POLICE OFFICER STEPHEN
MINUCCI,

                                Defendants.

-----------------------------------------------------------------x

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1**

17-CV-06457 (EK) (JRC)

       Pursuant to Local Civil Rule 56.1 of the Rules of this Court, defendants City of New York, Police Officer Brian Feeley, Police Officer Matthew Rosiello, Police Officer Kenneth Anderson, Sergeant William Diab, Detective Shaniel Mitchell, and Police Officer Stephen Minucci submit the following statement of material facts as to which there is no genuine issue to be tried:[1]

       1.       On March 6, 2015, sometime between approximately 7:00 p.m. and 8:30 p.m., plaintiff arrived at Amarachi Prime, a restaurant/bar on the corner of Bridge Street and Nassau Street in Brooklyn, New York, with non-party Kate Williams. (See Transcript of September 17, 2020 Deposition of plaintiff James Benbow, annexed as Exhibit A to the Declaration of

---

[1] Defendants adopt the facts set forth herein only for purposes of the Motion for Summary Judgment and reserve the right to present different and/or conflicting facts at any trial in this matter. See Vasconcellos v. City of New York, 12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission' . . . neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.").

1

Christopher DeLuca submitted in support of Defendants' Summary Judgment Motion ("DeLuca Decl.") at 61:8-12; 66:19-25; 73:10-13; 77:12-17)

2. At Amarachi Prime, plaintiff interacted with Jason Marshall, the owner of Amarachi Prime, and a female bartender. (Exhibit A to DeLuca Decl. at 76:20-24; 66:5-18; 67:1-3)

3. On March 6 and March 7, 2015, Jason Marshall, while working at Amarachi Prime, was, and had been, an auxiliary police officer with the New York City Police Department since 2013. (Transcript of October 9, 2020 Deposition of non-party witness Police Officer Ruben Cespedes, annexed as Exhibit C to DeLuca Decl. at 53:3-7; see also Jason Marshall's Grand Jury Testimony, annexed as Exhibit AA to DeLuca Decl. at 43:10-44:4; 44:16-45:1; see also Detective Stilianos Panagopoulos's DD5 entry dated March 7, 2015, annexed as Exhibit I to DeLuca Decl.)

4. Non-party Eric Bradley was also at Amarachi Prime on the evening of March 6, 2015. (Exhibit A to DeLuca Decl. at 62:17-65:1)

5. On the evening of March 6, 2015 plaintiff was wearing a black jacket, glasses, a sweat suit, and a "skully" hat. (Exhibit A to DeLuca Decl. at 77:18-78:5; see also NYPD Property Voucher, annexed as Exhibit J to DeLuca Decl.)

6. While inside of Amarachi Prime, Marshall approached plaintiff and told him to not talk to a female bartender. (Exhibit A to DeLuca Decl. at 128:13-129:3; see also Exhibit AA to DeLuca Decl. at 45:20-46:13; see also Exhibit I to DeLuca Decl.)

7. Marshall also told plaintiff to stop touching the female bartender. (Exhibit I to DeLuca Decl.)

8. Marshall observed plaintiff remove his jacket, exposing what Marshall believed to be a holster for a firearm attached to his belt. (Exhibit AA to DeLuca Decl. at 51:24-52:13; <u>see also</u> Exhibit I to DeLuca Decl.)

9. Marshall touched plaintiff's waist and felt what he believed to be a firearm. (Exhibit AA to DeLuca Decl. at 52:6-24)

10. At around 12:15 a.m., now March 7, 2015, Marshall called 77th Precinct Field Intelligence Officer ("FIO") (now Detective) Ruben Cespedes and provided a description of plaintiff. (Exhibit I to DeLuca Decl.)

11. Detective Cespedes received the phone call from Marshall as he was leaving work. (Exhibit C to DeLuca Decl. at 52:22-53:2; 90:11-13)

12. During that phone call, Marshall informed Detective Cespedes that an individual at Amarachi Prime possessed a firearm. (Exhibit C to DeLuca Decl. at 90:14-19)

13. Detective Cespedes then informed Sergeant Jones of what Marshall had reported. (Exhibit C to DeLuca Decl. at 91:8-13)

14. Sergeant Jones told Detective Cespedes to reach out to Sergeant William Diab. (Exhibit C to DeLuca Decl. at 91:8-13)

15. Detective Cespedes could not reach Sergeant Diab, so he called Detective (then Police Officer) Shaniel Mitchell and then provided Marshall with Detective Mitchell's phone number. (Exhibit C to DeLuca Decl. at 91:14-21; 92:6-16)

16. Detective Cespedes informed Detective Mitchell (who was assigned to Anti-Crime), that there was a male with a firearm at Amarachi Prime. (Transcript of October 14, 2020 Deposition of Detective Shaniel Mitchell, annexed as Exhibit G to DeLuca Decl. at 51:14-52:13; 52:18-53:16; 55:17-24)

17. Detective Mitchell relayed this information to Sergeant Diab, who was supervising the Conditions and Anti-Crime teams at the 77th Precinct. (Exhibit G to DeLuca Decl. at 56:12-17; see also Transcript of October 14, 2020 Deposition of Sergeant William Diab, annexed as Exhibit E to DeLuca Decl. at 71:14-25; 80:14-81:8)

18. Sergeant Diab then held a tactical meeting with Police Officers Steven Minucci, Brian Feeley, Matthew Rosiello, Kenneth Anderson, and Mitchell. (Exhibit E to DeLuca Decl. at 85:12-19)

19. After the tactical meeting, Sergeant Diab, Officer Minucci and Detective Mitchell traveled in an unmarked vehicle, RMP #1464, to Amarachi Prime. (Exhibit E to DeLuca Decl. at 94:25-95:4; see also Exhibit G to DeLuca Decl. at 60:10-22; see also Excerpt from Police Officer Shaniel Mitchell's Memobook, annexed as Exhibit K to DeLuca Decl.)

20. Officers Feeley, Rosiello, and Anderson followed in an unmarked vehicle, RMP #649. (Exhibit E to DeLuca Decl. at 95:5-11; see also Transcript of October 9, 2020 Deposition of Police Officer Kenneth Anderson, annexed as Exhibit B to DeLuca Decl. at 83:10-84:7)

21. After arriving at Amarachi Prime, Detective Mitchell received a phone call from Marshall, who provided updated descriptions of plaintiff and Bradley. (Exhibit G to DeLuca Decl. at 53:17-54:2; 60:23-61:10)

22. Part of Marshall's description included information that a shorter male was holding a bag and a taller male had a firearm and that both of those individuals were about to exit Amarachi Prime. (See Exhibit G to DeLuca Decl. at 53:17-54:2; see also Exhibit E to DeLuca Decl. at 97:2-10)

23. Sergeant Diab overheard this information. (Exhibit E to DeLuca Decl. at 97:2-10)

24. This information, which also included a description of the individuals' clothing, was relayed via radio transmission to the vehicle containing Officers Rosiello, Feeley, and Anderson. (Transcript of October 27, 2020 Deposition of Police Officer Matthew Rosiello annexed as Exhibit F to DeLuca Decl. at 76:16-77:25)

25. Plaintiff left Amarachi Prime with Eric Bradley. (Exhibit A to DeLuca Decl. at 99:11-15)

26. As plaintiff and Bradley left Amarachi Prime, plaintiff gave Bradley a bag that, according to plaintiff, Bradley had previously left in his car. (Exhibit A to DeLuca Decl. at 67:9-18)

27. Upon exiting Amarachi Prime, plaintiff and Bradley walked on Bridge Street, then made a right turn onto Nassau Street. (Exhibit A to DeLuca Decl. at 102:16-103:1)

28. Outside of Amarachi Prime, Detective Mitchell, who was the driver of RMP #1464, observed plaintiff and Bradley exit Amarachi Prime and walk on Nassau Street. (Exhibit G to DeLuca Decl. at 60:23-61:24; Exhibit K to DeLuca Decl.)

29. Detective Mitchell followed plaintiff and Bradley in his vehicle on Nassau Street. (Exhibit G to DeLuca Decl. at 61:11-24; see also Exhibit E to DeLuca Decl. at 96:9-18)

30. Plaintiff admits that surveillance video time-stamped at 12:45:31 from March 7, 2015 depicts both him and Bradley walking on the sidewalk on Nassau Street. (Exhibit A to DeLuca Decl. at 100:1-102:13; see also video surveillance file titled "180 Nassau St" from March 7, 2015, annexed to DeLuca Decl. as Exhibit L)

31. Subsequent to the shooting, Officer Feeley attended a GO-15 hearing where he was shown a diagram, or crime scene sketch. (Transcript of December 7, 2020 Deposition of

Police Officer Brian Feeley, annexed as Exhibit H to DeLuca Decl. at 126:14-17; 117:16-118:5; see also NYPD Crime Scene Sketch, annexed as Exhibit M to DeLuca Decl.)

32. The crime scene sketch presented to Officer Feeley at the GO hearing included Officer Feeley's tax number and signature. (Exhibit H to DeLuca Decl. at 119:17-121:9; see also Exhibit M to DeLuca Decl.)

33. Officer Feely made notations on the crime scene sketch, including notations indicating the locations of where he, Officers Rosiello and Anderson, and plaintiff were located on Nassau Street on March 7, 2015. (Exhibit H to DeLuca Decl. at 121:10-124:22; see also Exhibit M to DeLuca Decl.)

34. The "A" on the crime scene sketch stands for Anderson, "F" stands for Feeley, and "R" stands for Rosiello. (Exhibit H to DeLuca Decl. at 121:10-122:16; see also Exhibit M to DeLuca Decl.)

35. The crime scene sketch indicates that "P2" represents where plaintiff was located when he was approached by police. (Exhibit M to DeLuca Decl.)

36. The crime scene sketch indicates that "P3" represents where plaintiff was located when the discharge of the firearm occurred. (Exhibit M to DeLuca Decl.)

37. The crime scene sketch further indicates the locations of RMP #649 and #1464. (Exhibit M to DeLuca Decl.)

38. When his vehicle was alongside plaintiff and Bradley, Sergeant Diab, upon observing plaintiff and Bradley, exited his vehicle with his gun drawn. (Exhibit E to DeLuca Decl. at 94:13-21)

39. Detective Mitchell also exited his vehicle with his firearm drawn. (Exhibit G to DeLuca Decl. at 63:10-16)

40. Sergeant Diab intended to approach and stop plaintiff and Bradley. (Exhibit E to DeLuca Decl. at 97:19-98:3)

41. At this point, the vehicle containing Officers Feeley, Rosiello, and Anderson was a few car lengths behind the vehicle containing Sergeant Diab, Detective Mitchell, and Officer Minucci. (Exhibit E to DeLuca Decl. at 94:13-95:8; see also Exhibit F to DeLuca Decl. at 80:22-81:19)

42. Officers Anderson and Rosiello exited their vehicle and approached the sidewalk. (Exhibit B to DeLuca Decl. at 91:5-13; see also Exhibit F to DeLuca Decl. at 83:13-84:6; see also Exhibit M to DeLuca Decl.)

43. Officer Feeley also exited the vehicle and positioned himself in the street. (Exhibit H to DeLuca Decl. at 89:6-8 to DeLuca Decl.; see also Exhibit M to DeLuca Decl.)

44. Sergeant Diab announced "police, get down on the ground." (Exhibit E to DeLuca Decl. at 94:13-21)

45. Detective Mitchell heard Sergeant Diab yell "police." (Exhibit G to DeLuca Decl. at 61:11-24)

46. Upon hearing these commands, Bradley stopped and dropped to the ground. (Transcript of Eric Bradley's Grand Jury testimony, annexed as Exhibit N to DeLuca Decl. at 25:14-26:2)

47. Sergeant Diab and Detective Mitchell observed Bradley on the ground. (Exhibit E to DeLuca Decl. at 99:12-14; see also Exhibit G to DeLuca Decl. at 61:11-24)

48. Plaintiff turned around and ran in the opposite direction on the sidewalk. (Exhibit A to DeLuca Decl. at 104:11-16; see also Exhibit G to DeLuca Decl. at 61:11-24; see also

Exhibit E to DeLuca Decl. at 98:22-99:11; see also Transcript of November 19, 2020 Deposition of Police Officer Stephen Minucci, annexed as Exhibit D to DeLuca Decl. at 89:24-90:4)

49. Plaintiff admits that video surveillance from March 7, 2015 time-stamped between 12:45:31 and 12:45:38 depicts him turning around and running in the opposite direction on the sidewalk on Nassau Street. (Exhibit L to DeLuca Decl.; see also Exhibit A to DeLuca Decl. at 106:19-25)

50. Plaintiff then left the sidewalk, made a right turn, and ran between two cars and into the street. (Exhibit A to DeLuca Decl. at 105:17-19; 107:13-108:9; see also Exhibit B to DeLuca Decl. at 94:12-19; see also Exhibit F to DeLuca Decl. at 83:4-7; see also Exhibit H to DeLuca Decl. at 86:7-13)

51. Plaintiff admits that video surveillance from March 7, 2015 time-stamped between 12:45:32 and 12:45:41 depicts him making a right turn into the street. (Exhibit L to DeLuca Decl.; see also Exhibit A to DeLuca Decl. at 107:13-108:9)

52. As plaintiff ran between the two cars, Officer Feeley was located in front of plaintiff in the street. (Exhibit H to DeLuca Decl. at 86:14-18; see also Exhibit M to DeLuca Decl.)

53. On the sidewalk, Officer Anderson observed Officer Rosiello to be standing about five or six steps in front of him. (Exhibit B to DeLuca Decl. at 94:16-95:8; see also Exhibit M to DeLuca Decl.)

54. Officer Rosiello observed plaintiff pull a gun from his waistband as plaintiff was running towards him. (Exhibit F to DeLuca Decl. at 86:3-14)

55. Officer Rosiello alerted the other officers that plaintiff had a gun and drew his firearm. (Exhibit F to DeLuca Decl. at 89:3-19)

8

56. Officer Anderson also observed plaintiff holding a gun while he was running. (Exhibit B to DeLuca Decl. at 98:10-14; 106:25-107:5)

57. Officer Anderson did not discharge his firearm at plaintiff because his line of fire was obstructed by Officer Rosiello. (Exhibit B to DeLuca Decl. at 107:24-108:7)

58. Officer Rosiello observed plaintiff pointing a gun in his direction. (Exhibit F to DeLuca Decl. at 88:8-12; 138:2-5)

59. Officer Rosiello also observed plaintiff run in the direction of Officer Feeley and believed that plaintiff posed a threat to Officer Feeley because plaintiff had a gun out. (Exhibit F to DeLuca Decl. at 146:16-19)

60. Fearing for the safety of both himself and Officer Feeley, Officer Rosiello discharged his firearm one time at plaintiff while Officer Rosiello was standing on the sidewalk. (Exhibit F to DeLuca Decl. at 88:13-18; 100:20-22; 144:21-145:6; see also Exhibit M to DeLuca Decl.)

61. Officer Rosiello discharged his firearm when he observed plaintiff run between the two cars. (Exhibit F to DeLuca Decl. at 89:3-19; see also Exhibit M to DeLuca Decl.)

62. At the time Officer Rosiello discharged his firearm, he believed that Officer Anderson was located behind him. (Exhibit F to DeLuca Decl. at 99:15-100:4; see also Exhibit M to DeLuca Decl.)

63. At the time Officer Rosiello discharged his firearm, Officer Anderson observed Officer Rosiello to be in front of him on the sidewalk closer to the street. (Exhibit B to DeLuca Decl. at 108:23-109:11; see also Exhibit M to DeLuca Decl.)

64. At the time Officer Rosiello discharged his firearm, he believed that Officer Feeley was in the street on the other side of the car that Officer Rosiello was standing next to on the sidewalk. (Exhibit F to DeLuca Decl. at 100:5-11; see also Exhibit M to DeLuca Decl.)

65. Officer Feely, positioned in the street, observed plaintiff run between the two cars. (Exhibit H to DeLuca Decl. at 86:11-18).

66. Officer Feeley further observed plaintiff run in his direction while raising a gun in his direction. (Exhibit H to DeLuca Decl. at 86:11-22; 144:5-12).

67. After Officer Feeley observed plaintiff raise a gun in his direction, he heard either Officer Rosiello or Officer Anderson say "Police. Drop the gun." (Exhibit H to DeLuca Decl. at 144:13-23)

68. Officer Feeley discharged his firearm three times from the street. (Exhibit H to DeLuca Decl. at 92:14-16; see also Exhibit M to DeLuca Decl.)

69. Before he discharged his firearm and as plaintiff was running between the two cars, Officer Feeley yelled "Police. Drop the gun." (Exhibit H to DeLuca Decl. at 91:17-23)

70. Officer Minucci recognized the voice of one of the officers in the conditions team yell "gun." (Exhibit D to DeLuca Decl. at 94:20-24)

71. At the time Officer Feeley discharged his firearm, he believed plaintiff to be about ten to fifteen feet away from him. (Exhibit H to DeLuca Decl. at 76:9-16)

72. After discharging his firearm three times, Officer Feeley ceased firing because he believed the threat was over when plaintiff fell to the ground and the gun fell out of plaintiff's hands. (Exhibit H to DeLuca Decl. at 142:13-21)

73. Officer Feeley discharged the three shots quickly – one after the other. (Exhibit H to DeLuca Decl. at 146:17-21; 151:10-12)

74. Only seconds elapsed between the time of the first and last gunshots fired by Officers Rosiello and Feeley. (Exhibit A to DeLuca Decl. at 111:9-11; Exhibit D to DeLuca Decl. at 125:12-17; Exhibit B to DeLuca Decl. at 139:3-10; Exhibit G to DeLuca Decl. at 96:22-25)

75. When plaintiff was shot, Officers Anderson and Feeley each observed a gun fall out of plaintiff's hand. (Exhibit B to DeLuca Decl. at 122:21-123:2; Exhibit H to DeLuca Decl. at 142:13-21)

76. A second or two after he heard gunshots, Detective Mitchell heard what he believed to be a metal object hitting the ground. (Exhibit G to DeLuca Decl. at 99:16-100:2)

77. After plaintiff was shot, Sergeant Diab observed a silver gun a few feet away from where plaintiff was located on the ground. (Exhibit E to DeLuca Decl. at 102:8-15)

78. Sergeant Diab did not discharge his firearm. (Exhibit E to DeLuca Decl. at 75:2-4)

79. Officer Minucci did not discharge his firearm. (Exhibit D to DeLuca Decl. at 98:23-25)

80. Detective Mitchell did not discharge his firearm. (Exhibit G to DeLuca Decl. at 83:25-84:3)

81. One loaded chrome Interams Star .45 caliber semi-automatic pistol was recovered from the scene of the shooting and vouchered. (See Crime Scene Unit Report dated March 7, 2015, annexed to DeLuca Decl. as Exhibit O; see also photo of Interams Star .45 caliber semi-automatic pistol, annexed as Exhibit P to DeLuca Decl.; see also NYPD Property Voucher, annexed as Exhibit Q to DeLuca Decl.)

82. After he was shot, plaintiff was handcuffed by Officer Minucci and subsequently taken by ambulance to Kings County Hospital. (See Exhibit D to DeLuca Decl. at 99:2-5; see also plaintiff's medical records from Kings County Hospital, annexed to as Exhibit R to DeLuca Decl. at Bates Nos. DEF_3807-3808)[2]

83. Plaintiff's medical records from Kings County Hospital indicate that plaintiff ██████████████████████████████████████████████████████ ██████████████████████████████ (See Exhibit R to DeLuca Decl. at Bates Nos. DEF_4001-4005)

84. Plaintiff's gunshot wounds are also depicted on a Crime Scene Unit diagram. (See Crime Scene Unit diagram, annexed as Exhibit S to DeLuca Decl.)

85. Plaintiff was arrested and charged with violating New York Penal §§ 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 120.14(1) (Menacing in the Second Degree). See NYPD Arrest Report associated with plaintiff's arrest, dated March 8, 2015, annexed as Exhibit T to DeLuca Decl.)

86. A Criminal Court Complaint was filed against plaintiff in the Kings County Criminal Court. Docket No. 2015KN01452, charging plaintiff with violating New York Penal §§ 265.03(1)(B) (Criminal Possession of a Weapon in the Second Degree), 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 265.01(1) (Criminal Possession of a Weapon in the Fourth Degree). See Criminal Court Complaint, annexed as Exhibit U to DeLuca Decl.)

87. A Superior Court Information was filed in the Supreme Court of New York, Indictment No. 01849-2015, Kings County, wherein the Grand Jury of Kings County accused

---

[2] Plaintiff's medical records have been filed "under seal."

plaintiff of the crimes of, *inter alia*, Criminal Possession of a Weapon in the Second Degree (265.03(3)), Criminal Possession of a Firearm (265.01-B), and Criminal Possession of a Weapon in the Fourth Degree (265.01(1). (Superior Court Information, annexed as Exhibit V to DeLuca Decl.)

88. On April 24, 2018, plaintiff, represented by counsel, pled guilty in open court to Count 2 of the Indictment, Criminal Possession of a Firearm in violation of New York Penal Law § 265.01-B, in the Supreme Court of New York, Kings County, Criminal Term, Part 16, before the Honorable Bruce M. Balter. (See April 24, 2018 Court Transcript, annexed as Exhibit W to DeLuca Decl.)

89. On April 24, 2018, when asked by the Court if he had discussed the plea and the case with his attorney (who was present at the proceeding), plaintiff answered "yes." (Exhibit W to DeLuca Decl. at 15:1-4)

90. On April 24, 2018, when asked by the Court if anyone forced or threatened to get plaintiff to plead guilty, plaintiff answered "no". (Exhibit W to DeLuca Decl. at 15:16-19)

91. On April 24, 2018, when asked by the Court, under Indictment No. 01849-2015, if, on or about March 7, 2015, in Kings County, if plaintiff possessed any firearm, namely a pistol, plaintiff answered "yes". (Exhibit W to DeLuca Decl. at 17:22-18:5)

92. On April 14, 2021, the Second Department of the New York State Appellate Division vacated plaintiff's guilty plea and omnibus motion to suppress physical evidence – the gun – was granted. (See April 14, 2021 Decision, annexed as Exhibit X to DeLuca Decl.)

93. The Second Department held that the Supreme Court of New York "erred in finding, in effect, that the police had lawfully stopped [plaintiff] before [plaintiff] fled from the police and removed a gun from his waist. The hearing testimony indicated that the law

13

enforcement officials who were in the sergeant's vehicle had received a tip that two individuals, one of whom had a gun, were leaving the club. There was no evidence presented at the [suppression] hearing as to the identity of the individual who provided the tip, no evidence that the informant explained to the police how he or she knew about the gun, no evidence that the informant supplied any basis to believe that he or she had inside information about the defendant, and no evidence that the informant had knowledge of concealed criminal activity. Therefore, the police lacked reasonable suspicion to stop the defendant and his companion based solely on the tip." (Exhibit X to DeLuca Decl. at 3)

94.  The Second Department did not rule that plaintiff's guilty plea was involuntary or coerced. (See Exhibit X to DeLuca Decl.)

95.  While represented by attorney Kenneth J. Montgomery, plaintiff filed a Notice of Claim against the City of New York. (Notice of Claim and Notice of 50-H Hearing, annexed as Exhibit Y to DeLuca Decl.)

96.  Plaintiff was noticed, via his then-attorney, Kenneth J. Montgomery, in a letter dated June 23, 2015 to appear at his 50-h hearing on August 27, 2015 at 12:00 p.m. (Exhibit Y to DeLuca Decl.; see also Exhibit A to DeLuca Decl. at 172:2-173:14)

97.  Plaintiff did not appear for his 50-h hearing on August 27, 2015 and the hearing was not held. (See Exhibit Y to DeLuca Decl.; see also Exhibit A to DeLuca Decl. at 50:24-51-2)

Dated: New York, New York
August 11, 2021

GEORGIA M. PESTANA
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York, Police Officer Brian Feeley, Police Officer Matthew Rosiello, Police Officer Kenneth Anderson, Sergeant William Diab, Detective Shaniel Mitchell, and Police Officer Stephen Minucci*
100 Church Street
New York, New York 10007
(212) 356-3535

By: _____
Christopher D. DeLuca
*Senior Counsel*
Special Federal Litigation

cc: Aymen Aboushi, Esq. (Via Email)
*Attorney for Plaintiff*
The Aboushi Law Firm
1441 Broadway
5th Floor
New York, New York 10018
aymen@aboushi.com

15