SERVED AUGUST 11, 2021

17-CV-06457 (EK) (JRC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMES BENBOW,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
BRIAN FEELEY, POLICE OFFICER MATTHEW
ROSIELLO, POLICE OFFICER KENNETH
ANDERSON, SERGEANT WILLIAM DIAB,
DETECTIVE SHANIEL MITCHELL, AND POLICE
OFFICER STEPHEN MINUCCI,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT PURSUANT TO RULE 56 OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

**<u>GEORGIA M. PESTANA</u>**
*Corporation Counsel of the City of New York*
*Attorney for City of New York, Police Officer*
*Kenneth Anderson, Sergeant William Diab,*
*Police Officer Brian Feeley, Police Officer*
*Stephen Minucci, Detective Shaniel Mitchell,*
*and Police Officer Matthew Rosiello*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Christopher D. DeLuca*
*Tel:  (212) 356-3535*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

STANDARD OF REVIEW ................................................................................................ 2

ARGUMENT ...................................................................................................................... 3

POINT I

PLAINTIFF'S EXCESSIVE FORCE CLAIM
FAILS AS A MATTER OF LAW ............................................................... 3

A.  The Force Used by Officers Feeley and
Rosiello was Objectively Reasonable .................................................. 3

B.  Plaintiff Cannot Maintain an Excessive Force
Claim Against Officers Anderson and Minucci,
Sergeant Diab, or Detective Mitchell .................................................. 7

POINT II

PLAINTIFF'S UNLAWFUL SEIZURE/FALSE
ARREST CLAIM FAILS AS THERE WAS
PROBABLE CAUSE FOR HIS ARREST ................................................ 8

A.  Plaintiff's Arrest was Based on Probable Cause ................................. 8

POINT III

PLAINTIFF'S MALICIOUS PROSECUTION
CLAIM FAILS FOR MULTIPLE REASONS ......................................... 11

A.  Plaintiff Cannot Establish a Favorable
Termination of His Criminal Proceedings ......................................... 11

B.  Plaintiff Cannot Establish that Probable Cause
was Lacking for his Criminal Proceeding ......................................... 15

C.  Plaintiff Cannot Establish the Element of
Malice ................................................................................................ 16

**Page**

POINT IV

    PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS AS A MATTER OF LAW ............................................... 18

    A.  Defendants did not have a Realistic Opportunity to Intercede to Stop the Shooting ................................. 18

POINT V

    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................................................ 19

POINT VI

    PLAINTIFF'S MONELL CLAIM FAILS ............................................. 21

POINT VII

    PLAINTIFF'S STATE LAW CLAIMS FAIL ........................................ 24

    A.  Plaintiff's Assault and Battery Claim Fails as a Matter of Law ...................................................................... 24

    B.  Plaintiff Cannot Simultaneously Assert Negligent and Intentional Conduct .................................... 24

    C.  Plaintiff Failed to Comply with N.Y. Gen. Mun. Law § 50-h ................................................................ 25

    D.  The Court Should Not Exercise Jurisdiction Over Any Pendant State Law Claims ................................. 25

CONCLUSION ..................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Pages**

Amore v. Novarro,
   624 F.3d 522 (2d Cir. 2010).................................................................................................19

Ampratwum v. City of New York,
   11-CV-06111 (DLC), 2013 U.S. Dist. LEXIS 67025 (S.D.N.Y. May 9, 2013)...............17, 18

Anderson v. Branen,
   17 F.3d 552 (2d Cir. 1994).................................................................................................18

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)...........................................................................................................2

Annunziata v. City of New York,
   06-CV-7637 (SAS), 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y. May 28, 2008) .......................9

Anthony v. City of New York,
   00-CV-4688 (DLC), 2001 WL 741743 (S.D.N.Y. July 2, 2001) ...........................................24

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...........................................................................................................7

Barcomb v. Sabo,
   487 Fed. Appx. 645 (2d Cir. 2012)..........................................................................................20

Bernard v. United States,
   25 F.3d 98 (2d Cir. 1994) ...................................................................................................21

Bernstein v. Misk,
   948 F. Supp. 228 (E.D.N.Y. 1997) .....................................................................................25

Bilan v. Davis,
   11-CV-5509 (RJS) (JLC), 2013 U.S. Dist. LEXIS 107619
   (S.D.N.Y. July 31, 2013) ...................................................................................................7

Blount v. City,
   15-CV-5599 (PKC), 2019 U.S. Dist. LEXIS 34969 (E.D.N.Y. Mar. 5, 2019) ......................13

Brogdon v. City of New Rochelle,
   200 F. Supp. 2d 411 (S.D.N.Y. 2002)...................................................................................18

Brown v. City of New York,
   306 F. Supp. 2d 473 (S.D.N.Y. 2004).........................................................................................8

Busch v. City of New York,
   00-CV-05211 (SJ), 2003 U.S. Dist. LEXIS 27571 (E.D.N.Y Sep. 30, 2003)........................24

**Cases**                                                                                                                    **Pages**

Candelario v. City of New York,
    No. 12 Civ. 1206 (LAP),
    2013 U.S. Dist. LEXIS 48412 (S.D.N.Y. Mar. 29, 2013) .......................................................8

Catalino v. Danner,
    96 N.Y.2d 391, 754 N.E.2d 164, 729 N.Y.S.2d 405 (2001)...................................................11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................................2

Cerrone v. Brown,
    246 F.3d 194 (2d Cir. 2001)...................................................................................................20

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)...............................................................................................................21

Colon v. New York,
    468 N.Y.S.2d 453 (1983).......................................................................................................16

Connick v. Thompson,
    131 S. Ct. 1350 (2011)......................................................................................................22, 23

Corley v. Nabeel Shahid,
    89 F. Supp. 3d 518 (E.D.N.Y. 2015) ....................................................................................19

Covington v. City of New York,
    171 F.3d 117 (2d Cir. 1999)....................................................................................................8

Criminal Possession of a Firearm
    (265.01-B) ..........................................................................................................10, 14, 15, 16

Day v. Armstrong,
    99-281, 2000 U.S. App. LEXIS 31029 (2d Cir. Nov. 30, 2000) .............................................7

Pub. Adm'r of Queens County ex rel. Estate & Beneficiaries of Guzman v. City
    of New York,
    06-CV-7099, 2009 WL 498976 (S.D.N.Y. Feb. 24, 2009)......................................................4

Farrell v. Burke,
    449 F.3d 470 (2d Cir. 2006)....................................................................................................7

Fulton v. Robinson,
    289 F.3d 188 (2d Cir. 2002)...........................................................................................13, 17

**Cases**                                                                   **Pages**

Gilliard v. City of New York,
  10-CV-5187 (NGG), 2013 U.S. Dist. LEXIS 18180, 2013 WL 521529
  (E.D.N.Y. Feb. 11, 2013)..........................................................................................25

Golphin v. City of New York,
  09-CV-1015 (BSJ), 2011 U.S. Dist. LEXIS 106272 (S.D.N.Y. Sep. 19, 2011).......................9

Graham v. City of New York,
  16-CV-4613 (NGG), 2018 U.S. Dist. LEXIS 34554, 2018 WL 1157818
  (E.D.N.Y. Mar. 2, 2018) ..........................................................................................13

Graham v. Connor,
  490 U.S. 386 (1989)..........................................................................................3, 4

Harlow v. Fitzgerald,
  457 U.S. 800 (1982)..........................................................................................19

Harris v. City of New York,
  15-CV-6467 (MKB), 2017 U.S. Dist. LEXIS 1222, 2017 WL 59081
  (E.D.N.Y. Jan. 4, 2017) ..........................................................................................13

Henry v. City of New York,
  02-CV-4824 (JSM), 2003 U.S. Dist. LEXIS 15699 (S.D.N.Y. Sep. 8, 2003)..........................4

Hunter v. Bryant,
  502 U.S. 224 (1991)..........................................................................................20

Jane Doe v. City of New York, et al.,
  09-CV-9895 (SAS), 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013).......................23

Jean-Laurent v. Wilkinson,
  540 F. Supp. 2d 501 (S.D.N.Y. 2008)..........................................................................18

Johnson v. Constantellis,
  221 Fed. Appx. 48 (2d Cir. 2007)..........................................................................16

Kennedy v. Arias,
  12-CV-04166 (KPF), 2017 U.S. Dist. LEXIS 103576 (S.D.N.Y. July 5, 2017)....................25

Khan v. Ryan,
  145 F. Supp. 2d 280 (E.D.N.Y. 2001) ..........................................................................21

Lanning v. City of Glens Falls,
  17-CV-970, 2018 U.S. App. LEXIS 31489 (2d Cir. Nov. 7, 2018) ..................................11, 12

**Cases**                                                                                                    **Pages**

Lovick v. Schriro,
    12-CV-7419 (ALC), 2014 U.S. Dist. LEXIS 106261 (S.D.N.Y. July 25, 2014) ....................7

Lowth v. Town of Cheektowaga,
    82 F.3d 563 (2d Cir. 1996)...........................................................................................17, 18

Malley v. Briggs,
    475 U.S. 335 (1986)....................................................................................................4, 22

Manganiello v. City of New York,
    612 F.3d 149 (2d Cir. 2010)...............................................................................................15

Martinez v. Simonetti,
    202 F.3d 625 (2d Cir. 2000)................................................................................................9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..........................................................................................................2

Missel v. County of Monroe,
    351 F. App'x 543 (2d Cir. 2009) .......................................................................................24

Mitchell v. City of New York,
    841 F.3d 72 (2d Cir. 2016)................................................................................................16

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)....................................................................................................1, 22

O'Neill v. Krzeminski,
    839 F.2d 9 (2d Cir. 1988) .................................................................................................18

People v. Ketcham,
    93 N.Y.2d 416 (1999) ........................................................................................................9

People v. Ramirez-Portoreal,
    88 N.Y.2d 99, 666 N.E.2d 207, 643 N.Y.S.2d 502 (1996).......................................................9

Pettus v. City of New York,
    10-CV-01442 (CBA), 2011 U.S. Dist. LEXIS 114129
    (E.D.N.Y. Aug. 23, 2011)...............................................................................................17, 18

Pitchell v. Callan,
    13 F.3d 545 (2d Cir. 1994).................................................................................................25

Posr v. Doherty,
    944 F.2d 91 (2d Cir. 1991).................................................................................................24

**Cases**                                                                                                              **Pages**

Ricciuti v. New York City Transit Auth.,
   124 F.3d 123 (2d Cir. 1997)...................................................................................8

Rose v. Goldman,
   02-CV-05370 (NGG), 2009 U.S. Dist. LEXIS 117528
   (E.D.N.Y. Dec. 9, 2009),
   adopted, 2011 U.S. Dist. LEXIS 30807 (E.D.N.Y., Mar. 22, 2011) ......................................17

Rounsville v. Zahl,
   13 F.3d 625 (2d Cir. 1994)...................................................................................15

Salim v. Proulx,
   93 F.3d 86 (2d Cir. 1996) ....................................................................................4

Sash v. United States,
   674 F. Supp. 2d 531 (S.D.N.Y. 2009)....................................................................18

Savino v. City of New York,
   331 F.3d 63 (2d Cir. 2003)............................................................................2, 15, 16

Simms v. City of New York,
   480 Fed. Appx. 627 (2d Cir. 2012)...............................................................22, 23, 24

Singer v. Fulton County Sheriff,
   63 F.3d 110 (2d Cir. 1995)...........................................................................8, 17, 18

Singleton v. City of New York,
   632 F.2d 185 (2d Cir. 1980)..........................................................................11, 12, 13

Smalls v. Collins,
   14-CV-02326 (CBA), 2020 U.S. Dist. LEXIS 52213
   (E.D.N.Y. Mar. 13, 2020) ...............................................................................14, 15

Smith-Hunter v. Harvey,
   95 N.Y.2d 191, 734 N.E.2d 750, 712 N.Y.S.2d 438 (2000)...............................................11

Southerland v. Garcia,
   11-243-pr, 2012 U.S. App. LEXIS 10020 (2d Cir. May 18, 2012) .........................................13

Stevens v. Metro. Transp. Auth. Police Dep't,
   293 F. Supp. 2d 415 (S.D.N.Y. 2003).......................................................................4

Sulkowska v. City of New York,
   129 F. Supp 2d 274 (S.D.N.Y. 2001).......................................................................17

**Cases**                                                                                                          **Pages**

Taravella v. Town of Wolcott,
    599 F.3d 129 (2d Cir. 2010)....................................................................................20

Tennessee v. Garner,
    471 U.S. 1 (1985)..........................................................................................................4

Torraco v. Port Auth. of N.Y. & N.J.,
    615 F.3d 129 (2d Cir. 2010)......................................................................................8

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010)........................................................................................3

United States v. Colon,
    250 F.3d 130 (2d Cir. 2001)......................................................................................9

Walston v. City of New York,
    289 F. Supp. 3d 398 (E.D.N.Y. 2018) ...................................................................17

Washpon v. Parr,
    561 F. Supp. 2d 394 (S.D.N.Y. 2008)....................................................................21

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).......................................................................................8

White v. Pauly,
    137 S. Ct. 548 (2017) (per curiam) .........................................................................20

Wilson v. McMullen,
    07-CV-948, 2010 WL 1268055 (E.D.N.Y. Mar. 30, 2010)...................................17

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007)....................................................................................22

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)................................................................................8, 20

**Statutes**

42 U.S.C § 1983....................................................................................1, 7, 8, 11, 12, 22, 23

Fed. R. Civ. P. 56......................................................................................................................1

Fed. R. Civ. P. 56(c) ................................................................................................................2

Local Civil Rule 56.1...............................................................................................................2

**Statutes**                                                                                   **Pages**

N.Y. Gen. Mun. Law § 50-h ...........................................................................................25

N.Y. Gen. Mun. Law § 50-h(1) .....................................................................................25

N.Y. Gen. Mun. Law § 50-h(5) .....................................................................................25

N.Y. Penal Law § 35.30(1)(c) (McKinney 2007)...........................................................4

New York Penal § 265.03(1)(B).....................................................................................16

New York Penal § 265.03(3) ...........................................................................................9

## PRELIMINARY STATEMENT

Plaintiff filed a Second Amended Complaint ("SAC") pursuant to 42 U.S.C § 1983 alleging claims of excessive force, false arrest, unlawful search and seizure, malicious prosecution, failure to intervene, municipal liability, and state law claims of assault and battery and negligence against defendants City of New York ("City"), Police Officers Kenneth Anderson, Brian Feeley, Stephen Minucci, Matthew Rosiello, Sergeant William Diab, and Detective Shaniel Mitchell (collectively, "defendants").  (ECF No. 74).  Defendants now move for summary judgment to dismiss the SAC pursuant to Fed. R. Civ. P. 56.

Here, the record demonstrates that: (i) plaintiff's excessive force claim fails as a matter of law since the force that was used by Officers Feeley and Rosiello was objectively reasonable under the circumstances; (ii) defendants Anderson, Diab, Minucci, and Mitchell lacked personal involvement in plaintiff's excessive force claim; (iii) the unlawful search/seizure/false arrest claim fails since plaintiff's arrest was supported by probable cause; (iv) the malicious prosecution claim fails for multiple reasons; (v) the failure to intervene claim fails because even if any individual defendant violated plaintiff's constitutional rights, the other defendants did not have a realistic opportunity to intervene; (vi) defendants are entitled to qualified immunity; (vii) plaintiff fails to state a Monell claim against the City; and (viii) plaintiff's state law claims of negligence and assault fail.  As such, defendants are entitled to summary judgment and this matter should be dismissed with prejudice.

## STATEMENT OF FACTS

For a complete statement of facts, the Court is respectfully referred to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs' 56.1") dated August 11, 2021 and submitted concurrently herewith.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). While courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party in deciding whether a genuine issue of material fact exists, nevertheless, once a motion for summary judgment is made and supported, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Genuine issues of material fact exist when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. v. Zenith Radio Corp., 475 U.S. at 587. Summary judgment should be granted "if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative . . . or if it is based purely on conjecture or surmise." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (citations and internal quotes omitted).

---

[1] Mindful of, and in the interest of not exceeding the Court's 25-page limitation, defendants incorporate their 56.1 Statement herein by reference.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS AS A MATTER OF LAW**

**A.    The Force Used by Officers Feeley and Rosiello was Objectively Reasonable**

The Fourth Amendment prohibits the use of excessive force by police in the course of effectuating an arrest, Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010), (quoting Graham v. Connor, 490 U.S. 386, 395 (1989), however, the Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof . . . ." Graham, 490 U.S. at 396 (citations omitted).  Where an alleged use of excessive force occurs in the context of a "seizure" the claim must be analyzed under the objective reasonableness standard of the Fourth Amendment." Graham, 490 U.S. at 395 (1989).  The reasonableness of the force used is determined based on the facts and circumstances of each case "Judged from the perspective of a reasonable officer on the scene, rather than with the 2020 vision of hindsight." Id.  Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. "[T]he subjective motivations of the individual officers . . . has no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment." Id.

In assessing the reasonableness of an officer's actions, the specific facts and circumstances surrounding the incident must be examined.  For example, a fact finder may consider, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is] actively resisting arrest or attempting

to evade arrest by flight." Henry v. City of New York, 02-CV-4824 (JSM), 2003 U.S. Dist. LEXIS 15699, at **5-6 (S.D.N.Y. Sep. 8, 2003) (citing Graham, 490 U.S. at 396).

Under federal law, a police officer is authorized to use deadly force 'if the suspect threatens the officer with a weapon' or 'poses a threat of serious physical harm, either to the officer or to others.'" Stevens v. Metro. Transp. Auth. Police Dep't, 293 F. Supp. 2d 415, 420 (S.D.N.Y. 2003) (citing Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)). Under New York law, a police officer effecting an arrest may use deadly force if the officer "reasonably believes that . . . deadly physical force is necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force." N.Y. Penal Law § 35.30(1)(c) (McKinney 2007). Where an officer has employed deadly force, the test for objective reasonableness is well established:

> In order for it to be objectively reasonable for an officer to use deadly force to apprehend a suspect, he must have probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Tennessee v. Garner, 471 U.S. 1, 3, 11 (1985). The objective reasonableness test will not be met if, on an objective basis, it is obvious that no reasonably competent officer would have concluded in that moment that his use of deadly force was necessary. See Malley v. Briggs, 475 U.S. 335, 341 (1986).

Pub. Adm'r of Queens County ex rel. Estate & Beneficiaries of Guzman v. City of New York, 06-CV-7099, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009).

 "[P]roper application [of the reasonableness test] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Garner, 471 U.S. at 8-9). "In . . . circumstances [where an officer uses deadly force], the 'immediate threat' criterion controls the outcome of this Court's evaluation." Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996) (citing Garner, 471 U.S. at 11-12).

4

Here, plaintiff alleges that defendants used excessive force when he was shot by Officers Feeley and Anderson.  However, the relevant undisputed facts demonstrate that Officers Feeley and Anderson's actions were objectively reasonable under the circumstances they confronted.

It is undisputed that officers initially approached plaintiff based on a tip provided by Auxiliary Police Officer Jason Marshall that plaintiff possessed a firearm while inside Amarachi Prime Restaurant.  (Defs' 56.1 at ¶¶ 10-12).  After arriving at Amarachi Prime, Detective Mitchell received a phone call from Marshall who provided updated descriptions of plaintiff and non-party Eric Bradley, including information that a shorter male was holding a bag and a taller individual had a firearm and that both these individuals were about to exit Amarachi Prime.  (Id. at ¶¶ 21-22).  Sergeant Diab heard this information.  (Id. at ¶ 23).  This information, which also included a description of the individuals' clothing, was relayed via radio transmission to the vehicle containing Rosiello, Feeley, and Anderson.  (Id. at ¶ 24).

Upon exiting Amarachi Prime, plaintiff and Bradley walked on to Bridge Street and turned right on Nassau Street.  (Id. at ¶ 27).  Undisputed video evidence depicts plaintiff and Bradley walking on the sidewalk on Nassau Street.  (Id. at ¶ 30).  When his vehicle was alongside plaintiff and Bradley, Sergeant Diab, upon observing plaintiff and Bradley, exited his vehicle with his firearm drawn and with the intent to approach and stop plaintiff and Bradley.  (Id. at ¶¶ 38, 40).  Detective Mitchell heard Sergeant Diab's order of "police, get down on the ground." (Id. at ¶¶ 44-45).  Bradley, also hearing those commands, stopped, and dropped to the ground.  (Id. at ¶ 46).  Undisputed video evidence further depicts plaintiff turn and run in the opposite direction on the sidewalk.  (Id. at ¶¶ 48-49).  As further depicted on video surveillance, plaintiff then left the sidewalk, made a right turn, and ran between two cars and into the street.

(Id. at ¶¶ 50-51).  As plaintiff ran between the two cars, Officer Feeley was in the street in front of plaintiff.  (Id. at ¶ 52).

While standing on the sidewalk, Officers Rosiello and Anderson observed plaintiff running in their direction while holding a firearm; Officer Rosiello alerted the other officers that plaintiff had a gun and drew his firearm.  (Id. at ¶¶ 54-56).  Officer Rosiello observed plaintiff pointing a gun in his direction (Id. at ¶ 58) while running in the direction of Officer Feeley and believed that plaintiff posed a threat to Officer Feeley because plaintiff had a gun out.  (Id. at ¶ 59).  Fearing for the safety of both himself and Officer Feeley, Officer Rosiello, while standing on the sidewalk and as plaintiff ran between the two cars, discharged his firearm one time at plaintiff.  (Id. at ¶¶ 60-61; see also Exhibit M to DeLuca Decl.).

Officer Feely, positioned in the street, observed plaintiff run between the two cars and then in his direction while raising a gun in Officer Feeley's direction.  (Id. at ¶¶ 65-66).  After PO Feeley observed plaintiff raise the gun in his direction, he heard either Officer Rosiello or Officer Anderson say "Police. Drop the gun."  (Id. at ¶ 67).  As plaintiff was running between the two cars, Officer Feeley, before he discharged his firearm, yelled "Police. Drop the gun."  (Id. at ¶¶ 68-69).  Officer Feeley, while on the street, then discharged his firearm three times.  (Id. at ¶ 68).  At the time he discharged his firearm, Officer Feeley believed that plaintiff was between 10 to 15 feet away from him.  (Id. at ¶ 71).  Once plaintiff fell to the ground and the gun fell out of his hand, PO Feeley ceased firing because he believed the threat was over.  (Id. at ¶ 72).

Under these undisputed facts, it was objectively reasonable for Officers Rosiello and Feeley to discharge their firearms at plaintiff, who, while brandishing a firearm and running in the direction of police officers and in close proximity to Officer Feeley, refused to drop his weapon despite multiple orders to so do.  Consequently, plaintiff has failed to establish that

Officers Feeley and Rosiello used excessive force.  As such, plaintiff's excessive force claim fails as a matter of law and should be dismissed.

**B.    Plaintiff Cannot Maintain an Excessive Force Claim Against Officers Anderson and Minucci, Sergeant Diab, or Detective Mitchell**

"It is well-established in the Second Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Bilan v. Davis, 11-CV-5509 (RJS) (JLC), 2013 U.S. Dist. LEXIS 107619, at *17 (S.D.N.Y. July 31, 2013) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)). Indeed, courts have recognized that "personal involvement is the keystone to personal liability for [a] civil rights deprivation." see Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (to state a § 1983 claim "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The Supreme Court stressed that in a § 1983 action, a defendant may be personally found liable for a constitutional deprivation only on the basis of "his or her own misconduct." Ashcroft v. Iqbal, 556 at 677. Moreover, a defendant's conduct must "be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his rights." Lovick v. Schriro, 12-CV-7419 (ALC), 2014 U.S. Dist. LEXIS 106261, at *6 (S.D.N.Y. July 25, 2014). Failure to sufficiently allege a defendant's personal involvement in alleged constitutional violations warrants dismissal under Fed. R. Civ. P. (12)(b)(6). Day v. Armstrong, 99-281, 2000 U.S. App. LEXIS 31029, at **3-4 (2d Cir. Nov. 30, 2000).

It is undisputed that defendants Mitchell, Anderson, Minucci, and Diab did not discharge their firearms or use any force on plaintiff. (Defs. 56.1 at ¶¶ 57, 78-80). Thus, based on lack of personal involvement, plaintiff cannot maintain an excessive force claim against those defendants and his excessive force claim must be dismissed.

## POINT II

### PLAINTIFF'S UNLAWFUL SEIZURE/FALSE ARREST CLAIM FAILS AS THERE WAS PROBABLE CAUSE FOR HIS ARREST

**A.    Plaintiff's Arrest was Based on Probable Cause**

To state a claim for false arrest/imprisonment, a plaintiff must prove each of the following elements: (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

The presence of probable cause is a complete defense to an action for false arrest under § 1983.  Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).  Probable cause exists where officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Probable cause requires only a probability, not an actual showing, of criminal activity.  Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).  Accordingly, where there is probable cause for a person's arrest, a false arrest claim must fail even where the charges are eventually dismissed and "even where a person is ultimately acquitted."  Candelario v. City of New York, 12-CV-1206 (LAP), 2013 U.S. Dist. LEXIS 48412, at *10 (S.D.N.Y. Mar. 29, 2013) (citing Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010)); Brown v. City of New York, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004) ("the eventual dismissal of the charges against [plaintiff], does not in itself establish an absence of probable cause to arrest him").

Officers are entitled to rely on the information of officers from cooperating law enforcement authorities when effectuating an arrest.  Zellner v. Summerlin, 494 F.3d 344, 369

(2d Cir. 2007) ("The existence of probable cause need not be assessed on the basis of the knowledge of a single officer."); Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). "The 'fellow officer' rule provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or [fellow] officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest." Annunziata v. City of New York, 06-CV-7637 (SAS), 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y. May 28, 2008) (quoting People v. Ramirez-Portoreal, 88 N.Y.2d 99, 666 N.E.2d 207, 643 N.Y.S.2d 502 (1996)). This doctrine provides that an "arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act reasonably in relying on information received by other law enforcement officials." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001).

When the collective knowledge doctrine applies, the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably. Golphin v. City of New York, 09-CV-1015 (BSJ), 2011 U.S. Dist. LEXIS 106272, at *4 (S.D.N.Y. Sep. 19, 2011). Pursuant to the fellow officer rule, the probable cause of one officer on the scene imputes to other officers who respond to a call for assistance. See People v. Ketcham, 93 N.Y.2d 416, 419-22 (1999) (finding probable cause for arrest despite lack of personal knowledge of arresting officer who acting in response to a fellow officer's radio call.)

Here, the record firmly establishes that defendants possessed probable cause to seize and arrest plaintiff for violating New York Penal §§ 265.03(3) (Criminal Possession of a Weapon in the Second Degree), 120.14(1) (Menacing in the Second Degree), 265.03(1)(B) (Criminal

Possession of a Weapon in the Second Degree), 265.01(1) (Criminal Possession of a Weapon in the Fourth Degree) Criminal Possession of a Firearm (265.01-B).  It is undisputed that officers initially approached plaintiff based on a tip from Marshall that plaintiff possessed a firearm inside Amarachi Prime.  (Defs' 56.1 at ¶¶ 10-12).  Marshall further provided a description and updates of plaintiff's location to defendants.  (Id. at ¶¶ 10-12, 21-22).  At the time of the incident, Marshall had been an Auxiliary Police Officer since 2013 (Id. at ¶ 3) and the officers on scene had no reason to doubt his veracity.  Upon receiving this information from Marshall, probable cause existed to arrest and stop plaintiff for possession of a firearm based on the fellow officer rule.  Consequently, when Sergeant Diab and Detective Mitchell observed plaintiff and Bradley walking on Nassau Street, they at least possessed reasonable suspicion to stop and approach plaintiff with their guns drawn based on the information provided by Marshall.  (Id. at ¶¶ 38-40).

Further, it is undisputed that Officers Anderson, Feeley, and Rosiello, observed plaintiff running in their direction while holding a firearm.  (Id. at ¶¶ 54-56, 65-66).  It is further undisputed that Officer Feeley observed plaintiff raise a gun in his direction and that he (PO Feeley) perceived plaintiff to be a threat.  (Id. at ¶¶ 65-66, 72).  Undisputed evidence further establishes that Officer Rosiello feared for his and Officer Feeley's safety.  (Id. at ¶¶ 60-61).  It is also undisputed that, when plaintiff was shot, Officers Anderson and Feeley each observed a gun fall out of plaintiff's hand, and that a second or two after he heard gunshots, Officer Mitchell heard what he believed to be a metal object hitting the ground, and that Sergeant Diab observed a silver gun a few feet away from where plaintiff was located on the ground.  (Id. at ¶¶ 75-77).  It is further undisputed that a loaded Interams Star .45 caliber semi-automatic pistol was recovered from the scene of the shooting and vouchered.  (Id. at ¶ 81).  Because probable cause existed to arrest plaintiff for multiple crimes his unlawful seizure/false arrest claim fails as a matter of law.

## POINT III

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS FOR MULTIPLE REASONS

**A.    Plaintiff Cannot Establish a Favorable Termination of His Criminal Proceedings**

In clarifying that federal law (by reference to the common law of torts) defines the elements of federal malicious prosecution claims, the Second Circuit's decision in Lanning v. City of Glens Falls, 17-CV-970, 2018 U.S. App. LEXIS 31489 (2d Cir. Nov. 7, 2018) explicitly broke from the test for favorable termination derived from New York State law, which it had previously applied in certain decisions.  Lanning, 2018 U.S. App. LEXIS 31489, at *9-10, *13-14.  The Lanning Court explained that, "in none of these decisions did we hold that a change in any particular State's law automatically effects a change in the requirement for a federal malicious prosecution claim.  To the contrary, we relied on a specific State's law only insofar as it reflected traditional common law principles as well as federal constitutional principles." Lanning at **13-14.  Looking to the common law of torts, the Lanning Court rejected the long-standing New York State law definition of favorable termination, first formulated in Smith-Hunter v. Harvey, 95 N.Y.2d 191, 199, 734 N.E.2d 750, 712 N.Y.S.2d 438 (2000) and Catalino v. Danner, 96 N.Y.2d 391, 754 N.E.2d 164, 729 N.Y.S.2d 405 (2001) which standard held that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are *not inconsistent with the innocence of the accused . . . .*" Catalino, 96 N.Y.2d at 395 (emphasis added).

Instead, the Lanning Court cited its "seminal decision on § 1983 malicious prosecution claims" – Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980) – as it defined the element of favorable termination in federal malicious prosecution claims in terms of the common law of

torts. Lanning, 2018 U.S. App. LEXIS 31489, at *11 (citing Singleton, 632 F.2d at 194-195).

The Singleton Court relied upon the Restatement (Second) of Torts, in noting that "[u]nder the

common law, . . .  it is well-established that an accused, in order to maintain a cause of action for

malicious prosecution, must establish that the state prosecution terminated in his favor," and that

"[p]roceedings are 'terminated in favor of the accused' *only* when their final disposition is such

as to indicate the accused is not guilty." Singleton, 632 F.2d at 193 (internal quotations omitted)

(emphasis added).  The Singleton Court held that the plaintiff's federal malicious prosecution

claim failed because the plaintiff's "guilt was left open" by the termination of his criminal

charges pursuant to the plaintiff's acceptance of an Adjournment in Contemplation of Dismissal

after his criminal trial ended with a hung jury.  Singelton at 188, 194-95.  Addressing the

question of whether a §1983 claim for malicious prosecution "may be stated without alleging and

proving that the prosecution terminated in some manner indicating that the person was not guilty

of the offense charged," the Singleton Court answered: "We believe that such proof is essential."

Singleton at 194-95.

Applying the Singleton standard to the plaintiff's federal malicious prosecution claim in

Lanning, the Second Circuit held that the plaintiff "did not adequately plead that the termination

of the prosecutions against him affirmatively indicated his innocence." Lanning, 2018 U.S. App.

31489, at *17.  According to the Second Circuit, the plaintiff in Lanning alleged merely that "the

charges against him 'were dismissed' at some point after a jury trial, without specifying how or

on what grounds . . . .  This vague allegation is consistent with dismissal on any number of

procedural or jurisdictional grounds, all of which fail to affirmatively indicate innocence."  Id.,

2018 U.S. App. 31589, at *17.  Thus, the Second Circuit affirmed the judgments of the Northern

District of New York dismissing plaintiff's federal malicious prosecution claims.  Id. at *18; see

12

also Southerland v. Garcia, 11-243-pr, 2012 U.S. App. LEXIS 10020, at *6 (2d Cir. May 18, 2012) ("Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty.") (quoting Singleton, 632 F.2d at 193); Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002) ("Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence.") (internal citations omitted).

Additionally, where a conviction is vacated and reversed based on the suppression of evidence, courts have held that a favorable termination does not exist.  Graham v. City of New York, 16-CV-4613 (NGG), 2018 U.S. Dist. LEXIS 34554, 2018 WL 1157818, at *6 (E.D.N.Y. Mar. 2, 2018) ("[T]he reversal of Plaintiff's conviction was due to a determination by the appellate court that the evidence leading to his conviction should have been suppressed . . . . [T]his reversal was based on 'technical error at the trial level,' something that cannot support a favorable termination."); Harris v. City of New York, 15-CV-6467 (MKB), 2017 U.S. Dist. LEXIS 1222, 2017 WL 59081 at *4 (E.D.N.Y. Jan. 4, 2017) ("[A] dismissal . . . because evidence is suppressed, particularly when the evidence was suppressed on appeal, is not a favorable termination.").

In Blount v. City of New York, the Court declined to categorically rule that a dismissal based on the suppression of evidence can never be a favorable termination.  Blount v. City, 15-CV-5599 (PKC), 2019 U.S. Dist. LEXIS 34969, at *6 (E.D.N.Y. Mar. 5, 2019).  Instead, the Court found that it needed to look into the nature of the suppression to determine whether the particular facts affirmatively indicated plaintiff's innocence.  Id. at 10.

In Smalls v. Collins, a case that dealt with favorable termination in the context of a fair trial claim, the Court held that suppression of evidence, namely a gun, does not constitute a favorable termination.  Smalls v. Collins, 14-CV-02326 (CBA), 2020 U.S. Dist. LEXIS 52213, at **24-25 (E.D.N.Y. Mar. 13, 2020).  However, the Smalls Court held that determining "the definition of favorable termination for purposes of a fair trial claim should be identical to the definition of favorable termination for purposes of common law malicious prosecution . . . ."). Smalls, 2020 U.S. Dist. LEXIS 52213 at *16.  The Smalls Court further held that:

> Here it bears noting that the jury below in convicting Smalls of criminal possession of a weapon . . . found that he possessed the gun. Smalls, 922 N.Y.S.2d at 462. The reasoning of the Appellate Division's decision did not undermine that factual finding; in fact, it assumed he did possess the gun in describing, for example, Smalls's 'act of parting with the gun' upon pursuit by the officers. Id. at 463.  Rather, the court decided that the gun should be suppressed because the officers lacked reasonable suspicion to follow Smalls. Therefore, here, the circumstances of the suppression of evidence, which led to the termination of Smalls's underlying prosecution, did not "affirmatively indicate his innocence."

Id. at **20-21.  Accordingly, the plaintiff in Smalls could not establish favorable termination.

The situation here is akin to the facts in Smalls.  Specifically, on April 24, 2018, plaintiff here, represented by counsel, pled guilty in open court to Count 2 of the Indictment, Criminal Possession of a Firearm in violation of New York Penal Law § 265.01-B, in the Supreme Court of New York, Kings County, Criminal Term, Part 16, before the Honorable Bruce M. Balter. (Defs' 56.1 at ¶ 88).  When asked by the Court, under Indictment No. 01849-2015, if, on or about March 7, 2015, he possessed any firearm, namely a pistol, plaintiff answered "yes".  (Id. at ¶ 91).  Plaintiff then appealed his conviction, and on April 14, 2021, the Second Department of the New York State Appellate Division vacated plaintiff's guilty plea and his omnibus motion to suppress physical evidence – the gun – was granted.  (Id. at ¶¶ 92-93).  Like the Court in Smalls, on appeal, the Second Department found that, based on the testimony at the suppression hearing,

the officers lacked reasonable suspicion to stop plaintiff since there was no information in the record regarding the reliability and identify of the informant who supplied officers with the tip that plaintiff possessed a gun. (Id. at ¶ 93). Nor was there any evidence in the record that the informant had knowledge of concealed criminal activity. (Id.). Furthermore, the Second Department did not undermine the factual findings, in fact, it assumed plaintiff did possess the gun in describing plaintiff's act of fleeing from the police and removing a gun from his waist. See id.; see also Smalls, 2020 U.S. Dist. LEXIS 52213, at **20-21[2]. Consequently, based on the nature of the suppression of the gun, the reversal of plaintiff's conviction is not indicative of his innocence, and he cannot establish the favorable termination prong of his malicious prosecution claim.

**B.      Plaintiff Cannot Establish that Probable Cause was Lacking for his Criminal Proceeding**

Plaintiffs' malicious prosecution claim also fails as probable cause existed for his subsequent prosecution. "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York . . . ." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2010) (first alteration in original) (quoting Savino v. City, 331 F.3d 63 at 72) (internal quotation marks omitted). When evaluating whether there was probable cause to initiate a prosecution, the Court must evaluate the information that existed at the time when the prosecution was initiated. Rounsville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). "If probable

---

[2] Additionally, the Second Department did not hold that plaintiff's guilty plea was involuntary or coerced. (Defs' 56.1 at ¶ 94). Indeed, during plaintiff's plea, in open court, when asked by the Court if he had discussed the plea and the case with his attorney (who was present at the proceeding), plaintiff answered "yes." (Id. at ¶ 89). Further, when asked by the Court if anyone forced or threatened to get plaintiff to plead guilty, plaintiff answered "no". (Id. at ¶ 90).

cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007) (internal quotations omitted).

Additionally, an "indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Savino, 331 F.3d 63 at 72  (quoting Colon v. New York, 468 N.Y.S.2d 453, 456 (1983)) (emphasis in original).

Here, plaintiff was arrested and subsequently charged with violating New York Penal §§ 265.03(1)(B) (Criminal Possession of a Weapon in the Second Degree), 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 265.01(1) (Criminal Possession of a Weapon in the Fourth Degree); and further indicted under No. 01849-2015, Kings County, wherein the Grand Jury of Kings County accused plaintiff of the crimes of, *inter alia*, Criminal Possession of a Weapon in the Second Degree (265.03(3)), Criminal Possession of a Firearm (265.01-B), and Criminal Possession of a Weapon in the Fourth Degree (265.01(1).  (Defs' 56.1 at ¶¶ 86-87).  There is no evidence in the record that establishes that the indictment was precured by fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith. Additionally, for the reasons set forth in Point II, *supra*, probable cause supported plaintiff's prosecution for firearms related offenses based on the observations of defendants at the scene of the shooting.  As such, plaintiff's malicious prosecution claim fails for these reasons as well.

## C.    Plaintiff Cannot Establish the Element of Malice

An essential element of a federal claim for malicious prosecution is that the criminal proceeding against plaintiff "was instituted with malice." Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016).  This element may be satisfied by a showing "that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive, something other than a

desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996); accord Fulton v. Robinson, 289 F.3d 188, 198 (2d Cir. 2002). It is well settled that "[o]nly where probable cause to initiate a proceeding is . . . totally lacking may malice be reasonably inferred." Wilson v. McMullen, 07-CV-948, 2010 WL 1268055 at *6 (E.D.N.Y. Mar. 30, 2010) (citation omitted); accord Sulkowska v. City of New York, 129 F. Supp 2d 274, 295 (S.D.N.Y. 2001). Because probable cause existed for plaintiff's prosecution, plaintiff cannot establish the element of malice.

Moreover, courts within the Second Circuit have routinely rejected allegations that a defendant acted with malice that are speculative, conclusory, and without factual support. See e.g., Ampratwum v. City of New York, 11-CV-06111 (DLC), 2013 U.S. Dist. LEXIS 67025 at **30-31 (S.D.N.Y. May 9, 2013) (dismissing malicious prosecution claim on summary judgment as, "[p]laintiffs have adduced no such evidence from which a 'wrong or improper motive' could be inferred . . ."); Pettus v. City of New York, 10-CV-01442 (CBA), 2011 U.S. Dist. LEXIS 114129 at * 31 (E.D.N.Y. Aug. 23, 2011), R & R adopted, 2011 U.S. Dist. LEXIS 107561 (Sep. 23, 2011) (dismissing malicious prosecution claim on summary judgment, because "Pettus has made a conclusory assertion that the Police Defendant acted in bad faith . . . but he makes no attempt to adduce or identify any evidence supporting that assertion."). Rather courts in this Circuit interpreting Lowth and Fulton generally require "a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice." Rose v. Goldman, 02-CV-05370 (NGG), 2009 U.S. Dist. LEXIS 117528, at * 31 (E.D.N.Y. Dec. 9, 2009), adopted, 2011 U.S. Dist. LEXIS 30807 (E.D.N.Y., Mar. 22, 2011) (emphasis added); see also Walston v. City of New York, 289 F. Supp. 3d 398, 409 (E.D.N.Y. 2018) ("to survive summary judgment, a plaintiff must elicit evidence showing . . . some deliberate act punctuated with awareness of

'conscious falsity' to establish malice.") (quoting Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (quotation marks omitted)).

Here, as in Ampratwum and Pettus, plaintiff offers no more than conclusory allegations that defendants acted maliciously and, as such, has utterly failed to adduce any evidence of "a wrong or improper motive." See Fulton, 289 F.2d 188 at 198; Lowth, 82 F.3d at 573. As such, his malicious prosecution claim fails and must be dismissed.

## POINT IV

### PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS AS A MATTER OF LAW

**A.    Defendants did not have a Realistic Opportunity to Intercede to Stop the Shooting**

An officer may only be held liable for failure to intervene when a plaintiff's constitutional rights are being violated by another law enforcement officer in their presence when: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008); see also Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (emphasis added).

Even assuming plaintiff's constitutional rights were violated (and they were not) such that a duty to intervene was imposed, the shots fired were all fired within a matter of seconds and, therefore, the by-standing officers did not have a reasonable opportunity to intervene. Courts in the Second Circuit have held that no reasonable jury could conclude that defendant officers had a genuine opportunity to intercede in an assault where "the entire incident took less than thirty seconds" and where an alleged excessive force incident consisted of three rapid blows. Sash v. United States, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009); O'Neill v. Krzeminski,

839 F.2d 9, 11-12 (2d Cir. 1988).  In essence, there must have been enough time for a by-standing officer to intervene.  Corley v. Nabeel Shahid, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015).

The undisputed evidence here establishes clear that defendants Anderson, Mitchell, Diab, and Minucci did not have a realistic opportunity to intercede to stop Officers Feeley and Rosiello from shooting.  Officer Feeley discharged three shots quickly – one after the other – and only seconds elapsed between the first and last gunshots fired by Officers Rosiello and Feeley.  (Defs' 56.1 at ¶¶ 73-74).  As such, defendants Anderson, Mitchell, Diab, and Minucci did not have a realistic opportunity to intercede in a shooting that lasted mere seconds, and consequently, plaintiff's failure to intervene claim fails and must be dismissed.

**POINT V**

**DEFENDANTS    ARE    ENTITLED    TO
QUALIFIED IMMUNITY**

Because the force used by Officers Feeley and Rosiello was objectively reasonable, and because plaintiff's arrest/seizure were based on probable cause, plaintiff has failed to prove a violation of the Fourth Amendment, and his excessive force and false arrest/unlawful seizure claims must be dismissed.  Assuming *arguendo*, however, that plaintiff's constitutional rights were violated, the defendants are entitled to qualified immunity.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether an officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause, courts examine whether there was arguable probable cause.  See  Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer

19

to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. (internal quotation marks omitted).

Courts have routinely held that "[i]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." Zellner v. Summerlin, 494 F.3d at 367; Cerrone v. Brown, 246 F.3d 194, 2003 (2d Cir. 2001). The Supreme Court has explained that the qualified immunity standard "gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law' … this accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991). The issues on qualified immunity are: (1) whether plaintiff has shown a violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful. Taravella v. Town of Wolcott, 599 F.3d 129, 133-34 (2d Cir. 2010). Importantly, the Supreme Court has also held that "clearly established law should not be defined at a high level of generality" but rather "must be particularized to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam)) (alterations and internal quotation marks omitted)).

In the context of claims for false arrest, officers are entitled to qualified immunity if an arrest was supported by arguable probable cause, which exists when "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Barcomb v. Sabo, 487

20

Fed. Appx. 645, 647 (2d Cir. 2012).  Under the doctrine of qualified immunity, "even if an officer is mistaken, and the arrestee did not commit the crime, the officer will not be held liable if he acted reasonably and in good faith."  Washpon v. Parr, 561 F. Supp. 2d 394, 403 (S.D.N.Y. 2008) (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

The particularized facts of this case supporting qualified immunity are: (1) the responding officers received a tip from an Auxiliary Police Officer that plaintiff possessed a firearm; (2) plaintiff did not stop running when officers shouted at him to do so; (3) Bradley, the individual who was with plaintiff on the day of the incident, stopped and dropped to the ground after police officers identified themselves; (4) defendants observed plaintiff holding a firearm on the scene; (5) plaintiff raised his weapon in the direction of responding officers; and (6) a loaded chrome Interams Star .45 caliber semi-automatic was recovered in close proximity to plaintiff. Based on these facts, it can be determined that defendants "acted reasonably and in good faith" in stopping and arresting plaintiff for multiple weapons-related crimes.  Furthermore, based on plaintiff running in the direction of multiple officers while raising a firearm in their direction, and Officers Feeley and Rosiello fearing for the safety of themselves and other officers, it was clearly objectively reasonable for them to fire their weapon at plaintiff to neutralize the threat.  In light of the foregoing, defendants are entitled to qualified immunity.

### POINT VI

### PLAINTIFF'S MONELL CLAIM FAILS

As an initial matter, plaintiff cannot establish municipal liability against the City because, as discussed above, plaintiff cannot establish the violation of a constitutional right and, therefore, his corresponding cause of action against the City is mooted.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); see also Khan v. Ryan, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001)

(holding that "[i]f there is no underlying constitutional violation by a municipal official, the municipality is not liable [on a Monell claim]").

To state a claim for municipal liability pursuant to Monell v. Dep't of Social Services, 436 U.S. 658 (1978), a plaintiff must plead three elements:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." Simms v. City of New York, 480 Fed. Appx. 627, 629 (2d Cir. 2012) (citation and internal quotation marks omitted).  With respect to the first element, to prove the existence of a municipal policy or custom, plaintiff must establish: (i) the existence of a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690; (ii) that an official responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision that caused the alleged violation of plaintiff's constitutional rights, Pembau v. City of Cincinnati, 475 U.S. 469, 483-84 (1986); or (iii) the existence of an unlawful practice so permanent and well-settled to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1988).

A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (emphasis added).  Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited

circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. at 1359 ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"). To succeed on a "deliberate indifference" theory, a plaintiff must show: (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." Connick. at 1360.  With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." Id. ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Nor is the recitation of CCRB claims and unrelated lawsuits in a complaint sufficient to state a claim for municipal liability.  Jane Doe v. City of New York, et al., 09-CV-9895 (SAS), 2013 U.S. Dist. LEXIS 30010, at **13-18 (S.D.N.Y. Mar. 4, 2013); see also Simms v. City, 480 Fed. Appx. 627 at 630 (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"). Here, plaintiff, in conclusory fashion, attempts to support these claims by stating in general, bald terms that since unrelated lawsuits and CCRB/IAB complaints have been brought against defendants, the City should have retrained defendants.  (See generally ECF Docket Entry No. 74.)  However, there is no evidence that suggest that defendants were found liable in any of these unrelated, unspecified, lawsuits nor whether any of the unspecified,

unrelated CCRB or IAB complaints were substantiated prior to the incident described in the SAC.  Id.

Nor are plaintiff's conclusory allegations of a City policy or custom enough to sustain a claim for municipal liability.  See Missel v. County of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009).  Consequently, plaintiff's municipal liability claim fails and must be dismissed.

## POINT VII

## PLAINTIFF'S STATE LAW CLAIMS FAIL

**A.     Plaintiff's Assault and Battery Claim Fails as a Matter of Law**

The same standard is used to evaluate claims of assault and battery under New York law and of excessive force under the Fourth Amendment.  Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991).  Under federal or state law, a plaintiff must show that "the amount of force used was objectively unreasonable" based upon a consideration of "the perspective of the officer at the time of the arrest."  Anthony v. City of New York, 00-CV-4688 (DLC), 2001 WL 741743, at *13 (S.D.N.Y. July 2, 2001) (citations and quotations omitted).  Here, because Officers Feeley and Rosiello's use of deadly force was objectively reasonable under the circumstances and because plaintiff cannot establish personal involvement of defendants Anderson, Diab, Mitchell, and Minucci in his excessive force claim, his state law assault and battery claim fails as a matter of law and should be dismissed.

**B.     Plaintiff Cannot Simultaneously Assert Negligent and Intentional Conduct**

"When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."  Busch v. City of New York, 00-CV-05211 (SJ), 2003 U.S. Dist. LEXIS 27571, at *21 (E.D.N.Y Sep. 30, 2003) (citations omitted).  Here, since plaintiff is asserting an excessive

force claim premised on defendants' intentional conduct, a negligence claim with respect to the same conduct cannot lie and must fail.

## C.    Plaintiff Failed to Comply with N.Y. Gen. Mun. Law § 50-h

Since plaintiff failed to appear or request to adjourn his scheduled hearing pursuant to N.Y. Gen. Mun. Law § 50-h(1), his state law claims must be dismissed.  "[I]f the claimant fails to appear at the hearing or request an adjournment or postponement," the state-law claims are precluded.  Gilliard v. City of New York, 10-CV-5187 (NGG), 2013 U.S. Dist. LEXIS 18180, 2013 WL 521529, at *16 (E.D.N.Y. Feb. 11, 2013) (citing N.Y. Gen. Mun. Law § 50-h(5)) (internal quotations omitted).  "Notice of claim requirements are construed strictly and failure to comply with these requirements ordinarily requires dismissal." Kennedy v. Arias, 12-CV-04166 (KPF), 2017 U.S. Dist. LEXIS 103576 at *38 (S.D.N.Y. July 5, 2017).  Here, while represented by an attorney, plaintiff filed a Notice of Claim against the City.  (Defs' 56.1 at ¶ 95).  Plaintiff was noticed, via his attorney in a letter dated June 23, 2015 to appear at his 50-H hearing on August 27, 2015 at 12:00 p.m.  (Id. at ¶ 96).  But plaintiff did not appear for the August 27, 2015 50-h hearing and the hearing was not held.  (Id. at ¶ 97).  Since plaintiff failed to appear for his hearing and an adjournment was not requested, his state law claims must be dismissed.

## D.    The Court Should Not Exercise Jurisdiction Over Any Pendant State Law Claims

To the extent the SAC includes any viable state law claims, defendants respectfully submit that the Court should decline to exercise pendant jurisdiction.  See Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) (noting that lower court was correct in stating that "it is axiomatic that a court should decline to exercise jurisdiction over state law claims when it dismisses the federal claims"); Bernstein v. Misk, 948 F. Supp. 228, 243 (E.D.N.Y. 1997).

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their motion for summary judgment together with such costs, fees and other further relief as the Court deems just and proper.

Dated:        New York, New York
              August 11, 2021

GEORGIA M. PESTANA
Corporation Counsel of the City of New York
*Attorney for City of New York, Police Officer*
*Kenneth Anderson, Sergeant William Diab, Police*
*Officer Brian Feeley, Police Officer Stephen*
*Minucci, Detective Shaniel Mitchell, and Police*
*Officer Matthew Rosiello*
100 Church Street
New York, New York 10007
(212) 356-3527

By: _____
       Christopher D. DeLuca
       *Senior Counsel*
       Special Federal Litigation

cc:    Aymen Aboushi, Esq. (Via email)
       *Attorney for Plaintiff*
       The Aboushi Law Firm
       1441 Broadway
       5h Floor
       New York, New York 10018
       aymen@aboushi.com