UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------x
JAMES BENBOW,
                    Plaintiff,

      -against-   Civ. No.: 17-CV-6457(EK)(LB)

CITY OF NEW YORK; POLICE OFFICER BRIAN W.
FEELEY; POLICE OFFICER MATTHEW J. ROSIELLO;
POLICE OFFICER KENNETH L. ANDERSON; SERGEANT
WILLIAM A. DAIB; POLICE OFFICER SHANIEL J.
MITCHELL; and POLICE OFFICER STEPHEN J. MINUCCI,

                    Defendants.
---------------------------------x

                    VIDEOCONFERENCE VIA ZOOM
                    Conducted by:
                    LEX REPORTING SERVICE
                    160 Broadway
                    New York, New York

                    November 19, 2020
                    10:06 a.m.

        **DEPOSITION** of **DETECTIVE STEPHEN T.**

**MINUCCI**, named herein as **POLICE OFFICER STEPHEN**

**J. MINUCCI**, a Defendant in the above-entitled

action, held remotely via Zoom videoconference,

pursuant to Order, taken before Tania C.

Pedrosa, a shorthand reporter and Notary Public

within and for the State of New York.

                              LEX#160688-A



**LEX REPORTING SERVICE, INC.**
Professional Reporting Since 1980
Toll Free 800.608.6085

```
 1                                                                 2

 2      A p p e a r a n c e s:

 3

 4           THE ABOUSHI LAW FIRM, PLLC
                Attorneys for Plaintiff
 5              1441 Broadway, Fifth Floor
                New York, New York 10018
 6      BY:  AYMEN A. ABOUSHI, ESQ.

 7


 8           JAMES E. JOHNSON, ESQ.
                Corporation Counsel
 9              Attorney for Defendants
                100 Church Street
10              New York, New York 10007
        BY:  JOSHUA A. WEINER, ESQ.
11           FILE No.:  2017-066702

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                          3

                    S T I P U L A T I O N S


           IT IS HEREBY STIPULATED AND AGREED
     by and between the attorneys for the
     respective parties herein, that filing,
     sealing and certification be and the
     same are hereby waived.


           IT IS FURTHER STIPULATED AND AGREED
     that all objections, except as to the
     form of the question shall be reserved
     to the time of the trial.


           IT IS FURTHER STIPULATED AND AGREED
     that the within deposition may be signed
     and sworn to before any officer
     authorized to administer an oath, with
     the same force and effect as if signed
     and sworn to before the Court.
```

```
                                                         4
         THE REPORTER:  This
deposition is being conducted via
Zoom videoconferencing.  All
parties present are appearing
remotely and are confirming that
they can hear and see through the
video without any technical
issues.
         Would counsel and the
witness please confirm.
         MR. ABOUSHI:  Confirmed.
         MR. WEINER:  Confirmed.
         THE WITNESS:  Yes,
confirmed.
         THE REPORTER:  Before I
swear in the witness, I will ask
counsel to stipulate on the
record that due to the national
emergency pandemic, the court
reporter may swear in the
deponent even though they are not
in the physical presence of the
deponent, and that there is no
objection to that at this time,
```

```
                                                        5
 1
 2            nor will there be an objection to
 3            it at a future date.
 4                   MR. WEINER:  Yes,
 5            stipulated.
 6                   MR. ABOUSHI:  Yes, agreed.
 7                   THE REPORTER:  And, Counsel,
 8            can you represent that to the
 9            best of your knowledge and
10            belief, the witness appearing
11            today via videoconference is
12            indeed Police Officer Stephen
13            Minucci?
14                   MR. WEINER:  Yes.
15   S T E P H E N   T.  M I N U C C I, the witness
16        herein via videoconference, having
17        first been duly sworn by a Notary
18        Public of the State of New York, was
19        examined and testified as follows:
20   EXAMINATION BY
21   MR. ABOUSHI:
22        Q    State your name for the record,
23   please.
24        A    Stephen T. Minucci.
25        Q    State your address for the
```

```
                    S. T. Minucci                      89
```

     A     Sergeant Diab and myself exit roughly at the same time -- Sergeant Diab maybe a second before.

     Q     Okay. And what happened after you guys got out of the vehicle?

     A     Someone identified -- I believe it was Sergeant Diab or Officer Mitchell -- I don't remember who -- identified ourselves as police and began to approach the individual. The individual, who we later learned was Mr. Benbow, began to run back from the direction he came. The second individual stayed put.

     Q     Okay. And what did you do?

     A     First, I was observing -- I -- I kept an eye on the first individual -- the second individual who stayed at the location -- who stayed on the spot.

     Q     Was that Mr. Bradley?

     A     I believe so. Not Mr. Benbow.

     Q     Okay. So --

     A     Mr. Benbow was --

     Q     Okay. So you get out of the vehicle and you approach Mr. Benbow and

```
 1                       S. T. Minucci                      90
 2    Mr. Bradley and Mr. Benbow turns around and
 3    runs in the opposite direction, correct?
 4         A    Correct.
 5         Q    Does he confront you?
 6         A    Does he confront me?
 7         Q    Yes.
 8         A    Mr. Benbow?
 9         Q    Does Mr. Benbow confront you?
10         A    No.
11         Q    Does he point a gun at you?
12         A    No, he doesn't point a gun at me.
13         Q    Does he point a gun at Sergeant
14    Diab?
15         A    No.
16         Q    Does he point a gun at Officer
17    Mitchell?
18         A    No.
19         Q    Did you see him point a gun at
20    any officer that night?
21         A    Yes.
22         Q    You saw him point a gun at an
23    officer?
24         A    I'm sorry.  I apologize.  No, I
25    did not see him pointing a gun.  When I
```

```
1                    S. T. Minucci                    94
2    yelled "gun" that -- but I know it was one of
3    the officers at the time.
4         Q    How do you know it was one of the
5    officers?
6         A    At the time I recognized it as
7    one of their voices.
8         Q    Was it someone in your car?
9         A    No.
10        Q    Okay.  So your testimony is you
11   recognized the voice of one of the three
12   other officers in the conditions team yelling
13   "gun" in the midst of this situation?
14             MR. ABOUSHI:  He's frozen
15        again.
16             MR. WEINER:  Yeah.
17        A    I'm back.  I'm back.  I'm back.
18   Can you hear me?
19             MR. WEINER:  Yeah.
20        Q    So your testimony is that in the
21   midst of this situation, you recognized the
22   voice of someone on the conditions team
23   yelling "gun?"
24        A    Yes.
25        Q    Okay.  And your testimony is you
```

```
                         S. T. Minucci                          98
 2       Q     Okay.  And could you tell where
 3   he was shot?
 4       A     No.  At the time I couldn't see
 5   exactly where.
 6       Q     At some point did you learn where
 7   he was shot?
 8       A     I may have.
 9       Q     And where was he shot?
10       A     I -- actually, to be honest with
11   you, I don't remember where he was shot.
12       Q     Did you tell him he was under
13   arrest?
14       A     I don't remember specifically
15   saying that to him.
16       Q     Did you use any force that night?
17       A     Did I use any force?
18       Q     Yes.
19       A     I handcuffed Mr. Benbow.
20       Q     Okay.  Is that considered use of
21   force?
22       A     Yes, it is.
23       Q     Okay.  Did you shoot your weapon
24   at Mr. Benbow?
25       A     No.
```

```
                    S. T. Minucci                    99
```

1
2  Q    So you walked over to Mr. Benbow
3  after he was shot and you handcuffed him,
4  correct?
5  A    Correct.
6  Q    Approximately how far away was he
7  from you when you observed him get shot in
8  the street?
9           MR. WEINER:  Objection.
10 A    I couldn't say specifically,
11 maybe 20 or 30 feet.
12 Q    Was there anything between you
13 and Mr. Benbow in that 20 or 30 feet?
14 A    You mean as in between my line of
15 sight?
16 Q    Line of sight or obstacle or
17 something else.
18 A    No, not to my recollection.
19 Q    When Mr. Benbow was shot, did you
20 know who had discharged their weapon --
21 A    No.
22 Q    -- which one of the officers?
23 A    No, I did not.
24 Q    Okay.  Did any bullets come in
25 your direction?

```
                    S. T. Minucci                    125
 2      A      Yes.
 3      Q      Okay.  You said that -- you
 4  testified that you had heard gunshots?
 5      A      Yes.
 6      Q      Okay.  How many gunshots do you
 7  recall hearing?
 8      A      I don't remember how many I
 9  heard.
10      Q      Was it more than one?
11      A      Yes.
12      Q      Okay.  Do you remember how much
13  time transpired between the first gunshot you
14  heard and the final gunshot that you heard?
15      A      Seconds.
16      Q      Seconds, okay.
17      A      Yes, seconds.
18      Q      All right.  Finally, you got --
19  you were asked some -- you were asked some
20  questions about whether this incident had
21  ever been investigated.
22             Do you recall those questions?
23      A      Yes.
24      Q      Okay.  Do you recall -- do you
25  know if CCRB has ever investigated this
```