COPY    SF-J.Weiner

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
JAMES BENBOW,

                    Plaintiff,

        -against-  Civ. No.:  17-CV-6457(EK)(LB)

CITY OF NEW YORK; POLICE OFFICER BRIAN W.
FEELY; POLICE OFFICER MATTHEW J. ROSIELLO;
POLICE OFFICER KENNETH L. ANDERSON; SERGEANT
WILLIAM A. DAIB; POLICE OFFICER SHANIEL J.
MITCHELL; and POLICE OFFICER STEPHEN J.
MINUCCI,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - x

                    VIDEOCONFERENCE VIA ZOOM
                    Conducted by:
                    LEX REPORTING SERVICE, INC.
                    160 Broadway
                    New York, New York

                    December 7, 2020
                    2:31 p.m.

        **DEPOSITION** of **POLICE OFFICER BRIAN**

**WILLIAM FEELEY,** named herein as **POLICE OFFICER**

**BRIAN W. FEELY,** a Defendant in the

above-entitled action, held remotely via Zoom

videoconference, pursuant to Order, taken

before Tania C. Pedrosa, a shorthand reporter

and Notary Public within and for the State of

New York.

                                LEX #161124

# LEX
## REPORTING SERVICE, INC.
PROFESSIONAL REPORTING SINCE 1980
TOLL FREE 800.608.6085

2

A p p e a r a n c e s:


```
        THE ABOUSHI LAW FIRM, PLLC
                Attorneys for Plaintiff
                1441 Broadway, Fifth Floor
                New York, New York 10018
        BY:  AYMEN A. ABOUSHI, ESQ.




        JAMES E. JOHNSON, ESQ.
                Corporation Counsel
                Attorney for Defendants
                100 Church Street
                New York, New York 10007
        BY:  JOSHUA A. WEINER, ESQ.
                FILE No.:  2017-066702
```

3

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that filing, sealing and certification be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

4

1

2      THE REPORTER:  This

3      deposition is being conducted via

4      Zoom videoconferencing.  All

5      parties present are appearing

6      remotely and have confirmed that

7      they can hear and see through the

8      video without any technical

9      issues.

10          Before I swear in the

11      witness, I will ask counsel to

12      stipulate on the record that due

13      to the national pandemic, the

14      court reporter may swear in the

15      deponent even though they are not

16      in the physical presence of the

17      deponent, and that there is no

18      objection to that at this time,

19      nor will there be an objection to

20      it at a future date.

21          Counsel, do you agree?

22      MR. WEINER:  Agreed.

23      THE REPORTER:  Aymen.

24      MR. ABOUSHI:  Agreed.

25      THE REPORTER:  And, Counsel,

5

2      can you represent that to the

3      best of your knowledge and

4      belief, the witness appearing

5      today via videoconference is

6      indeed Police Officer Brian

7      Feeley?

8            MR. WEINER:  Yes.

9  B R I A N   W I L L I A M   F E E L E Y, the

10          witness herein via videoconference,

11          having first been duly sworn by a

12          Notary Public of the State of New York,

13          was examined and testified as follows:

14  EXAMINATION BY

15  MR. ABOUSHI:

16      Q     State your name for the record,

17  please.

18      A     Brian William Feeley.

19      Q     State your address for the

20  record, please.

21            MR. WEINER:  Just your work

22            address is good.

23      A     127 Utica Avenue, Brooklyn,

24  New York 11213.

25      Q     Good afternoon, Officer Feeley.

```
1                    B. W. Feeley                    76

2    when you say that he pointed a weapon at you?

3                    MR. WEINER:  Objection.

4         A      Running away?

5         Q      Yeah.

6         A      From -- from who?

7         Q      Was he running at all -- well,

8    let me ask you this -- let me back up.

9                    You testified that Mr. Benbow

10   pointed a gun at you and you fired at him,

11   correct?

12        A      Yes.  He was raising it, yes.

13        Q      Okay.  And how far away from you

14   was Mr. Benbow?

15        A      I want to say 10 to 15 feet

16   maybe.

17        Q      Okay.  And from 10 to 15 feet

18   away, he points the gun directly at you,

19   correct?

20                    MR. WEINER:  Go ahead.

21               Sorry.  I withdrew -- no

22               objection.

23        A      He was raising the gun towards

24   me, in my direction.

25        Q      Okay.  Was he facing you?
```

```
1                    B. W. Feeley                    86
2    don't --
3         Q    Okay.  So you're sure they were
4    on the sidewalk before you fired and shot
5    Mr. Benbow, correct?
6         A    Yes, that's what I remember.
7         Q    Okay.  And when you first
8    observed Mr. Benbow, he was actually running
9    down the sidewalk, correct?
10        A    Yes.
11        Q    Okay.  And then he cut in between
12   two cars, correct?
13        A    Yes.
14        Q    Okay.  And while he was in
15   between two cars, you testified earlier that
16   you were right there in front of him,
17   correct?
18        A    Yes.  I was on the street.
19        Q    And that he raised the gun in
20   your direction as you were standing in front
21   of him, correct?
22        A    Yes.
23        Q    And you shot him at that point,
24   correct?
25        A    Yes.
```

B. W. Feeley                    89

Q      Okay.  You're standing by your car.  You were in the street at that time, correct?

A      I'm sorry.  Say that again.

Q      When you got out of your car, you were in the street?

A      Yes.

Q      And when you shot Mr. Benbow, you were in the street as well, correct?

A      Yes.

Q      Okay.  And so then there's the shooting of Mr. Benbow, correct?

A      Yes.

Q      And then you see Sergeant Diab again after the shooting, correct?

A      Yes.

Q      And did you say anything to Sergeant Diab?

A      I don't remember.

Q      Okay.  Did he say anything to you?

A      I don't remember.

Q      Did any other officers fire their weapons that night?

```
1                          B. W. Feeley                    90
2            A        Rosiello.
3            Q        Okay.  Did you see him fire his
4    weapon?
5            A        No.
6            Q        Did you talk to him about why he
7    fired his weapon?
8            A        No.
9            Q        Do you know how many shots he
10   fired?
11           A        I believe one.
12           Q        Did you speak to Officer Anderson
13   after you shot Mr. Benbow?
14           A        No -- well -- yeah.
15           Q        No, you didn't speak with Officer
16   Anderson?
17           A        Not about the incident.
18           Q        Okay.  So after you shoot
19   Mr. Benbow, when's the next time that --
20   strike that.
21                    How soon after shooting
22   Mr. Benbow did you see Sergeant Diab?
23           A        I don't know.
24           Q        Okay.  How about Officer Minucci?
25           A        Seconds.
```

B. W. Feeley                          91

1

2       Q       Okay.  How about Officer

3    Anderson?

4       A       I don't remember.

5       Q       When Mr. Benbow was running down

6    the sidewalk and then he ran in between the

7    two cars, was anyone chasing him?

8       A       No.  I just heard Rosiello and

9    Anderson say "drop the gun" and stuff like

10   that.

11      Q       Okay.  Did Anderson fire his

12   weapon?

13      A       No.

14      Q       Okay.  After you shot Mr. Benbow,

15   did you say anything to him?

16      A       No.

17      Q       Did you say anything before you

18   shot him?

19      A       I said, "Police.  Drop the gun."

20      Q       Okay.  So when did you say

21   "Police.  Drop the gun?"

22      A       When he was coming in between the

23   two cars.

24      Q       Okay.  And you said this happened

25   quickly?

B. W. Feeley                    92

1

2          A      Yes.

3          Q      Okay.  So you had time to say

4    "Police.  Drop your gun" before you shot him?

5          A      Yes.

6          Q      Is that your testimony?

7          A      Yes.

8          Q      Okay.  And did anyone say

9    anything else?

10         A      I just heard Rosiello and

11   Anderson screaming, like, "Police.  Drop the

12   gun.  Drop the gun.  Police," stuff like

13   that.

14         Q      How many times did you fire your

15   weapon that night?

16         A      Three.

17         Q      Did Mr. Benbow say anything to

18   you before you shot him?

19         A      I don't -- no.

20         Q      Did he say anything to you after

21   you shot him?

22         A      Not that I remember.

23         Q      When you shot at Mr. Benbow, did

24   you aim at center mass?

25         A      Yes.

B. W. Feeley                              117

1
2              You were asked to make notations
3     on that chart that you reviewed --
4         A      I don't --
5         Q      -- with your attorney --
6         A      I don't remember it, like, at --
7         Q      Let me finish -- just let me
8     finish before you say you don't remember.
9              How can you remember if you don't
10    know what I'm asking you?
11        A      Well, I don't remember for the
12    first time you asked that question.  Sorry.
13        Q      Okay.  So let me ask you this --
14    and if you don't remember, then tell me you
15    don't remember.
16             You were given a diagram by the
17    NYPD, correct?
18        A      Yes, I remember the -- getting
19    the document, yeah.
20        Q      Okay.  And the diagram was of the
21    scene of the shooting, correct?
22        A      Yes.
23        Q      Okay.  And you were given that
24    document at your GO-15, correct?
25        A      Yes.

B. W. Feeley                    118

Q       Okay.  And a GO-15 is the
interview you had with your superiors
regarding the shooting, correct?

A       Yes.

Q       And on that diagram that you were
handed by your superiors, you were asked to
put an "F" where you were standing, correct?

A       That, I don't remember.

Q       Okay.  You were also asked to put
an "A" and an "R" where Anderson and Rosiello
were standing, correct?

A       Like I said, the document would
refresh -- refresh my memory if I could see
it.  But I do remember putting, like I said,
letters or whatever in certain spots.  I
don't remember what -- who was supposed to be
who.  Like I said, if I could see the
document --

Q       Well, I'm just asking you.  Does
"F" stand for Feeley on your document?

                MR. WEINER:  Objection.  He
            already answered the question.

                Go ahead and answer again.

A       I -- I don't remember --

B. W. Feeley                    119

2      MR. ABOUSHI:  It's not

3      funny.  None of this is funny.

4  A    No.

5      MR. WEINER:  No, it's not.

6  A    Not at all.

7      MR. WEINER:  It's not at

8      all.

9      MR. ABOUSHI:  You're

10     laughing and the witness is

11     laughing.  It's just not funny.

12  Q    Do you remember putting an "F"

13  for Feeley on that diagram?

14  A    I don't know if the "F" stands

15  for Feeley right now.  I don't remember.

16  Q    Okay.  Just hold on a second.

17     Officer Feeley, what's the last

18  three numbers of your tax ID?

19  A    My last -- which one?  I didn't

20  hear you.

21  Q    The last three numbers of your

22  tax ID?

23  A    550.

24  Q    And the first three are 944,

25  correct?

|    |   |                                      |
|----|---|--------------------------------------|
| 1  |   | B. W. Feeley                    120  |
| 2  | A | Yes.                                 |
| 3  | Q | Okay.  And your shield is 2768?      |
| 4  | A | Yes.                                 |
| 5  | Q | Okay.                                |
| 6  |   | (Screen share enabled.)              |
| 7  |   | MR. ABOUSHI:  Can everyone           |
| 8  |   | see this document?                   |
| 9  |   | THE REPORTER:  Yes.                  |
| 10 |   | THE WITNESS:  Yeah.                  |
| 11 |   | MR. ABOUSHI:  Okay.  For the         |
| 12 |   | record, this document is             |
| 13 |   | Bates-stamped 161.  It's been        |
| 14 |   | produced by the City of New York     |
| 15 |   | and it's initialed.                  |
| 16 | Q | Officer Feeley, do you see this      |
| 17 |   | document?                            |
| 18 | A | Yes.                                 |
| 19 | Q | This is the sketch that we're        |
| 20 |   | talking about that you made notations on, |
| 21 |   | correct?                             |
| 22 | A | Yes.                                 |
| 23 | Q | Okay.  And that's your tax ID        |
| 24 |   | number to the left, correct?         |
| 25 | A | Yes.                                 |

```
 1                      B. W. Feeley              121

 2        Q      944550, do you see that?

 3        A      Yes.

 4        Q      Okay.  And that's your shield

 5   number, correct?

 6        A      Yes.

 7        Q      Okay.  And that's your signature,

 8   correct?

 9        A      Yes.

10        Q      And this is the diagram that you

11   filled out during your GO-15 marking where

12   you and everyone else were standing on the

13   night of the incident, correct?

14                MR. WEINER:  Objection.

15        A      Yes.

16                MR. WEINER:  Go ahead.

17        Q      Okay.  And there's an "F" towards

18   the top of the number -- a car that looks

19   like number "6."

20                Do you see that?

21        A      Yes.

22        Q      There's a car in the middle to

23   the left that has a -- it looks like a

24   number "6" in it, right?

25        A      Yes.
```

```
 1                    B. W. Feeley              122
 2          Q     And in front of that car is a
 3     "P3" that you wrote, correct?
 4          A     Yes.
 5          Q     Okay.  And right next to that car
 6     where it says "F" -- right?
 7          A     Yeah.
 8          Q     -- that's where you were
 9     standing, correct?
10          A     Yes.
11          Q     Okay.  According to your sketch
12     that you wrote on, correct?
13          A     Yes.
14          Q     Okay.  And the "A" and "R" you
15     wrote for Anderson and Rosiello, correct?
16          A     Yes.
17          Q     Do you see it on the screen where
18     you notated that?
19          A     Yeah, I see -- I see the "A" and
20     the "R."
21          Q     And that's on the south sidewalk,
22     correct?
23          A     Is there a compass on the map?  I
24     don't -- I don't see the --
25          Q     Okay.  Well, essentially --
```

B. W. Feeley                                    123

1

2     A       It's on the sidewalk.

3     Q       You're right.  You're right.

4   You're right.  I'm not going to say north or

5   south because there's no compass and it might

6   throw us all off down the road.

7             But "A" and "R" are on the

8   sidewalk, correct?

9     A       Yes.

10    Q       Okay.  And "A" and "R" are behind

11  "P3," correct?

12                    MR. WEINER:  Behind?

13             Objection.

14    A       Yes, they would have been behind,

15  yes.

16    Q       Okay.  And you're in front of

17  "P3," correct?

18    A       Yes.

19    Q       And "P2" is to the right of "P3,"

20  right?

21    A       P -- you said "P3" --

22    Q       "P2."  "P2."

23    A       "P2" is --

24    Q       To the right of "P3," correct?

25    A       On mine is the left.  P -- I'm

```
 1                    B. W. Feeley                    124

 2    sorry.  "P2" --

 3          Q     It's okay.  It's okay.  Let me

 4    not confuse you.  We don't --

 5          A     To the left of --

 6          Q     -- have north, south, east, and

 7    west.

 8          A     To the left of "P2" is "P3."

 9          Q     Okay.

10          A     That's how I --

11          Q     And further -- and to the left --

12    okay.  That's fine.

13          A     Maybe I just didn't hear you the

14    way it was --

15          Q     No.  That -- that's fine.  That's

16    fine.

17                And this is the sketch that you

18    made notations on at your GO-15, correct?

19          A     Yes.

20          Q     Okay.  And that "F" is you,

21    correct, for Feeley?

22          A     Yes.

23                    (Screen share disabled.)

24                    THE REPORTER:  Are you

25                marking that or that was marked
```

B. W. Feeley                            125

1  already?

2  MR. ABOUSHI:  It wasn't

3  marked.  But, for the record,

4  it's Document 161.  I think I

5  made the record on it.  I don't

6  know if I need to mark it unless

7  Mr. Weiner feels otherwise.

8  MR. WEINER:  I do.  I think

9  you do need to just so it comes

10 as a set with the whole

11 deposition.  I think it should be

12 marked plaintiff's -- whatever

13 exhibit you want to call it just

14 so we have a little bit of, you

15 know, certainty.

16 MR. ABOUSHI:  I'll cross

17 that bridge at the end of the

18 dep.

19 But now is a good time to

20 take a few-minute break.

21 MR. WEINER:  How much do you

22 have left?

23 MR. ABOUSHI:  I'm not really

24 sure.  I want to go through the

```
 1                          B. W. Feeley                    126
 2              outline.
 3                    MR. WEINER:  Fair enough.
 4                    MR. ABOUSHI:  It's 4:21 now.
 5              Let's reconvene at 4:30, please.
 6                    MR. WEINER:  Okay.
 7                    THE WITNESS:  All right.
 8                    MR. WEINER:  All right.
 9              Officer, see you at 4:30.
10                    THE WITNESS:  All right.
11                    (Whereupon, a short recess
12              was taken.)
13       BY MR. ABOUSHI:
14         Q    Now, after the shooting you
15       attended what's called a GO-15; is that
16       correct?
17         A    Yes, sir.
18         Q    Okay.  What is a GO-15?
19         A    I don't -- it's, like, a -- like
20       an investigation I guess I want to say.
21         Q    Okay.  Who conducts a GO-15?
22         A    Usually a lieutenant or -- or --
23       usually a lieutenant from what I
24       understand --
25         Q    Okay.
```

B. W. Feeley                              142

1

2              MR. WEINER:  What's the

3         objection?  What's the basis?

4              MR. ABOUSHI:  The reason why

5         he fired his gun three times?

6              MR. WEINER:  Why did he --

7         why three as opposed to -- as

8         opposed to another number?

9              MR. ABOUSHI:  Well, that's a

10        better question.

11             MR. WEINER:  You're right,

12        it is.

13        Q    Okay.  Why did you -- why did you

14   -- why did you fire three -- three times as

15   opposed to another number of times?

16             MR. ABOUSHI:  I believe it's

17        asked and answered.

18        A    I fired and then the threat was

19   no longer there, like he -- you know, he fell

20   and the gun came out of his hands so that was

21   it.

22        Q    Okay.  So Mr. Benbow fell after

23   your third shot?

24             MR. ABOUSHI:  Objection.

25        A    I don't remember exactly, you

```
 1                    B. W. Feeley                    144
 2               MR. WEINER:  I'll note --
 3               I'll note -- I'll note the
 4               blatant speaking objection there.
 5          Q    So you testified that you shot
 6     the plaintiff when he was running in your
 7     direction in the street, right?
 8          A    Coming between the cars.
 9          Q    Yes, okay.  And before you shot,
10     you said the gun -- his gun was raised in
11     your direction, right?
12          A    Yes.
13          Q    Okay.  And before you shot, you
14     said that either Officers Rosiello -- Officer
15     Rosiello or Officer Anderson said something
16     to the effect of "Police.  Drop the gun,"
17     right?
18          A    Yes.
19          Q    Okay.  Do you remember if you saw
20     the gun raised before or after you heard
21     either Officer Rosiello or Officer Anderson
22     say "Police.  Drop the gun?"
23          A    This would be after.
24          Q    So first you heard Officer
25     Rosiello or Officer Anderson and then you saw
```

B. W. Feeley                          145

1    
2    the gun raised in your direction --

3        A    Yes.

4        Q    -- is that correct?

5             Okay.  All right.  And, now, when

6    you fired -- this might have been asked and

7    I'm sorry if it was.

8             What was the distance between you

9    and Mr. Benbow when you -- when you first

10   fired?

11       A    I -- I think he did ask it

12   earlier but I -- I want to say I said

13   approximately 10 to 15 feet.

14       Q    Okay.  10, 15 feet.  So it could

15   be a little -- a little less, a little more

16   than 10 to 15?

17       A    Yeah.

18                 MR. ABOUSHI:  Objection.

19       Q    Okay.  So that's an approximation

20   by you --

21       A    Yes.

22       Q    -- 10 to 15 feet?

23             Okay.  And, by the way, what was

24   -- were all three of your shots fired in

25   rapid succession or did you pause between any

                          B. W. Feeley                    146

1    of the shots?

2         A     I don't -- I want to say it was

3    kind of within -- all together, like it was,

4    like, kind of one motion, kind of...

5         Q     Okay.

6               MR. ABOUSHI:  When you say

7               you want to say, do you remember

8               or are you just guessing?

9               THE WITNESS:  Yes.  It was

10              -- it was -- it was all -- it was

11              like -- it wasn't, like, time

12              went on.  It was, you know, like

13              -- I feel like it was, you know,

14              one and then one, two, like all

15              kind of...

16        Q     Okay.  So if you could estimate,

17   how many seconds were between the --

18   transpired between the first time you shot

19   and the last time you shot?

20        A     Oh, it was very quick.

21        Q     Okay.

22        A     Maybe 20 seconds, 30 -- not --

23   not long.

24        Q     No.  The first -- I'm sorry.  The

```
1                    B. W. Feeley                    151
2           him questions.
3                MR. WEINER:  Okay.
4                MR. ABOUSHI:  You can't do
5           this.  And I'm not going to sit
6           by and let you continuously --
7     Q     So would it be fair to --
8                MR. ABOUSHI:  -- lead him
9           and put words in his mouth.
10    Q     So it would be fair to say you
11  shot three shots, one after the other?
12    A     Yes.
13    Q     Okay.  All right.  You said that
14  Mr. Benbow was raising -- raised the gun in
15  your direction.  Okay.
16           Does that mean that the gun in
17  his hand was moving from low to high?
18    A     Yeah.
19                MR. ABOUSHI:  Objection.
20           The witness testified that he
21           can't testify about anything
22           other than it was going in his
23           direction.
24    A     I said he was --
25                MR. ABOUSHI:  I'm going to
```