# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D66143
M/afa

\_\_\_\_\_AD3d\_\_\_\_\_

Argued - March 11, 2021

LEONARD B. AUSTIN, J.P.
COLLEEN D. DUFFY
ANGELA G. IANNACCI
PAUL WOOTEN, JJ.

2018-09276

DECISION & ORDER

The People, etc., respondent,
v James Benbow, appellant.

(Ind. No. 1849/15)

Paul Skip Laisure, New York, NY (Rebecca J. Gannon of counsel), for appellant.

Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Sullivan & Cromwell LLP [David Salter and Christopher Weldon] of counsel), for respondent.

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Bruce M. Balter, J.), rendered May 24, 2018, convicting him of criminal possession of a firearm, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

ORDERED that the judgment is reversed, on the law, the defendant's plea of guilty is vacated, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

At a suppression hearing, a police officer testified that he was driving in a vehicle with two other officers when a sergeant requested that they follow the sergeant's vehicle to a specified location for a "gun run." There were two other officers in the vehicle with the sergeant. Approximately five minutes after the testifying officer's vehicle and the sergeant's vehicle arrived at the subject location, one of the occupants of the sergeant's vehicle made a radio call to the testifying officer's vehicle and provided a description of two individuals of interest who were leaving a club at the subject location. The description included one individual who was wearing a black jacket and black jeans, and who "supposedly had a firearm on him," and another individual who was shorter and carrying a bag. The testifying officer then observed two individuals, one taller and one shorter, and one of whom was carrying a bag, exit the club and start walking. The officer identified

April 14, 2021

Page 1.

PEOPLE v BENBOW, JAMES

the individual who was not carrying the bag as the defendant.

The officer testified that the sergeant's vehicle followed the defendant and the other individual as they walked, and the testifying officer's vehicle followed the sergeant's vehicle. According to the testifying officer, the sergeant's vehicle pulled in front of the defendant and the other individual and stopped. Two officers and the sergeant exited the vehicle, approached the defendant and his companion, and identified themselves as police officers. The testifying officer and the two other officers who were in the testifying officer's vehicle exited their vehicle and approached the defendant and his companion from behind. The individual with the defendant "instantly stopped" and "put his hands up." According to the testifying officer, the defendant took "a few steps back," turned around, and ran in the direction of the testifying officer. As he was running, the defendant pulled a gun from his waist. The defendant was shot by the police, and the gun that the defendant was holding fell out of his hands and was subsequently recovered by the police.

The Supreme Court denied that branch of the defendant's omnibus motion which was to suppress the gun, finding that the police had "probable cause to stop the defendant and to place him under arrest." Thereafter, the defendant pleaded guilty to criminal possession of a firearm in full satisfaction of the indictment. The defendant appeals.

On a motion by a defendant to suppress physical evidence, "the People have the burden of going forward to show the legality of the police conduct in the first instance" (*People v Whitehurst*, 25 NY2d 389, 391 [emphasis omitted]). The defendant bears the ultimate burden of proving that the evidence should not be used against him or her (*see People v Berrios*, 28 NY2d 361, 367). Further, the credibility determinations of a hearing court following a suppression hearing are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record (*see People v Faulk,* 185 AD3d 953, 954). "In *People v De Bour* (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity. The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality. The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion. The third level permits a police officer to forcibly stop and detain an individual. Such a detention, however, is not permitted unless there is a reasonable suspicion that an individual is committing, has committed, or is about to commit a crime. The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime" (*People v Karagoz*, 143 AD3d 912, 913-914 [internal quotation marks omitted]; *see People v De Bour*, 40 NY2d at 223).

"Reasonable suspicion has been defined as 'that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand'" (*People v Bowers*, 148 AD3d 1042, 1043, quoting *People v Martinez*, 80 NY2d 444, 448). "[W]here an anonymous phone tip giving a general description and location of a 'man with a gun' is the sole predicate, it will generate only a belief that criminal activity is afoot," and "will not of itself constitute reasonable suspicion thereby warranting a stop and frisk of anyone who happens to fit that description" (*People v Stewart*, 41 NY2d 65, 69). "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her [or his] allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity'" (*Florida v J.L.*, 529 US 266, 270 [citation omitted], quoting

*Alabama v White*, 496 US 325, 329). However, "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop'" (*Florida v J.L.*, 529 US at 270, quoting *Alabama v White*, 496 US at 327). Further, reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person" (*Florida v J.L.*, 529 US at 272).

Here, the Supreme Court erred in finding, in effect, that the police had lawfully stopped the defendant before the defendant fled from the police and removed a gun from his waist. The hearing testimony indicated that the law enforcement officials who were in the sergeant's vehicle had received a tip that two individuals, one of whom had a gun, were leaving the club. There was no evidence presented at the hearing as to the identity of the individual who provided the tip, no evidence that the informant explained to the police how he or she knew about the gun, no evidence that the informant supplied any basis to believe that he or she had inside information about the defendant, and no evidence that the informant had "'knowledge of concealed criminal activity'" (*People v Ballard*, 279 AD2d 529, 530, quoting *Florida v J.L.*, 529 US at 272; *see People v Bailey*, 164 AD3d 815, 818; *People v Folk*, 284 AD2d 476, 477; *cf. People v Argyris*, 99 AD3d 808, 810, *affd* 24 NY3d 1138). Therefore, the police lacked reasonable suspicion to stop the defendant and his companion based solely on the tip.

The People argue on appeal that upon receiving the tip, the police had a founded suspicion that criminality was afoot sufficient to justify a level-two common-law intrusion. The People further contend that the officers' initial encounter with the defendant, before the defendant fled and pulled out a gun, did not exceed the bounds of a lawful level-two intrusion. However, at the suppression hearing, the People did not rely on the theory that the police were entitled to approach the defendant and lawfully exercise their common-law right to inquire based on a founded suspicion that criminality was afoot, and the Supreme Court did not address that theory. Thus, the People may not assert this theory for the first time on appeal (*see People v Parris*, 83 NY2d 342, 350-351; *People v Johnson*, 64 NY2d 617, 619 n 2; *People v Dodt*, 61 NY2d 408, 416; *People v Vargas*, 89 AD3d 771, 772; *Matter of Jason F.*, 243 AD2d 391).

In addition, the People contend that even if the initial police encounter was unlawful, the gun was admissible because the defendant's action in removing the gun from his waist was the result of his independent act and was not tainted by any alleged prior illegality. This contention may not be addressed on appeal because the People did not raise the contention before the Supreme Court, and the court did not address this contention.

Accordingly, that branch of the defendant's omnibus motion which was to suppress the gun should have been granted.

AUSTIN, J.P., DUFFY, IANNACCI and WOOTEN, JJ., concur.

ENTER:

*Aprilanne Agostino*
Aprilanne Agostino
Clerk of the Court

April 14, 2021     Page 3.
PEOPLE v BENBOW, JAMES