UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

BENBOW,                                         :

                                              :

                             Plaintiff,           :          Civil Action No: 17-CV-6457 (EK)(JRC)

                      v.                                 :

                                              :

FEELY, et al.,                                :

                                            :

                             Defendants.     :

                                            :

_____ :


### Plaintiff's Counter Statement of Facts Pursuant to Rule 56.1

### General Police Officer Training

1. Police Officers are taught that they may not shoot someone that is running away from them. Aboushi Cert. Ex. 4 - Rosiello 48:9-50:23; Aboushi Cert. Ex. 3 - Feeley 66:14-67:3; Aboushi Cert. Ex. 5 - Mitchell 49:8-17; Aboushi Cert. Ex. 37 - Minucci 49:12-15.

2. Running away from the police is not an illegal act. Aboushi Cert. Ex. 4 - Rosiello 50:12-17; Aboushi Cert. Ex. 7 - Diab 44:24-45:9, 67:4-20.

3. Police Officers are not taught to shoot someone simply because they have a gun. Aboushi Cert. Ex. 4 - Rosiello 64:2-7; Aboushi Cert. Ex. 3 - Feeley 63:8-17, 68:18-35, 66:14-67:3; Aboushi Cert. Ex. 5 - Mitchell 32:8-21, 49:8-17; Aboushi Cert. Ex. 7 - Diab 44:24-45:9, 47:17-19; Aboushi Cert. Ex. 37 - Minucci 49:12-15, 50:2-11, 50:22-51:10.

4. Civilians have no obligations to talk to the police. Aboushi Cert. Ex. 4 - Rosiello 50:18-20; Aboushi Cert. Ex. 7 - Diab 67:4-20.

5. If a civilian speaks to the police, the civilian has a right to stop talking to the police at any time. Aboushi Cert. Ex. 4 - Rosiello 50:21-51:2; Aboushi Cert. Ex. 7 - Diab 67:4-20.

6. Refusing to speak to a police officer is not an illegal act. Aboushi Cert. Ex. 4 - Rosiello 51:12-19; Aboushi Cert. Ex. 7 - Diab 67:4-20.

7. Police officers must make decisions regarding probable cause. Aboushi Cert. Ex. 6 - Anderson 45:19-46:12.

8. Police officers must regularly make determinations regarding the use of force in the execution of their job functions. Aboushi Cert. Ex. 4 - Rosiello 50:20-52:5; Aboushi Cert. Ex. 3 - Feeley 51:15-52:5; Aboushi Cert. Ex. 5 - Mitchell 34:11-22.

9. Generally speaking, police officers have to make a determination regarding the use of force on a daily basis. Aboushi Cert. Ex. 4 - Rosiello 52:6-10; Aboushi Cert. Ex. 5 - Mitchell 34:11-22; 36:6-11.

10. Not only does a police officer need to regularly make a determination regarding the use of force, but also regarding how much force is appropriate. Aboushi Cert. Ex. 4 - Rosiello 52:11-53:2; Aboushi Cert. Ex. 3 - Feeley 51:15-52:5.

11. Police Officers are taught with the use of force continuum where they're only allowed to use a level of force to overcome the resistance that is posed to them. Aboushi Cert. Ex. 5 - Mitchell 34:11-22; Aboushi Cert. Ex. 7 - Diab 43:23-44:9; Aboushi Cert. Ex. 6 - Anderson 34:23-35:3.

12. Police Officers are taught to aim for center mass when shooting. Aboushi Cert. Ex. 4 - Rosiello 63:13-16; Aboushi Cert. Ex. 5 - Mitchell 28:16-22; Aboushi Cert. Ex. 6 - Anderson 38:6-22.

13. Center mass, when the target is facing towards the officer, is the area between from the neckline to the waistline, from shoulder to shoulder. Aboushi Cert. Ex. 4 - Rosiello 63:17-64:11; Aboushi Cert. Ex. 3 - Feeley 47:15-25; Aboushi Cert. Ex. 5 - Mitchell

28:16-22; Aboushi Cert. Ex. 7 - Diab 43:10-18; Aboushi Cert. Ex. 37 - Minucci 73:19-23; Aboushi Cert. Ex. 6 - Anderson 38:23-39:11.

14. Center mass, when the target is facing with their back to the officer, is the area from the neck to the lower back. Aboushi Cert. Ex. 4 - Rosiello 63:17-64:11; Aboushi Cert. Ex. 3 - Feeley 47:15-25; Aboushi Cert. Ex. 5 - Mitchell 29:8-12; Aboushi Cert. Ex. 7 - Diab 43:10-18; Aboushi Cert. Ex. 6 - Anderson 39:12-17.

15. In order to qualify for a specific weapon, officers must take a test twice a year in which they must hit center mass from 25 yards, 15 yards and 7 yards over 78% of the time. Aboushi Cert. Ex. 4 - Rosiello 64:7-11; Aboushi Cert. Ex. 6 - Anderson 38:6-22, 40:19-24.

16. Police officers have commonly made gun arrest without having to shoot the individual possessing the gun. Aboushi Cert. Ex. 5 - Mitchell 32:18-21; Aboushi Cert. Ex. 37 - Minucci 50:22-51:10.

17. Police Officers have a responsibility to intervene if they witness a fellow officer violating a civilian's rights, such as using excessive force. Aboushi Cert. Ex. 5 - Mitchell 37:5-10; Aboushi Cert. Ex. 7 - Diab 57:2-11; Aboushi Cert. Ex. 6 - Anderson 48:2-15, 49:6-15.

18. Police Officers often protect one another by covering up for each other. Aboushi Cert. Ex. 5 - Mitchell 83:12-24; Aboushi Cert. Ex. 6 - Anderson 125:3-5.

19. Police Officers have a term "blue wall of silence" referring to protecting one another by covering up for each other. Id.

<u>Night of the Incident</u>

20. On the night of the incident, Benbow did not interact with Jason Marshall. Aboushi Cert. Ex. 2 - Benbow 91:15-18.

21. Jason Marshall once worked for the City of New York but ████████████ ████████████ Aboushi Cert. Ex. 7 - Diab 81:13-19, 81:24-82:8, 82:14-24; Aboushi Cert. Ex. 9.

22. Jason Marshall's CCRB records shows ████████████████████ ████████████ Aboushi Cert. Ex. 9.

23. It was found that Marshall ████████████████████████ ████████████████████████████ ████████████ Aboushi Cert. Ex. 9 at p. 2.

24. Jason Marshall was ████████████████████████ Id. See also Aboushi Cert. Ex. 7 - Diab 81:13-19, 81:24-82:8, 82:14-24.

25. Jason Marshall had never given tips before and was an unreliable informant. Aboushi Cert. Ex. 7 - Diab 83:4-20.

26. Plaintiff attempted to serve a subpoena upon Jason Marshall for his testimony regarding the night of the incident, but Marshall evaded service even after Plaintiff's due diligence. Aboushi Cert. Ex. 34.

27. The officers, including Sgt. Diab, did not verify the information provided by Jason Marshall. Aboushi Cert. Ex. 7 - Diab 83:4-20.

28. Cespedes had at least 12 CCRB complaints filed against him throughout his police officer career. Cespedes 108:11-16; Aboushi Cert. Ex. 38.

29. Cespedes has complaints of abuse of authority against him that allege threats of force using his gun. Id.

30. Minucci, Rosiello, Feeley and Anderson never spoke with Jason Marshall on the night of the incident. Aboushi Cert. Ex. 37 - Minucci 80:20-24, 82:24-83:2.

31. When Benbow and another male left the location, nothing seemed unusual, and they did not walk past Mitchell's vehicle. Aboushi Cert. Ex. 5 - Mitchell 59:19-25.

32. Officers Anderson, Feeley, Rosiello were in a blacked-out unmarked Ford Crown Victoria, with Feeley in the driver's seat, Anderson behind the driver's seat, and Rosiello in the front passenger seat. Aboushi Cert. Ex. 6 - Anderson 84:12-85:6, 89:22-90:3.

33. Sgt. Diab, Officer Minucci and Officer Mitchell were in an unmarked Ford Fusion, that was a gray-blue color with the place number 1464. Aboushi Cert. Ex. 6 - Anderson 84:12-85:6.

34. Officer Minucci was in the rear seat behind the driver of his vehicle. Aboushi Cert. Ex. 37 - Minucci 105:12-106:16.

35. Benbow had a cup in one hand. Aboushi Cert. Ex. 5 - Mitchell 73:22-74:4, Aboushi Cert. Ex. 6 - Anderson 87:16-20.

36. Officer Mitchell saw that Benbow had a cup in his hand as he was walking down Nassau. Aboushi Cert. Ex. 5 - Mitchell 73:22-74:4

37. When the officers exited their vehicle, Officers Mitchell, Diab and Minucci already had their guns drawn. Aboushi Cert. Ex. 5 - Mitchell 63:14-65:2; Aboushi Cert. Ex. 7 - Diab 98:4-6.

38. Upon exiting his vehicle and into the street, Officer Minucci saw Benbow parallel to him approximately 20-30 feet from him in the middle of the street. Aboushi Cert. Ex. 37 - Minucci 105:12-106:16; 109:12-16.

39. Benbow saw a car creeping up on him with guns pointing out of the window. Aboushi Cert. Ex. 2 - Benbow 103:12-23.

40. Benbow alerted his companion about the guns and told him to run. Id.

41. Benbow turned 180 degrees and ran away from the officers that got out of the vehicle. Aboushi Cert. Ex. 7 - Diab 99:8-11, Aboushi Cert. Ex. 6 - Anderson 105:2-23.

42. Benbow cut between two cars and was shot twice in the back while in the middle of the street. Aboushi Cert. Ex. 5 - Mitchell 90:22-91:8, Aboushi Cert. Ex. 37 - Minucci 104:12-106:16; Aboushi Cert. Ex. 6 - Anderson 94:8-19, 97:9-98:9, 105:2-23, Aboushi Cert. Ex. 2 - Benbow 109:8-16, 110:6-16, 119:1-2, 120:6-7, 135:3-4; Aboushi Cert. Ex. 35.

43. Benbow had his back to the officers, and was running away when he was shot. Aboushi Cert. Ex. 1; Aboushi Cert. Ex. 2 - Benbow 103:12-23, 104:11-25; Aboushi Cert. Ex. 2 - Benbow 109:8-16, 110:6-16.

44. Benbow has two bullet holes in his lower back from being shot by Defendant officers. Aboushi Cert. Ex. 11.

45. Officer Feeley was standing in the street. Aboushi Cert. Ex. 6 - Anderson 95:22-23.

46. Officer Feeley shot first and fired three shots at Benbow. Aboushi Cert. Ex. 3 - Feeley 75:7-24; Aboushi Cert. Ex. 6 - Anderson 96:4-13, 97:9-98:9.

47. When Feeley shot Benbow, Benbow fell forward on his stomach. Aboushi Cert. Ex. 30.

48. Thereafter, Officer Rosiello fired one shot. Aboushi Cert. Ex. 6 - Anderson 97:9-98:9.

49. The graze to Benbow's arm is consistent with him running away as he was shot. Aboushi Cert. Ex. 2 - Benbow 109:22-110:1; Highlands Report at p. 7.

50. Officer Feeley alleges that he fired at Benbow because he pointed a gun at Feeley. Aboushi Cert. Ex. 3 - Feeley 75:7-24.

51. Benbow did not have any weapons or guns. Aboushi Cert. Ex. 5 - Mitchell 89:9-20.

52. Benbow did not gesture towards his waistband to produce a firearm or any other weapon. Aboushi Cert. Ex. 5 - Mitchell 89:9-20, Aboushi Cert. Ex. 2 - Benbow 106:17-18, 107:3-5, 107:16-18.

53. Benbow did not point a gun at anyone or present a gun to anyone. Aboushi Cert. Ex. 5 - Mitchell 63:14-65:2; 69:9-11; Aboushi Cert. Ex. 7 - Diab 102:24-103:2; Aboushi Cert. Ex. 37 - Minucci 90:9-18.

54. No verbal commands were given prior to shooting Benbow in his back. Aboushi Cert. Ex. 2 - Benbow 103:12-23, 104:11-24, Aboushi Cert. Ex. 35.

55. Benbow did not hear anybody say "stop" or "police." Aboushi Cert. Ex. 2 - Benbow 105:5-11.

56. Benbow had no indication of who was in the car. Aboushi Cert. Ex. 2 - Benbow 103:12-23; Aboushi Cert. Ex. 6 - Anderson 84:12-85:6; Aboushi Cert. Ex. 35.

57. According to Sgt. Diab, no officer gave Benbow any verbal commands. Aboushi Cert. Ex. 31.

58. Officer Mitchell does not recall hearing any verbal commands. Aboushi Cert. Ex. 5 - Mitchell 73:14-17.

59. Officer Anderson told CCRB that neither he, nor Rosiello, nor Feeley issued Benbow any commands. Aboushi Cert. Ex. 27; Aboushi Cert. Ex. 4 - Rosiello 101:20-24; Aboushi Cert. Ex. 5 - Mitchell 73:14-17.

60. Officer Mitchell did not see any object(s) in Benbow's hands. Aboushi Cert. Ex. 33.

61. Officer Rosiello did not hear any commands given to Benbow before the shots. Aboushi Cert. Ex. 36.

62. Officer Feeley first testified that Benbow was between the cars from he shot him, which is undermined by forensic evidence. Aboushi Cert. Ex. 3 - Feeley 80:19-23. Aboushi Cert. Ex. 13 at p. 12.

63. Officer Feeley later testified that Benbow was exiting the two cars when Feeley shot Benbow. Aboushi Cert. Ex. 3 - Feeley 110:12-13.

64. According to Officer Feeley, Officers Rosiello and Anderson were on the sidewalk when Feeley fired his weapon. Aboushi Cert. Ex. 3 - Feeley 82:19-25.

65. According to Officer Anderson, he and Rosiello exited their car and made their way to the sidewalk while Feeley was in the street. Aboushi Cert. Ex. 6 - Anderson 91:5-92:2.

66. The shots were staggered – there were approximately 20-30 seconds between shots. Aboushi Cert. Ex. 3 - Feeley 146:23-24; Aboushi Cert. Ex. 6 - Anderson 138:20-139:2.

67. Officer Rosiello testified that Benbow did not see where Officer Rosiello was when Benbow ran away from the other officers. Aboushi Cert. Ex. 4 - Rosiello 93:17-94:7.

68. Officer Rosiello did not recall any details regarding how Benbow was running, including but not limited to, what Benbow's arms were doing, which hand the glass was in, which hand the gun was in, and whether Benbow bent back or twist after he was shot. Aboushi Cert. Ex. 4 - Rosiello 97:2-16; 105:16-21.

69. Benbow never pointed a gun at Rosiello. Aboushi Cert. Ex. 2 - Benbow 55:19-23; Aboushi Cert. Ex. 4 - Rosiello 99:4-14; Aboushi Cert. Ex. 7 - Diab 102:24-103:17; Aboushi Cert. Ex. 6 - Anderson 103:7-11.

70. Benbow never pointed a gun at Mitchell, Diab nor Minucci. Aboushi Cert. Ex. 5 - Mitchell 63:14-65:2; Aboushi Cert. Ex. 7 - Diab 102:24-103:17; Aboushi Cert. Ex. 37 - Minucci 90:9-18.

71. Benbow never pointed a gun at Feeley. Aboushi Cert. Ex. 32.

72. Sgt. Diab did not see Benbow as a threat, and he did not have any reason to shoot Mr. Benbow, so he did not use his firearm. Aboushi Cert. Ex. 7 - Diab 111:7-25.

73. Sgt. Diab, who was right behind Benbow, didn't see Benbow with any gun or weapon. Aboushi Cert. Ex. 10.

74. Officer Rosiello knew that Benbow was trying to run away from the officers. Aboushi Cert. Ex. 4 - Rosiello 116:12014.

75. Officer Rosiello fired at Benbow after Benbow turned into the street. Aboushi Cert. Ex. 4 - Rosiello 138:12-18; 140:15-19.

76. Officer Rosiello never saw Benbow point a gun at Officer Feeley. Aboushi Cert. Ex. 4 - Rosiello 166:15-167:9.

77. Officer Anderson did not say anything to Officer Rosiello when he fired. Aboushi Cert. Ex. 6 - Anderson 105:15-17.

78. Officer Anderson did not try to stop Officer Rosiello from firing in any way. Aboushi Cert. Ex. 6 - Anderson 105:18-20, 123:18-124:3.

79. Officer Anderson did not try to stop Officer Feeley from firing in any way. Aboushi Cert. Ex. 6 - Anderson 123:18-124:3.

80. Officer Anderson could see over the Crown Victoria and the row of parked cars to where Feeley was and chose not to shoot Benbow, demonstrating that Benbow never posed a threat to any officer and did not deserve to get shot. Aboushi Cert. Ex. 6 - Anderson 106:24-107:14.

81. Officer Anderson had a clear line of sight to Officer Feeley. Id.

82. Officer Anderson could see that Officer Feeley was not in any danger or trouble. Id.

83. None of the Defendants testified they were trying to arrest the Plaintiff when they shot him, but rather, they shot him because he allegedly pointed a gun at Feeley. Id.

84. After the incident, the officers were not separated and had a conversation specifically alleging that Benbow had a gun. Aboushi Cert. Ex. 5 - Mitchell 70:17-18; 71:8-20.

85. After the incident, Benbow was charged after the incident by way of a falsified complaint based upon Defendant Anderson's false testimony. Aboushi Cert. Ex. 16.

86. The criminal complaint cited the provenly false statement of Police Officer Anderson that Benbow was allegedly running towards the Defendant Officers while waving a gun. Aboushi Cert. Ex. 12 at p. 5-10; Aboushi Cert. Ex. 13; Aboushi Cert. Ex. 14 at p. 4-6; Aboushi Cert. Ex. 15 at p. 7-9.

PO Rosiello

87. Officer Rosiello has approximately 10 lawsuits in the last three years. Aboushi Cert. Ex. 4 - Rosiello 15:7-24; Aboushi Cert. Ex. 19.

88. In each of the 10 lawsuits, Officer Rosiello was named as a Defendant in his official capacity as a Police Officer. Aboushi Cert. Ex. 4 - Rosiello 16:8-12; Aboushi Cert. Ex. 19.

89. The NYPD never spoke to Officer Rosiello about his lawsuit history. Id; Aboushi Cert. Ex. 4 - Rosiello 29:3-16.

90. Officer Rosiello has more than 10 CCRB complaints lodged against him. Aboushi Cert. Ex. 4 - Rosiello 26:21-27:5.

91. The NYPD never spoke to Officer Rosiello about the number of CCRB complaints against him. Aboushi Cert. Ex. 4 - Rosiello 25:7-26:20.

92. The NYPD has never referred Officer Rosiello to poor performance monitoring. Aboushi Cert. Ex. 4 - Rosiello 29:3-16.

93. Officer Rosiello is not familiar with the duty to intervene as a police officer. Aboushi Cert. Ex. 4 - Rosiello 52:6-7.

94. Officer Rosiello did not receive use of force training outside of the academy. Aboushi Cert. Ex. 4 - Rosiello 46:25-47:4.

95. Officer Rosiello was provided a patrol guide in the Police Academy but was never provided one outside of the academy. Aboushi Cert. Ex. 4 - Rosiello 45:25-46:8.

96. Officer Rosiello based upon the number of complaints alleged against Rosiello, he should have been in force monitoring. Aboushi Cert. Ex. 12 at p. 5-10; see also Aboushi Cert. Exs. 25 and 29 generally.

<u>PO Feeley</u>

97. The NYPD never spoke to Officer Feeley about his lawsuit history. Aboushi Cert. Ex. 3 - Feeley 16:17-17:2.

98. The NYPD never spoke to Officer Feeley about his CCRB complaint history. Aboushi Cert. Ex. 3 - Feeley 17:3-13; 19:2-9; 28:19-29:11.

99. The NYPD never spoke to Officer Feeley about his Internal Affairs history. Aboushi Cert. Ex. 3 - Feeley 18:12-18.

100.     Officer Feeley had enough complaints lodged against him to be in monitoring. Aboushi Cert. Exs. 20, 24 and 28.

101.     The NYPD never placed Officer Feeley on any performance monitoring, nor talked to him about performance monitoring. Aboushi Cert. Ex. 3 - Feeley 28:19-29:11.

102.	Officer Feeley has more than two lawsuits filed against him. Aboushi Cert. Ex. 3 - Feeley 29:21-23.

103.	Officer Feeley was never sent for additional training as a result of complaints lodged against him. Aboushi Cert. Ex. 3 - Feeley 32:16-23.

104.	Officer Feeley was never sent for additional training as a result of the lawsuits filed against him. Id.

105.	Officer Feeley cannot recall if he received use of force training between the time that he graduated the academy and the shooting of Benbow. Aboushi Cert. Ex. 3 - Feeley 43:20-24.

<u>PO Minucci</u>

106.	Officer Minucci has approximately ten lawsuits against him. Aboushi Cert. Ex. 37 - Minucci 15:25-16:2; Aboushi Cert. Ex. 26.

107.	Allegations in the lawsuits include excessive force, illegal search, and violation of rights. Aboushi Cert. Ex. 37 - Minucci 18:24-19:5.

108.	Minucci  Aboushi Cert. Ex. 37 - Minucci 29:21-30:4.

109.	Aboushi Cert. Ex. 37 - Minucci 35:10-19.

<u>PO Anderson</u>

110.	The NYPD never spoke to Officer Anderson about his CCRB complaints. Aboushi Cert. Ex. 6 - Anderson 32:17-25; Aboushi Cert. Ex. 26.

111.     Anderson testified at the grand jury proceeding regarding Benbow. Aboushi Cert.

Ex. 6 - Anderson 126:11-13.

Sgt. Diab

112.     Diab █████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████Aboushi Cert. Ex. 7 - Diab 32:10-15.

113.     Diab ██████████████████████████████████████████████

Aboushi Cert. Ex. 7 - Diab 32:21-33:11.

114.     Sgt. Diab was the direct line supervisor for officers Rosiello, Anderson and

Feeley at the time of the incident, and they reported directly to Diab as their Sergeant.

Aboushi Cert. Ex. 7 - Diab 61:13-62:9.

115.     No one shared or discussed Rosiello, Anderson and Feeley's CCRB histories with

Sgt. Diab. Id.

116.     No one shared or discussed Rosiello, Anderson and Feeley's Internal Affairs

histories with Sgt. Diab. Id.

117.     No one shared or discussed Rosiello, Anderson and Feeley's lawsuit histories

with Sgt. Diab. Id.

118.     Throughout Diab's time acting in a supervisory capacity, no one ever gave him

CCRB, IA or lawsuit histories for the people that he supervised. Aboushi Cert. Ex. 7 -

Diab 63:15-64:3.

## GO-15 Proceeding

119.       GO-15 proceedings are held after police officers have had a significant incident, and superiors like Lieutenants, Captains, and Deputy Inspectors are present. Aboushi Cert. Ex. 4 - Rosiello 37:12-38:7.

120.       At the GO-15 proceeding, the officers involved are questioned about the significant incident, with representation provided by the union, the PBA. Id.

121.       The GO-15 proceeding is held towards the end of the investigation, right before it is closed, as a formality. Aboushi Cert. Ex. 4 - Rosiello 39:10-15.

122.       Officer Rosiello appeared at a GO-15 proceeding in relation to this incident and provided answers to the questions at the proceeding. Aboushi Cert. Ex. 4 - Rosiello 40:3-13.

123.       Between the time of the shooting and the GO-15 proceeding, the officers involved were kept together in a gym, which permitted them to discuss the shooting and align their stories. Aboushi Cert. Ex. 6 - Anderson 117:10-15.

## Forensic Evidence

124.       No DNA or fingerprints recovered from the gun located at the scene. Aboushi Cert. Ex. 22; Aboushi Cert. Ex.11 at DEF 1704; Aboushi Cert. Ex. 2 - Benbow 57:6-7.

125.       Defendant Anderson swore out a false criminal complaint against Plaintiff. Aboushi Cert. Ex. 16.

126.       Anderson testified that Benbow didn't realize Anderson, Feeley, and Rosiello were there when he ran towards them. Aboushi Cert. Ex. 32.

127.       The figure depicting Benbow's injuries are inaccurate. Aboushi Cert. Ex. 2 - Benbow 122:3-7.

128.    Benbow was hit lower and to the middle of his back, whereas the figure depicts the injuries as towards his sides. Aboushi Cert. Ex. 2 - Benbow 123:7-16; Aboushi Cert. Ex. 12 at p. 5-10; Aboushi Cert. Ex. 13; Aboushi Cert. Ex. 14 at p. 4-6; Aboushi Cert. Ex. 15 at p. 7-9.

129.    Official police reports state that Benbow was shot while fleeing, and do not mention anything about him possessing a gun or pointing it. Aboushi Cert. Ex. 11 at DEF 1690.

<u>Use of Excessive Force Expert Report</u>

130.    Joseph A. Pollini is a retired member of the NYPD that served on the force for more than 33 years in numerous capacities and ranks. Aboushi Cert. Ex. 12 at ¶2.

131.    Pollini has experience testifying as an expert before courts on criminal matters and proper police procedures. <u>Id</u>.

132.    The individual police officers failed to adhere to NYPD guidelines when they used deadly and excessive force. Aboushi Cert. Ex. 12 at ¶12.

133.    A reasonable officer would not have fired his weapon to protect his partner when he did not know where his partner was. Aboushi Cert. Ex. 12 at ¶¶12(c), 13.

134.    Rosiello claimed that he was shooting to protect Feeley, yet when asked if he knew where Feeley was in that moment, Officer Rosiello did not know. Pollini at ¶12(b).

135.    Rosiello's use of force was unreasonable and was not justified within the NYPD Guidelines. Aboushi Cert. Ex. 12 at ¶12(d).

136.    Benbow was in the street when he was shot, and there is no apparent reason or justification to shoot Benbow in the back as he was fleeing a scene. <u>Id</u>.

137.    The forensic evidence indicates that Benbow was shot in his back, which indicates that his back was facing the officers when they shot him, as police officers are taught to aim for center mass. Aboushi Cert. Ex. 12 at ¶¶12(d-e), 14(c).

138.    Given that Benbow had ran past Officer Rosiello and was running away, there was no lawful reason to use force against Benbow. Aboushi Cert. Ex. 12 at ¶12(d).

139.    If Benbow was facing either Officer Feeley or Rosiello, he would have wounds to the front of his body, in his torso, rather than in his back. Aboushi Cert. Ex. 12 at ¶12(e).

140.    The NYPD Patrol Guide requires officers to give a verbal warning before using deadly force. Aboushi Cert. Ex. 12 at ¶13.

141.    The NYPD failed to properly monitor Officer Feeley's conduct because, based upon his history, he should have been placed on Level 1 Performance Monitoring. Aboushi Cert. Ex. 12 at ¶15(a).

142.    Officer Feeley's file in incomplete with missing complaints, lawsuits, and IA issues, which constitutes a deliberate act of indifference to the patterns exhibited by Feeley that the NYPD should have detected. Aboushi Cert. Ex. 12 at ¶15(a).

143.    The NYPD failed to properly monitor Officer Rosiello's conduct because he has a history of receiving numerous complaints for force and other issues, including deprivation of rights, false arrest/imprisonment, and malicious prosecution, and should not have been on the street the night he shot Plaintiff. Aboushi Cert. Ex. 12 at ¶15(b).

144.    Officer Rosiello's incomplete file reflects the lack of record keeping for all complaints and lawsuits for each officer, which thereby deprives the NYPD from meaningfully reviewing records to intervene and interdict a pattern of unlawful behavior. Aboushi Cert. Ex. 12 at ¶14(b).

145.     Sgt. Diab's extensive IA and CCRB histories warranted additional training, greater than just sensitivity training, but did not receive it because the NYPD does not take the monitoring of problematic officers seriously. Aboushi Cert. Ex. 12 at ¶15(c).

146.     Officers Rosiello and Feeley used unreasonable, unwarranted, and excessive force against Benbow when they shot him. Aboushi Cert. Ex. 12 at ¶16.

147.     No reasonable police officer could have concluded that deadly physical force was necessary against Benbow. Aboushi Cert. Ex. 12 at ¶17.

148.     Officers Feeley and Rosiello violated NYPD policy and procedures, including PG203-12, and used excessive force when they shot Benbow in the back. Aboushi Cert. Ex. 12 at ¶18.

149.     The NYPD failed to properly monitor, supervise and discipline their officers and had they done so, Sgt. Diab, Officer Feeley and Rosiello would not have been in the position to violate Benbow's rights and shoot him unnecessarily. Aboushi Cert. Ex. 12 at ¶19.

150.     By the NYPD's own metric, Defendants Feeley, Rosiello, and Diab should not have been on the street on the night of the incident, nor should they have been left to their own devices, as each had extensive histories that would have indicated their propensities to misuse their power had the NYPD paid attention and kept proper track of their records. Id.

151.     The IA records are missing crucial information, including the list of lawsuits and all CCRB complaints. Aboushi Cert. Exs. 24-29.

152.     The lack of record keeping and any interaction with Defendants Feeley and Rosiello establishes that the City of New York and NYPD failed to track and monitor the Defendant Officers. <u>See</u> Aboushi Cert. Ex. 12 generally; Aboushi Cert. Exs. 20, 21, 26.

<u>Shooting Reconstruction Expert</u>

153.     Highlands Forensic Investigations & Consulting, LLC is a third-party expert in crime scene review, analysis and reconstruction. Aboushi Cert. Ex. 14 at p. 1.

154.     Based upon reconstruction of the scene, within a reasonable degree of professional certainty, Officers Feeley and Rosiello shot Benbow in his back. See Highlands generally.

155.     The reconstruction was based upon the forensic evidence, including positions of cartridge casings that were recovered at the scene, Benbow's injuries, and police officer testimony regarding their positions, and other materials. <u>Id</u>.

156.     The reconstruction shows that Benbow was running away from Defendants Rosiello and Feely when he was shot in his back. See Aboushi Cert. Ex. 13.

157.     The reconstruction shows that the proffered reasons for shooting Plaintiff are completely false because the situation giving rise to the alleged reasons is demonstrably impossible. <u>Id</u>.

158.     Indeed, the reconstruction establishes that, because Benbow's back was towards Feely and Rosiello, he in no way pointed a gun at them as they claim. Aboushi Cert. Ex. 13 at p. 10-12.

159.     Defendants Feeley and Rosiello's proffered reason for shooting Plaintiff are forensically impossible. <u>Id</u>.

<u>Medical Experts regarding Location of Bullet Wounds:</u>

<u>Expert Troy Caron, D. O.</u>

160.     Troy Caron, D.O. is a board-certified orthopedic surgeon with background

working in traumatic spine and pelvis injuries. Aboushi Cert. Ex. 14 at p. 1.

161.     ████████████████████████████████████████████

████████████████████████ Aboushi Cert. Ex. 14 at p. 2.

162.     ███████████████████████████████ Caron at

p. 3.

163.     ████████████████████████████████████████████

██████████████████ <u>Id</u>.

164.     ████████████████████████████████████████

███████████████ Aboushi Cert. Ex. 14 at p. 5.

165.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ <u>Id</u>.

166.     ████████████████████████████████████████

████████████ Caron at p. 4.

167.     ████████████████████████████████████████████

████████████████████████████████████████████

███████ Caron at p. 5.

168.     ████████████████████████████████████████████

████████████ <u>Id</u>.

<u>Expert Dainius A. Drukteinis, M.D., J.D., FACEP</u>

169.    Dainius A. Drukteinis, M.D., J.D., FACEP is a highly qualified Forensic

Medicine Consultant with experience in healthcare and testifying as a medical expert in

court cases. See Aboushi Cert. Ex. 15 generally.



170.    [REDACTED] boushi Cert. Ex. 15 at p. 7.

171.    [REDACTED] <u>Id</u>.

172.    [REDACTED] <u>Id</u>

173.    [REDACTED] <u>Id</u>.

174.    [REDACTED] <u>Id</u>.

175.    [REDACTED] <u>Id</u>.

176.    [REDACTED] <u>Id</u>.

<u>Plaintiff's Conviction is Overturned</u>

177.    Benbow didn't have a gun but plead guilty to having one in relation to the

incident. Aboushi Cert. Ex. 2 - Benbow 55:17-25.

178.     Benbow was coerced into the plea deal because they offered to let him walk out

of the courtroom instead of facing 15 years in prison. Aboushi Cert. Ex. 2 - Benbow

55:17-56:9.

179.     Benbow was given the plea offer in front of his friends and family after already

being in prison for four years as his family pleaded in open court for him to take the deal

so he could come home that day. Aboushi Cert. Ex. 2 - Benbow 56:17-24, 147:7. Deft.

Ex. W at 6.

180.     Benbow's conviction was appealed. Aboushi Cert. Ex. 17.

181.     Benbow's conviction was overturned, and the Second Department determined that

there was a lack of probable cause for the arrest. Id at p. 3.

182.     The District Attorneys Office dismissed all charges against Benbow. Aboushi

Cert. Ex. 18.

183.     The express term of the dismissal was a termination in his favor. Id.

184.     Benbow was restored to the position he was in before his arrest by the

Defendants. Id.

50-h

185.     Benbow timely filed a notice of Claim regarding the incident. The notice of claim

provided the City with all requisite notice of the incident and permitted it to fully

investigate the claims. Deft. Ex. Y.

186.     Benbow never received a notice for a 50-h hearing to testify. Aboushi Cert. Ex. 2

- Benbow 170:1-3.

187.    Benbow called the city for information regarding his notice of claim and was told that they did not have information for him. Aboushi Cert. Ex. 2 - Benbow 170:7-21, 171:3-7.

188.    The entire time that the notice of claim was filed, Benbow was in the City's custody at Riker's Island. Aboushi Cert. Ex. 2 - Benbow 170:7-21.

189.    Nothing was sent to Riker's Island regarding Benbow's notice of claim, nor any requests to conduct a 50-h hearing. Aboushi Cert. Ex. 2 - Benbow 170:1-3, 170:7-21.

190.    The City never attempted to schedule Benbow's 50-h hearing while he was in the City's custody and control at Riker's Island or at any time after his release. Aboushi Cert. Ex. 2 - Benbow 170:7-21, 176:6-23.

191.    On the date and time allegedly noticed for the 50-h hearing, 8/27/2015, Benbow was still in the custody and control of the City at Riker's Island. Aboushi Cert. Ex. 2 - Benbow 170:7-21.

192.    At no point while Benbow was at Rikers Island did the City attempt to schedule Benbow's 50-h hearing. Aboushi Cert. Ex. 2 - Benbow 170:7-21.

193.    At no point thereafter did the City attempt to schedule a 50-h hearing with Benbow. Aboushi Cert. Ex. 2 - Benbow 176:6-23.

194.    Even after this matter was filed, at no point did the City never reached out to Benbow to schedule a 50-h hearing. Aboushi Cert. Ex. 2 - Benbow 176:6-23.

Dated:  September 10, 2021                    Respectfully Submitted,

                              By:    s/Aymen A. Aboushi____
                                     Aymen A. Aboushi, Esq.
                                     1441 Broadway, 5th Floor
                                     New York, NY 10018
                                     Tel:  212-391-8500
                                     Fax:  212-391-8508
                                     Aymen@Aboushi.com