17-CV-06457 (EK) (JRC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMES BENBOW,

                Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER BRIAN FEELEY, POLICE OFFICER MATTHEW ROSIELLO, POLICE OFFICER KENNETH ANDERSON, SERGEANT WILLIAM DIAB, DETECTIVE SHANIEL MITCHELL, AND POLICE OFFICER STEPHEN MINUCCI,

                Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
   *Attorney for Defendants*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: Zachary Kalmbach*
   *Tel: (212) 356-2322*
   *Matter No. 2017-066702*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT

    I.    THE COURT SHOULD STRIKE PLAINTIFF'S RULE 56.1 STATEMENT ............................................................................... 1

    II.    PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS ................................. 2

    III.    PLAINTIFF'S FALSE ARREST CLAIM FAILS ........................................ 5

    IV.    PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS ................................................................................................. 8

    V.    PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS ...................................................................................................... 10

    VI.    PLAINTIFF'S *MONELL* CLAIM FAILS ..................................................... 10

    VII.    PLAINTIFF'S STATE LAW CLAIMS FAIL ............................................ 13

CONCLUSION............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**   **Pages**

Alwan v. City of New York,
   311 F. Supp. 3d 570 (E.D.N.Y. 2018) ...................................................................................12

Annunziata v. City of New York,
   06-CV-7637 (SAS), 2008 U.S. Dist. LEXIS 42097
   (S.D.N.Y. May 28, 2008)..........................................................................................................6

Biggs v. City of New York,
   No. 08 Civ. 8123 (PGG), 2010 U.S. Dist. LEXIS 121332
   (S.D.N.Y. Nov. 16, 2010) .........................................................................................................3

Coggins v. Cty. Of Nassau,
   254 F. Supp. 3d 500 (E.D.N.Y. 2017) ...................................................................................12

Connick v. Thompson,
   131 S. Ct. 1350 (2011)............................................................................................................12

Epstein v. Kemper Ins. Cos.,
   210 F. Supp. 2d 308 (S.D.N.Y. 2002).......................................................................................1

Fernandez v. City of New York,
   457 F. Supp. 3d 364 (S.D.N.Y. 2020).....................................................................................12

Goldstick v. Hartford, Inc.,
   00 Civ. 8577 (LAK), 2002 U.S. Dist. LEXIS 15247
   (S.D.N.Y. Aug. 19, 2002) .....................................................................................................1, 2

Golphin v. City of New York,
   09-CV-1015 (BSJ), 2011 U.S. Dist. LEXIS 106272
   (S.D.N.Y. Sep. 19, 2011) ..........................................................................................................6

Gonzalez v. City of Schenectady,
   728 F3d 149 (2d Cir. 2013)......................................................................................................9

Graham v. City of New York,
   No. 16-CV-4613 (NGG) (CLP), 2018 U.S. Dist. LEXIS 34554
   (E.D.N.Y. Mar. 2, 2018) ...........................................................................................................9

Graham v. Connor,
   490 U.S. 386 (1989).................................................................................................................5

Harris v. City of New York, et al.,
   No. 15-CV-6467 (MKB), 2017 U.S. Dist. LEXIS 1222
   (E.D.N.Y. Jan. 4, 2017) ............................................................................................................9

**Cases**  **Pages**

Estate of Jackson v. City of Rochester,
  705 F. Supp. 779 (W.D.N.Y. 1989) ..................................................................................4

Jenkins v. City of New York,
  388 F. Supp. 3d 179 (E.D.N.Y. 2019) ............................................................................12

Kisela v. Hughes,
  138 S. Ct. 1148 (2018) ................................................................................................4, 5

Lanning v. City of Glens Falls,
  908 F.3d 25 (2d Cir. 2018) ..............................................................................................8

Malone v. Hinman,
  847 F. 3d 949 (8th Cir. 2017) ......................................................................................4, 5

Manganiello v. City of New York,
  612 F.3d 149 (2d Cir. 2010) ............................................................................................8

Mushchette v. Gionfriddo,
  910 F. 3d 65 (2d Cir. 2018) .............................................................................................4

Perlleshi v. County of Westchester,
  No. 98 Civ. 6927 (CM), 2000 U.S. Dist. LEXIS 6054 ....................................................3

Pettus v. City of New York,
  10-CV-01442 (CBA), 2011 U.S. Dist. LEXIS 114129
  (E.D.N.Y. Aug. 23, 2011),
  R & R adopted, 2011 U.S. Dist. LEXIS 107561 (Sep. 23, 2011) ....................................9

Priolo v. City of New York,
  No. 15-CV-6080 (AMD) (ST), 2019 U.S. Dist. LEXIS 54458
  (E.D.N.Y. Mar. 29, 2019) ................................................................................................5

Smalls v. City of New York,
  181 F. Supp. 3d 178 (E.D.N.Y. 2016) .............................................................................9

Smalls v. Collins,
  No. 14-CV-2326 (CBA)(RML), 2020 U.S. Dist. LEXIS 52213
  (E.D.N.Y. Mar. 13, 2020) (reversed on other grounds) ..................................................9

Taylor v. City of New York,
  269 F. Supp. 2d 68 (E.D.N.Y. 2003) ...............................................................................2

Townes v. City of New York,
  176 F.3d 138 (2d Cir. 1999) ............................................................................................6

**Cases**                                                                                                                 **Pages**

Underwood v. City of New York,
    No. 14-CV-7531 (RRM) (PK), 2018 U.S. Dist. LEXIS 54776
    (E.D.N.Y. Mar. 28, 2018) ................................................................................................12

| **Statutes** | **Pages** |
|---|---|
| N.Y. G.M.L. § 50-h(1) | 13 |
| N.Y. Penal Law § 265.01-B | 6 |
| N.Y. Penal Law § 265.01 | 6 |
| Rule 56.1 | 1 |

## ARGUMENT

### I. THE COURT SHOULD STRIKE PLAINTIFF'S RULE 56.1 STATEMENT

The Court should strike plaintiff's 56.1 Statement. Rule 56.1 Statements "are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite supporting evidence." Epstein v. Kemper Ins. Cos., 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002). Where a non-moving party's response to a 56.1 statement includes inappropriate material such as legal argument, a court may strike the unresponsive portions. See Goldstick v. Hartford, Inc., 00 Civ. 8577 (LAK), 2002 U.S. Dist. LEXIS 15247, at *3 (S.D.N.Y. Aug. 19, 2002).

Here, plaintiff's 194-paragraph 56.1 Statement (which, despite Rule 56.1's requirement that it be "short and concise," is over twice as long as that of defendants) is rife with legal conclusions (See, e.g., Defendants' Responses to Plaintiff's Rule 56.1 Counter Statement of Facts ("CSOF Responses") at ¶¶ 2, 4-6, 17, 135-36, 138, 141-52, 183-84), argument and commentary (¶¶ 26, 81, 85-86, 123, 127, 144-45, 150-52, 157-59, 163-64, 166, 171, 178, 185), inadmissible hearsay (¶¶ 57, 59-60, 71, 126, 129, 134), paragraphs that fail to include proper statements of fact (¶¶ 1, 3. 7-12, 17), and numerous immaterial facts. Moreover, plaintiff makes a number of misrepresentations and consistently mischaracterizes the evidence. (See, e.g., id. at ¶¶ 20, 21, 25, 28, 29, 58, 61, 82, 121, 181.).[1] Further, plaintiff consistently cites to evidence that does not support his allegations. (See, e.g., id. at ¶¶ 20, 22-30, 38, 40, 42, 48-49, 51, 53, 58, 62,

---

[1] Defendants also note that plaintiff makes a number of misrepresentations in his response to defendants' Rule 56.1 Statement, such as denying that he pled guilty (See Defendants' Reply 56.1 Statement ("56.1 Reply") at ¶ 88), denying that he made certain statements to the criminal court (¶¶ 89-91), denying that he interacted with Marshall (¶¶ 2, 6-9), mischaracterizing testimony (¶ 45), and falsely accusing defendants of doing the same (¶¶ 23, 51).

73, 82-83, 96, 100). Plaintiff's 56.1 Statement is also filled with regurgitations of inadmissible and/or irrelevant expert reports. (See id. at ¶¶ 130-176).

As such, plaintiff's 56.1 Statement is so riddled with improprieties that it should be struck in its entirety. Defendants also respectfully submit that each paragraph of defendants' 56.1 Statement to which plaintiff does not respond with citation to evidence (as opposed to citation to plaintiff's Counter Statement) should be deemed admitted. See Goldstick, 2002 U.S. Dist. LEXIS 15247, at *2 ("[Plaintiff's Counter Statement is *not* a substitute for the paragraph-by-paragraph response. The non-movant, particularly if represented by counsel, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the contentions of the non-movant asserted it its paragraph-by-paragraph response without citation.")

## II. PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS

As an initial matter, plaintiff does not oppose defendants' motion for summary judgment as to plaintiff's excessive force claims against Anderson, Minucci, Diab, or Mitchell, and thus they should be dismissed as abandoned. See Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Further, plaintiff's opposition to defendants' arguments as to his excessive force claims against Feeley and Rosiello largely rests on two faulty assertions: (1) that "Defendants Feeley and Rosiello shot plaintiff several times in his back"; and (2) that plaintiff did not run towards Officer Feeley while holding a firearm. (See Plaintiff's Opposition Memorandum of Law ("Plaintiff Opp.") at 2-3). However, there is no *genuine* dispute that: (1) plaintiff was not shot directly in his back; and (2) that plaintiff ran towards Officer Feeley while holding a firearm. Under these circumstances, it was objectively reasonable for Feeley and Rosiello to employ deadly force. At a minimum, the officers are entitled to qualified immunity.

First, photographic evidence shows that plaintiff suffered at least one gunshot wound to the right side of his body and that he did not suffer any gunshot wound directly to his back. (See,

2

e.g., CSOF Responses at ¶ 42). This is consistent with Officer Rosiello's testimony that he discharged his firearm while plaintiff ran between the two cars (and thus was facing the left-rear side of plaintiff's body when he discharged his firearm one time, hitting plaintiff on the left side of his body). (See 56.1 Reply at ¶¶ 59-61). This is also consistent with Officer Feeley's testimony that he was facing plaintiff when he discharged his firearm three times (hitting plaintiff on the right side of his body). (See id. at ¶¶ 65-68).

Further, it cannot be genuinely disputed that plaintiff ran toward Feeley while holding a firearm. Video evidence shows plaintiff pull a gun from his waist area just before he ran between the two cars. (See id. at ¶¶ 8, 51). A gun was recovered near plaintiff just after the shooting. (See id. at ¶ 81). And, plaintiff told a criminal court judge, *under oath*, that he had a gun. (See id. at ¶ 91). In light of plaintiff's sworn statement, he is judicially estopped from claiming that he did not possess a firearm here. See Perlleshi v. County of Westchester, No. 98 Civ. 6927 (CM), 2000 U.S. Dist. LEXIS 6054, at *14-15 ("Judicial estoppel precludes a party from asserting the genuineness of a material fact that is contrary to a prior statement made by the party under oath in a judicial or quasijudicial proceeding.").

Thus, there is no genuine dispute that plaintiff was running towards Feeley while holding a firearm before the officers discharged their firearms. Under these circumstances, plaintiff "posed a threat of serious physical harm" to the officers, and it was objectively reasonable for both officers to use deadly force.[2] Indeed, courts have found deadly force to be objectively reasonable in similar or even less perilous circumstances. See Biggs v. City of New York, No. 08 Civ. 8123 (PGG), 2010 U.S. Dist. LEXIS 121332, at *16-23 (S.D.N.Y. Nov. 16, 2010)

---

[2] Even if plaintiff did not actually possess a gun, the officers reasonably believed plaintiff to have a gun based on the information provided by Marshall. (See Reply 56.1 at ¶¶ 12-17, 24).

(officer shot a person who was "pointing and waving a knife in close proximity to" a police officer); Estate of Jackson v. City of Rochester, 705 F. Supp. 779, 784 (W.D.N.Y. 1989) (officer shot a person who "made a motion" toward the officer with a knife); see also Malone v. Hinman, 847 F. 3d 949, 954-55 (8th Cir. 2017) (officer shot a person who ran towards a different officer).

At a minimum, Feeley and Rosiello are entitled to qualified immunity, as there is no clearly established law that shooting an individual who is running toward an officer with a firearm constitutes excessive force. The officers are also entitled to qualified immunity because it was objectively reasonable for them to believe that their actions were lawful. Indeed, "[a]n officer is entitled to qualified immunity if any reasonable officer, out of the wide range of reasonable people who enforce the laws in this county, could have determined that the challenged action was lawful." Mushchette v. Gionfriddo, 910 F. 3d 65, 70 (2d Cir. 2018).

One recent Supreme Court decision on qualified immunity, Kisela v. Hughes, is particularly notable. 138 S. Ct. 1148 (2018). There, the Supreme Court upheld qualified immunity for the shooting of an individual, Hughes, who stood six feet from another person, Chadwick. Hughes made no overt movements to cause injury, and appeared calm. Chadwick and Hughes were both on the other side of a chain link fence from the officers. Officers told Hughes to drop the knife and, when she did not, one officer, Kisela, fired four shots at Hughes, causing non-fatal injuries. The Court concluded that "this was far from an obvious case in which any competent officer would have known that shooting Hughes to protect Chadwick would violate the Fourth Amendment." The instant case presents an even greater quantum of facts which would lead a reasonable officer to believe that the use of deadly force was lawful. Indeed, in response to being stopped by police officers, plaintiff's *drew a gun* and ran towards an officer. Certainly these circumstances provide more objective evidence of an extant threat than those

4

presented in Kisela. Recognizing the deference Graham v. Connor requires to an officer's split-second judgment, it was clearly reasonable to believe that deadly force was warranted here. 490 U.S. 386, 396-97 (1989); see also Priolo v. City of New York, No. 15-CV-6080 (AMD) (ST), 2019 U.S. Dist. LEXIS 54458, at *12-14 (E.D.N.Y. Mar. 29, 2019) (granting qualified immunity where an officer shot an individual who ran at an officer with a knife).

Defendants also note that, even under plaintiff's theory that he was running away from Feeley and Rosiello when they discharged their firearms, he then would have been running towards other officers—namely, Diab, Mitchell, and Minucci. (See Surveillance Footage at Timestamp 12:45:44, DeLuca Decl., Ex. L.) Under this theory, it also would have been *objectively* reasonable for Feeley and Rosiello to discharge their firearms to protect their fellow officers. See Malone v. Hinman, 847 F. 3d 949, 954-55 (8th Cir. 2017) (deadly force objectively reasonable where plaintiff ran away from the officer who discharged his firearm but towards another officer). At a minimum, Feeley and Rosiello would be entitled to qualified immunity.

Moreover, deadly force would have been objectively reasonable even if plaintiff were running away from Feeley and Rosiello and not towards other officers. That is, the officers should not have been required to wait to fire until after plaintiff potentially turned around and shot at them. Indeed, given that plaintiff *drew a gun* in response to being stopped by police and attempted to flee, it would be exceedingly reasonable for the officers to believe that plaintiff intended to use his gun. As such, even under this third, hypothetical scenario, the officers' use of force would have been reasonable and qualified immunity would be appropriate.

### III. PLAINTIFF'S FALSE ARREST CLAIM FAILS

Plaintiff's opposition as it pertains to his false arrest claim is chiefly based on the mischaracterization that an appellate court held that defendants lacked probable cause to arrest plaintiff. (See Plaintiff Opp. at 7; see also CSOF Responses at ¶ 181). However, the appellate

court actually held that defendants lacked reasonable suspicion to *stop* plaintiff, and thus the firearm in his possession should have been suppressed. (See 56.1 Reply at ¶ 93). The court did not hold that plaintiff's plea was coerced or that plaintiff did not actually possess the firearm. (See id.) And, as discussed *supra*, plaintiff is judicially estopped from denying that he had a firearm. Because the "fruit of the poisonous tree" doctrine is not applicable to federal false arrest claims, the suppression of plaintiff's firearm is irrelevant here. See Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999). In light of, *inter alia*, plaintiff's admission that he possessed a firearm, there was probable cause to arrest him for violating N.Y. Penal Law §§ 265.01 (Criminal Possession of a Weapon) and 265.01-B (Criminal Possession of a Firearm).

Plaintiff's arrest was also lawful pursuant to the "fellow officer" rule, or the "collective knowledge" doctrine. As defendants explained in their initial memorandum, "the 'fellow officer' rule provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or [fellow] officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest." Annunziata v. City of New York, 06-CV-7637 (SAS), 2008 U.S. Dist. LEXIS 42097 (S.D.N.Y. May 28, 2008) (quotation omitted). When this doctrine applies, the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably. Golphin v. City of New York, 09-CV-1015 (BSJ), 2011 U.S. Dist. LEXIS 106272, at *4 (S.D.N.Y. Sep. 19, 2011).

Here, it is undisputed that officers approached plaintiff based on information from Marshall that plaintiff possessed a firearm. (See 56.1 Reply at ¶¶ 10-12). Marshall provided defendants with a description of plaintiff and updates on his location. (Id. at ¶¶ 10-12, 21-22).

6

At the time of the incident, Marshall had been an Auxiliary Police Officer since 2013 (Id. at ¶ 3) and the officers on scene had no reason to doubt his veracity. Upon receiving this information from Marshall, probable cause existed to arrest plaintiff. Consequently, when Diab and Mitchell observed plaintiff and Bradley walking on Nassau Street, they had at least reasonable suspicion to stop and approach plaintiff based on Marshall's information. (See id. at ¶¶ 38-40).[3]

On this point, plaintiff essentially argues that defendants should have disbelieved Marshall. (See Plaintiff Opp. at 8-9). In support of this argument, plaintiff largely resorts to attacks on Marshall's credibility based on events that took place *after* the incident. (See id.) ("The Defendants were allegedly acting upon an uncorroborated tip from a disgraced security guard who was *subsequently* arrested for filing a making (sic) false reports.") However, plaintiff fails to offer any reason why defendants should not have believed Marshall on the date of the incident, except for the claim that he "had never provided information or tips before[.]" (See id. at 9). The only evidence plaintiff cites in support of this allegation is Sgt. Diab's testimony, who testified only that *he* had never received a tip from Marshall. (See CSOF Responses at ¶ 25). In any event, there is no legal basis for plaintiff's assertion that a fellow officer should not be believed because that officer "had never provided information or tips before." Defendants also note that plaintiff's argument that the fellow officer rule does not apply because each and every defendant did not speak directly to Marshall is erroneous, as there is no genuine dispute that Sgt. Diab and Det. Mitchell spoke to Marshall. (See 56.1 Reply at ¶ 21).

Accordingly, plaintiff's arrest was lawful. At a minimum, there existed arguable probable cause to arrest plaintiff, entitling defendants to qualified immunity.

---

[3] Plaintiff's hearsay argument is unavailing, as defendants are not offering any statements made by Marshall for the truth of the matter asserted, but rather for the fact that the statements were made and heard by the other officers.

7

## IV. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS

As defendants explained in their initial memorandum, plaintiff's malicious prosecution claim fails because: (1) it is barred by probable cause; (2) plaintiff cannot establish favorable termination; and (3) plaintiff cannot establish malice. (See Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defendants MOL") at 11-18).

Like false arrest claims, "the existence of probable cause is a complete defense to a claim of malicious prosecution." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2010). As discussed *supra*, there was probable cause to arrest plaintiff. Plaintiff has presented no evidence, nor has he argued, that the probable cause to arrest plaintiff vitiated after his arrest. Indeed, as discussed in defendants' initial memorandum, the indictment of plaintiff created a presumption of probable cause. (See Defendants MOL at 16). In an attempt to overcome this presumption, plaintiff claims that "a jury could determine that the testimony in the grand jury regarding Plaintiff possessing a gun was false." (Plaintiff Opp. at 13). Plaintiff supports this claim by conclusorily arguing that defendants "made multiple misrepresentations about the events of the night of the incident." (Id.) Setting aside that the evidence does not support this claim, plaintiff fails to cite to *any* grand jury testimony or any defendants' recollection of such testimony in support of his claim that defendants lied to the grand jury. Further, the Court should disregard inappropriate allegations such as "its (sic) well known that police officers operate under a blue wall of silence," as these sorts of unsupported generalizations are insufficient to overcome the presumption of probable cause created by the indictment.

Additionally, plaintiff cannot establish the favorable termination element of malicious prosecution claims. In Lanning v. City of Glens Falls, the Second Circuit held that to establish a favorable termination, a plaintiff's criminal case must have been dismissed in a manner affirmatively indicative of innocence. 908 F.3d 25 (2d Cir. 2018). Here, plaintiff's criminal case

8

was dismissed based on the suppression of the firearm. (See 56.1 Reply at ¶¶ 92-93). As such, there is no evidence in the record that the dismissal of the criminal charges affirmatively indicated plaintiff's innocence.[4] Indeed, it is well-settled that the termination of a criminal prosecution is not favorable where it was based on the suppression of evidence. See Gonzalez v. City of Schenectady, 728 F3d 149, 162 (2d Cir. 2013) (no favorable termination where conviction reversed on appeal based on evidence that should have been suppressed); Graham v. City of New York, No. 16-CV-4613 (NGG) (CLP), 2018 U.S. Dist. LEXIS 34554, at *6 (E.D.N.Y. Mar. 2, 2018) ("[T]he reversal of Plaintiff's conviction was due to a determination by the appellate court that the evidence leading to his conviction should have been suppressed . . . this reversal was based on 'technical error at the trial level,' something that cannot support a favorable termination."); Harris v. City of New York, et al., No. 15-CV-6467 (MKB), 2017 U.S. Dist. LEXIS 1222, at *4 (E.D.N.Y. Jan. 4, 2017) ("[A] dismissal . . . because evidence is suppressed, particularly when the evidence was suppressed on appeal, is not a favorable termination."). As such, plaintiff cannot establish favorable termination.

Finally, as defendants explained in their initial memorandum, plaintiff's malicious prosecution claim fails because plaintiff cannot establish the element of malice. Plaintiff's opposition on this point mostly consists of conclusory allegations unsupported by any citation to evidence. (See Plaintiff Opp. at 13-14). These are exactly the sort of allegations courts within this Circuit have routinely rejected. See e.g., Pettus v. City of New York, 10-CV-01442 (CBA), 2011 U.S. Dist. LEXIS 114129 at * 31 (E.D.N.Y. Aug. 23, 2011), R & R adopted, 2011 U.S. Dist. LEXIS 107561 (Sep. 23, 2011) (dismissing malicious prosecution claim on summary

---

[4] Citing to Smalls v. City of New York, 181 F. Supp. 3d 178, 188 (E.D.N.Y. 2016), plaintiff suggests that the "not inconsistent with innocence" standard, which was expressly rejected in Lanning, should apply. (See Plaintiff Opp. at 12.) Plaintiff ignores the subsequent history of the Smalls case, where the plaintiff voluntarily dismissed his malicious prosecution claim in light of Lanning. See Smalls v. Collins, No. 14-CV-2326 (CBA)(RML), 2020 U.S. Dist. LEXIS 52213, at *3-4 (E.D.N.Y. Mar. 13, 2020) (reversed on other grounds).

9

judgment, because "Pettus has made a conclusory assertion that the Police Defendant acted in bad faith . . . but he makes no attempt to adduce or identify any evidence supporting that assertion.") Accordingly, plaintiff's malicious prosecution claim should be dismissed.

V. **PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS**

Plaintiff cannot establish his failure to intervene claim because defendants did not have a realistic opportunity to intercede to stop the shooting. (See Defendants MOL at 18-19). On this point, plaintiff absurdly argues that the shooting was drawn out for nearly two minutes. (See Plaintiff Opp. at 15). Plaintiff asserts that "Officer Feeley testified that his three shots were staggered, with approximately 20-30 seconds between shots." (Id.) However, Feeley actually testified that there were "maybe 20 seconds, 30—not—not long" between his first and last shot—not 20-30 seconds *between* each shot. (See CSOF Responses at ¶ 66). Moreover, Feeley went on to testify that he was having trouble estimating the time and that he fired three shots "in a row . . . like a boom, boom, boom." (See id. at ¶ 66). Additionally, Anderson testified that the shooting lasted only 2-3 seconds. (See 56.1 Reply at ¶ 74). As such, there is no genuine dispute that Feeley discharged three shots quickly and only seconds elapsed between the first and last gunshots fired by Rosiello and Feeley. (See id. at ¶¶ 73-74). As such, defendants Anderson, Mitchell, Diab, and Minucci did not have a realistic opportunity to intercede, as doing so would have been dangerous and likely impossible. Thus, plaintiff's failure to intervene claim fails.

VI. **PLAINTIFF'S *MONELL* CLAIM FAILS**

In opposition to defendants' motion for summary judgment as to plaintiff's Monell claim, plaintiff argues that: (1) Feely and Rosiello should have been on performance monitoring based on their disciplinary record; and (2) the City's alleged inadequate recordkeeping as to lawsuits against police officers caused the alleged constitutional violations. (See Plaintiff Opp. at 16-21).

10

As an initial matter, plaintiff has presented no evidence that, had any defendant been on performance monitoring on the date of the incident, the outcome would have been different. Further, plaintiff mischaracterizes defendants' disciplinary histories and wrongly assumes that they should have been on performance monitoring. For example, Feeley's CCRB history indicates that there were five complaints against him in the more than five years preceding the incident, which, according to the documents annexed to plaintiff's opposition, would not qualify him for monitoring. (See CSOF Responses at ¶ 100). Moreover, Feeley's ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (See id.) As such, plaintiff has failed to establish that Feeley should have been on performance monitoring.[5] Plaintiff also asserts that Feeley "testified to having more than two lawsuits filed against him," but plaintiff omits the fact that neither of the lawsuits were filed prior to the incident, and thus they are irrelevant.

Plaintiff also mischaracterizes Rosiello's disciplinary history. First, plaintiff misleadingly asserts that Rosiello was the subject of 10 lawsuits. However, plaintiff omits the fact that Rosiello was named as a defendant in only *two* lawsuits prior to the incident. (See CSOF Responses at ¶¶ 87-88). Plaintiff also claims that Rosiello has "more than 10 CCRB complaints lodged against him" (see Plaintiff Opp. at 18), but fails to clarify that his CCRB history reflects only *three* complaints made prior to the incident, which would not qualify him for performance monitoring. (See CSOF Responses at ¶¶ 96). Also, defendants note that plaintiff's claim that "Rosiello had 6 complaints of unnecessary force lodged against him in 2013" is not supported by the record. Indeed, while Rosiello's ▮▮▮▮▮

---

[5] Plaintiff also claims, without citing to evidence, that Feeley "also has a use of force investigation pending from 2015." (See Plaintiff Opp. at 17). There is no evidence that any purported 2015 investigation was commenced prior to this incident; in fact, it appears to relate to the incident itself.

11

So, there is no evidence that Feeley or Rosiello should have been monitored prior to the incident, or that it would have made any difference. There is also no evidence that either officer had even a single *substantiated* force claim against them. See also Alwan v. City of New York, 311 F. Supp. 3d 570, 584 (E.D.N.Y. 2018) (unsubstantiated complaints and settled lawsuits "do not provide a valid basis for concluding that the City was deliberately indifferent"). And, there were only *two* lawsuits between both officers prior to this incident. Plaintiff has failed to cite a single case in which a comparable record was sufficient to establish a Monell claim. Rather, the law is clear that "officers' history of disciplinary infractions, without more, is insufficient to withstand summary judgment." See Underwood v. City of New York, No. 14-CV-7531 (RRM) (PK), 2018 U.S. Dist. LEXIS 54776, at *10-13 (E.D.N.Y. Mar. 28, 2018); see also Alwan, 311 F. Supp. 3d at 584 (even where the number of complaints created a triable issue of whether the City was aware of a risk that an officer would use excessive force, plaintiff could not establish a Monell claim without evidence that the City's response was "so patently inadequate to the task as to amount to deliberate indifference"). Here there is no evidence that the City failed to investigate the complaints, let alone that such investigations were somehow inadequate. Thus, plaintiff cannot satisfy the "stringent standard of fault" required for Monell claims premised on deliberate indifference. Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011).[6]

---

[6] The cases cited by plaintiff on this point are inapposite. In Jenkins v. City of New York, there were "30 complaints filed against [the defendant officer], many alleging conduct strikingly similar to the claims alleged yet again in this litigation[.]" 388 F. Supp. 3d 179, 188 (E.D.N.Y. 2019). See Fernandez v. City of New York, 457 F. Supp. 3d 364, 396 (S.D.N.Y. 2020) (distinguishing Jenkins). In Coggins v. Cty. Of Nassau, there were "numerous civilian complaints . . . several of which alleged" conduct very similar to the allegations there. 254 F. Supp. 3d 500 (E.D.N.Y. 2017). Here, there are far fewer prior complaints, and there is no evidence of any of them are even remotely similar to plaintiff's allegations.

12

Plaintiff's argument that the City's alleged inadequate recordkeeping as to lawsuits against police officers is likewise unavailing. Again, plaintiff has failed to cite any authority holding that failure to adequately track lawsuits is sufficient to establish a Monell claim. Moreover, plaintiff has failed to proffer any evidence pertaining to City policies pertaining to recordkeeping, and there is no evidence that any such policies are deficient—let alone that such policies *caused* the harms alleged here. As such, plaintiff cannot establish a Monell claim.

## VII. PLAINTIFF'S STATE LAW CLAIMS FAIL

Plaintiff's state-law claims—assault and battery and negligence—also fail.[7] As defendants explained in their initial memorandum, plaintiff's assault and battery claim fails for substantially the same reasons as his excessive force claim. And, plaintiff's negligence claim fails because he cannot simultaneously assert negligent and intentional conduct. Plaintiff's state law claims also fail because he failed to appear or request an adjournment of his scheduled hearing pursuant to N.Y. G.M.L. § 50-h(1). Finally, the Court should decline to exercise supplemental jurisdiction because plaintiff has no viable federal claims.

## CONCLUSION

For the foregoing reasons and for those outlined in their initial memorandum, defendants respectfully request that the Court grant their motion for summary judgment together with such costs, fees and other further relief as the Court deems just and proper.

---

[7] Plaintiff seems to suggest that he alleged other state-law claims in addition to assault and battery and negligence. (See Plaintiff Opp. at 24). However, in the Second Amended Complaint, plaintiff cited state law only as to his assault and battery claims. (See ECF No. 74 at ¶ 35). Defendants construe plaintiff's negligence claim as being brought pursuant to state law, as there is no such federal claim. Plaintiff did not allege any other state law claims.

Dated: New York, New York
October 1, 2021

GEORGIA M. PESTANA
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By: /s/ *Zachary Kalmbach*
Zachary Kalmbach
*Assistant Corporation Counsel*
Special Federal Litigation

cc: Via ECF
Aymen Aboushi, Esq.
*Attorney for Plaintiff*