

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

JAMES BENBOW,

                                          Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER BRIAN
FEELEY, POLICE OFFICER MATTHEW ROSIELLO,
POLICE OFFICER KENNETH ANDERSON,
SERGEANT WILLIAM DIAB, DETECTIVE SHANIEL
MITCHELL, AND POLICE OFFICER STEPHEN
MINUCCI,

                                          Defendants.

-------------------------------------------------------------------- x

**DEFENDANTS' RESPONSE
TO PLAINTIFF'S
COUNTER STATEMENT
OF FACTS PURSUANT TO
RULE 56.1**

17-CV-6457 (EK) (JRC)

Defendants The City of New York, Police Officer Brian Feeley, Police Officer Matthew

Rosiello, Police Officer Kenneth Anderson, Sergeant William Diab, Detective Shamiel Mitchell,

and Police Officer Stephen Minucci, by their attorney, Georgia M. Pestana, Corporation Counsel

of the City of New York, submit this statement pursuant to Local Civil Rule 56.1, in response to

Plaintiff's Counter Statement of Facts Pursuant to Rule 56.1:[1]

Police Officer Training

1. Police Officers are taught that they may not shoot someone that is running away from them.

   Aboushi Cert. Ex. 4 - Rosiello 48:9-50:23; Aboushi Cert. Ex. 3 - Feeley 66:14-67:3;

   Aboushi Cert. Ex. 5 - Mitchell 49:8-17; Aboushi Cert. Ex. 37 - Minucci 49:12-15.

---

[1] Defendants adopt the facts set forth herein only for purposes of the Motion for Summary Judgment and reserve the right to present different and/or conflicting facts at any trial in this matter.  See Vasconcellos v. City of New York, 12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission' …neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.")

**Defendants' Response:**  The cited evidence does not support this fact.  Defendants also object to this fact on the grounds that it is not a proper statement of fact.  Defendants also deny the materiality of this fact.

2. Running away from the police is not an illegal act. Aboushi Cert. Ex. 4 - Rosiello 50:12-17; Aboushi Cert. Ex. 7 - Diab 44:24-45:9, 67:4-20.

**Defendants' Response:**  Defendants object to this fact on the ground that it is a legal conclusion rather than a statement of fact.  Defendants also deny the materiality of this fact.

3. Police Officers are not taught to shoot someone simply because they have a gun. Aboushi Cert. Ex. 4 - Rosiello 64:2-7; Aboushi Cert. Ex. 3 - Feeley 63:8-17, 68:18-35, 66:14-67:3; Aboushi Cert. Ex. 5 - Mitchell 32:8-21, 49:8-17; Aboushi Cert. Ex. 7 - Diab 44:24-45:9, 47:17-19; Aboushi Cert. Ex. 37 - Minucci 49:12-15, 50:2-11, 50:22-51:10.

**Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Further, the cited evidence does not support this fact.  Defendants also deny the materiality of this fact.

4. Civilians have no obligations to talk to the police. Aboushi Cert. Ex. 4 - Rosiello 50:18-20; Aboushi Cert. Ex. 7 - Diab 67:4-20.

**Defendants' Response**:  Defendants object to this fact on the ground that it is a legal conclusion rather than a statement of fact.  Defendants deny the materiality of this legal conclusion.

5. If a civilian speaks to the police, the civilian has a right to stop talking to the police at any time. Aboushi Cert. Ex. 4 - Rosiello 50:21-51:2; Aboushi Cert. Ex. 7 - Diab 67:4-20.

**Defendants' Response:**  Defendants object to this fact on the ground that it is a legal conclusion rather than a statement of fact.  Defendants deny the materiality of this legal conclusion.

6.  Refusing to speak to a police officer is not an illegal act. Aboushi Cert. Ex. 4 - Rosiello 51:12-19; Aboushi Cert. Ex. 7 - Diab 67:4-20.

**Defendants' Response:**  Defendants object to this fact on the ground that it is a legal conclusion rather than a statement of fact.  Defendants deny the materiality of this legal conclusion.

7.  Police officers must make decisions regarding probable cause. Aboushi Cert. Ex. 6 - Anderson 45:19-46:12.

**Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Defendants deny the materiality of this fact.

8.  Police officers must regularly make determinations regarding the use of force in the execution of their job functions. Aboushi Cert. Ex. 4 - Rosiello 50:20-52:5; Aboushi Cert. Ex. 3 - Feeley 51:15-52:5; Aboushi Cert. Ex. 5 - Mitchell 34:11-22.

**Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Defendants deny the materiality of this fact.

9.  Generally speaking, police officers have to make a determination regarding the use of force on a daily basis. Aboushi Cert. Ex. 4 - Rosiello 52:6-10; Aboushi Cert. Ex. 5 - Mitchell 34:11-22; 36:6-11.

**Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Defendants deny the materiality of this fact.

10. Not only does a police officer need to regularly make a determination regarding the use of force, but also regarding how much force is appropriate. Aboushi Cert. Ex. 4 - Rosiello 52:11-53:2; Aboushi Cert. Ex. 3 - Feeley 51:15-52:5.

   **Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Defendants deny the materiality of this fact.

11. Police Officers are taught with the use of force continuum where they're only allowed to use a level of force to overcome the resistance that is posed to them. Aboushi Cert. Ex. 5 - Mitchell 34:11-22; Aboushi Cert. Ex. 7 - Diab 43:23-44:9; Aboushi Cert. Ex. 6 - Anderson 34:23-35:3.

   **Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Defendants deny the materiality of this fact.

12. Police Officers are taught to aim for center mass when shooting. Aboushi Cert. Ex. 4 - Rosiello 63:13-16; Aboushi Cert. Ex. 5 - Mitchell 28:16-22; Aboushi Cert. Ex. 6 - Anderson 38:6-22.

   **Defendants' Response:**  Defendants object to this fact on the ground that it is not a proper statement of fact.  Defendants deny the materiality of this fact.

13. Center mass, when the target is facing towards the officer, is the area between from the neckline to the waistline, from shoulder to shoulder. Aboushi Cert. Ex. 4 - Rosiello 63:17-64:11; Aboushi Cert. Ex. 3 - Feeley 47:15-25; Aboushi Cert. Ex. 5 - Mitchell 28:16-22; Aboushi Cert. Ex. 7 - Diab 43:10-18; Aboushi Cert. Ex. 37 - Minucci 73:19-23; Aboushi Cert. Ex. 6 - Anderson 38:23-39:11.

**Defendants' Response:**  Admit that Officers Rosiello, Mitchell, Minucci, and Anderson testified that they understood "center mass" to mean the area between the neckline to the waistline.  Defendants deny the materiality of this fact.

14. Center mass, when the target is facing with their back to the officer, is the area from the neck to the lower back. Aboushi Cert. Ex. 4 - Rosiello 63:17-64:11; Aboushi Cert. Ex. 3 - Feeley 47:15-25; Aboushi Cert. Ex. 5 - Mitchell 29:8-12; Aboushi Cert. Ex. 7 - Diab 43:10-18; Aboushi Cert. Ex. 6 - Anderson 39:12-17.

**Defendants' Response:**  Admit that Officers Rosiello, Mitchell, Diab, and Anderson testified that they understood "center mass" to mean the area from the neck to the lower back or waistline.  Defendants deny the materiality of this fact.

15. In order to qualify for a specific weapon, officers must take a test twice a year in which they must hit center mass from 25 yards, 15 yards and 7 yards over 78% of the time. Aboushi Cert. Ex. 4 - Rosiello 64:7-11; Aboushi Cert. Ex. 6 - Anderson 38:6-22, 40:19-24.

**Defendants' Response:**  Admit that Officer Rosiello testified that, in order to qualify for his firearm, he was required to "hit center mass from various distances a certain amount of time" and that Officer Anderson testified that, in order to qualify for a firearm, he was required to hit targets from 25 yards, 15 yards, and 7 yards more than 78% of the time. Defendants deny the materiality of this fact.

16. Police officers have commonly made gun arrest without having to shoot the individual possessing the gun. Aboushi Cert. Ex. 5 - Mitchell 32:18-21; Aboushi Cert. Ex. 37 - Minucci 50:22-51:10.

**Defendants' Response:**  Deny that the cited testimony supports this fact.  Defendants also deny the materiality of this fact.

17. Police Officers have a responsibility to intervene if they witness a fellow officer violating a civilian's rights, such as using excessive force. Aboushi Cert. Ex. 5 - Mitchell 37:5-10; Aboushi Cert. Ex. 7 - Diab 57:2-11; Aboushi Cert. Ex. 6 - Anderson 48:2-15, 49:6-15.

**Defendants' Response:**  This fact consists of a legal conclusion, which is not a proper statement of fact.  Defendants deny the materiality of this fact.

18. Police Officers often protect one another by covering up for each other. Aboushi Cert. Ex. 5 - Mitchell 83:12-24; Aboushi Cert. Ex. 6 - Anderson 125:3-5.

**Defendants' Response:**  The cited evidence does not support this fact.  Defendants also object to this fact insofar as it is vague as to the  meaning of the term "covering up."  Defendants also deny the materiality of this fact.

19. Police Officers have a term "blue wall of silence" referring to protecting one another by covering up for each other. Id.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Defendants also deny the materiality of this fact.

<u>Night of the Incident</u>

20. On the night of the incident, Benbow did not interact with Jason Marshall. Aboushi Cert. Ex. 2 - Benbow 91:15-18.

**Defendants' Response:**  Deny.  This is a misrepresentation.  As an initial matter, the cited testimony does not support this fact.  Namely, in the cited portion of plaintiff's testimony, he testified only that he could not recall interacting with Jason Marshall.  (See id.)  Later in plaintiff's deposition, he clearly testified that he remembered Marshall "approach[] him

about a female bartender." (<u>See</u> Benbow Deposition Transcript ("Benbow Tr.") at 128:17-129:22, annexed to the DeLuca Decl. as Ex. A.)

21. Jason Marshall once worked for the City of New York but ███████████ ███████████ Aboushi Cert. Ex. 7 - Diab 81:13-19, 81:24-82:8, 82:14-24; Aboushi Cert. Ex. 9.

**Defendants' Response:** Deny. Plaintiff continues to misrepresent the cited testimony, which does not support this fact. Officer Diab did not testify that Jason Marshall "was forced to resign after significant misconduct." Defendants also deny the materiality of this fact.

22. Jason Marshall's CCRB records shows ███████████████████ ███████████ Aboushi Cert. Ex. 9.

**Defendants' Response:** Deny. The cited document is not a "CCRB record" and thus does not support this fact. Defendants also deny the materiality of this fact and object to plaintiff's subjective characterization of Jason Marshall's disciplinary history.

23. It was found that Marshall █████████████████████████ ███████████████████████████████████ ███████████ Aboushi Cert. Ex. 9 at p. 2.

**Defendants' Response:** Admit the substance of this fact but deny its materiality.

24. Jason Marshall was ███████████████████████████████ <u>Id</u>. See also Aboushi Cert. Ex. 7 - Diab 81:13-19, 81:24-82:8, 82:14-24.

**Defendants' Response:** The cited testimony does not support this fact. That is, Officer Diab did not testify that Jason Marshall "was terminated," nor did he testify as to the timing of any purported termination or as to an "investigation into a falsely issued report." (<u>See</u>

7

<u>id.</u>)  Defendants also deny the materiality of this fact and object to plaintiff's subjective characterizations.

25. Jason Marshall had never given tips before and was an unreliable informant. Aboushi Cert. Ex. 7 - Diab 83:4-20.

**<u>Defendants' Response:</u>**   Deny that the cited testimony supports this fact.   Plaintiff continues to blatantly misrepresent testimony, which does not support this fact.   Officer Diab did not testify that "Jason Marshall had never given tips before and was an unreliable information," but rather merely testified that Marshall had never given Officer Diab a tip. Defendants also object to plaintiff's subjective characterizations and deny the materiality of this fact.

26. Plaintiff attempted to serve a subpoena upon Jason Marshall for his testimony regarding the night of the incident, but Marshall evaded service even after Plaintiff's due diligence. Aboushi Cert. Ex. 34.

**<u>Defendants' Response:</u>**   Again, the cited evidence does not support this fact.   Namely, the cited evidence consists of affidavits pertaining to service attempts that do not state that Marshall "evaded service."   Defendants also object to plaintiff's subjective and irrelevant commentary and deny the materiality of this fact.

27. The officers, including Sgt. Diab, did not verify the information provided by Jason Marshall. Aboushi Cert. Ex. 7 - Diab 83:4-20.

**<u>Defendants' Response:</u>**   The cited evidence does not support this fact.   Officer Diab testified that he—and only he—"didn't really verify" what "was coming from . . . Mr. Marshall," but that the information was "pretty verifiable."  (<u>See id.</u>)

28. Cespedes had at least 12 CCRB complaints filed against him throughout his police officer career. Cespedes 108:11-16; Aboushi Cert. Ex. 38.

**Defendants' Response:**   Deny.  Plaintiff continues to misrepresent the cited testimony, which does not support this fact.  Officer Cespedes was asked whether he would "be surprised to learn that [he had] at least 12 CCRB complaints filed against [him] throughout [his] career," to which he answered "I guess.  I don't know."  <u>See</u> <u>id.</u>  Moreover, the very next page of the cited exhibit shows that there were eight—not twelve—CCRB complaints asserted against Officer Cespedes.  (<u>See</u> <u>id.</u> at 4.)  This is also not a material fact.

29. Cespedes has complaints of abuse of authority against him that allege threats of force using his gun. <u>Id.</u>

**Defendants' Response:**   Deny.  Plaintiff continues to misrepresent the cited testimony, which does not support this fact.  Officer Cespedes did not testify that he "has complaints of abuse of authority against him that allege threats of force using his gun."  (<u>See</u> <u>id.</u>) Further, the CCRB records contained in the cited exhibit do not include any reference to a gun.  (<u>See</u> <u>id.</u>) Defendants also deny the materiality of this fact.

30. Minucci, Rosiello, Feeley and Anderson never spoke with Jason Marshall on the night of the incident. Aboushi Cert. Ex. 37 - Minucci 80:20-24, 82:24-83:2.

**Defendants' Response:**   The cited testimony does not support this fact.  Officer Minucci testified that he—and only he—did not speak to Jason Marshall on the night of the incident. (<u>See</u> <u>id.</u>) Defendants also deny the materiality of this fact.

31. When Benbow and another male left the location, nothing seemed unusual, and they did not walk past Mitchell's vehicle. Aboushi Cert. Ex. 5 - Mitchell 59:19-25.

**Defendants' Response:**  Admit that Officer Mitchell testified that, when plaintiff and Eric Bradley left Amarachi Prime, nothing seemed unusual to him.  (See id.)  Defendants also deny the materiality of this fact.

32. Officers Anderson, Feeley, Rosiello were in a blacked-out unmarked Ford Crown Victoria, with Feeley in the driver's seat, Anderson behind the driver's seat, and Rosiello in the front passenger seat. Aboushi Cert. Ex. 6 - Anderson 84:12-85:6, 89:22-90:3.

**Defendants' Response:**  Admit that, on the night of the incident, Officer Feeley was driving a black, unmarked Ford Crown Victoria, in which Officer Anderson sat behind the driver's seat and Officer Rosiello sat in the front passenger seat.  (See id.) Defendants object to plaintiff's unsupported characterization of the vehicle as "blacked-out." Defendants also deny the materiality of this fact.

33. Sgt. Diab, Officer Minucci and Officer Mitchell were in an unmarked Ford Fusion, that was a gray-blue color with the place number 1464. Aboushi Cert. Ex. 6 - Anderson 84:12-85:6.

**Defendants' Response:**  Admit.

34. Officer Minucci was in the rear seat behind the driver of his vehicle. Aboushi Cert. Ex. 37 - Minucci 105:12-106:16.

**Defendants' Response:**  Admit but deny the materiality of this fact.

35. Benbow had a cup in one hand. Aboushi Cert. Ex. 5 - Mitchell 73:22-74:4, Aboushi Cert. Ex. 6 - Anderson 87:16-20.

**Defendants' Response:**  Admit.  Defendants also deny the materiality of this fact.

36. Officer Mitchell saw that Benbow had a cup in his hand as he was walking down Nassau. Aboushi Cert. Ex. 5 - Mitchell 73:22-74:4

**Defendants' Response:**  Admit.  Defendants also deny the materiality of this fact.

37. When the officers exited their vehicle, Officers Mitchell, Diab and Minucci already had their guns drawn. Aboushi Cert. Ex. 5 - Mitchell 63:14-65:2; Aboushi Cert. Ex. 7 - Diab 98:4-6.

    **Defendants' Response:**  Admit that, upon exiting their vehicle, Officers Mitchell and Minucci and Sgt. Diab drew their firearms.  (See id.)  Defendants deny the materiality of this fact.

38. Upon exiting his vehicle and into the street, Officer Minucci saw Benbow parallel to him approximately 20-30 feet from him in the middle of the street. Aboushi Cert. Ex. 37 - Minucci 105:12-106:16; 109:12-16.

    **Defendants' Response:**  Deny.  The cited testimony does not support this fact.  Officer Minucci testified that plaintiff was 20 to 30 feet away from plaintiff when plaintiff was shot.  (See id.)  Defendants also deny the materiality of this fact.

39. Benbow saw a car creeping up on him with guns pointing out of the window. Aboushi Cert. Ex. 2 - Benbow 103:12-23.

    **Defendants' Response:** Deny.  Video evidence shows that plaintiff did not look towards the vehicle containing Minucci, Mitchell, and Diab until it was in front of him.  (See Surveillance Footage at timestamp 12:45:31-12:45-32, annexed to the DeLuca Decl. as Ex. L.)  Video evidence also shows that there were no "guns pointing out of the window" of that vehicle.  (See id. at timestamp 12:35:31-12:45:35.)  Defendants also deny the materiality of this fact.

40. Benbow alerted his companion about the guns and told him to run. Id

**Defendants' Response:**  The cited testimony does not support this fact.  Plaintiff testified only that he stated, "Yo, run" to Eric Bradley.  (See id.)  Defendants also deny the materiality of this fact.

41. Benbow turned 180 degrees and ran away from the officers that got out of the vehicle. Aboushi Cert. Ex. 7 - Diab 99:8-11, Aboushi Cert. Ex. 6 - Anderson 105:2-23.

**Defendants' Response:**  Admit.

42. Benbow cut between two cars and was shot twice in the back while in the middle of the street. Aboushi Cert. Ex. 5 - Mitchell 90:22-91:8, Aboushi Cert. Ex. 37 - Minucci 104:12-106:16; Aboushi Cert. Ex. 6 - Anderson 94:8-19, 97:9-98:9, 105:2-23, Aboushi Cert. Ex. 2 - Benbow 109:8-16, 110:6-16, 119:1-2, 120:6-7, 135:3-4; Aboushi Cert. Ex. 35.

**Defendants' Response:**  Admit that, upon running away from Minucci, Mitchell, and Diab, plaintiff ran between two cars.  (See Aboushi Cert. Ex. 5 at 94:8-19).  Deny that plaintiff "was shot twice in the back while in the middle of the street."  A photograph of plaintiff's back and right flank depict one gunshot wound to plaintiff's right side and no gunshot wounds to plaintiff's back.  (See Photograph of Plaintiff, annexed to the Declaration of Zachary Kalmbach ("Kalmbach Decl.") as Ex. AB.)  Further, plaintiff's medical records indicate that plaintiff ████████████████████████████████████ ██████████████ (See Kings County Hospital Medical Records ("Medical Records"), annexed to the DeLuca Decl. as Ex. R, at Bates Nos. DEF_3808, DEF_4000-DEF_4001, DEF_4005.)  Further, the cited testimony does not support this fact.

43. Benbow had his back to the officers, and was running away when he was shot. Aboushi Cert. Ex. 1; Aboushi Cert. Ex. 2 - Benbow 103:12-23, 104:11-25; Aboushi Cert. Ex. 2 - Benbow 109:8-16, 110:6-16.

**Defendants' Response:** Deny. Plaintiff was running towards Officer Feeley when he was shot. (See Feeley Deposition Transcript ("Feeley Tr.") at 86:11-22; 144:5-12, annexed to the DeLuca Decl. as Ex. H; Surveillance Footage at timestamp 12:45:31-12:45:38, DeLuca Decl., Ex. L (depicting plaintiff turn and run towards the street, where Officer Feeley was located)).

44. Benbow has two bullet holes in his lower back from being shot by Defendant officers. Aboushi Cert. Ex. 11.

**Defendants' Response:** Deny. Plaintiff's medical records indicate that plaintiff was shot only once in his left, lower back and at least once in his right flank. (See Medical Records, at Bates Nos. DEF_3808, DEF_4000-DEF_4001, DEF_4005, DeLuca Decl., Ex. R.) Further, a photograph of plaintiff's back and right flank depict one gunshot wound to plaintiff's right side and no gunshot wounds to plaintiff's back. (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

45. Officer Feeley was standing in the street. Aboushi Cert. Ex. 6 - Anderson 95:22-23.

**Defendants' Response:** Admit.

46. Officer Feeley shot first and fired three shots at Benbow. Aboushi Cert. Ex. 3 - Feeley 75:7-24; Aboushi Cert. Ex. 6 - Anderson 96:4-13, 97:9-98:9.

**Defendants' Response:** Admit that Officer Feeley fired three shots in the direction of plaintiff and that Officer Anderson testified that he "assumed" that Officer Feeley was the first to shoot. (See Aboushi Cert. Ex. 6 – Anderson 97:4-8.)

47. When Feeley shot Benbow, Benbow fell forward on his stomach. Aboushi Cert. Ex. 30.

**Defendants' Response:**  The cited evidence consists of a CCRB investigator's summary of a purported interview, and thus constitutes inadmissible hearsay.  Thus, the cited evidence does not support this fact.

48. Thereafter, Officer Rosiello fired one shot. Aboushi Cert. Ex. 6 - Anderson 97:9-98:9.

    **Defendants' Response:**  Admit that Officer Rosiello fired one shot.  Deny that Officer Rosiello fired after Benbow fell.  The cited testimony does not support this fact.

49. The graze to Benbow's arm is consistent with him running away as he was shot. Aboushi Cert. Ex. 2 - Benbow 109:22-110:1; Highlands Report at p. 7.

    **Defendants' Response:**  Deny.  The cited evidence does not support this fact.

50. Officer Feeley alleges that he fired at Benbow because he pointed a gun at Feeley. Aboushi Cert. Ex. 3 - Feeley 75:7-24.

    **Defendants' Response:**  Admit.

51. Benbow did not have any weapons or guns. Aboushi Cert. Ex. 5 - Mitchell 89:9-20.

    **Defendants' Response:**  Deny.  The cited testimony does not support this fact.  Officer Mitchell testified only that he did not see plaintiff holding a firearm.  (See id.)  Officers Rosiello, Anderson, and Feeley all observed plaintiff holding a firearm.  (See Rosiello Deposition Transcript ("Rosiello Tr.") at 86:3-14, 88:8-12, annexed to the DeLuca Decl. as Ex. F; Anderson Deposition Transcript ("Anderson Tr.") at 98:10-14, 106:25-107:5, annexed to the DeLuca Decl. as Ex. B; Feeley Tr. at 86:11-22, DeLuca Decl., Ex. H.)  Sgt. Diab observed a silver gun a few feet away from where plaintiff was located on the ground. (See Diab Deposition Transcript ("Diab Tr.") at 102:8-15, annexed to the DeLuca Decl. as Ex. E.)  A loaded chrome Interams Star .45 caliber semi-automatic pistol was recovered from the scene of the shooting and vouchered.  (See Crime Scene Unit Report dated March

14

7, 2015, annexed to the DeLuca Decl. as Ex. O; Photo of Interams Star .45 Caliber Semi-Automatic Pistol, annexed to the DeLuca Decl. as Ex. P; NYPD Property Voucher, annexed to the DeLuca Decl. as Ex. Q.) Plaintiff told a Kings County Criminal Court judge, under oath, that he possessed a firearm on the date of the incident. (See Plea Allocution Transcript ("Plea Tr.") at 17:22-18:5, annexed to the DeLuca Decl. as Ex. W.)

52. Benbow did not gesture towards his waistband to produce a firearm or any other weapon. Aboushi Cert. Ex. 5 - Mitchell 89:9-20, Aboushi Cert. Ex. 2 - Benbow 106:17-18, 107:3-5, 107:16-18.

**Defendants' Response:** Deny. Officer Mitchell testified that he observed plaintiff "gesture with his hand toward his waist." (See Aboushi Cert. Ex. 5 – Mitchell 89:9-13.) Officer Rosiello testified that the observed plaintiff pull a gun from his waistband. (See Rosiello Tr. at 86:3-14, DeLuca Decl., Ex. F.) Surveillance footage shows plaintiff pull a gun from the area of his waistband. (See Surveillance Footage at timestamp 12:45:39-12:45:40, DeLuca Decl., Ex L.)

53. Benbow did not point a gun at anyone or present a gun to anyone. Aboushi Cert. Ex. 5 - Mitchell 63:14-65:2; 69:9-11; Aboushi Cert. Ex. 7 - Diab 102:24-103:2; Aboushi Cert. Ex. 37 - Minucci 90:9-18.

**Defendants' Response:** Deny. The cited testimony does not support this fact. Officers Rosiello observed plaintiff point a gun in his direction. (See Rosiello Tr. at 88:8-12; 138:25, DeLuca Decl., Ex. F.) Officer Feeley also observed plaintiff point a gun in his direction. (See Feeley Tr. at 86:11-22; 144:5-12, DeLuca Decl., Ex. H.)

54. No verbal commands were given prior to shooting Benbow in his back. Aboushi Cert. Ex. 2 - Benbow 103:12-23, 104:11-24, Aboushi Cert. Ex. 35.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Before Officers Rosiello and Feeley discharged their firearms, Sgt. Diab announced "police, get down on the ground."  (See Diab Tr. at 94:13-21.)  Det. Mitchell heard Sgt. Diab yell "police."  (See Mitchell Deposition Transcript ("Mitchell Tr.") at 61:11-24, annexed to the DeLuca Decl. as Ex. G.)  Before he discharged his firearm, Officer Feeley yelled "Police. Drop the gun."  (Feeley Tr. at  91:17-23, DeLuca Decl., Ex. H.)  Before discharging his firearm, Officer Rosiello heard Mitchell or Minucci yell, in sum and substance "police," "don't move," or "drop."  (See Rosiello Tr. at 80:2-9, DeLuca Decl., Ex. F.)

55. Benbow did not hear anybody say "stop" or "police." Aboushi Cert. Ex. 2 - Benbow 105:5-11.

**Defendants' Response:**  Admit that plaintiff testified that he did hear anybody say "stop" or "police."  Deny the materiality of this fact.

56. Benbow had no indication of who was in the car. Aboushi Cert. Ex. 2 - Benbow 103:12-23; Aboushi Cert. Ex. 6 - Anderson 84:12-85:6; Aboushi Cert. Ex. 35.

**Defendants' Response:**  Deny.  The cited testimony does not support this fact.  As set forth in defendants' response to paragraph 54, multiple officers announced themselves as police.  (See ¶ 54.)  Defendants also object to this fact insofar as it is vague as to the meaning of "Benbow had no indication."

57. According to Sgt. Diab, no officer gave Benbow any verbal commands. Aboushi Cert. Ex. 31.

**Defendants' Response:**  Deny.  The cited evidence, which consists of a CCRB investigator's summary of a purported interview with Sgt. Diab, constitutes inadmissible

hearsay.  Further, the CCRB investigator noted that Sgt. Diab could not recall whether Officers Rosiello, Anderson, or Feeley issued plaintiff any commands.  (See id.)

58. Officer Mitchell does not recall hearing any verbal commands. Aboushi Cert. Ex. 5 - Mitchell 73:14-17.

   **Defendants' Response:**  Again, plaintiff misrepresents the cited testimony, which does not support this fact.  Officer Mitchell testified that he could not remember whether he issued any verbal commands.  (See id.)  Defendants also deny the materiality of this fact.

59. Officer Anderson told CCRB that neither he, nor Rosiello, nor Feeley issued Benbow any commands. Aboushi Cert. Ex. 27; Aboushi Cert. Ex. 4 - Rosiello 101:20-24; Aboushi Cert. Ex. 5 - Mitchell 73:14-17.

   **Defendants' Response:**  The cited evidence does not support this fact.  The CCRB document cited in support of this fact, which contains one unredacted sentence written by a CCRB investigator, constitutes inadmissible hearsay.  In any event, the CCRB investigator noted only that Officer Anderson purportedly said that neither he, nor Rosiello, nor Feeley issued plaintiff any commands as "he ran west on Nassau Street," whereas this fact does not include a time limitation.  (See Aboushi Cert. Ex. 27.)  Further, Officer Rosiello testified only that he could not recall whether Feeley gave any commands as plaintiff "was running down the sidewalk."  (See Aboushi Cert. Ex. 4 – Rosiello at 101:21-24.)  Likewise, Officer Mitchell testified only that he could not remember whether he issued any verbal commands.  (See Aboushi Cert. Ex. 4 – Mitchell at 73:14-7.)

60. Officer Mitchell did not see any object(s) in Benbow's hands. Aboushi Cert. Ex. 33.

**Defendants' Response:**    Deny.    The cited evidence, which consists of a CCRB investigator's summary of a purported interview with Officer Mitchell, constitutes inadmissible hearsay.  (See id.)  Defendants also deny the materiality of this fact.

61. Officer Rosiello did not hear any commands given to Benbow before the shots. Aboushi Cert. Ex. 36.

**Defendants' Response:**    Deny.   Plaintiff continues to misrepresent the cited evidence, which indicates that Rosiello stated that he did not hear *Officer Feeley* "give any commands or say anything."  (See id.)  Further, before discharging his firearm, Officer Rosiello heard Mitchell or Minucci yell, in sum and substance "police," "don't move," or "drop."  (See Rosiello Tr. at 80:2-9, DeLuca Decl., Ex. F.)

62. Officer Feeley first testified that Benbow was between the cars from he shot him, which is undermined by forensic evidence. Aboushi Cert. Ex. 3 - Feeley 80:19-23. Aboushi Cert. Ex. 13 at p. 12.

**Defendants' Response:**   Admit the substance of Officer Feeley's testimony, but deny that it "is undermined by forensic evidence."  Defendants note that the diagram cited in support of this fact depicts the figure described as "Mr. Benbow" between two cars.  (See Aboushi Cert. Ex. 13 at 12.)  Additionally, the cited expert report does not include an opinion that Officer Feeley's testimony "is undermined by forensic evidence."  (See id., *passim*.)

63. Officer Feeley later testified that Benbow was exiting the two cars when Feeley shot Benbow. Aboushi Cert. Ex. 3 - Feeley 110:12-13.

**Defendants' Response:**    Admit that Officer Feeley testified that plaintiff was "coming out between the two cars" when Feeley discharged his firearm.  (See id.)

64. According to Officer Feeley, Officers Rosiello and Anderson were on the sidewalk when Feeley fired his weapon. Aboushi Cert. Ex. 3 - Feeley 82:19-25.

**Defendants' Response:**  Admit.

65. According to Officer Anderson, he and Rosiello exited their car and made their way to the sidewalk while Feeley was in the street. Aboushi Cert. Ex. 6 - Anderson 91:5-92:2.

**Defendants' Response:**  Admit.

66. The shots were staggered – there were approximately 20-30 seconds between shots. Aboushi Cert. Ex. 3 - Feeley 146:23-24; Aboushi Cert. Ex. 6 - Anderson 138:20-139:2.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Officer Anderson testified that two to three seconds elapsed between the time Officer Feeley fired his first shot until the time Officer Rosiello fired his one and only shot.  (See Aboushi Cert. Ex. 6 – Anderson at 139:3-10.)  Further, in the cited portion of Officer Feeley's testimony, he did not testify that "there were 20-30 seconds between shots," but rather, in response to being asked to estimate how much time elapsed between the first and last shot, he testified "Oh, it was very quick . . . [m]aybe 20 seconds, 30—not—not long."  (See Aboushi Cert. Ex. 3 – Feeley 146:17-24.)  Officer Feeley went on to clarify that he had trouble estimating the time and that he fired three shots "in a row . . . like a boom, boom, boom."  (See Feeley Deposition Transcript ("Feeley Tr. 2") at 149:24-150:21, annexed to the Kalmbach Decl. as Ex. AC.)

67. Officer Rosiello testified that Benbow did not see where Officer Rosiello was when Benbow ran away from the other officers. Aboushi Cert. Ex. 4 - Rosiello 93:17-94:7.

**Defendants' Response:**  Deny insofar as Officer Rosiello testified that plaintiff initially did not see Rosiello, but that there came a time when plaintiff saw Rosiello on the sidewalk. (See id. at 94:4-24.)

68. Officer Rosiello did not recall any details regarding how Benbow was running, including but not limited to, what Benbow's arms were doing, which hand the glass was in, which hand the gun was in, and whether Benbow bent back or twist after he was shot. Aboushi Cert. Ex. 4 – Rosiello 97:2-16; 105:16-21.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Officer Rosiello testified extensively as to his observations, including, *inter alia*, plaintiff running toward Rosiello and pointing a gun in Rosiello's direction.  (See, e.g., Rosiello Tr. at 86:3-14, DeLuca Decl., Ex. F.)

69. Benbow never pointed a gun at Rosiello. Aboushi Cert. Ex. 2 - Benbow 55:19-23; Aboushi Cert. Ex. 4 - Rosiello 99:4-14; Aboushi Cert. Ex. 7 - Diab 102:24-103:17; Aboushi Cert. Ex. 6 - Anderson 103:7-11.

**Defendants' Response:**  Deny.  The cited evidence does not support this contention. Officer Rosiello testified that, while plaintiff did not point the gun directly at Rosiello, plaintiff's gun "came across" Rosiello and was pointed in Rosiello's direction.  (See Rosiello Tr. at 88:9-18, DeLuca Decl., Ex. F.)  Further, Sgt. Diab testified only that he did not see plaintiff point the gun.  (See Aboushi Cert. Ex. 7 – Diab at 103:3-5.)  Additionally, Officer Anderson did not testify that plaintiff "never pointed a gun at Rosiello," but rather that, "at the time Rosiello fired his weapon at Mr. Benbow, Mr. Benbow was not pointing his weapon towards Officer Rosiello."  (See Aboushi Cert. Ex. 6 – Anderson at 103:7-11.)

70. Benbow never pointed a gun at Mitchell, Diab nor Minucci. Aboushi Cert. Ex. 5 -Mitchell 63:14-65:2; Aboushi Cert. Ex. 7 - Diab 102:24-103:17; Aboushi Cert. Ex. 37 - Minucci 90:9-18.

   **Defendants' Response:**  Admit.

71. Benbow never pointed a gun at Feeley. Aboushi Cert. Ex. 32.

   **Defendants' Response:**  Deny.  The cited evidence, which is a CCRB investigator's summary of a purported interview with Officer Anderson, constitutes inadmissible hearsay.

72. Sgt. Diab did not see Benbow as a threat, and he did not have any reason to shoot Mr. Benbow, so he did not use his firearm. Aboushi Cert. Ex. 7 - Diab 111:7-25.

   **Defendants' Response:**  Admit that Sgt. Diab testified that, *from his vantage point*, he did not have a reason to shoot at plaintiff.  (See id.).  Sgt. Diab also testified that he was focused on Bradley when he heard gunshots.  (See Diab Tr. at 99:12-23, DeLuca Decl., Ex. E.)

73. Sgt. Diab, who was right behind Benbow, didn't see Benbow with any gun or weapon. Aboushi Cert. Ex. 10.

   **Defendants' Response:**  This fact is not supported by the cited evidence, which consists of a medical record.

74. Officer Rosiello knew that Benbow was trying to run away from the officers. Aboushi Cert. Ex. 4 - Rosiello 116:12014.

   **Defendants' Response:**  Deny insofar as the cited portion of Rosiello's testimony is limited to plaintiff's initial decision to turn to his right and run between two cars.

75. Officer Rosiello fired at Benbow after Benbow turned into the street. Aboushi Cert. Ex. 4 - Rosiello 138:12-18; 140:15-19.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Officer Rosiello testified that he fired at plaintiff as plaintiff was turning toward the street.  (See id. at 140:15-20.)

76. Officer Rosiello never saw Benbow point a gun at Officer Feeley. Aboushi Cert. Ex. 4 - Rosiello 166:15-167:9.

**Defendants' Response:**  Admit.  This is also not a material fact.

77. Officer Anderson did not say anything to Officer Rosiello when he fired. Aboushi Cert. Ex. 6 - Anderson 105:15-17.

**Defendants' Response:**  Admit that, at the moment Officer Rosiello fired his weapon, Officer Anderson did not say anything to him.  (See id.)

78. Officer Anderson did not try to stop Officer Rosiello from firing in any way. Aboushi Cert. Ex. 6 - Anderson 105:18-20, 123:18-124:3.

**Defendants' Response:**  Admit.

79. Officer Anderson did not try to stop Officer Feeley from firing in any way. Aboushi Cert. Ex. 6 - Anderson 123:18-124:3.

**Defendants' Response:**  Admit.

80. Officer Anderson could see over the Crown Victoria and the row of parked cars to where Feeley was and chose not to shoot Benbow, demonstrating that Benbow never posed a threat to any officer and did not deserve to get shot. Aboushi Cert. Ex. 6 - Anderson 106:24-107:14.

**Defendants' Response:**  Deny.  Defendants' object to plaintiff's speculative commentary. Officer Anderson testified that he did not fire at plaintiff because Anderson's line of fire was obstructed by Officer Rosiello.  (See Anderson Tr. at 108:2-7, DeLuca Decl., Ex. B.)

22

81. Officer Anderson had a clear line of sight to Officer Feeley. Id.  Defendants also object to plaintiff's subjective conclusions and commentary, and deny the materiality of this fact.

**Defendants' Response:**  Defendants' object to plaintiff's subjective characterization. Officer Anderson testified that, while he could see plaintiff, his line of fire was obstructed by Officer Rosiello.  (See Anderson Tr. at 106:15-108:7, DeLuca Decl., Ex. B.)

82. Officer Anderson could see that Officer Feeley was not in any danger or trouble. Id.

**Defendants' Response:**  Deny.  Again, plaintiff misrepresents the cited testimony, which does not support this fact.  Officer Anderson did not testify that he "could see that Officer Feeley was not in any danger or trouble."

83. None of the Defendants testified they were trying to arrest the Plaintiff when they shot him, but rather, they shot him because he allegedly pointed a gun at Feeley. Id.

**Defendants' Response:**  The cited evidence does not support this contention.  Officer Anderson did not testify that "none of the Defendants testified they were trying to arrest the Plaintiff when they shot him, but rather, they shot him because he allegedly pointed a gun at Feeley."

84. After the incident, the officers were not separated and had a conversation specifically alleging that Benbow had a gun. Aboushi Cert. Ex. 5 - Mitchell 70:17-18; 71:8-20.

**Defendants' Response:**  Admit insofar as Mitchell testified that he had a discussion with other police officers after the shooting during which someone stated that plaintiff "had a gun."  (See id.)  Defendants also deny the materiality of this fact.

85. After the incident, Benbow was charged after the incident by way of a falsified complaint based upon Defendant Anderson's false testimony. Aboushi Cert. Ex. 16.

**Defendants' Response:**    Deny.    The cited evidence does not support this fact. Additionally, defendants object to plaintiff's subjective conclusions, which are not proper statements of fact.

86. The criminal complaint cited the provenly false statement of Police Officer Anderson that Benbow was allegedly running towards the Defendant Officers while waving a gun. Aboushi Cert. Ex. 12 at p. 5-10; Aboushi Cert. Ex. 13; Aboushi Cert. Ex. 14 at p. 4-6; Aboushi Cert. Ex. 15 at p. 7-9.

**Defendants' Response:**    Deny.  The cited evidence does not support this fact.  That is, none of the cited expert reports opine on the accuracy of the criminal court complaint or on whether plaintiff "wav[ed] a gun."  (See all cited expert reports, *passim*.)  Moreover, neither Pollini nor Caron nor Drukteinis opined on where Benbow was "allegedly running." (See Aboushi Cert. Ex. 12, *passim*; Aboushi Cert. Ex. 13, *passim*, Aboushi Cert. Ex. 14, *passim*.)  In any event, this fact does not include a time period, and plaintiff himself admits that, at a minimum, he ran on the sidewalk towards the direction of where Rosiello was located.  (See Benbow Tr. at 104:11-16, DeLuca Decl., Ex. A; see also Mitchell Tr. at 61:11-24, DeLuca Decl., Ex. G; see also Diab Tr. at 98:22-99:11, DeLuca Decl., Ex. E; see also Minucci Tr. at 89:24-90:4, DeLuca Decl., Ex. D.)  Moreover, even if the Highland Report is accurate, then plaintiff would have been running towards the other defendant officers when he was shot.  (See Surveillance Footage at timestamp 12:45:38-12:45:46, DeLuca Decl., Ex. L.)  Additionally, defendants object to plaintiff's subjective conclusions and characterizations, which are not proper statements of fact.

<u>PO Rosiello</u>

87. Officer Rosiello has approximately 10 lawsuits in the last three years. Aboushi Cert. Ex. 4 - Rosiello 15:7-24; Aboushi Cert. Ex. 19.

   **<u>Defendants' Response:</u>**   Deny.   Defendants object to this fact insofar as it is unclear plaintiff means by "the last three years."   Officer Rosiello testified on October 27, 2020 that he could not recall any lawsuits "within the last . . . three years." (Aboushi Cert. E. 4 – Rosiello at 15:20-24.)  As such, construing the "last three years" to mean the period from October 27, 2017 until October 27, 2020, defendants state that this fact is not material. Even construing this fact to refer to lawsuits filed against Rosiello prior to the date of the incident, the cited evidence indicates that Rosiello was named as a defendant in only two such lawsuits.  (<u>See</u> Aboushi Cert. Ex. 19.)  Defendants also deny the materiality of this fact.

88. In each of the 10 lawsuits, Officer Rosiello was named as a Defendant in his official capacity as a Police Officer. Aboushi Cert. Ex. 4 - Rosiello 16:8-12; Aboushi Cert. Ex. 19.

   **<u>Defendants' Response:</u>**  Defendants deny the materiality of this fact.

89. The NYPD never spoke to Officer Rosiello about his lawsuit history. <u>Id</u>; Aboushi Cert. Ex. 4 - Rosiello 29:3-16.

   **<u>Defendants' Response:</u>**  Defendants deny the materiality of this fact.  Defendants also object to this fact insofar as it is vague as to the meaning of the term "NYPD," as the NYPD is not a person.

90. Officer Rosiello has more than 10 CCRB complaints lodged against him. Aboushi Cert. Ex. 4 - Rosiello 26:21-27:5.

   **<u>Defendants' Response:</u>**  Defendants deny the materiality of this fact.

91. The NYPD never spoke to Officer Rosiello about the number of CCRB complaints against him. Aboushi Cert. Ex. 4 - Rosiello 25:7-26:20.

**Defendants' Response:**  Defendants deny the materiality of this fact. Defendants also object to this fact insofar as it is vague as to the meaning of the term "NYPD," as the NYPD is not a person.

92. The NYPD has never referred Officer Rosiello to poor performance monitoring. Aboushi Cert. Ex. 4 - Rosiello 29:3-16.

**Defendants' Response:**  Defendants deny the materiality of this fact.  Defendants also object to this fact on the grounds that it is vague as to the meaning of the term "poor performance monitoring."

93. Officer Rosiello is not familiar with the duty to intervene as a police officer. Aboushi Cert. Ex. 4 - Rosiello 52:6-7.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Defendants also deny the materiality of this fact.

94. Officer Rosiello did not receive use of force training outside of the academy. Aboushi Cert. Ex. 4 - Rosiello 46:25-47:4.

**Defendants' Response:**  Admit that Rosiello testified that he did not receive "training for use of force" outside of the police academy.  (See id.)  Defendants deny the materiality of this fact.

95. Officer Rosiello was provided a patrol guide in the Police Academy but was never provided one outside of the academy. Aboushi Cert. Ex. 4 - Rosiello 45:25-46:8.

**Defendants' Response:**  Admit that Officer Rosiello testified that he did not receive a second copy of the NYPD Patrol Guide in addition to the copy he already had from the police academy.  (See id.)  Defendants deny the materiality of this fact.

96. Officer Rosiello based upon the number of complaints alleged against Rosiello, he should have been in force monitoring. Aboushi Cert. Ex. 12 at p. 5-10; see also Aboushi Cert. Exs. 25 and 29 generally.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Moreover, the cited disciplinary documents do not establish that Officer Rosiello qualified for performance monitoring.  For example, while his IAB history notes that Rosiello was involved in several use-of-force investigations (identified by "IA Log#"), it does not indicate whether Rosiello was actually accused of using force himself in every case.  (See Aboushi Cert. Ex. 25.)  Further, Officer Rosiello's CCRB history indicates that there were only three complaints against Rosiello prior to the incident, which, according to the documents annexed to plaintiff's opposition, would not qualify Rosiello for performance monitoring.  (See Aboushi Cert. Ex. 29 at 2; see also Aboushi Cert. Ex. 8 at DEF_3752.)  Defendants also deny the materiality of this fact.

PO Feeley

97. The NYPD never spoke to Officer Feeley about his lawsuit history. Aboushi Cert. Ex. 3 - Feeley 16:17-17:2.

**Defendants' Response:**  Defendants deny the materiality of this fact.  Defendants also object to this fact insofar as it is vague as to the meaning of the term "NYPD," as the NYPD is not a person.

98. The NYPD never spoke to Officer Feeley about his CCRB complaint history. Aboushi Cert. Ex. 3 - Feeley 17:3-13; 19:2-9; 28:19-29:11.

**<u>Defendants' Response:</u>** Defendants deny the materiality of this fact. Defendants also object to this fact insofar as it is vague as to the meaning of the term "NYPD," as the NYPD is not a person.

99. The NYPD never spoke to Officer Feeley about his Internal Affairs history. Aboushi Cert. Ex. 3 - Feeley 18:12-18.

**<u>Defendants' Response:</u>** Defendants deny the materiality of this fact. Defendants also object to this fact insofar as it is vague as to the meaning of the term "NYPD," as the NYPD is not a person.

100. Officer Feeley had enough complaints lodged against him to be in monitoring. Aboushi Cert. Exs. 20, 24 and 28.

**<u>Defendants' Response:</u>** Deny. The cited evidence does not support this fact. This fact does not define "monitoring" or any requirements of such a program. Moreover, the cited disciplinary documents do not establish that Officer Feeley qualified for performance monitoring. For example, Feeley's IAB history lists only one force investigation involving Feeley prior to the incident.[2] (<u>See</u> Aboushi Cert. Ex. 24 – IAB Feely at DEF_3430-DEF_3431.) Further, Feeley's CCRB history indicates that there were five complaints against him in the more than five years preceding the incident, which, according to the documents annexed to plaintiff's opposition, would not qualify him for performance

---

[2] Defendants note that, while there are three entries on Feeley's IAB history—prior to the incident—which related to force allegations, the comprise only one complaint, evidenced by the fact that they all have the same complaint number and all occurred on February 14, 2014. (<u>See</u> Aboushi Cert. Ex. 24 – IAB Feely at DEF_3430-DEF_3431.)

monitoring. (See Aboushi Cert Ex. 28 at 2; see also Aboushi Cert. Ex. 8 at DEF_3752.) Defendants also deny the materiality of this fact.

101.    The NYPD never placed Officer Feeley on any performance monitoring, nor talked to him about performance monitoring. Aboushi Cert. Ex. 3 - Feeley 28:19-29:11.

**Defendants' Response:**  Defendants deny the materiality of this fact.

102.    Officer Feeley has more than two lawsuits filed against him. Aboushi Cert. Ex. 3 - Feeley 29:21-23.

**Defendants' Response:**  Construing this fact as pertaining to lawsuits filed against Officer Feeley in his capacity as a police officer prior to the date of this incident, defendants deny this fact and state that, upon information and belief and public records, Officer Feeley had never been a defendant in a lawsuit prior to the date of this incident.  As such, to the extent this contention refers to lawsuits filed prior to the incident, the cited evidence does not support this fact.  Defendants also deny the materiality of this fact.

103.    Officer Feeley was never sent for additional training as a result of complaints lodged against him. Aboushi Cert. Ex. 3 - Feeley 32:16-23.

**Defendants' Response:**  Defendants deny the materiality of this fact.

104.    Officer Feeley was never sent for additional training as a result of the lawsuits filed against him. Id.

**Defendants' Response:**  Defendants deny the materiality of this fact.

105.    Officer Feeley cannot recall if he received use of force training between the time that he graduated the academy and the shooting of Benbow. Aboushi Cert. Ex. 3 - Feeley 43:20-24.

**Defendants' Response:**  Defendants deny the materiality of this fact.

PO Minucci

106.      Officer Minucci has approximately ten lawsuits against him. Aboushi Cert. Ex. 37

- Minucci 15:25-16:2; Aboushi Cert. Ex. 26.

**Defendants' Response:**  Construing this fact as pertaining to lawsuits filed against Officer

Minucci in his capacity as a police officer prior to the date of this incident, defendants deny

this fact and state that, upon information and belief and public records, Officer Minucci

was named as a defendant in five lawsuits.  As such, construing this contention to refer to

lawsuits filed prior to the incident, the cited evidence does not support this fact.  Defendants

also deny the materiality of this fact.

107.      Allegations in the lawsuits include excessive force, illegal search, and violation of

rights. Aboushi Cert. Ex. 37 - Minucci 18:24-19:5.

**Defendants' Response:**  Admit but deny the materiality of this fact.

108.      Minucci ███████████████████████████████████████

███████  Aboushi Cert. Ex. 37 - Minucci 29:21-30:4.

**Defendants' Response:**  Admit the substance of Officer Minucci's testimony but deny its

materiality.

109.      ████████████████████████████████████████

████████████████████████  Aboushi Cert. Ex. 37 - Minucci 35:10-

19.

**Defendants' Response:**  Admit the substance of Officer Minucci's testimony but deny its

materiality.

<u>PO Anderson</u>

110.    The NYPD never spoke to Officer Anderson about his CCRB complaints. Aboushi Cert. Ex. 6 - Anderson 32:17-25; Aboushi Cert. Ex. 26.

**<u>Defendants' Response:</u>**  Admit the substance of Officer Anderson's testimony but deny its materiality.  Defendants also object to this fact insofar as it is vague as to the meaning of the term "NYPD," as the NYPD is not a person.

111.    Anderson testified at the grand jury proceeding regarding Benbow. Aboushi Cert. Ex. 6 - Anderson 126:11-13.

**<u>Defendants' Response:</u>**  Admit.

<u>Sgt. Diab</u>

112.    Diab ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Aboushi Cert. Ex. 7 - Diab 32:10-15.

**<u>Defendants' Response:</u>**  The cited testimony does not support this fact.  Sgt. Diab testified that he could not recall what performance monitoring consisted of beyond not being able to "get any more CCRBs" and attending a training.  (<u>See</u> <u>id.</u>)  Defendants also deny the materiality of this fact.

113.    Diab ████████████████████████████████████████████████

Aboushi Cert. Ex. 7 - Diab 32:21-33:11.

**<u>Defendants' Response:</u>**  Admit the substance of Sgt. Diab's testimony but deny its materiality.

114.    Sgt. Diab was the direct line supervisor for officers Rosiello, Anderson and Feeley at the time of the incident, and they reported directly to Diab as their Sergeant. Aboushi Cert. Ex. 7 - Diab 61:13-62:9.

**Defendants' Response:**    Admit that Sgt. Diab testified that he was a "direct line supervisor."   Deny that the cited evidence supports the fact that Officers Rosiello, Anderson, and Feeley "reported directly to Diab as their Sergeant."   (See id.)   Defendants also deny the materiality of this fact.

115.    No one shared or discussed Rosiello, Anderson and Feeley's CCRB histories with Sgt. Diab. Id.

**Defendants' Response:**    Admit the substance of Sgt. Diab's testimony but deny its materiality.

116.    No one shared or discussed Rosiello, Anderson and Feeley's Internal Affairs histories with Sgt. Diab. Id.

**Defendants' Response:**    Admit the substance of Sgt. Diab's testimony but deny its materiality.

117.    No one shared or discussed Rosiello, Anderson and Feeley's lawsuit histories with Sgt. Diab. Id.

**Defendants' Response:**    Admit the substance of Sgt. Diab's testimony but deny its materiality.

118.    Throughout Diab's time acting in a supervisory capacity, no one ever gave him CCRB, IA or lawsuit histories for the people that he supervised. Aboushi Cert. Ex. 7 - Diab 63:15-64:3.

**Defendants' Response:**  Admit the substance of Sgt. Diab's testimony but deny its materiality.

GO-15 Proceeding

119.    GO-15 proceedings are held after police officers have had a significant incident, and superiors like Lieutenants, Captains, and Deputy Inspectors are present. Aboushi Cert. Ex. 4 - Rosiello 37:12-38:7.

**Defendants' Response:**  Admit that Rosiello testified that "a GO-15 . . .  is after a significant incident you're brought in and there are superiors there . . . lieutenants, captains, deputy inspectors[.]"  (See id.)  Defendants deny that the cited testimony supports this fact, as Officer Rosiello is not qualified to testify as to City policies in general.  Defendants deny the materiality of this fact.

120.    At the GO-15 proceeding, the officers involved are questioned about the significant incident, with representation provided by the union, the PBA. Id.

**Defendants' Response:**  Admit that Officer Rosiello testified that, he was asked questions about what happened the night of the incident, and that a union delegate was present.  (See id.)

121.    The GO-15 proceeding is held towards the end of the investigation, right before it is closed, as a formality. Aboushi Cert. Ex. 4 - Rosiello 39:10-15.

**Defendants' Response:**  Admit that, when asked, "So they do the investigation and right before they close it, they get your GO-15 done so they can just check that box for it to be done?" Officer Rosiello responded "To my knowledge, that's how it works."  (See id.) Deny that the cited testimony supports the fact that GO-15 proceedings in general are "held towards the end of the investigation, right before it is closed, as a formality."  Again,

33

plaintiff misrepresents the cited testimony.  Additionally, Officer Rosiello is not qualified to testify to this fact; and he did not conduct the investigation.  Defendants also deny the materiality of this fact.

122.    Officer Rosiello appeared at a GO-15 proceeding in relation to this incident and provided answers to the questions at the proceeding. Aboushi Cert. Ex. 4 - Rosiello 40:3-13.

**Defendants' Response:**  Admit.  Defendants deny the materiality of this fact.

123.    Between the time of the shooting and the GO-15 proceeding, the officers involved were kept together in a gym, which permitted them to discuss the shooting and align their stories. Aboushi Cert. Ex. 6 - Anderson 117:10-15.

**Defendants' Response:**  Deny.  Plaintiff has not attached the cited testimony to his opposition and thus this fact is not supported by evidence.  Defendants' also object to plaintiff's repeated misleading and inaccurate commentary and unsupported conclusions. Defendants also deny the materiality of this fact.

<u>Forensic Evidence</u>

124.    No DNA or fingerprints recovered from the gun located at the scene. Aboushi Cert. Ex. 22; Aboushi Cert. Ex.11 at DEF 1704; Aboushi Cert. Ex. 2 - Benbow 57:6-7.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.

125.    Defendant Anderson swore out a false criminal complaint against Plaintiff. Aboushi Cert. Ex. 16.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Defendants object to plaintiff's continued commentary and unsupported conclusions.

126.    Anderson testified that Benbow didn't realize Anderson, Feeley, and Rosiello were there when he ran towards them. Aboushi Cert. Ex. 32.

**Defendants' Response:**    Deny.    The cited evidence, which consists of a CCRB investigator's written summary of a purported interview with Officer Anderson, constitutes inadmissible hearsay and, in any event, does not support this fact.

127.    The figure depicting Benbow's injuries are inaccurate. Aboushi Cert. Ex. 2 - Benbow 122:3-7.

**Defendants' Response:**    Deny.    Photographs of plaintiff's gunshot wounds support the CSU diagram.    (See CSU Diagram of Plaintiff's Gunshot Wounds, DeLuca Decl., Ex. S; see also Photograph of Plaintiff, Kalmbach Decl., as Ex. A (depicting a gunshot wound on the right side of plaintiff's body, and not showing any gunshot wound on plaintiff's lower back)).

128.    Benbow was hit lower and to the middle of his back, whereas the figure depicts the injuries as towards his sides. Aboushi Cert. Ex. 2 - Benbow 123:7-16; Aboushi Cert. Ex. 12 at p. 5-10; Aboushi Cert. Ex. 13; Aboushi Cert. Ex. 14 at p. 4-6; Aboushi Cert. Ex. 15 at p. 7-9.

**Defendants' Response:**    Deny.    The cited expert reports do not support this fact.    None of the cited expert reports opined on the accuracy of the aforementioned diagram, nor do any of plaintiff's expert opine with a reasonable degree of certainty that plaintiff was shot in the middle of his back.    (See All cited expert reports, *passim.*)    Indeed, none of plaintiff's experts opined to a reasonable degree of certainty on where Benbow was "shot."    (See id. *passim.*)    In any event, a photograph of plaintiff's back depicts a gunshot wound to

plaintiff's right side, and does not show any gunshot wounds to his back. (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

129.    Official police reports state that Benbow was shot while fleeing, and do not mention anything about him possessing a gun or pointing it. Aboushi Cert. Ex. 11 at DEF 1690.

**Defendants' Response:** Deny. The cited evidence does not support this fact. The single page of a large investigative file to which plaintiff cites states that plaintiff was shot when he was confronted by Feeley, Rosiello, and Anderson and that a Star Interarms .45 caliber pistol was recovered at the scene. (See id.) To the extent plaintiff is alleging that *all* "official police reports state that Benbow was shot while fleeing, and do not mention anything about him possessing a gun or pointing it," the cited evidence does not support this fact.

Use of Excessive Force Expert Report[3]

130.    Joseph A. Pollini is a retired member of the NYPD that served on the force for more than 33 years in numerous capacities and ranks. Aboushi Cert. Ex. 12 at ¶2.

**Defendants' Response:** Admit that plaintiff's purported expert claims to be a retired member of the NYPD. Defendants also deny the materiality of this fact.

131.    Pollini has experience testifying as an expert before courts on criminal matters and proper police procedures. Id.

---

[3] The Court should disregard the Pollini expert report, as it is clear that it should be precluded. The report does not reflect that Pollini received any specialized training pertaining to the use of deadly force or that he provided any such training while employed by the NYPD. (See Aboushi Cert. Ex. 12, *passim*.) As such, Pollini is not qualified to offer expert opinions on the use of deadly force. Moreover, the report lacks reliability, as Pollini did not employ any sort of specialized methodology in coming to his various conclusions. (See id.) Indeed, the only methodology employed by Pollini is his summarization of the facts and his own interpretation of those facts. Further, even a cursory review of the report reveals that it is rife with speculation, credibility assessments, and legal conclusions. Indeed, Pollini's ultimate "conclusions" state that the officers used "unwarranted and excessive force" and that "no reasonable officer could have concluded that deadly physical force was necessary." (Id.) Obviously, Pollini's numerous purported factual findings and legal conclusions intrudes on the province of the Court and/or jury.

**Defendants' Response:** Admit that plaintiff's purported expert claims to have experience testifying as an expert. Defendants also deny the materiality of this fact.

132.    The individual police officers failed to adhere to NYPD guidelines when they used deadly and excessive force. Aboushi Cert. Ex. 12 at ¶12.

**Defendants' Response:** Deny, except admit that plaintiff's purported expert claims that defendants did not adhere to NYPD guidelines. Pollini is not qualified to opine on NYPD policy. Defendants also deny the materiality of this fact.

133.    A reasonable officer would not have fired his weapon to protect his partner when he did not know where his partner was. Aboushi Cert. Ex. 12 at ¶¶12(c), 13.

**Defendants' Response:** Deny, except admit that plaintiff's purported expert claims that a reasonable officer would not have fired his weapon to protect his partner when he did not know where his partner was located. This is not a proper expert opinion, as Pollini is neither qualified nor permitted to offer legal conclusions.

134.    Rosiello claimed that he was shooting to protect Feeley, yet when asked if he knew where Feeley was in that moment, Officer Rosiello did not know. Pollini at ¶12(b).

**Defendants' Response:** The cited evidence does not support this fact, as the cited section of the Pollini report does not cite to any testimony. Further, Pollini's characterization of evidence and commentary on the credibility of officers does not constitute an admissible expert opinion. Moreover, the cited section of the Pollini report is misleading, as Rosiello unequivocally testified that Feeley was located "in the street . . . on the other side of the car from where I was." (See Rosiello Tr. at 100:5-11, DeLuca Decl., Ex. F.)

135.    Rosiello's use of force was unreasonable and was not justified within the NYPD Guidelines. Aboushi Cert. Ex. 12 at ¶12(d).

**Defendants' Response:**   Deny.  Defendants also object to plaintiff's legal conclusions and immaterial facts as to "NYPD Guidelines."  Pollini is not qualified to opine on NYPD policy.  Moreover, Pollini is not qualified or permitted to offer legal conclusions.

136.     Benbow was in the street when he was shot, and there is no apparent reason or justification to shoot Benbow in the back as he was fleeing a scene. Id.

**Defendants' Response:**   Admit that plaintiff was located on a street when he was shot. Deny that there was "no apparent reason or justification to shoot Benbow in the back as he was fleeing a scene," as plaintiff was running towards Officer Feeley when he was shot and plaintiff was not shot directly in his back.  (See, Feeley Tr. at 86:11-22, 144:5-12, DeLuca Decl., Ex. H; Surveillance Footage at timestamp 12:45:31-12:45:38, DeLuca Decl., Ex. L; Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)  Deny that plaintiff was shot in the back.  (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)  Defendants also object to plaintiff's legal conclusions, which are not proper statements of fact, and immaterial allegations as to "NYPD Guidelines."  Further, Pollini is not qualified or permitted to offer legal conclusions.

137.     The forensic evidence indicates that Benbow was shot in his back, which indicates that his back was facing the officers when they shot him, as police officers are taught to aim for center mass. Aboushi Cert. Ex. 12 at ¶¶12(d-e), 14(c).

**Defendants' Response:**  Deny.  Further, a photograph of plaintiff's back depicts a gunshot wound to plaintiff's right side, and does not show any gunshot wounds to his back.  (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)  Further, Pollini does not purport to be a forensic expert, and thus the cited report does not support this fact.

38

138.      Given that Benbow had ran past Officer Rosiello and was running away, there was no lawful reason to use force against Benbow. Aboushi Cert. Ex. 12 at ¶12(d).

**Defendants' Response:**   Deny insofar as plaintiff was running towards Officer Feeley when he was shot.  (See, Feeley Tr. at 86:11-22, 144:5-12, DeLuca Decl., Ex. H; Surveillance Footage at timestamp 12:45:31-12:45:38, DeLuca Decl., Ex. L.)  Defendants object to this fact insofar as it is vague as to the meaning of the term "running away" and to the extent it draws legal conclusions, which are not proper statements of fact.  Further, Pollini is not qualified or permitted to offer legal conclusions.

139.      If Benbow was facing either Officer Feeley or Rosiello, he would have wounds to the front of his body, in his torso, rather than in his back. Aboushi Cert. Ex. 12 at ¶12(e).

**Defendants' Response:**   Defendants deny the materiality of this fact, as plaintiff was running in the direction of Officer Feeley with a gun when he was shot.  (See, e.g., Feeley Tr. at 86:11-22, 144:5-12, DeLuca Decl., Ex. H.; Surveillance Footage at timestamp 12:45:31-12:45:38, DeLuca Decl., Ex. L.)  Further, a photograph of plaintiff taken after the incident does not depict any gunshot wounds to plaintiff's back.  (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)  Moreover, Pollini's commentary and speculation are improper.

140.      The NYPD Patrol Guide requires officers to give a verbal warning before using deadly force. Aboushi Cert. Ex. 12 at ¶13.

**Defendants' Response:**   Admit that plaintiff's purported expert states, when quoting the NYPD Patrol Guide, "Where feasible, and consistent with public safety, some warning, such as 'POLICE – DON'T MOVE', should be given."  (Id.)  Defendants deny the materiality of this fact.

141.    The NYPD failed to properly monitor Officer Feeley's conduct because, based upon his history, he should have been placed on Level 1 Performance Monitoring. Aboushi Cert. Ex. 12 at ¶15(a).

**<u>Defendants' Response:</u>**    Deny.  The cited disciplinary documents do not establish that Officer Feeley qualified for performance monitoring.  For example, Feeley's IAB history lists only one force investigation involving Feeley prior to the incident.  (<u>See</u> Aboushi Cert. Ex. 24 – IAB Feely at DEF_3430-DEF_3431.)  Further,  Feeley's CCRB history indicates that there were five complaints (as opposed to "charges") against him in the more than five years preceding the incident, which, according to the documents annexed to plaintiff's opposition, would not qualify him for performance monitoring.  (<u>See</u> Aboushi Cert Ex. 28 at 2; <u>see also</u> Aboushi Cert. Ex. 8 at DEF_3752.)  Defendants object to this fact insofar as it draws legal conclusions, which are not proper statements of fact.  Further, Pollini is not qualified to opine on NYPD policies.  Moreover, Pollini is neither qualified nor permitted to offer legal conclusions.  Defendants also deny the materiality of this fact.

142.    Officer Feeley's file in incomplete with missing complaints, lawsuits, and IA issues, which constitutes a deliberate act of indifference to the patterns exhibited by Feeley that the NYPD should have detected. Aboushi Cert. Ex. 12 at ¶15(a).

**<u>Defendants' Response:</u>**    Deny.  The cited evidence does not support this fact, as there is no definition of or citation to "Officer Feeley's file," or what constitutes a "complete file." Defendants object to this fact insofar as it draws legal conclusions, which are not proper statements of fact.  Pollini is not qualified to opine on NYPD recordkeeping policies. Further, Pollini is neither qualified nor permitted to offer legal conclusions. Defendants also deny the  materiality of this fact.

40

143.     The NYPD failed to properly monitor Officer Rosiello's conduct because he has a history of receiving numerous complaints for force and other issues, including deprivation of rights, false arrest/imprisonment, and malicious prosecution, and should not have been on the street the night he shot Plaintiff. Aboushi Cert. Ex. 12 at ¶15(b).

**<u>Defendants' Response:</u>**  Deny.  This purported fact is wholly improper, as it consists of legal conclusions, irrelevant commentary, vague terms such as "numerous complaints for force and other issues," and subjective opinion.   Further, the cited evidence does not support the contention that Officer Rosiello "has a history of receiving numerous complaints for force and other issues, including deprivation of rights, false arrest/imprisonment, and malicious prosecution."  Further, Pollini is neither qualified nor permitted to offer legal conclusions, and his characterization of facts is not a proper expert opinion.  Defendants also deny the materiality of this fact.

144.     Officer Rosiello's incomplete file reflects the lack of record keeping for all complaints and lawsuits for each officer, which thereby deprives the NYPD from meaningfully reviewing records to intervene and interdict a pattern of unlawful behavior. Aboushi Cert. Ex. 12 at ¶14(b).

**<u>Defendants' Response:</u>**  Deny.  This fact is also wholly improper.  There is no admissible evidence suggesting that Officer Rosiello's file—whatever that means—is "incomplete."  Plaintiff's legal conclusions and subjective assertions, which are not proper statements of fact.  Defendants also deny the materiality of this fact.   Moreover, Pollini is neither qualified nor permitted to offer legal conclusions, and his characterization of purported facts and irrelevant commentary is not proper expert material.

145.    Sgt. Diab's extensive IA and CCRB histories warranted additional training, greater than just sensitivity training, but did not receive it because the NYPD does not take the monitoring of problematic officers seriously. Aboushi Cert. Ex. 12 at ¶15(c).

**Defendants' Response:**  Deny.  Defendants object to plaintiff's legal conclusions and subjective assertions and commentary, which are not proper statements of fact.  Defendants also deny the materiality of this fact.  Moreover, Pollini is neither qualified nor permitted to offer legal conclusions and his subjective characterizations and commentary (*i.e.* "*extensive* IA and CCRB histories" and "the NYPD does not take the monitoring of problematic officers seriously) are not proper expert material.

146.    Officers Rosiello and Feeley used unreasonable, unwarranted, and excessive force against Benbow when they shot him. Aboushi Cert. Ex. 12 at ¶16.

**Defendants' Response:**  Deny.  Defendants object to this fact as it consists only of legal conclusions, which are not proper statements of fact.  Moreover, Pollini is neither qualified nor permitted to offer legal conclusions.

147.    No reasonable police officer could have concluded that deadly physical force was necessary against Benbow. Aboushi Cert. Ex. 12 at ¶17.

**Defendants' Response:**  Deny.  Defendants object to this fact as it consists only of legal conclusions, which are not proper statements of fact.  Moreover, Pollini is neither qualified nor permitted to offer legal conclusions.

148.    Officers Feeley and Rosiello violated NYPD policy and procedures, including PG203-12, and used excessive force when they shot Benbow in the back. Aboushi Cert. Ex. 12 at ¶18.

**Defendants' Response:** Deny. Defendants object to this fact insofar as it consists of legal conclusions, which are not proper statements of fact or proper expert material. Moreover, plaintiff was not shot in the back by Officers Feeley and Rosiello. A photograph of plaintiff taken after the incident does not depict any gunshot wounds to plaintiff's back. (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

149.    The NYPD failed to properly monitor, supervise and discipline their officers and had they done so, Sgt. Diab, Officer Feeley and Rosiello would not have been in the position to violate Benbow's rights and shoot him unnecessarily. Aboushi Cert. Ex. 12 at ¶19.

**Defendants' Response:** Deny. Defendants object to this fact insofar as it consists of legal conclusions, which are not proper statements of fact or expert material.

150.    By the NYPD's own metric, Defendants Feeley, Rosiello, and Diab should not have been on the street on the night of the incident, nor should they have been left to their own devices, as each had extensive histories that would have indicated their propensities to misuse their power had the NYPD paid attention and kept proper track of their records. Id.

**Defendants' Response:** Deny. Plaintiff continues to assert subjective conclusions and irrelevant commentary while repeatedly drawing legal conclusions, which are not proper statements of fact or expert material. Defendants also deny the materiality of this fact.

151.    The IA records are missing crucial information, including the list of lawsuits and all CCRB complaints. Aboushi Cert. Exs. 24-29.

**Defendants' Response:** Deny. Defendants object to plaintiff's continued use of subjective assertions and unsupported characterizations, which are not proper statements of fact. Further, this fact is not supported by the cited evidence, as plaintiff has not cited

any evidence pertaining to recordkeeping policies and requirements.   Additionally, defendants deny the materiality of this fact.

152.     The lack of record keeping and any interaction with Defendants Feeley and Rosiello establishes that the City of New York and NYPD failed to track and monitor the Defendant Officers. See Aboushi Cert. Ex. 12 generally; Aboushi Cert. Exs. 20, 21, 26.

**Defendants' Response:**  Deny.  Defendants also object to this fact insofar as it consists of legal conclusions, which are not proper statements of fact or expert material.  Defendants also object to plaintiff's continued subjective assertions and irrelevant commentary. Defendants also deny the materiality of this fact.

Shooting Reconstruction Expert

153.     Highlands Forensic Investigations & Consulting, LLC is a third-party expert in crime scene review, analysis and reconstruction. Aboushi Cert. Ex. 14 at p. 1.

**Defendants' Response:**  Admit that the first page of the "Highlands" expert report includes a heading which states "Crime Scene Review, Analysis and Reconstruction."  Defendants deny the materiality of this fact.

154.     Based upon reconstruction of the scene, within a reasonable degree of professional certainty, Officers Feeley and Rosiello shot Benbow in his back. See Highlands generally.

**Defendants' Response:**  Deny.  The purported Highlands experts did not *opine* that plaintiff was shot in his back, nor are they qualified to do so.  (See id. *passim*.)  Further, a photograph of plaintiff taken after the incident does not depict any gunshot wounds to plaintiff's back.  (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

44

155.    The reconstruction was based upon the forensic evidence, including positions of cartridge casings that were recovered at the scene, Benbow's injuries, and police officer testimony regarding their positions, and other materials. Id.

**Defendants' Response:**  Admit that the report so states but deny the accuracy of its conclusions.  Moreover, this is an improper statement of fact.  Defendants also deny the materiality of this fact.

156.    The reconstruction shows that Benbow was running away from Defendants Rosiello and Feely when he was shot in his back. See Aboushi Cert. Ex. 13.

**Defendants' Response:**  Admit that the report so states but deny the accuracy of its conclusions.  Defendants also deny that Officers Feely and Rosiello shot plaintiff in his back.  A photograph of plaintiff taken after the incident does not depict any gunshot wounds to plaintiff's back.  (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

157.    The reconstruction shows that the proffered reasons for shooting Plaintiff are completely false because the situation giving rise to the alleged reasons is demonstrably impossible. Id.

**Defendants' Response:**  Defendants object to plaintiff's subjective conclusions and irrelevant commentary, which are not proper statements of fact.

158.    Indeed, the reconstruction establishes that, because Benbow's back was towards Feely and Rosiello, he in no way pointed a gun at them as they claim. Aboushi Cert. Ex. 13 at p. 10-12.

**Defendants' Response:** The cited report does not support this fact.  Indeed, the Highlands experts did not opine that plaintiff "in no way pointed a gun at [the defendants] as they

claim." (See <u>id.</u>, *passim*.) Defendants object to plaintiff's subjective conclusions and irrelevant commentary, which are not proper statements of fact.

159.      Defendants Feeley and Rosiello's proffered reason for shooting Plaintiff are forensically impossible. <u>Id</u>.

**Defendants' Response:**  The cited report does not support this fact, as the Highlands experts did not opine that "Defendants Feeley and Rosiello's proffered reason for shooting Plaintiff are forensically impossible." (See <u>id.</u>, *passim*.) Defendants object to plaintiff's subjective conclusions and irrelevant commentary, which are not proper statements of fact.

<u>Medical Experts regarding Location of Bullet Wounds:</u>

<u>Expert Troy Caron, D. O.</u>[4]

160.      Troy Caron, D.O. is a board-certified orthopedic surgeon with background working in traumatic spine and pelvis injuries. Aboushi Cert. Ex. 14 at p. 1.

**Defendants' Response:**  Admit that plaintiff's purported expert claims to be a board-certified orthopedic surgeon.  Defendants deny the materiality of this fact.

161.  boushi Cert. Ex. 14 at p. 2.

**Defendants' Response:**  Admit that the report so states but deny materiality.

162.      Caron at p. 3.

**Defendants' Response:**  Admit that the report so states but deny materiality.

---

[4] The Court should disregard this report in its entirety, as it goes solely to damages and is thus irrelevant to defendants' motion for summary judgment.

163. 

Id.

**Defendants' Response:**  The cited evidence does not support this fact.  Plaintiff continues to draw subjective conclusions which are not proper statements of fact.

164.

Aboushi Cert. Ex. 14 at p. 5.

**Defendants' Response:**  Plaintiff continues to draw subjective conclusions which are not proper statements of fact.

165.

Id.

**Defendants' Response:**  Admit that the report so states but deny materiality.

166.

Caron at p. 4.

**Defendants' Response:**  Defendants object to this fact insofar as it vague and ambiguous as to the meaning of "documented gunshot wounds" and to the extent plaintiff continues to assert subjective conclusions and irrelevant commentary, which are not proper statements of fact.

167.

Caron at p. 5.

**Defendants' Response:**  Admit that the report so states but deny materiality.

168.    ██████████████████████████████████████████████████

██████████████████ <u>Id</u>.

**Defendants' Response:**  Defendants object to plaintiff's speculation, which is not a proper statement of fact.  Defendants also deny the materiality of this fact.

### Expert Dainius A. Drukteinis, M.D., J.D., FACEP[5]

169.    Dainius A. Drukteinis, M.D., J.D., FACEP is a highly qualified Forensic Medicine Consultant with experience in healthcare and testifying as a medical expert in court cases. See Aboushi Cert. Ex. 15 generally.

**Defendants' Response:**  Defendants object to plaintiff's subjective commentary of the quality of his purported expert's qualifications.  Defendants deny the materiality of this fact.

170.    ███████████████████████████████████████████████████

███████████████████████. Aboushi Cert. Ex. 15 at p. 7.

**Defendants' Response:**   Admit that the report so states but deny its accuracy.  Further, Drukteinis did not opine as to the location of plaintiff's gunshot wounds, but simply noted his characterization of plaintiff's medical records.  (<u>See</u> <u>id</u>.)  A photograph of plaintiff taken after the incident does not depict any gunshot wounds to plaintiff's back.  (<u>See</u> Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

171.    ███████████████████████████████████████████████████

██████████████████████████████████ <u>Id</u>.

---

[5] The Court should disregard this report in its entirety, as it goes solely to damages and is thus irrelevant to defendants' motion for summary judgment.

**Defendants' Response:**  Defendants object to plaintiff's subjective conclusions and commentary, which are not proper statements of fact.  Defendants deny the materiality of this fact.

172.  ████████████████████████████████████████████████████

████████████████████████████████  Id

**Defendants' Response:**  The cited evidence does not support this fact.  Indeed, Drukteinis offers no such opinion.  Moreover, a photograph of plaintiff taken after the incident does not depict any gunshot wounds to plaintiff's back.  (See Photograph of Plaintiff, Kalmbach Decl., Ex. AB.)

173.  ████████████████████████████████████████████████████

████████████████████  Id.

**Defendants' Response:**  Admit that the report so states but deny materiality.

174.  ████████████████████████████████████████████████████

██████████████████████████  Id.

**Defendants' Response:**  Admit that the report so states but deny materiality.

175.  ████████████████████████████████████████████████████

████████████████████████████████████  Id.

**Defendants' Response:**  Defendants object to this fact insofar as it is vague and ambiguous and not a proper statement of fact.  Defendants also deny the materiality of this fact.

176.  ████████████████████████████████████████████████████

██████████████████████████████████  Id.

**Defendants' Response:**  Defendants object to plaintiff's speculation, which is not a proper statement of fact.  Defendants also deny the materiality of this fact.

<u>Plaintiff's Conviction is Overturned</u>

177.     Benbow didn't have a gun but plead guilty to having one in relation to the incident. Aboushi Cert. Ex. 2 - Benbow 55:17-25.

**Defendants' Response:**  Admit that plaintiff plead guilty to possessing a firearm, but deny that plaintiff "didn't have a gun."

178.     Benbow was coerced into the plea deal because they offered to let him walk out of the courtroom instead of facing 15 years in prison. Aboushi Cert. Ex. 2 - Benbow 55:17-56:9.

**Defendants' Response:**  Deny.  Defendants object to plaintiff's subjective characterization of the circumstance of his guilty plea, which is not a proper statement of fact.  Plaintiff told a Kings County Criminal Court judge, under oath, that no one "forced [plaintiff] or threatened [plaintiff] in any way to get you to plead guilty."  (<u>See</u> Plea Allocution Transcript ("Plea Tr.") at 15:16-19, annexed to the DeLuca Decl. as Ex. W.)

179.     Benbow was given the plea offer in front of his friends and family after already being in prison for four years as his family pleaded in open court for him to take the deal so he could come home that day. Aboushi Cert. Ex. 2 - Benbow 56:17-24, 147:7. Deft. Ex. W at 6.

**Defendants' Response:**  Deny.  The cited evidence does not support this fact.  Plaintiff did not testify, not does the plea allocution transcript indicate, that plaintiff "was given the plea officer in front of his friends and family" or that "his family pleaded in open court for him to take the deal so he could come home that day."  Defendants also deny the materiality of this fact.

180.     Benbow's conviction was appealed. Aboushi Cert. Ex. 17.

**Defendants' Response:** Admit.

181.      Benbow's conviction was overturned, and the Second Department determined that there was a lack of probable cause for the arrest. Id at p. 3.

**Defendants' Response:** Deny. This is a blatant misrepresentation. The Second Department held only that defendants lacked reasonable suspicion to stop plaintiff, and therefore the gun should have been suppressed. (See id.)

182.      The District Attorneys Office dismissed all charges against Benbow. Aboushi Cert. Ex. 18.

**Defendants' Response:** The cited evidence does not support this fact, but rather indicates that a criminal court dismissed the charges.

183.      The express term of the dismissal was a termination in his favor. Id.

**Defendants' Response:** Admit that the cited certificate of disposition states "the above mentioned dismissal is a termination of the criminal action in favor of the accused." To the extent plaintiff is asserting a legal conclusion, this is not a proper statement of fact. Defendants also deny the materiality of this fact.

184.      Benbow was restored to the position he was in before his arrest by the Defendants. Id.

**Defendants' Response:** Admit that the cited certificate of disposition states that plaintiff "shall be restored . . . to the status occupied before the arrest and prosecution." To the extent plaintiff is asserting a legal conclusion, this is not a proper statement of fact. Defendants also deny the materiality of this fact.

50-h

185.    Benbow timely filed a notice of Claim regarding the incident. The notice of claim

provided the City with all requisite notice of the incident and permitted it to fully

investigate the claims. Deft. Ex. Y.

**Defendants' Response:**  Admit that plaintiff filed a timely Notice of Claim.  Defendants

object to plaintiff's subjective commentary on the effect of filing a Notice of Claim, which

is not a proper statement of fact.

186.    Benbow never received a notice for a 50-h hearing to testify. Aboushi Cert. Ex. 2 -

Benbow 170:1-3.

**Defendants' Response:**  Deny.  The cited testimony does not support this fact insofar as

plaintiff testified that the City of New York never sent plaintiff a notice to testify at a § 50-

h.  The City of New York Office of the Comptroller served upon plaintiff's attorney a

Notice of § 50-h Hearing on June 23, 2015.  (See Notice of § 50-h Hearing, DeLuca Decl.,

Ex. Z.)

187.    Benbow called the city for information regarding his notice of claim and was told

that they did not have information for him. Aboushi Cert. Ex. 2 - Benbow 170:7-21, 171:3-

7.

**Defendants' Response:**  Admit that plaintiff so testified but deny materiality.

188.    The entire time that the notice of claim was filed, Benbow was in the City's custody

at Riker's Island. Aboushi Cert. Ex. 2 - Benbow 170:7-21.

**Defendants' Response:**  Admit that plaintiff was incarcerated on the date he filed his

Notice of Claim.  Defendants object to this fact insofar it is vague and ambiguous as to the

meaning of "the entire time that the notice of claim was filed."  Defendants deny the materiality of this fact.

189.    Nothing was sent to Riker's Island regarding Benbow's notice of claim, nor any requests to conduct a 50-h hearing. Aboushi Cert. Ex. 2 - Benbow 170:1-3, 170:7-21.

**Defendants' Response:**  Admit insofar as the City of New York Office of the Comptroller served a Notice of § 50-h Hearing on plaintiff's attorney on June 23, 2015.  (See Notice of § 50-h Hearing, DeLuca Decl., Ex. Z.)

190.    The City never attempted to schedule Benbow's 50-h hearing while he was in the City's custody and control at Riker's Island or at any time after his release. Aboushi Cert. Ex. 2 - Benbow 170:7-21, 176:6-23.

**Defendants' Response:**  Deny.  The City of New York Office of the Comptroller served a Notice of § 50-h Hearing on plaintiff's attorney on June 23, 2015.  (See Notice of § 50-h Hearing, DeLuca Decl., Ex. Z.)

191.    On the date and time allegedly noticed for the 50-h hearing, 8/27/2015, Benbow was still in the custody and control of the City at Riker's Island. Aboushi Cert. Ex. 2 - Benbow 170:7-21.

**Defendants' Response:**  Admit.

192.    At no point while Benbow was at Rikers Island did the City attempt to schedule Benbow's 50-h hearing. Aboushi Cert. Ex. 2 - Benbow 170:7-21.

**Defendants' Response:**  Deny.  The City of New York Office of the Comptroller served a Notice of § 50-h Hearing on plaintiff's attorney on June 23, 2015.  (See Notice of § 50-h Hearing, DeLuca Decl., Ex. Z.)

193.     At no point thereafter did the City attempt to schedule a 50-h hearing with Benbow. Aboushi Cert. Ex. 2 - Benbow 176:6-23.

**Defendants' Response:**   Deny insofar as the City of New York Office of the Comptroller served a Notice of § 50-h Hearing on plaintiff's attorney on June 23, 2015.  (See Notice of § 50-h Hearing, DeLuca Decl., Ex. Z.)  Defendants object to this fact insofar as it is vague and ambiguous as to any purported timeframe.  Defendants also deny the materiality of this fact.

194.     Even after this matter was filed, at no point did the City never reached out to Benbow to schedule a 50-h hearing. Aboushi Cert. Ex. 2 - Benbow 176:6-23.

**Defendants' Response:**  Admit that plaintiff so testified but deny materiality.

Dated:       New York, New York
             October 1, 2021

                                   **GEORGIA M. PESTANA**
                                   Corporation Counsel of the City of New York
                                   *Attorney for City of New York, Police Officer*
                                   *Kenneth Anderson, Sergeant William Diab, Police*
                                   *Officer Brian Feeley, Police Officer Stephen*
                                   *Minucci, Detective Shaniel Mitchell, and Police*
                                   *Officer Matthew Rosiello*
                                   100 Church Street
                                   New York, New York 10007
                                   (212) 356-2322

                          By:     /s/ *Zachary Kalmbach*
                                   Zachary Kalmbach
                                   *Assistant Corporation Counsel*
                                   Special Federal Litigation Division

cc:     **Via ECF**
        Aymen Aboushi, Esq.
        *Attorney for Plaintiff*

54