UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JAMES BENBOW,                                              :
                                                          :
                              Plaintiff,                  :
                                                          :       REPORT AND
              -against-                                   :       RECOMMENDATION
                                                          :
THE CITY OF NEW YORK, POLICE OFFICER                      :       No. 17-CV-06457-EK-JRC
BRIAN FEELEY, POLICE OFFICER MATTHEW                      :
ROSIELLO, POLICE OFFICER KENNETH                          :
ANDERSON, SERGEANT WILLIAM DIAB,                          :
DETECTIVE SHANIEL MITCHELL, AND POLICE                    :
OFFICER STEPHEN MINUCCI,                                  :
                                                          :
                              Defendants.                 :
-------------------------------------------------------------------- x
JAMES R. CHO, United States Magistrate Judge:

## Introduction

This case concerns allegations of police misconduct in connection with the arrest and

shooting of plaintiff James Benbow ("plaintiff" or "Benbow").  Plaintiff asserts claims under 42

U.S.C. § 1983 and state law against the City of New York ("City") and six officers with the New

York City Police Department ("NYPD")[1] (collectively, "defendants").  Plaintiff asserts claims of

excessive force, assault and battery, failure to intervene, false arrest, malicious prosecution,

unlawful arrest, search and seizure, and negligence.  Plaintiff further asserts *Monell* claims

against the City.  *See generally* Second Am. Compl., Dkt. 74.

Defendants move for summary judgment on all claims.  For the reasons set forth below,

this Court respectfully recommends granting in part and denying in part defendants' motion for

summary judgment.

--------

[1] Plaintiff asserts claims against the following officers:  Police Officers Kenneth Anderson
("Anderson"), Brian  Feeley ("Feeley"), Stephen Minucci ("Minucci"), Matthew Rosiello
("Rosiello"), Sergeant William Diab ("Diab"), and Detective Shaniel Mitchell ("Mitchell").

**Background**

In or about the evening of March 6, 2015 and the early morning hours of March 7, 2015, NYPD officers stopped and arrested plaintiff. During the course of the stop and arrest, two NYPD officers shot plaintiff for which he sustained injuries. Plaintiff was charged with criminal possession of a firearm by the State of New York, County of Kings. Plaintiff pled guilty to the charges; however, his guilty plea was subsequently vacated by Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Second Department"). Plaintiff alleges, in this action that throughout the initial stop by police, subsequent arrest, and prosecution of charges related to criminal possession of a firearm, defendants violated his rights under the Constitution. The following facts have been represented as undisputed by both plaintiff and defendants, except where otherwise noted as alleged by one party.

On March 6, 2015, sometime between approximately 7:00 p.m. and 8:30 p.m., plaintiff arrived at Amarachi Prime, a restaurant/bar on the corner of Bridge Street and Nassau Street in Brooklyn, New York, with Kate Williams. *See* Benbow's deposition transcript dated September 17, 2020 ("Benbow Tr.") (Dkt. 103-4) at 61:8-12, 66:19-25, 73:10-13, 77:12-17. Defendants allege that at Amarachi Prime, plaintiff interacted with (1) Jason Marshall ("Marshall"), (2) the owner of Amarachi Prime, and (3) a female bartender. *See* Plaintiff's Responses and Objections to Defendants' Statement of Undisputed Facts ("Pl. Resp.") (Dkt. 104-2) at ¶ 2. Eric Bradley ("Bradley") was also at Amarachi Prime that evening. *Id*. at ¶ 4. Defendants further allege that on March 6 and March 7, 2015, Marshall, while working at Amarachi Prime, was, and had been, an auxiliary police officer with the NYPD since 2013. *Id*. at ¶ 3; *see also* deposition transcript of Detective Ruben Cespedes ("Cespedes") dated November 19, 2020 ("Cespedes Tr.") (Dkt. 103-6) at 53:3-7; DD5 Entry (Dkt. 103-12); excerpts from Marshall's grand jury testimony (Dkt. 103-

30) at 43:10-44:4, 44:16-45:1.  Plaintiff denies these facts, alleging that plaintiff did not interact with Marshall the night of the incident.  *See* Plaintiff's Counter Statement of Facts ("Pl. Counter Statement") (Dkt. 104-1) at ¶ 20.

At around 12:15 a.m., now March 7, 2015, Marshall allegedly called Cespedes, who at the time was the 77th Precinct Field Intelligence Officer, and provided a description of plaintiff.  *See* DD5 Entry (Dkt. 103-12).  Cespedes alleges that he received the phone call from Marshall as he was leaving work.  *See* Cespedes Tr. (Dkt. 103-6) at 52:22-53:2, 90:11-13.  According to defendants, Cespedes was informed by Marshall that an individual at Amarachi Prime matching plaintiff's description possessed a firearm.  *See* Defs. Statement of Undisputed Facts ("Defs. Facts") (Dkt. 103-1) at ¶ 12.  Cespedes allegedly informed Sergeant Jones of Marshall's report, who, in turn instructed Cespedes to notify defendant Sergeant Diab.  *See* Cespedes Tr. (Dkt. 103-6) at 91:8-13.  This information was allegedly later relayed to defendant Mitchell and defendant Sergeant Diab, who then held a tactical meeting with all defendants.  *See* Diab's deposition transcript dated October 14, 2020 (Dkt. 103-8) ("Diab Tr.") at 85:12-19.  Plaintiff denies the facts related to the tip provided by Marshall and the chain of events that led to his subsequent stop and arrest.  *See generally* Pl. Resp. (Dkt 104-2).

After the tactical meeting, Sergeant Diab, Minucci, and Mitchell traveled in an unmarked vehicle, RMP #1464, to Amarachi Prime.  *See* Diab Tr. (Dkt. 103-8) at 94:25-95:4; *see also* Mitchell's deposition transcript dated October 14, 2020 ("Mitchell Tr.") (Dkt. 103-10) at 60:10-22; excerpts from Mitchell's memobook (Dkt. 103-14).  Feeley, Rosiello, and Anderson followed in another unmarked vehicle, RMP #649.  *See* Diab Tr. (Dkt. 103-8) at 95:5-11; *see also* Anderson's deposition transcript dated October 9, 2020 ("Anderson Tr.") (Dkt. 103-5) at 83:10-84:7.  Mitchell testified that he received an updated phone call regarding the description of

plaintiff and Bradley. *See* Mitchell Tr. (Dkt. 103-10), at 53:17-54:2, 60:23-61:10. Mitchell then allegedly relayed this information, including a description of the individuals' clothing, via radio transmission to the other vehicle with Feeley, Rosiello, and Anderson. *See* Rosiello's deposition transcript dated October 27, 2020 ("Rosiello Tr.") (Dkt. 103-9) at 76:16-77:25.

Plaintiff left Amarachi Prime with Bradley. *See* Benbow Tr. (Dkt. 103-4) at 99:11-15. Upon exiting Amarachi Prime, plaintiff and Bradley walked on Bridge Street, then made a right turn onto Nassau Street. *See* Benbow Tr. (Dkt. 103-4) at 102:16-103:1.

Outside of Amarachi Prime, Mitchell, who was the driver of unmarked vehicle RMP #1464, observed plaintiff and Bradley exit Amarachi Prime and walk on Nassau Street. *See* Mitchell Tr. (Dkt. 103-10) at 60:23-61:24. While remaining in the vehicle, Mitchell followed plaintiff and Bradley on Nassau Street. *See* Mitchell Tr. (Dkt. 103-10) at 61:11-24; *see also* Diab Tr. (Dkt. 103-8) at 96:9-18. Plaintiff acknowledges that surveillance video time-stamped 12:45:31 from March 7, 2015 depicts plaintiff and Bradley walking on the sidewalk on Nassau Street. *See* Pl. Resp. (Dkt. 104-2) at ¶ 25; *see also* CD containing surveillance footage (Dkt. 103-15).

When his vehicle pulled alongside plaintiff and Bradley, Sergeant Diab exited his vehicle with his gun drawn. *See* Diab Tr. (Dkt. 103-8) at 94:13-21. Sergeant Diab alleges that he intended to approach and stop plaintiff and Bradley. *See* Diab Tr. (Dkt. 103-8) at 97:19-98:3. At this point, the vehicle with Feeley, Rosiello, and Anderson was trailing by a few car lengths the vehicle with Sergeant Diab, Mitchell, and Minucci. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 41-42. Anderson and Rosiello then exited their vehicle and approached the sidewalk. *Id*; *see also* crime scene sketch (Dkt. 103-16). Bradley stopped and dropped to the ground. *See* excerpt from Bradley's grand jury testimony (Dkt. 103-17) at 25:14-26:2. Plaintiff turned around and ran in

the opposite direction on the sidewalk. *See* Pl. Resp. (Dkt. 104-2) at ¶ 48. Plaintiff then left the sidewalk, made a right turn, and ran between two parked cars and into the street. *See* Pl. Resp. (Dkt. 104-2) at ¶ 50.

Defendants allege that plaintiff had a gun in his possession that he removed from his waistband and pointed at defendants. Plaintiff alleges that he did not have a gun in his possession and did not point a gun at defendants. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 55, 56.

It is undisputed that Anderson, Minucci, Sergeant Diab, and Mitchell (collectively referred to as "non-shooting defendants") did not discharge their firearms. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 57, 78, 79, 80. It is further undisputed that Rosiello and Feeley did discharge their firearms at plaintiff. That evening, Rosiello discharged his firearm once; Feeley discharged his firearm three times. Feeley stopped firing after three shots when plaintiff fell to the ground. Plaintiff sustained bullet wounds. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 68, 72, 74, 83, 84; Pl. Counter Statement (Dkt. 104-1) ¶ 48.

One loaded chrome Interams Star .45 caliber semi-automatic pistol was recovered at the scene of the shooting. *See* picture of firearm (Dkt. 103-19); *see also* Pl. Resp. (Dkt. 104-2) at ¶ 81. Plaintiff alleges that he did not have a gun at the time of the incident. *See* Pl. Resp. (Dkt. 104-2) at ¶ 81. Neither DNA nor fingerprints were recovered from the gun. *See id.*

After he was shot, plaintiff was handcuffed by Minucci and subsequently taken by ambulance to Kings County Hospital. *See* Pl. Resp. (Dkt. 104-2) at ¶ 82.

Following the shooting, Feeley attended a GO-15 hearing where he was shown a diagram, or crime scene sketch. *See* Pl. Resp. (Dkt. 104-2) at ¶ 31; *see also* Feeley's deposition transcript dated December 7, 2020 ("Feeley Tr.") (Dkt. 103-11) at 126:14-17; 117:16-118:5. Feeley made notations on the crime scene sketch, including notations indicating the locations of

where he, Rosiello, Anderson, and plaintiff were located on Nassau Street at the time of the shooting. *Id*. (Dkt. 103-11) at 121:10-124:22. A shooting reconstruction was later developed.

Plaintiff was arrested and charged with violating New York Penal §§ 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 120.14(1) (Menacing in the Second Degree). *See* Arrest Report (Dkt. 103-23). A New York State Criminal Court Complaint was filed against plaintiff in Kings County Criminal Court, Docket No. 2015KN01452, charging plaintiff with violating New York Penal §§ 265.03(1)(B) (Criminal Possession of a Weapon in the Second Degree), 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 265.01(1) (Criminal Possession of a Weapon in the Fourth Degree). *See* Criminal Court Complaint (Dkt. 103-24). An Indictment (No. 01849-2015) was filed in the Supreme Court of New York, County of Kings, charging plaintiff with *inter alia*, Criminal Possession of a Weapon in the Second Degree (265.03(3)), Criminal Possession of a Firearm (265.01-B), and Criminal Possession of a Weapon in the Fourth Degree (265.01(1). *See* Indictment (Dkt. 103-25).

On April 24, 2018, plaintiff, represented by counsel, pled guilty to Count 2 of the Indictment, Criminal Possession of a Firearm in violation of New York Penal Law § 265.01-B, before The Honorable Bruce M. Balter with the Supreme Court of New York, Kings County, Criminal Term, Part 16. *See* transcript from criminal proceedings on April 24, 2018 ("Allocution") (Dkt. 103-26). On April 14, 2021, the Second Department of the New York State Appellate Division granted plaintiff's omnibus motion to suppress physical evidence -- the gun -- and vacated plaintiff's guilty plea. *See* Decision & Order (Dkt. 103-27). The Second Department held as follows:

> [T]he Supreme Court of New York erred in finding, in effect, that the police had
> lawfully stopped [plaintiff] before [plaintiff] fled from the police and removed a
> gun from his waist. The hearing testimony indicated that the law enforcement
> officials who were in the sergeant's vehicle had received a tip that two

individuals, one of whom had a gun, were leaving the club. There was no evidence presented at the [suppression] hearing as to the identity of the individual who provided the tip, no evidence that the informant explained to the police how he or she knew about the gun, no evidence that the informant supplied any basis to believe that he or she had inside information about the defendant, and no evidence that the informant had knowledge of concealed criminal activity. Therefore, the police lacked reasonable suspicion to stop [Benbow] and his companion based solely on the tip.

Decision & Order (Dkt. 103-27) at 3. The Second Department vacated plaintiff's guilty plea. *Id.*

While represented by attorney Kenneth J. Montgomery ("Montgomery"), plaintiff filed a Notice of Claim against the City of New York. *See* Notice of 50-h hearing (Dkt. 103-29). Defendants allege that plaintiff was notified through his then-attorney Montgomery in a letter dated June 23, 2015 to appear at his 50-h hearing on August 27, 2015. *See* Notice of 50-h hearing (Dkt. 103-29). Plaintiff alleges that he was never served with the notice to appear for a 50-h hearing directly, nor through his attorney. Further, on the day of the hearing, plaintiff was in the custody of the Department of Corrections at Riker's Island. Defendants allege that plaintiff did not appear on August 27, 2015 and the hearing was not held. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 96, 97.

Defendants moved for summary judgment seeking dismissal of plaintiff's Second Amended Complaint in its entirety (Dkt. 103); plaintiff opposed defendants' motion (Dkt. 104); and defendants filed their reply (Dkt. 105).[2] Pending before this Court, on a referral from The Honorable Eric R. Komitee, is defendants' motion for summary judgment. For the reasons set forth below, this Court respectfully recommends granting in part and denying in part defendants'

---

[2] Even though fully briefed, the day before a hearing before this Court on defendants' summary judgment motion, and following the hearing, plaintiff filed two letters (Dkts. 110, 111) providing additional arguments in opposition to defendants' motion. Plaintiff filed the letters without seeking leave to file a sur-reply. At this Court's request, defendants' filed a response to plaintiff's letters (Dkt. 112). The Court takes these filings under consideration for purposes of adjudicating defendants' summary judgment motion.

motion for summary judgment.

## Legal Standard

At issue before this Court is defendants' motion for summary judgment on all claims. Summary judgment is appropriate if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is material for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (internal citations and quotations omitted). In performing this analysis, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

The movant has the burden of demonstrating the absence of a question of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). If the non-moving party fails to do so, the claim must be dismissed. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011) (internal citations and quotations omitted). If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotations omitted).

## Discussion

### A.    *Monell* Claim

Because plaintiff brings each of his Section 1983 claims against the City, this Court first considers whether municipal liability attaches here. Governing precedent affords municipalities, like the City, certain protections from Section 1983 liability, notwithstanding the merits of the underlying claims. For the reasons explained below, this protective standard prevents plaintiff from pressing his claims against the City.

The Supreme Court has imposed a series of requirements for establishing municipal liability under Section 1983. Under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978), "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694-95. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Id.* at 694.

Plaintiff attempts to satisfy *Monell* by alleging that a deprivation of plaintiff's constitutional rights was "caused by an official policy or custom of the municipality." *See* Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") (Dkt. 104) at 16. Plaintiff cites to multiple complaints lodged against defendants Rosiello and Feeley, and alleges that the City failed to institute performance monitoring or require additional training. According to plaintiff, "had both Defendants Feeley and Rosiello been monitored, counseled, or

supervised like they are required to be, they would not have been in the position to abuse their power and use excessive and deadly force upon plaintiff, causing him his permanent injuries." *Id*. at 20. Defendants argue that any failure to train or supervise its employees on the part of the City may constitute a policy or custom, but the absence of any evidence of deliberate indifference to the rights of those with whom city employees interact renders the claim insufficient.

"When a plaintiff tries to fall within *Monell* by defining the alleged 'custom or policy' as broadly as plaintiff[] ha[s] here, he takes an almost impossible burden upon himself." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011). Plaintiff has not successfully produced evidence that the alleged misconduct is "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014).

Plaintiff does not present evidence of a custom, policy, or usage that supports his claims. In addition to evidence of complaints entered against defendants, plaintiff offers a single piece of evidence into the record related to a policy of the City and NYPD -- a document entitled "Performance Monitoring Criteria." *See* Performance Monitoring Criteria (Dkt. 104-11). Here plaintiff presents "no evidence of the predicate fact underlying the alleged custom and policy." *Rasmussen*, 766 F. Supp. 2d at 409 (noting that "[p]laintiffs seem to proceed on the assumption that if a complaint, whether administrative or by way of a civil action, is filed against an officer, it follows *ipso facto* that he is guilty of a constitutional violation"); *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that other police misconduct cases discussed in plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability" because they either were irrelevant to the misconduct alleged, post-dated such misconduct, or

"involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *see also Forte v. City of New York*, No. 16-CV-560, 2018 WL 4681610, at *10 (S.D.N.Y. Sept. 28, 2018) (dismissing *Monell* claim based on lawsuits filed against municipality, and collecting cases finding the same).

Plaintiff's claim for failure to supervise and discipline defendants Rosiello and Feeley also fails. "It is well established that a plaintiff may [allege *Monell* claims] by showing that [the City] was deliberately indifferent to the training, supervision, or discipline of its employees." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009). To assert this claim, however, plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Plaintiff provides evidence of complaints filed against all defendants -- both prior to and subsequent to the incident -- many of which were unfounded, unsubstantiated, or the defendants were exonerated. *See, e.g.,* Dkts. 104-23 (Feeley and Rosiello complaints); 104-24 (Mitchell, Anderson, Minucci, and Diab complaints). These documents neither indicate a policy in violation of plaintiff's constitutional rights, nor does plaintiff establish a pattern of violations. *C.f. Jenkins v. City of New York*, No. 15-CV-5889, 2019 WL 2367060, at *5-*6 (E.D.N.Y. June 5, 2019) (allegations against a defendant, alongside significant disciplinary history, were sufficient to create a triable issue of material fact). Although an "obvious need may be demonstrated through proof of repeated complaints of civil rights violations," plaintiff presents "no evidence as to the municipality's response to any prior incident of misconduct," *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 78, 79 (E.D.N.Y. 2015), let alone that the City made "no meaningful attempt . . . to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049.

Plaintiff's failure-to-train claim, which presents an alternative route to establishing

"deliberate indifference," is also without merit. "[T]he inadequacy of police training may serve as a basis for [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff's claim fails because "[i]t is impossible to prevail" on such a theory "without any evidence as to . . . how the training was conducted, how better or different training could have prevented the challenged conduct, or how a hypothetically well-trained officer would have acted under the circumstances." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) (internal quotations omitted). Plaintiff has adduced no such evidence here.

Accordingly, this Court respectfully recommends **granting** defendants' motion for summary judgment as to plaintiff's *Monell* claim.

### B.     Qualified Immunity

Defendants move for summary judgment as to plaintiff's excessive force and false arrest/unlawful seizure claims on qualified immunity grounds. "The doctrine of qualified immunity protects government officials from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). To determine whether the doctrine applies, a court must assess: "(1) whether [a] plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Id*. "The objective reasonableness test is met -- and the defendant is entitled to immunity -- if officers of reasonable competence could disagree on the legality of the defendant's actions." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d

Cir. 2000). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because defendants invoke the doctrine of qualified immunity, the merits of plaintiff's false arrest/unlawful seizure and excessive force claims are reviewed through this lens.

### 1. False Arrest/Unlawful Seizure

"Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, a plaintiff alleging false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Defendants argue that probable cause existed for plaintiff's arrest. The existence of probable cause precludes a finding for plaintiff on the fourth element -- *i.e.*, that the confinement was not otherwise privileged -- and, therefore, is a "complete defense" to a false arrest claim. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999).

Probable cause can exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Once a police officer has a reasonable basis to believe that he has probable cause to arrest, the officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Garcia v. Does*, 779

F.3d 84, 93 (2d Cir. 2015).  An arresting officer is "entitled to qualified immunity from a suit for damages if he can establish that there was arguable probable cause to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotations omitted).

Whether defendants had probable cause to stop plaintiff has already been decided by New York's Second Department.  The New York Supreme Court initially determined that police had "probable cause to stop defendant and place him under arrest."  *See* Decision & Order (Dkt. 103-27) at 2.  On appeal, however, the Second Department reversed this holding, stating that "the [New York] Supreme Court erred in finding, in effect, that the police had lawfully stopped the defendant before the defendant fled from police and removed a gun from his waist."  *See* Decision & Order (Dkt. 103-27) at 3.

Plaintiff argues that because defendants had no probable cause to *stop* him, there was no probable cause to arrest him based on the initial tip.  Further, "for purposes of the instant motion, the 'fruit of the poisonous tree doctrine' does not apply in Section 1983 Fourth Amendment actions."  *Livecchi v. City of Geneva*, No. 14-CV-6326, 2019 WL 315293, at *8 (W.D.N.Y. Jan. 24, 2019).  Here, even though the Second Department determined that the officers' *stop* of plaintiff was "initially made *without* reasonable suspicion or probable cause . . . the police may nevertheless develop probable cause during the encounter and properly arrest the subject."  *Id*. (emphasis in original).  In a subsequent Section 1983 Fourth Amendment action such as this, while there already has been a determination of no probable cause for the initial stop of plaintiff, this Court must examine whether probable cause arose during the encounter that necessitated the arrest.

Whether defendants had probable cause to arrest plaintiff is a legal question dependent on facts currently in dispute.  Even if this Court accepted defendants' position, based on plaintiff's

vacated guilty plea and allocution regarding his possession of a firearm, that plaintiff *had* a gun at the time of the incident, a disputed question of fact still remains as to whether plaintiff *removed* the weapon from his waistband and *pointed* the weapon at defendants. These facts are central to this Court's inquiry with regard to whether probable cause arose during plaintiff's encounter with defendants and prevent this Court from finding probable cause to arrest plaintiff at this stage of the case.

In addition, "the fellow officer" rule does not apply in this case. "The 'fellow officer rule' provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or [fellow] officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest." *See Annunziata v. City of New York*, No. 06 CIV. 7637, 2008 WL 2229903, at *3 (S.D.N.Y. May 28, 2008). Here, defendants did not have probable cause initially to stop plaintiff as determined by the Second Department. Any probable cause that arose following the initial stop would have originated during the course of the incident, not prior to the stop. Because no officer had probable cause to stop plaintiff, no officer "could not confer the requisite probable cause" to the other defendants. *See id.* at *4.

This Court must further inquire, however, as to whether the defendants properly put forth a defense of qualified immunity.

> [A] police officer is entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did not violate plaintiff's clearly established rights. A police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause. Therefore, while an arrest may be found unconstitutional if probable cause was in fact lacking, an officer who participates in the arrest is nonetheless immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow

officer's report indicating the existence of probable cause.

*Id.* (citation omitted).

Here, defendants Mitchell, Sergeant Diab, Rosiello, Anderson, Minucci, and Feeley all received a report from Cespedes with instructions to stop and arrest plaintiff. Even though defendants did not have probable cause to *stop* plaintiff as held by the Second Department -- and even if it is determined at trial that the officers did not have probable cause to *arrest* plaintiff -- defendants still may be entitled to qualified immunity if they acted reasonably under the circumstances in their arrest of plaintiff.

At the present time, however, key facts remain in dispute with regard to whether defendants acted reasonably under the circumstances. Foremost, facts remain in dispute with regard to the information and instruction provided to Mitchell or Sergeant Diab regarding the stop and arrest of plaintiff. Mitchell testified at his deposition that he received a call from Marshall with a description of the plaintiff while on the way to Amarachi Prime. *See* Mitchell Tr. (Dkt. 103-10) at 61:2-10 ("Well, I was on the phone with Marshall and he's -- and he let me know the -- there's a guy with a bag and there's a -- the other guys -- the guy with the firearm. They exited the club which was Benbow and Bradley. And that is when I started to -- once they exited is when I started to drive and pretty much follow behind them a little bit."). Little to no evidence regarding the nature of the tip provided and the contents of a "fellow officer's report indicating the existence of probable cause" to arrest plaintiff has been presented by either party in this case. Accordingly, this Court cannot find at this time that defendants were objectively reasonable in "rely[ing] on a fellow officer's report indicating the existence of probable cause" in arresting plaintiff. *See Annunziata*, 2008 WL 2229903, at *4.

Further, setting aside objective reasonableness in relying on a fellow officer's report, the

defendants may have been objectively reasonable in arresting plaintiff based on their encounter on the night of the incident. A determination on the objective reasonableness of officers, however, cannot be reached in light of the facts currently in dispute. Even if this Court were to accept, based on plaintiff's vacated guilty plea and allocution regarding his possession of a firearm, that plaintiff *had* a gun at the time of the incident at issue, a disputed question of fact remains whether plaintiff *removed* the weapon from his waistband and *pointed* the weapon at defendants.

Accordingly, this Court respectfully recommends **denying** defendants' motion for summary judgment as to plaintiff's claim for false arrest/unlawful seizure, and this Court, based on the current record, is unable to find that defendants are entitled to qualified immunity on this claim.

### 2.     Excessive Force

To survive summary judgment on an excessive force claim, plaintiff must demonstrate the force used in the arrest was "excessive" under the Fourth Amendment. *See Smith v. P.O. Canine Dog Chas*, No. 02-6240, 2004 WL 2202564, at *13 (S.D.N.Y. Sept. 28, 2004). Police officers' application of force is excessive under the Fourth Amendment "if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotations omitted). Here, plaintiff contends that the excessive force arose from the officers' "shooting Plaintiff several times, thereby depriving Plaintiff of his right to be free from assault, battery, the use of unreasonable, unlawful, excessive, and improper force, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States . . . ." Second Am. Compl. (Dkt. 74) at ¶ 35.

To determine whether use of force is reasonable, the Court conducts its evaluation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Smith v. Sawyer*, 435 F. Supp. 3d 417, 433 (N.D.N.Y. 2020) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (internal citations omitted). Further, the Court must "make 'allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.'" *Smith*, 435 F. Supp. 3d at 433 (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 397 (19890 (internal quotations and citation omitted).

Plaintiff alleges that defendants used "excessive force" in shooting him several times. *See* Second Am. Compl. (Dkt. 74) at ¶ 35. It is undisputed, however, that Anderson, Sergeant Diab, Minucci, and Mitchell -- the non-shooting defendants -- did not discharge their firearms. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 57, 78, 79, 80. Based on these undisputed facts, no reasonable finder of fact could conclude that the non-shooting defendants committed the underlying act of shooting plaintiff alleged as the basis for the excessive force claim. Plaintiff cannot establish a claim of excessive force against the non-shooting defendants. For these reasons, this Court respectfully recommends **granting** defendants' motion summary judgment as to plaintiff's excessive force claim against Anderson, Sergeant Diab, Minucci, and Mitchell.

It is also undisputed, however, that defendants Rosiello and Feeley discharged their firearms. Rosiello discharged his firearm one time. Feeley discharged his firearm three times, and stopped firing after plaintiff fell to the ground. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 60, 61, 68, 72. This Court, in making a determination on defendants' summary judgment motion as to

excessive force, must determine whether the actions of Rosiello and Feeley were objectively unreasonable in light of the facts and circumstances they confronted at the time of the incident. *See Maxwell*, 380 F.3d at 108.

Rosiello and Feeley argue that their actions were reasonable because plaintiff had a gun that he removed from his waistband and pointed at defendant officers. *See* Pl. Resp. (Dkt. 104-2) at ¶¶ 54-56. Further, the record reflects that on April 24, 2018, plaintiff pled guilty to criminal possession of a firearm in New York State Court. In his allocution, the Court had the following colloquy with plaintiff:

> THE COURT: . . . Mr. Benbow, it is alleged that on or about March [] 7, 2015, in the County of Kings, you did knowingly possess any firearm, namely a pistol.
>
> Yes or no, sir?
>
> BENBOW: Yes.

Allocution (Dkt. 103-26) at 18:1-5.

Notwithstanding his allocution, plaintiff, on summary judgment, *denies* that he had a gun in his possession and further *denies* that he brandished a weapon and pointed it at the officers. In his opposition, plaintiff argues that this plea and allocution were coerced, and that plaintiff "only accepted the plea because of the manufactured evidence against him that was subsequently suppressed [by the Second Department]." Pl. Opp. (Dkt. 104) at 14. The Second Department's suppression of the evidence of a gun recovered from the scene of the incident resulted in a vacatur of plaintiff's guilty plea, dismissal of the indictment, and remittal to the Supreme Court, Kings County. *See* Decision & Order (Dkt. 103-27) at 1. It is also significant that plaintiff has made statements contrary to his guilty plea during the course of his sworn deposition testimony where he represents that he did not have a gun on the evening of the incident. *See* Benbow Tr. (Dkt. 103-4) at 62:11-13 ("Q: When you arrived at Amarachi Prime, were you in possession of a

gun?  A: No.").

Regardless of whether plaintiff's guilty plea and allocution are deemed inadmissible in this action in light of the Second Department's holding, there remains a dispute as to whether plaintiff, if he were in possession of a weapon, *pointed* or *brandished* the weapon at defendants. Plaintiff disputes whether he had a gun at the time of the incident; but, more important, he denies that he ever reached for his waistband during the time he was running from police.  *See* Benbow Tr. (Dkt. 103-4) at 106:13-18 ("Q: At any point when you were running the opposite direction on Nassau Street, did you reach into your waistband?  A. No.  Q. You did not reach into your waistband?  A. No.").

In contrast, defendants allege that plaintiff pulled a gun out of his waistband on the night of the incident.  *See* Rosiello Tr. (Dkt. 103-9) at 85:9-13, 86:9-14 (". . . he's running towards me and -- you know, obviously he pulls a gun out of his waist and it comes across, so, obviously, I'm -- I'm fearing for myself at that point and then I yelled 'gun' . . .  And as he's running at me, he's pulling a gun out of his waistband.  So by that time, I didn't have my gun out at that point when he was running at me.  As soon as I saw the gun, that's when I pulled my gun out.").  Further, defendants Rosiello and Feeley allege that they shot plaintiff because plaintiff pointed a gun at them.  *See* Rosiello Tr. (Dkt. 103-9) at 88:9-12 ("While he was running at me, pulling his gun out of his waistband, yes, I did shoot him because his gun was pointed in my direction."); Feeley Tr. (Dkt. 103-11) at 86:19-25 ("Q: And [you testified earlier] that he raised the gun in your direction as you were standing in front of him, correct?  A: Yes.  Q: And you shot him at that point, correct?  A: Yes.").

Even if plaintiff had a gun in his possession at the time of the incident, which the parties dispute, the facts surrounding whether plaintiff pointed and brandished a weapon remains in

dispute.  Given these disputed questions of fact, this Court respectfully recommends **denying** summary judgment as to plaintiff's excessive force claims against defendants Rosiello and Feeley.

* * *

Even if the use of force were unreasonable, Rosiello and Feeley argue that they are entitled to qualified immunity.  Because Rosiello and Feeley have invoked qualified immunity, the critical question is whether they should reasonably have known that their conduct violated "clearly established" constitutional law.  Under the qualified immunity analysis, the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  "The dispositive question is whether the violative nature of particular conduct is clearly established . . . in light of the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations omitted).  Although this standard does not require "a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Plaintiff alleges that Rosiello and Feeley violated his constitutional rights when they shot him several times.  *See* Second Am. Compl. (Dkt. 74) at ¶ 35.  Because material factual disputes remain as to the reasonableness of the use of force by Rosiello and Feeley (*i.e.*, whether plaintiff pointed or brandished a weapon), and potential violation of plaintiff's established constitutional rights, at this stage and based on the current record, qualified immunity is inappropriate.  *See Smith*, 435 F. Supp. 3d at 434-35 (holding that where a genuine dispute of fact with regard to the use of force remained, a qualified immunity inquiry could not yet be made); *Hemphill v. Schott*, 141 F.3d 412, 417-18 (2d Cir. 1998) (reversing grant of qualified immunity where there were factual disputes as to movements made by the plaintiff prior to the use of force and explaining

that "summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain"); *Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 505 (N.D.N.Y. 2010) ("[I]t is impossible to 'determine whether [defendant] reasonably believed that [his] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded.'") (quoting *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999)). Accordingly, this Court respectfully recommends **denying** qualified immunity as to defendants Feeley and Rosiello on the issue of excessive force at this stage.

In sum, as to the excessive force claim, this Court respectfully recommends **denying** defendants' motion for summary judgment as to the claim against defendants Rosiello and Feeley, but **granting** the motion as to the claim against Anderson, Sergeant Diab, Minucci, and Mitchell.

### C.    Failure to Intervene

A police officer may be liable for failure to intervene under Section 1983 where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). Plaintiff asserts a claim of failure to intervene against only the non-shooting defendants (*i.e.*, Anderson, Sergeant Diab, Mitchell, and Minucci). *See* Pl. Opp. (Dkt. 104) at 15 ("Defendants Anderson, Mitchell,

Diab and Minucci breached their duty to intervene and must be held liable for the preventable harm caused to Plaintiff by Feeley and Rosiello.").  Plaintiff alleges that "[w]hile each Defendant-Officer was engaged in the use of excessive force and the violation of Plaintiff's rights as alleged herein, those who were not using force against Plaintiff failed to intervene to prevent the use of excessive force in violation of Plaintiff's rights, despite an opportunity to do so."  Second Am. Compl. at ¶ 77.

As stated above, this Court respectfully recommends denying defendants' motion for summary judgment as to plaintiff's excessive force claim against defendants Rosiello and Feeley.  This alleged excessive force serves as the basis for plaintiff's failure to intervene claim. If it is determined that Rosiello and Feeley applied excessive force against plaintiff, thus violating plaintiff's constitutional rights, defendants Anderson, Sergeant Diab, Mitchell, and Minucci may be held liable for failing to intervene.  *C.f.*, *Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-CV-00725, 2017 WL 2218304, at *6 (D. Conn. May 19, 2017) (denying defendants' motion for summary judgment on an excessive force claim that was premised on an officer's failure to intervene).

As a preliminary matter, "[w]hen deciding a summary judgment motion, a court must construe all the evidence in the light most favorable to the nonmoving party . . . and draw all inferences and resolve all ambiguities in that party's favor."  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).  A non-movant's conclusory allegations, however, without support from record evidence are insufficient: the non-movant must "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Here, in his opposition to defendants' motion, plaintiff makes -- at best -- merely conclusory allegations that defendants Mitchell, Sergeant Diab, and Minucci failed to intervene

in the shooting of plaintiff. *See* Pl. Opp. (Dkt. 104) at 15. Plaintiff focuses solely on defendant Anderson arguing that Anderson "had a clear line of [sight] to Officer Feeley," "could see that Officer Feeley was not in any danger or trouble," and "did not try to stop Officer Rosiello from firing, nor did he try to stop Officer Feeley from firing . . . ." *Id.* In contrast, plaintiff cites no evidence in support of his claim that the other non-shooting defendants -- *i.e.*, Mitchell, Sergeant Diab, and Minucci -- failed to intervene or had a realistic opportunity to intervene. As a result, this Court respectfully recommends **granting** defendants' motion for summary judgment on plaintiff's failure to intervene claim as to defendants Sergeant Diab, Minucci, and Mitchell.

With respect to the claim against defendant Anderson, this Court must determine if there is a genuine dispute of fact as to whether Anderson had a reasonable opportunity to intervene in the shooting of plaintiff and whether a "reasonable person in the officers' position would know of any constitutional violation such that they would have a duty to intervene." *Anderson v. City of New York*, No. 15-CV-6246, 2017 WL 4712790, at *7 (S.D.N.Y. Sept. 25, 2017).

According to plaintiff, approximately 20-30 seconds elapsed between shots fired, providing opportunity for bystander officers to intervene. *See* Pl. Counter Statement (Dkt. 104-1) at ¶ 66. Plaintiff, however, cites to deposition testimony that does not support this characterization. Plaintiff cites to the Feeley deposition transcript, Feeley Tr. (Dkt. 104-6) at 146:23-24, and the Anderson deposition transcript, Anderson Tr. (Dkt. 104-9) at 138:20-139:2. In the excerpt from Feeley's transcript, Feeley alleges that the shots were discharged quickly, with the entire period between his first shot and his third and final shot totaling 20 to 30 seconds; he does not represent that 20 to 30 seconds elapsed between each shot. *See* Feeley Tr. (Dkt. 103-11) at 146:17-24 ("Q: So if you could estimate, how many seconds were between the -- transpired between the first time you shot and the last time you shot? A: Oh, it was very quick.

Q: Okay. A: Maybe 20 seconds, 30 not -- not long."); *id*. (Dkt. 103-11) at 151:10-12 (Q: "So it would be fair to say you shot three shots, one after the other? A: Yes.").

Anderson testified that Rosiello fired his first and only shot a mere two to three seconds after Feeley fired his first of three shots. *See* Anderson Tr. (Dkt. 104-9) at 139:3-10 ("So between the -- between the time when Officer Feeley began -- fired his first shot and the time that Officer Rosiello [] -- fired his first and only shot, could you approximate the amount of time between those two -- those two events? [] A: Two seconds, three seconds.").

As a result of these conflicting statements regarding the timing between the shots fired by Feeley and Rosiello, a triable issue of fact remains as to whether there existed a realistic opportunity for defendant Anderson to intervene. Accordingly, this Court respectfully recommends **denying** summary judgment as to plaintiff's failure to intervene claim against defendant Anderson.

### D. Malicious Prosecution

To prevail on a claim for malicious prosecution, a plaintiff must show that "(1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) defendant initiated the criminal proceeding out of actual malice." *Neal v. Fitzpatrick*, 250 F. Supp. 2d 153, 154 (E.D.N.Y. 2003); *see also Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010); *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).

Here, defendants do not contest that they initiated a criminal proceeding. Plaintiff was arrested and charged with violating New York Penal §§ 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 120.14(1) (Menacing in the Second Degree). *See* Arrest

Report (Dkt. 103-23). A Criminal Court Complaint was filed against plaintiff in the Kings County Criminal Court, Docket No. 2015KN01452, charging him with violating New York Penal §§ 265.03(1)(B) (Criminal Possession of a Weapon in the Second Degree), 265.03(3) (Criminal Possession of a Weapon in the Second Degree), and 265.01(1) (Criminal Possession of a Weapon in the Fourth Degree). *See* Criminal Court Complaint (Dkt. 103-24). In addition, defendants acknowledge that, in light of recent Supreme Court precedent, plaintiff has satisfied the favorable termination element of his malicious prosecution claim. *See* Defendant's withdrawal letter (Dkt. 107). "Defendants, however, maintain that plaintiff's malicious prosecution claim should be dismissed because: (1) there was probable cause to [prosecute] plaintiff; and (2) plaintiff has failed to establish the element of malice." *Id*.

The viability of plaintiff's malicious prosecution claim, therefore, depends on whether plaintiff can show that there was no probable cause for the criminal proceeding and that defendants initiated the criminal proceeding out of actual malice. "A successful claim against a police officer also requires some showing that the defendant distorted the process by which [the] plaintiff was brought to trial." *Yusuf v. City of New York*, No. 15-CV-5545, 2022 WL 393882, at *14 (E.D.N.Y. Feb. 9, 2022) (quoting *Breeden v. City of New York*, No. 09-CV-4995, 2014 WL 173249, at *10 (E.D.N.Y. Jan. 13, 2014)).

Here, plaintiff presents no evidence of actual malice. Malice requires a showing by plaintiff that defendants had "a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (remanding grant of summary judgment with respect to one of two malicious prosecution claims). Malice is generally inferred from circumstantial evidence. *Id*. Plaintiff relies primarily on claims that "Defendant Officers made multiple misrepresentations about the events of the

night of the incident, including but not limited to, where they were positioned when they shot Plaintiff, whether or not Plaintiff had a gun, and whether or not Plaintiff pointed the gun at any officer." Pl. Opp. (Dkt. 104) at 12-13. Plaintiff, however, presents no evidence to support malicious intent or distortion of evidence related to the criminal prosecution on a charge of illegal possession of a firearm. Indeed, the recovery of a pistol from the scene of the incident was presented as evidence to the criminal court, and a criminal judge -- although later overturned by the Second Department -- made an independent determination not to suppress that evidence. *See*, e.g., *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) ("New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant."); *see also Yusef,* 2022 WL 393882, at *14; *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009) ("[A] malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police." (collecting cases)). For these reasons, this Court respectfully recommends **granting** defendants' summary judgment motion as to plaintiff's malicious prosecution claim.

E.      **State Law Claims**

Plaintiff asserts several state law claims. In light of this Court's recommendations to deny summary judgment as to several of plaintiff claims brought pursuant to 42 U.S.C. § 1983, this Court respectfully recommends retaining jurisdiction over the state law claims arising from the same nucleus of common fact. *See Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 468-69 (E.D.N.Y. 2010); *Cohen v. Goodfriend*, 665 F. Supp. 152, 158 (E.D.N.Y. 1987).

1.      **Assault and Battery**

Plaintiff brings claims under New York state law for assault and battery against all

defendants.  Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." *Alvarez v. City of New York*, No. 11 CIV. 5464, 2015 WL 1499161, at *10 (S.D.N.Y. Mar. 30, 2015) (citing *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)).  "A 'battery' is an intentional wrongful physical contact with another person without consent." *Id.*

"[T]he test for whether a plaintiff can maintain state law assault and battery causes of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." *Alvarez*, 2015 WL 1499161 at *10 (quoting *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y.2013).  "Under federal or state law, a plaintiff must show that the amount of force used was objectively unreasonable based upon a consideration of the perspective of the officer at the time." *Anthony v. City of New York*, No. 00 Civ. 4688, 2001 WL 741743, at *13 (S.D.N.Y. July 2, 2001) (internal citations and quotations omitted); *see also Pierre-Antoine v. City of New York*, No. 04 Civ. 6987, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("Because there is a genuine issue of material fact as to whether [the officer] used excessive force against [plaintiff], there is likewise a genuine issue of material fact as to whether [the officer] committed assault against [plaintiff], and the motion for summary judgment is thus denied with respect to the assault claim.").

For the reasons set forth above with respect to the excessive force claims, this Court respectfully recommends **denying** defendants' motion for summary judgment on plaintiff's assault and battery claims against defendants Rosiello and Feeley, but **granting** the motion as to defendants Anderson, Sergeant Diab, Minucci, and Mitchell.

### 2.      Negligence Claims

In addition to his assault and battery claims, plaintiff alleges that defendants were "negligent in their interaction with the Plaintiff, including but not limited to, using force inappropriately, accidently, and recklessly."  Second Am. Compl. (Dkt. 74) at ¶ 93.  "When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Alvarez*, 2015 WL 1499161, at *10 (citation omitted).

Because plaintiff's negligence claims are duplicative of his excessive force, assault, and battery counts, they cannot go to the jury.  *See United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) (recognizing the mutual exclusivity of negligence and battery because "negligence is unintentional"); *Universal Calvary Church v. City of New York*, No. 96 Civ. 4606, 2000 WL 1745048, at *12 (S.D.N.Y. Nov. 28, 2000) (granting summary judgment with respect to plaintiffs' negligence claim because the evidence established intentional conduct for assault and battery); *Mazurkiewicz v. New York City Transit Auth.*, 810 F. Supp. 563, 570-71 (S.D.N.Y. 1993) ("[p]laintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff).  Accordingly, this Court respectfully recommends **granting** defendants' summary judgment motion as to plaintiff's negligence claims.

### Conclusion

For the reasons stated above, this Court respectfully recommends granting in part and denying in part defendants' motion for summary judgment, as follows:

(1) **granting** defendants' motion with regard to plaintiff's *Monell* claims against the City in its entirety;

(2) **denying** defendants' motion with regard to plaintiff's false arrest claims;

(3) **denying** defendants' motion with regard to plaintiff's excessive force claims against defendants Feeley and Rosiello, but **granting** the motion as to the claims against defendants Anderson, Sergeant Diab, Minucci, and Mitchell;

(4) **granting** defendants' motion with regard to plaintiff's failure to intervene claims against defendants Sergeant Diab, Minucci, and Mitchell, but **denying** the motion as to defendant Anderson;

(5) **granting** defendants' motion with regard to plaintiff's malicious prosecution claims in its entirety;

(6) **denying** defendants' motion with regard to plaintiff's assault and battery claims against defendants Feeley and Rosiello, but **granting** the motion as to defendants Anderson, Sergeant Diab, Minucci, and Mitchell; and

(7) **granting** defendants' motion with regard to plaintiff's negligence claims in its entirety.

Any objections to the recommendations made in this Report must be filed with The Honorable Eric R. Komitee within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 14, 2022**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
August 31, 2022

s/ James R. Cho_____
James R. Cho
United States Magistrate Judge