UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
BENBOW,                              :
                                     :
           Plaintiff,                : Civil Action No: 17-CV-6457 (EK)(JRC)
     v.                              :
                                     :
FEELY, et al.,                       :
                                     :
           Defendants.               :
                                     :
_____  :

PLAINTIFF'S OBJECTION TO PORTIONS OF THE HONORABLE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS

                                                Aymen A. Aboushi, Esq.
                                                The Aboushi Law Firm, PLLC
                                                1441 Broadway, Fifth Floor
                                                New York, NY 10018
                                                T: (212) 391-8500
                                                F: (212) 391-8508 (not for service)
                                                Attorneys for Plaintiff

**Table of Contents**

**Introduction** ..................................................................................................................**4**

**Facts** ............................................................................................................................**5**

**Standard** ......................................................................................................................**5**

**Analysis**........................................................................................................................**6**

    **I**. The Magistrate Judge's recommendation that the District Judge grant summary judgment on Plaintiff's Monell claim should be rejected……………………………………..**6**

    **II**. The Court should not grant summary judgment on Plaintiff's Malicious Prosecution Claim as the Defendants' conduct and misrepresentations give rise to an inference of malice..**12**

    **III**. Plaintiff may pursue alternative theories of liability and thus his claim for Negligence must remain and sent to the Jury for its determination……………..…………………………**14**

    **IV.** The Court must disregard the materials and arguments submitted by the Defendants in their reply reply……………………………………………………………………………......**14**

**Conclusion**...................................................................................................................**17**

# Cases

Alwan v. City of New York. 311 F. Supp. 3d 570 (E.D.N.Y. 2018) ........................................7, 12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ..................................................................5

Boyd v City of New York, 336 F3d 72, (2d Cir. 2003) ..................................................................12

Coggins v. Cty. of Nassau, 254 F. Supp. 3d 500 (E.D.N.Y. 2017) ................................................12

Fate v Charles, 24 F Supp 3d 337, (S.D.N.Y. 2014) ......................................................................6

Gunning v. Cooley, 281 U.S. 90 (1930) ..........................................................................................6

H.H. v. City of New York, 2017 WL 33196434 (E.D.N.Y. Aug. 7, 2017) ......................................7

Hodge v Vil. of Southampton, 838 F Supp 2d 67 (E.D.N.Y. 2012) ...............................................14

Hunsucker. See, e.g., Kuar v. Mawn, 08–CV–4401 (JFB) (ETB), (March 4, 2011) ....................14

Jeffreys v. City of New York, 426 F.3d 549, (2d Cir. 2005) ...........................................................6

Jenkins v City of New York, 388 F Supp 3d 179 (E.D.N.Y. 2019) .........................................10, 12

Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 694 (1978) ...................................6

Piper v City of Elmira, 12 F Supp 3d 577 (W.D.N.Y. 2014) .........................................................6

Thomas v. Arn, 474 U.S. 140 (1985) ..............................................................................................5

Vann v. City of New York. 72 F.3d 1040 (2d Cir. 1995) ................................................................7

# Statutes

28 U.S.C. § 636(b)(1) .....................................................................................................................5

28 U.S.C. § 636(b)(1) .....................................................................................................................5

933 F.2d 162, 166–67 (2d Cir. 1991) .............................................................................................5

Fed. R. Civ. P. 56(a) .......................................................................................................................5

Fed. R. Civ. P. 72(b)(2) ..................................................................................................................5

Fed. R. Civ. P. 72(b)(3) ..................................................................................................................5

**Introduction**

As an initial matter, the Magistrate Judge produced a well-reasoned recommendation on the Defendants' pending Motion for Summary Judgment. The Magistrate Judge clearly expended significant time and energy reviewing the record and analyzing the arguments, for which the Plaintiff is grateful. While the Magistrate Judge's recommendations to deny portions of the Summary Judgment motion are correct, the Magistrate Judge's recommendation regarding the *Monell*, Malicious Prosecution, and Negligence claims are inconsistent with the relevant facts and applicable case law. Plaintiff respectfully files the following objections to the Magistrate Judge's Report and Recommendation ("R&R") that Defendants' Motion for Summary Judgment on Plaintiff's *Monell*, Malicious Prosecution, and Negligence claims be granted. As to the *Monell* claim, the Plaintiff has more than established sufficient facts from which a jury could conclude that *Monell* liability exists. Indeed, Plaintiff has proffered significant expert materials regarding same. Moreover, the frequency and numerosity of the complaints regarding the officers who shot Plaintiff mandated that they were not on the streets that night, or in the risky and since disbanded anti-crime unit. The facts establish that the City was on notice of these officers' previous alleged conduct and failed to take any action to inhibit same. Only a jury can weigh the evidence and make the decision regarding *Monell* liability. As to Plaintiff's Malicious Prosecution claim, the Magistrate Judge overlooked the fact that malice can be inferred from the Defendants' unlawful conduct and that only a jury can decide on this prong, only after reviewing the facts. The fact that Defendants misrepresented their actions on the night of the incident in order to cover up and justify their actions, is sufficient to send this count to a jury for its consideration and decision. Finally, regarding negligence, the case law permits Plaintiff to

pursue alternative theories of liability. As such, the Court should permit the claim of Negligence to proceed to the jury's consideration.

## **Facts**

Plaintiff respectfully incorporates by reference the Statement of Facts from his Opposition, including but not limited to his Counter Statement of Facts and Response to Defendants' Statement of Facts, and Certifications and Exhibits submitted in Opposition to Defendants Motion for Summary Judgment. Docket Numbers 99 and 104.

## **Standard**

Any party may serve and file written objections to report and recommend a Magistrate Judge on a dispositive matter within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any portion of such a report and recommendation to which a timely objection has been made is reviewed de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court, however, is not required to review the factual findings or legal conclusions of the Magistrate Judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this determination, the court must assess whether there are any disputed material facts and in doing so must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 166–67 (2d Cir. 1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The moving party bears the initial

burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor. Piper v City of Elmira, 12 F Supp 3d 577, 585-86 (W.D.N.Y. 2014). Generally, "[i]ssues that depend on the credibility of witnesses ... are to be decided by the jury." Gunning v. Cooley, 281 U.S. 90, 94 (1930). Consequently, when the material evidence essentially consists of contradictory testimony, summary judgment will not be appropriate. Only in the rare circumstances when there is nothing in the record to support the plaintiff's allegations other than his own contradictory and incomplete testimony and even after drawing all inferences in the light most favorable to the plaintiff no reasonable person could believe his testimony, will summary judgment be warranted. Fate v Charles, 24 F Supp 3d 337, 342 (S.D.N.Y. 2014); Jeffreys v. City of New York, 426 F.3d 549, 554–55 (2d Cir. 2005) (citations and quotations omitted).

## Analysis

**I.     The Magistrate Judge's recommendation that the District Judge grant summary judgment on Plaintiff's *Monell* claim should be rejected.**

The R&R regarding Plaintiff's *Monell* claim should not be adopted by the District Judge. In general, municipalities cannot be sued under Section 1983 for injuries inflicted upon others by their employees or agents. Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 694 (1978). However, such claims are permitted if a plaintiff can demonstrate that a deprivation of his or her constitutional rights was caused by an official policy or custom of the municipality. Id. at 690-91. A plaintiff can establish the existence of such a policy or custom by "showing the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference" to the rights of the public because it failed to act when "the need for more or better supervision to protect against constitutional violations was obvious." Vann v. City of New York. 72 F.3d 1040, 1049 (2d Cir. 1995).

The municipality's deliberate indifference can be "inferred if prior complaints of misconduct are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents or if the [municipality's] response is so patently inadequate to the task as to amount to deliberate indifference." Alwan v. City of New York. 311 F. Supp. 3d 570, 584 (E.D.N.Y. 2018) (internal citations omitted). A plaintiff must also show that the deprivation of his or her constitutional rights was a "reasonably foreseeable consequence of, and substantially caused by, the [municipality's] failure to supervise." H.H. v. City of New York, 2017 WL 33196434, at *9 (E.D.N.Y. Aug. 7, 2017). "To be reasonably foreseeable, the harm to plaintiff must be of the same general nature as that which a reasonably prudent person in the [municipality's] position should have anticipated in light of its level of supervision and knowledge of the officer." Id. (internal quotations omitted).

The history of the Defendant-Officers who shot Plaintiff reveals that they have a torrid history that required the City to remove them from the anti-crime team, provide additional supervision and take action to intervene in their escalating conduct. The fact that the City failed to do so, despite being on notice, is more than enough to permit a fact finder to consider whether the City was deliberately indifferent. Defendant Feeley fired three shots at Plaintiff's back on the night of the incident. Pl. CSOF ¶¶46-47. Defendant Feeley's lawsuit, CCRB, IA and lawsuit histories should have alerted the City as to his propensity to use excessive force. Aboushi Cert. Ex. 20; Pl. CSOF ¶¶97-105. Defendant Feeley's complaint history shows that in 2014, Defendant Feeley has had multiple complaints where he injured a prisoner while in custody on one occasion and used unnecessary force on three separate occasions. Aboushi Cert. Ex. 24. Defendant Feeley also has a use of force investigation pending from 2015. Defendant Feeley also testified to having more than two lawsuits filed against him. Pl. CSOF ¶¶97-105. Despite the foregoing the

City and the NYPD showed deliberate indifference to meaningfully investigate the alleged incidents and failed to act and ensure that Defendant Feeley had more supervision; supervision which was clearly necessary in light of his propensity to use excessive force and inappropriately discharge his firearm. Despite the red flags littered throughout Defendant Feeley's file, the NYPD never spoke to Feeley about his lawsuit history. Pl. CSOF ¶97. The NYPD never spoke to Feeley about his CCRB complaint history. Pl. CSOF ¶98. The NYPD never placed Feeley on any type of performance monitoring, nor did it have him undergo additional training. Pl. CSOF ¶¶100-101. According to the NYPD Monitoring Manual, Feeley had enough complaints lodged against him to qualify for monitoring. Aboushi Cert. Ex. 8; Pl. CSOF ¶¶101-105. Contrary to the findings of the R&R, the record plainly establishes that the City was on notice of Defendant Feely's torrid history and failed to take any steps to rectify the matter. Even if the allegations were not sustained, they present a cause for concern that was ignored by the City. That willful ignorance led directly to the unlawful use of force against Plaintiff by the City's officers.

Further, a review of Defendant Feeley's 50(a) records shows a troubling history and pattern of conduct that mandated the City to take some action to intervene. Aboushi Cert. Ex. 20. This record shows at least ten (10) lawsuits (some of which the City itself failed to memorialize in Feeley's NYPD records), and fifteen (15) complaints—all made by black males. His troubling history dates back to 2009, and the NYPD took no action to intervene, retrain or inhibit the conduct, despite a glaring need to do so. The R&R did not consider this evidence in recommending that summary judgment be granted on Plaintiff's *Monell* claim.

Similarly, Defendant Rosiello had a problematic history with eight (8) lawsuits and ten (10) complaints filed against him—notably all made by black males. Id. He qualified for performance monitoring based upon the number of complaints lodged against him. Aboushi Cert.

Ex. 20. It is noteworthy that the Performance Monitoring is a **quantitative** system that requires monitoring irrespective of the nature of the complaint, lawsuit, or other action. Officer Rosiello testified to having approximately 10 lawsuits wherein he is named as a Defendant in his official capacity as a police officer. Aboushi Cert. Ex. 19; Aboushi Cert. Ex. 20; Pl. CSOF ¶¶87-89. Rosiello similarly testified that he also had more than 10 CCRB complaints lodged against him. Aboushi Cert. Ex. 19; Aboushi Cert. Ex. 20; Pl. CSOF ¶90. In 2014, Rosiello had five complaints of unnecessary force lodged against him. Aboushi Cert. Ex. 29. Rosiello also had a complaint lodged against him for injuring a prisoner in NYPD custody in 2014. Id. In 2013, Rosiello also had two complaints lodged against him for injuring a prisoner in NYPD custody. Id. Astonishingly, Rosiello had 6 complaints of unnecessary force lodged against him in 2013. Id. Despite the foregoing the City and the NYPD showed deliberate indifference to meaningfully investigate the alleged incidents and failed to act and ensure that Defendant Rosiello had more supervision when his propensity to use excessive force was obvious. Yet, despite the foregoing, the NYPD never spoke to Rosiello about his lawsuit history. Pl. CSOF ¶89. The NYPD never spoke to Rosiello about his CCRB complaint history. Pl. CSOF ¶91. The NYPD never placed Rosiello on any type of performance monitoring. Pl. CSOF ¶92. According to the NYPD Monitoring Manual, Rosiello had more than enough complaints lodged against him to qualify for monitoring. Aboushi Cert. Ex. 8; Pl. CSOF ¶¶87-96. Yet he was not placed in force monitoring.

In addition to the foregoing evidence, the **only** police expert before the Court, Expert Pollini, also makes clear that these officers required additional monitoring, supervision, and that they should not have been on the streets the night they violated Plaintiff's rights. Aboushi Cert Ex. 8. Pollini establishes the escalating nature of the Defendants' conduct and how the lack of supervision and intervention that resulted in an escalating pattern, culminating in Plaintiff being

unlawfully arrested and shot. Pollini also explains that the NYPD violates its own guidelines for monitoring its officers, and that Feeley/Rosiello should have been in, at minimum. Level I monitoring, but the City failed to take any such action. Had the City properly monitored and intervened in the Defendants' conduct, the situation in which Plaintiff's rights were violated clearly could have been avoided. Aboushi Cert. Ex. 8.

Equally fatal to the Defendants' claim for summary judgment is the complete lack of tracking of the lawsuits filed against the Defendant-Officers. Despite being sued repeatedly, the Defendants' records do not contain any record of the lawsuits, or the Defendant-Officers being sued. Exhibits 24 and 25 to the Aboushi Certification are the IAB records for Defendants Rosiello and Feeley. These records are supposed to memorialize the lawsuits filed against these Defendants. Aboushi Decl. Exs. 24-25. A review of these IAB records reveals that, despite being named in many lawsuits, only one lawsuit is memorialized for Rosiello, and none are listed for Feeley. Without adequate record keeping, the Defendant-Officers could not be properly monitored, supervised, or intervened. The CCRB and lawsuit histories are stunning and required that an intervention occur. The City willfully failed to keep records and undertake a meaningful review and monitoring of their officers' escalating conduct that culminated in Plaintiff being shot in his back. Equally problematic for the City is that Defendants Feeley and Rosiello's supervisors were not made aware of any complaints, nor were the Defendant-Officers ever counseled regarding the complaints against them. <u>Jenkins v City of New York</u>, 388 F Supp 3d 179, 187 (E.D.N.Y. 2019)("The NYPD's failure to notify supervisors about complaints and Sergeant Weber's refusal to consider unsubstantiated complaints in his day-to-day supervision of officers reflect a deliberate choice among various alternatives, rather than negligence or bureaucratic inaction.")(citations and quotations omitted).

10

Had both Defendants Feeley and Rosiello been monitored, counseled, or supervised as they were required to have been, they would not have been in the position to abuse their power and use excessive and deadly force upon Plaintiff, causing him his permanent injuries. Pl. CSOF ¶¶148-152. Moreover, the monitoring program is meaningless as Sgt. Diab, who was in the intensive supervision program, testified saying that the program consisted of nothing more than watching a video on how to be nice. Pl. CSOF ¶113. Sgt. Diab, as the direct supervisor to Defendants Rosiello, Anderson and Feeley at the time of the incident, was never advised about any of the histories of any of the Defendant-Officers, or the histories of any other individuals that he supervised. Pl. CSOF ¶¶114-118. The sheer number of complaints should have put the City and the NYPD on alert that these individuals have the propensity to use excessive force, discharge their firearms inappropriately, and abuse their power over individuals already detained and in police custody.

The foregoing is only emphasized, and the issue is compounded by the fact that, aside from the two officers that shot Plaintiff, Defendants Minucci, Anderson and Diab also had extensive complaint histories. Aboushi Cert. Ex. 21; Aboushi Cert. Ex. 26. Officer Minucci has approximately ten lawsuits against him. Pl. CSOF ¶106. Allegations in the lawsuits include claims of excessive force, illegal search, and violation of rights. Pl. CSOF ¶107. Officer Minucci reached a level of force monitoring where he was simply counseled on his CCRB history, but received no further follow up from supervisors. Pl. CSOF ¶¶108-109. Unsurprisingly, Officer Anderson was never spoken to by a representative or supervisor of the NYPD regarding his CCRB complaint history. Pl. CSOF ¶¶110-111. The City and the NYPD's lack of response to the overwhelming number of complaints made against Defendant-Officers rises to the level of

11

deliberate indifference to the rights of the public that their officers are expected to govern and interact with daily.

Lastly, the R&R did not account for the lengthy case law that permits claims and facts similar to the ones asserted by Plaintiff to proceed to a jury. See Jenkins v City of New York, 388 F Supp 3d 179, 187 (E.D.N.Y. 2019); Alwan, 311 F. Supp. 3d at 580-81; Coggins v. Cty. of Nassau, 254 F. Supp. 3d 500, 520–21 (E.D.N.Y. 2017)("Courts in the Second Circuit routinely hold that multiple civilian complaints against an officer regarding conduct similar to that exhibited toward a plaintiff is enough for a jury to find the requisite degree of indifference to support failure to supervise liability under *Monell*.").

The foregoing is more than enough evidence from which a reasonable jury could find that the number of complaints filed against Defendants Feeley and Rosiello should have alerted the City to the risk that they would again use excessive force, and the City's failure to meaningfully respond to the complaints, take action, and remove them from the risky and since disbanded anti-crime unit amounts to a policy of tolerance of excessive force.

**II.** **The Court should not grant summary judgment on Plaintiff's Malicious Prosecution Claim as the Defendants' conduct and misrepresentations give rise to an inference of malice.**

The R&R that Plaintiff's malicious prosecution claim be dismissed because the Plaintiff cannot show malice is inconsistent with the law. As an initial matter, once an issue of material fact as to probable cause is found, the element of malice also becomes an issue of material fact as well. Boyd v City of New York, 336 F3d 72, 77 (2d Cir. 2003). Indeed, a lack of probable cause generally creates an inference of malice. Id. As such, given the fact that the Court held that there is a dispute precluding summary judgment regarding probable cause, it was required to hold that

there was an inference of malice. This inference is sufficient to permit Plaintiff's Malicious Prosecution claim to proceed to the jury.

Further, malice may be established by showing that the prosecution was undertaken from improper, wrongful motives, or in reckless disregard of the rights of the Plaintiff. Manganiello v City of New York, 612 F3d 149, 163 (2d Cir 2010). The prosecution of Plaintiff was a result of Defendants' officers misuse of deadly force and an attempt to cover up same. Defendants' officers made multiple misrepresentations about the events of the night of the incident, including but not limited to, where they were positioned when they shot Plaintiff, whether or not Plaintiff had a gun, and whether or not Plaintiff pointed the gun at any officer. Indeed, the gun recovered from the scene did not have any DNA or fingerprints on it whatsoever, even though Defendants allege that Plaintiff ran in the direction of the officers while pointing a gun at them. Pl. CSOF ¶¶44-46, 50-767, 124, 137, 154, 163-164, 171-172. A jury could determine that the prosecution of the Plaintiff was the result solely of the Defendants' desires to cover up an unlawful and unjustified shooting.

Lastly, while the R&R discusses a prosecutor's involvement in charging Plaintiff, it is axiomatic that a prosecutor can only present facts as stated by the police officers. Indeed, a prosecutor does not have firsthand knowledge of the events. The prosecutor relies upon the claims of the officers, irrespective of whether those claims are false. As such, the misstatements made by the defendants that are then recapitulated and relied upon by the prosecutor does not emancipate them from their unlawful conduct. The prosecutor does not act to launder the malicious prosecution commented and perpetrated by the Defendants.

Considering the foregoing, the Court should deny the Defendants' Motion for Summary Judgment on Plaintiff's Malicious Prosecution claims.

### III. Plaintiff may pursue alternative theories of liability and thus his claim for Negligence must remain and sent to the Jury for its determination.

The R&R suggests that the Plaintiff's claim for Negligence be dismissed because Plaintiff has alternative theories of intentional actions. As is the case here, Plaintiff may properly pursue claims for excessive force and negligence. Hodge v Vil. of Southampton, 838 F Supp 2d 67, 88 n. 14 (E.D.N.Y. 2012); see also Hunsucker. See, e.g., Kuar v. Mawn, 08–CV–4401 (JFB) (ETB), 2011 WL 838911, at *14 (March 4, 2011) (allowing plaintiff to plead excessive force claim and negligence claim in the alternative). Should there be any conflict between intentional and negligent conduct, same could be cured by a simple jury instruction. Id. Hodge, 838 F Supp 2d 67. As such, Plaintiff's claims for negligence may proceed simultaneously with Plaintiff's other claims.

### IV. The Court must disregard the materials and arguments submitted by the Defendants in their Reply.

Defendants improperly filed a "Defendants' Reply to Plaintiff's Responses and Objections to Defendants' Statement of Undisputed Facts," Dkt. No. 105-1 (hereinafter "Defendants' Improper Reply"), as well as to "Defendants' Response to Plaintiff's Counter Statement of Facts Pursuant to Rule 56.1," Dkt No. 105-2 (hereinafter "Defendants' Improper Response"). First, neither Rule 56 nor our Local Rules permit the Defendant to submit Defendants' Improper Reply. Indeed, nowhere in Rule 56 or our Local Rule 56 are Defendants permitted to file a purported "Reply" to Plaintiff's Responses to Defendants purported Statement of Undisputed Material Facts. Given the clear lack of authority for this misleading and self-serving filing, the Court must strike Defendants' improper reply from the record and disregard same. Plaintiff's counterstatement of facts exposes the Defendants' claim of undisputed facts as a farce and renders them unentitled to summary judgment. They cannot come back and assert

additional materials in support of their Motion for Summary Judgment—materials that Plaintiff has not had an opportunity to respond to- in a failed attempt to overcome the fatal flaws of their submission.

Second, Defendants' Improper Response is equally inappropriate, unauthorized by the Rules, and must be stricken or disregarded. Moreover, the Defendants failed to contest the Plaintiff's Statement of Facts with admissible evidence or any citations. As such, Plaintiff's Statement of Materials Facts must be admitted. Indeed, almost all of Defendants "denials" contain defense counsel's bare statement of denial, with no citations to evidence, let alone admissible evidence. For example, Defendants' responses to Paragraphs 1-19, 21-38, 41-43, 44-50, 55-58, 60, 71, 73-74, 81-85, 88-95 and 97-118 do not contain anything more than defense counsel's unavailing general denials. While Plaintiff cites many sources for his statement of facts, Defendants only respond to a singular citation, while ignoring the plethora of other citations that support the statement. The Defendants simply fail to overcome the Plaintiff's facts that render their Motion for Summary Judgment impotent and unavailing. As such, the Court must deny Defendants' motion.

Furthermore, defense counsel's conclusory and unsupported statements made in response to Plaintiff's Rule 56 Counter Statement of facts, particularly in relation to his statements regarding the Plaintiff's experts, is frivolous and erroneous. Defense counsel's opinions are woefully inadequate to contest Plaintiff's experts' opinions. In fact, the defense has no experts, and before this very Court, stated repeatedly that they did not need experts to obtain summary judgment, notwithstanding having been served with Plaintiff's expert disclosures and having them for many months before moving for Summary Judgment. Despite having no experts to contest Plaintiff's experts, defense counsel inappropriately and unavailingly offers his own self-

serving opinions and unqualified analysis in his denial of the Experts' well laid-out opinions. For example, defense counsel simply denies and argues against the expert opinions contained in Paragraphs 132-135, 137-152, 154, 157-159 and generally throughout Paragraphs 160-184. Defense counsel inappropriately substitutes his own opinion and unqualified analysis to contest the opinions of doctors, a well-credentialed expert in police practices, and a forensic shooting reconstructionist. Clearly, this tactic is both factually and legally unavailing, and results in these paragraphs being admitted and summary judgment being denied. Further fatal to the Defendants self-serving and inadequate denials is that they failed to cite anything in the record in support of their denials in contravention to Rule 56 and Local Rule 56.

The Defense then goes on to make previously undisclosed *Daubert* arguments for the first time in a footnote in a response to Plaintiff's Statement of Facts, despite having the expert reports for months before filing for summary judgment and failing to raise any issues regarding their credentials or opinions. Since Defendants have no experts and never previously raised any arguments regarding admissibility until this rogue footnote, all of the expert reports and opinions provided in opposition to the Defendants' motion must be admitted and any statements made in response to Plaintiff's submission must be disregarded. A throw away footnote buried in Defendants' Improper Response is not the appropriate means by which to raise Daubert arguments, especially when the Plaintiff has no meaningful way to challenge these self-serving arguments raised for the first time in the Defendants' Improper Response. In addition, as noted earlier, the Defense chose not to retain any experts, and thus cannot make any meaningful *Daubert* argument even if they were permitted to at this late stage, which they should not be.

In conclusion, the documents filed as Docket Numbers 105-1 and 105-2 suffer from fatal deficiencies that require them to be disregarded, the Plaintiff's facts admitted, and Defendants' Motion for Summary Judgment should be denied in its entirety.

**Conclusion**

The portions of the R&R that suggest that Plaintiff's *Monell*, Malicious Prosecution, and Negligence claims be dismissed should not be adopted. Furthermore, the Defendants improper and erroneous submissions must be disregarded. Defendants' Motion for Summary Judgment must be denied in its entirety.

Dated: September 14, 2022                                              Respectfully submitted,
                                                                                           s/Aymen A. Aboushi
                                                                                           Aymen A. Aboushi, Esq.
                                                                                           The Aboushi Law Firm
                                                                                           Attorneys for Plaintiff