UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

JAMES BENBOW,

                 Plaintiff,          **MEMORANDUM & ORDER**
                                            17-CV-6457(EK)(JRC)

            -against-

THE CITY OF NEW YORK; POLICE OFFICER
BRIAN FEELEY; POLICE OFFICER MATTHEW
ROSIELLO; et al.,

                 Defendants.

------------------------------------x

ERIC KOMITEE, United States District Judge:

      Plaintiff James Benbow sued the City of New York and six officers of the New York City Police Department, invoking 42 U.S.C. § 1983 and state law.  He asserts federal claims against the officers for excessive force, failure to intervene, malicious prosecution, and false arrest.  He asserts state law claims against the officers for assault and battery and negligence.  And he brings *Monell* claims against the City.

      Defendants moved for summary judgment on all claims. ECF No. 103.  The Court referred that motion to Magistrate Judge James Cho.  Judge Cho submitted his Report and Recommendation ("R&R") on August 31, 2022.  ECF No. 114.  He recommends granting Defendants' motion in its entirety as to Benbow's *Monell*, malicious prosecution, and negligence claims.  He also recommends granting summary judgment to certain Defendants on

the excessive force, failure to intervene, and assault and battery claims.  He recommends that the motion be denied in its entirety as to the false arrest claims.  *Id.*  Benbow and all Defendants filed timely objections.  *See* Pl.'s Obj. to R&R, ECF No. 117; Defs.' Obj. to R&R, ECF No. 118.

I concur with Judge Cho's comprehensive analysis in this complicated case in all but two respects.  First, I conclude that the officer Defendants are entitled to summary judgment on the false arrest claim.  Second, I refrain from resolving the motion for summary judgment on the failure-to-intervene claim against Officer Anderson, pending further briefing on the applicability of the doctrine of qualified immunity.  With those two qualifications, I adopt the R&R in full.

## I.    Background

This order incorporates Judge Cho's thorough description of the factual and procedural background.  *See* R&R at 2—8.  As the R&R indicates, we view the facts in the light most favorable to Benbow.  R&R at 8 (citing *Gallo v. Prudential Res. Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994)).

To briefly orient the reader, in early March 2015, six officers of the New York City Police Department ("NYPD") — Brian Feeley, Matthew Rosiello, Kenneth Anderson, William Diab, Shaniel Mitchell, and Stephen Minucci — set out for a Brooklyn

club called Amarachi Prime. *See* R&R at 2-4. They did so based on information supplied by an auxiliary police officer named Jason Marshall, who was working in the club and reported that Benbow was carrying a gun on the premises. *Id.* at 3-4. Marshall delivered this information to Cespedes and Mitchell in separate phone calls. *Id.* at 2-3. Those two officers relayed the report to Diab, who briefed the remaining officers. *Id.*

The officers arrived outside Amarachi Prime in unmarked cars. *Id.* at 3-4. Mitchell then received another phone call from Marshall. *Id.* Marshall described Benbow, as well as Benbow's acquaintance, and said the two men were about to leave the club. *Id.; see also* Diab Dep. 97:3-10, ECF No. 98-8. As the two men left the club, the officers' two unmarked cars pulled alongside them. R&R at 4. The officers leapt out, and Benbow ran away down the sidewalk. *Id.* at 4-5. The officers claim that Benbow then removed a gun from his waistband and pointed it at them. *Id.* at 5. Benbow denies this. *Id.* Rosiello and Feeley fired at Benbow, who sustained bullet wounds. *Id.* A loaded .45 caliber pistol (not belonging to the officers) was later recovered at the scene. *Id.*

Benbow was arrested and charged with criminal possession of a weapon and menacing. *Id.* at 6. He later pleaded guilty to the weapons-possession charge. *Id.* However, the Appellate Division of the New York State Supreme Court

(Second Department) vacated the plea. *Id.* at 6-7.  The appellate panel concluded that the officers lacked reasonable suspicion to stop Benbow, and therefore suppressed the physical evidence stemming from that stop (i.e., the gun).  *Id.*

Benbow subsequently filed this civil action against the City and the officer Defendants.

## II.  Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(c).  The district court reviews *de novo* those portions of an R&R to which a party has specifically objected.  *Id.*; Fed. R. Civ. P. 72(b)(3); *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014) ("A proper objection is one that identifies the specific portions of the R&R that the objector asserts are erroneous and provides a basis for this assertion.").[1]  Where "no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record."  *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 481 (E.D.N.Y.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2013).  Given the breadth of the parties' objections, the Court's review here is mostly *de novo*, with select exceptions.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant must demonstrate the absence of any such dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the movant does so, the non-movant can only avoid summary judgment by adducing "specific facts showing that there is a genuine issue for trial."  *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998).  Where the non-movant carries the burden of proof on a given issue, the movant can win summary judgment by pointing out the absence of any evidence supporting "an element essential to [the non-movant's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  Discussion

#### A.    The *Monell* Claims

A municipality "may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).  Instead, municipal liability lies only when the "execution of [the municipality's own] policy or custom" causes a constitutional injury.  *Id.*; *see also Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) (summary order).

Benbow advances two types of *Monell* claim: a "failure-to-train" claim and a "failure-to-supervise" claim. The R&R recommends granting summary judgment to the City on both.  The Court agrees, with some additional observations about the failure-to-supervise claim.

1.    Failure to Train

Benbow does not dispute the R&R's conclusion that the City is entitled to summary judgment on his failure-to-train claim.  R&R at 11-12.  This conclusion was not erroneous.  So, for the reasons outlined in the R&R, the Court grants summary judgment to the City on Benbow's failure-to-train claim.

2.    Failure to Supervise

Benbow does dispute the R&R's conclusion that the City is entitled to summary judgment on his failure-to-supervise claim.  Pl.'s Obj. to R&R 6-12.

Under a failure-to-supervise theory of *Monell* liability, a plaintiff must show a failure of supervision or discipline that is "tantamount to deliberate indifference" — that is, that the municipality "implicitly encourage[d] or ratif[ied] the[] unlawful conduct."  *Alwan v. City of New York*, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2018).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

The R&R observed that Benbow had not demonstrated a "pattern of violations" that created a known or obvious risk that officers Feeley and Rosiello — the two officers who fired their weapons — would employ excessive force. *See* R&R at 11. This Court agrees, and writes further to elaborate upon the applicable law.[2]

A plaintiff can demonstrate an "[a]n obvious need" for better supervision by highlighting "repeated complaints" of past constitutional violations by a given officer. *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *see also Connick*, 563 U.S. at 63 n.7. The rule could not be otherwise. If it were, municipalities could serially settle excessive-force cases, making no admissions and taking no corrective action, and still escape liability.

---

[2] The R&R also found that Benbow had not demonstrated deliberate indifference to a known or obvious risk. *See* R&R at 11. The Court need not rule on this issue. However, it is worth noting that Benbow's primary argument for such indifference is that neither Feeley nor Rosiello were placed on performance monitoring before March 2015. Pl.'s Obj. to R&R 7-9. And under the NYPD performance-monitoring criteria that Benbow himself submitted into the record, at least one of the officers — Rosiello — was plainly not eligible for performance monitoring in the first place. *Compare* Performance Monitoring Criteria 2, ECF No. 99-11 (an officer qualifies for heightened monitoring if he is the subject of: (1) three or more complaints to the CCRB within a twelve-month period; (2) six or more complaints to the Board within five years; (3) four force complaints within two years; or (4) five force complaints within four years), *with* Civilian Complaint Review Board Record for Rosiello 2, ECF No. 99-32 (satisfying none of these criteria).

The way a plaintiff can establish a known or obvious risk "will vary given the facts of the case." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 128 (2d Cir. 2004). Accordingly, "[t]here is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *20 (S.D.N.Y. Mar. 26, 2015). However, when considering whether a given series of complaints can support a jury finding of a known or obvious risk, we are primarily interested in three things: (1) the number of complaints, (2) the recency of those complaints, and (3) the similarity of those complaints to the alleged constitutional violation at issue.

Where there are fewer complaints, a reasonable inference of known or obvious risk will typically be more difficult to establish. *See, e.g.*, *Fowler v. City of New York*, No. 13-CV-2372, 2019 WL 1368994, at *11 (E.D.N.Y. Mar. 26, 2019) (three unsubstantiated allegations of assault by corrections officers, even if proved, would "not support plaintiff's claim that the City was on notice of abusive behavior"); *Vasquez v. City of New York*, No. 11-CV-3024, 2013 WL 5519981, at *11 (E.D.N.Y. Sept. 30, 2013) (five unsubstantiated allegations insufficient); *Alwan*, 311 F. Supp. 3d at 582 (single complaint

of excessive force insufficient); *Manville v. Town of Greece*, 892 F. Supp. 2d 469, 479 (W.D.N.Y. 2012) (noting that "sporadic or isolated incidents involving officers will not give rise to municipal liability"); *cf. Mahan v. City of New York*, No. 00-CV-6645, 2005 WL 1677524, at *6 (E.D.N.Y. July 19, 2005) ("As a general proposition, a plaintiff must allege more than a single incident of misconduct by a non-policy-making employee to support an inference of a municipal custom or policy under [Section] 1983.").[3]

Similarly, courts often hold that a reasonable jury cannot identify a known or obvious risk based on long-prior complaints. *See, e.g.*, *Alwan*, 311 F. Supp. 3d at 582 (noting that prior complaint was five years old); *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 79 (E.D.N.Y. 2015) ("five varied allegations over the course of a ten-year-period" insufficient to "put the City on notice of a constitutional problem"); *Manville*, 892 F. Supp. 2d at 481-82 (partially relying on the "passage of time" between successive complaints when granting summary judgment to municipality); *cf. Vann*, 72 F.3d at 1042-43 (known or obvious risk where officer subject of nine complaints

---

[3] This does not mean that a single complaint can *never* establish a known or obvious risk. The Second Circuit has held that a "single, isolated act of brutality might be sufficient to allow a factfinder to infer deliberate indifference if the use of force were so extreme as to leave no doubt that [the municipality] consciously chose not to act." *Amnesty Am.*, 361 F.3d at 129.

within sixteen-month period); *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) ("Because the complaints . . . came in a narrow period of time and were of similar nature, a reasonable jury could have inferred that the Chief of Police knew, or should of known, of [the officer's] propensity for violence when making arrests.").

And we consider similarity.  To support a reasonable finding of known or obvious risk, a plaintiff must present "civilian complaints against an officer regarding conduct similar to that exhibited toward [the] plaintiff." *Coggins v. Cnty. of Nassau*, 254 F. Supp. 3d 500, 521 (E.D.N.Y. 2017); *see also Alwan*, 311 F. Supp. 3d at 582 ("[O]nly one of these five complaints actually involved conduct similar to [the] [p]laintiff's *Monell* claim."); *Stern v. City of New York*, No. 12-CV-5210, 2015 WL 3827653, at *8 (E.D.N.Y. June 19, 2015) (officer's disciplinary history, which did not involve complaints of excessive force, "could not have put the City on sufficient notice that he would subsequently . . . engage in the use of excessive force"); *Beck*, 89 F.3d at 973 (noting that prior complaints were "of a similar nature").

The Supreme Court has said that *Monell* plaintiffs must typically show a "pattern of *similar* constitutional violations" that rendered the risk of future violations "obvious."  *See Connick*, 563 U.S. at 61–62 (emphasis added).  Of course, this

raises the question:  How similar?  *Connick* provides guidance.
That case involved a *Brady* violation in which prosecutors failed
to disclose a crime lab report.  *Id.* at 59.  The Court found
that prior *Brady* violations by the same prosecutors did not
notify the municipality of the need for better *Brady* training,
because none of those violations "involved failure to disclose
blood evidence, a crime lab report, or physical or scientific
evidence of any kind."[4]  *Id.* at 62-63.  Thus, *Connick* makes clear
that prior complaints only give rise to a known or obvious risk
(for purposes of *Monell* liability) when they closely resemble
the misconduct alleged by the plaintiff.

 Here, Benbow marshals a series of disciplinary
complaints and lawsuits against Feeley and Rosiello to argue
that their propensity to use excessive force was known or
obvious.  Pl.'s Obj. to R&R 6-11.  But Benbow's reliance on the
officers' disciplinary histories is unavailing.

---

[4] *Connick* was a failure-to-train case.  At least one district court has
suggested that while the degree of similarity required by *Connick* may apply
to failure-to-*train* cases, it does not apply to failure-to-*supervise* cases.
*See Poventud v. City of New York*, No. 07-CV-3998, 2015 WL 1062186, at *16
(S.D.N.Y. Mar. 9, 2015).  But other courts appear to apply the same
known-or-obvious-risk analysis to both claim types.  *See, e.g.*, *Fowler*, 2019
WL 1368994, at *13 (applying same analysis of prior complaints to
failure-to-train and failure-to-supervise claims); *Stern*, 2015 WL 3827653, at
*6-*8 (noting that *Connick* "described" both failure-to-train and
failure-to-supervise claims, and warning against reviewing an officer's
disciplinary history "too broadly" in the failure-to-supervise context).
This Court discerns no principled reason why the degree of specificity
required to place a municipality on notice of potential constitutional
violations would differ between failure-to-supervise and failure-to-train
claims.

Benbow claims that Feeley faced at least ten lawsuits and fifteen complaints. *See* Pl.'s Obj. to R&R 8. As Benbow's own evidence shows, however, this includes several lawsuits and complaints that were (a) filed after March 2015, or (b) involved allegations entirely unrelated to the use of excessive force against a person — for example, discourteousness or failure to provide a badge number. Only two of the complaints against Feeley (and none of the lawsuits) alleged excessive force prior to March 2015. *See* 50-a.org List of Suits and Complaints Against Feeley and Rosiello 2-4, ECF No. 99-23 ("50-a Records for Feeley and Rosiello");[5] Civilian Complaint Review Board Record for Feeley 2, ECF No. 99-31. Neither force-related complaint was substantiated, and Benbow has adduced no evidence as to the facts underlying those complaints. *See* Civilian Complaint Review Board Record for Feeley 2.

As to Rosiello, Benbow points to eight lawsuits and "more than ten [civilian] complaints." *See* Pl.'s Obj. to R&R 8. Two of the lawsuits did allege excessive force against a person before March 2015, though none of the disciplinary complaints did. *See* Civilian Complaint Review Board Record for Rosiello 2;

---

[5] 50-a.org is a searchable database of misconduct allegations against NYPD officers. It draws on data from the Civilian Complaint Review Board, the NYPD, the New York City Law Department, the Legal Aid Society, and more. *See* 50-a.org, *About*, https://www.50-a.org/about (last visited November 30, 2024). Benbow appended data from 50-a.org to his motion in opposition to summary judgment, and neither party has disputed the accuracy of that data.

50-a Records for Feeley and Rosiello 7.  One of the lawsuits was voluntarily dismissed, *see* Stipulation of Voluntary Dismissal, *Davis v. City of New York*, No. 14-CV-7527 (E.D.N.Y. May 3, 2016), ECF No. 17, while the other settled without an admission of liability by the City, *see* Dismissal Order, *Adonis v. City of New York*, No. 14-CV-4984 (E.D.N.Y. May 27, 2015), ECF No. 17.

The R&R correctly concluded that no reasonable jury could conclude that these records suggested a known or obvious risk of excessive force.  Benbow's evidence about Feeley's record boils down to a summary list of two unsubstantiated excessive-force complaints, with no indication of the genre of force, let alone the specifics.[6]  This kind of meager and superficial evidence hardly demonstrates a known or obvious pattern of abusive behavior.  *See, e.g.*, *Vasquez*, 2013 WL 5519981, at *11 ("summary list of [five unsubstantiated excessive-force] civilian complaints and their dispositions" insufficient to establish deliberate indifference); *Talib v. Officer Garcia*, No. 98-CV-3318, 2000 WL 968772, at *5 (S.D.N.Y. July 12, 2000) (superficial allegations in to two prior excessive force complaints against officer, both of which were

---

[6] The list includes only the label (e.g., "force" or "abuse of authority") and eventual disposition of each complaint.  No further details appear that would permit a jury to determine if these prior complaints involved similar conduct to that alleged in this case.

closed on intake, were not enough to establish deliberate
indifference).

Benbow's reliance on the Rosiello lawsuits fares no
better.  The mere existence of two lawsuits — one voluntarily
dismissed, the other settled for a modest amount without an
admission of liability — does not establish a known or obvious
risk of future constitutional violations.  *See Vasquez*, 2013 WL
5519981, at *11 (no obvious "track record" of violations where
officer was named defendant in "two [Section] 1983 actions
settled by the City"); *Falls v. Campbell*, No. 17-CV-35, 2019 WL
1255768, at *6 (S.D.N.Y. Mar. 19, 2019) (two lawsuits cited by
the plaintiff were "insufficient to establish a pattern of
unconstitutional activity" where, among other things, "neither
resulted in an adjudication of liability"); *cf. Osterhoudt v.
City of New York*, No. 10-CV-3173, 2012 WL 4481927, at *1
(E.D.N.Y. Sept. 27, 2012) (noting in dicta that settlement
agreements with "unproven allegations" have "little, if any,
probative force and by themselves would hardly prevent summary
judgment").  Moreover, neither lawsuit describes conduct closely
resembling the conduct alleged in this case: the unnecessary and
excessive discharge of a firearm.  *See* Complaint ¶¶ 23-28, *Davis
v. City of New York¸* No. 14-CV-7527 (E.D.N.Y. December 29,
2024), ECF No. 1 (alleging that Rosiello "pushed Plaintiff's
face against the wall" and "raised Plaintiff's arms higher than

necessary" during an arrest); Amended Complaint ¶¶ 17-18, *Adonis v. City of New York*, No. 14-CV-4984 (E.D.N.Y. March 2, 2015), ECF No. 13 (alleging that Rosiello "repeatedly punched" and "kicked" the handcuffed plaintiff during an arrest).

For these reasons, the Court adopts the R&R's recommendation and grants summary judgment to the City on Benbow's failure-to-supervise claim.

**B.    The Claims Against the Individual Officers**

The R&R also evaluates the claims against the individual officer Defendants.  The Court finds no error in the recommendations regarding excessive force, failure to intervene, malicious prosecution, assault and battery, and negligence.  For the following reasons, however, the Court respectfully declines to adopt the conclusion that the officer Defendants are not entitled to qualified immunity on the false arrest claim.  The Court also requests further briefing as to whether Anderson was entitled to qualified immunity on the failure to intervene claim.

### 1.   False Arrest / Unlawful Seizure

"A [Section] 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A finding of probable cause is a "complete defense" to a false arrest claim, "whether that action is brought under state law or

under [Section] 1983." *Covington v. City of New York*, 171 F.3d 117, 122  (2d Cir. 1999).

**Preclusive Effect of the State Probable-Cause Determination.**  The R&R concluded that the officer Defendants lacked probable cause to stop and arrest Benbow.  R&R at 13-14. This finding was predicated largely, if not entirely, on the Second Department's determination that the officers unlawfully stopped Benbow.  *See* R&R at 14.

But the Second Department's holding is entitled to no preclusive effect.  The officer Defendants were not parties to Benbow's criminal proceeding, and in New York, non-mutual issue preclusion only applies when the party sought to be bound has "a relationship with a party to the prior litigation such that [its] own rights or obligations in the subsequent proceeding are conditioned . . . on, or derivative of the rights of the party to the prior litigation." *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 637 (N.Y. 1990); *see Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").  That condition is not satisfied here.  *See Jenkins v. City of New York*, 478 F.3d 76, 85-86 (2d Cir. 2007).

*Arguable Probable Cause.*  In the end, it is not necessary to determine whether the officers actually had probable cause to stop Benbow.  Even where probable cause for an arrest is lacking, an officer will be entitled to qualified immunity if he acted with "arguable probable cause." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  Arguable probable cause exists if "a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Rupp v. Buffalo*, 91 F.4th 623, 642 (2d Cir. 2024) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  Arguable probable cause is also said to exist where "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  The Second Circuit has cautioned, however, that the term "should not be misunderstood to mean 'almost' probable cause." *Jenkins*, 478 F.3d at 87.

The R&R declined to find that the officer Defendants had arguable probable cause to stop Benbow.  This hesitation was based on a lack of record evidence "regarding the nature of [Marshall's] tip" to the arresting officers.  R&R at 16.  That is, the R&R concluded that absent more detail about Marshall's report to the officer Defendants, it was not possible to determine if the officers' belief that probable cause existed was "objectively reasonable." *Id.; see Jackson v. City of New*

*York*, 939 F. Supp. 2d 235, 256 (E.D.N.Y. 2013) (reliance on fellow officer's report of probable cause is "typically invoked in cases where the record is clear as to what the officer seeking backup reported").

But the record actually does contain evidence — indeed, undisputed evidence — about the nature of Marshall's tip. Marshall testified that he saw Benbow remove his jacket, revealing a "waist clip on [Benbow's] belt [that Marshall knew] to be a holster for a weapon." *See* Marshall Grand Jury Tr. 52:7-9, ECF No. 98-30. He further testified that he felt the "butt of a firearm" in Benbow's waistband. *Id.* at 52:15-18. As discussed below, Marshall directly communicated this information to certain arresting officers, who then relayed it to their colleagues. And Marshall also told the arresting officers when (and with whom) Benbow would be leaving the club. *See* Mitchell Dep. 61:1-7, ECF No. 98-10; Diab Dep. 97:3-10.

Marshall's information was sufficient to constitute (at least) arguable probable cause. Courts in this circuit have held that the observation of a firearm can support an arrest for criminal firearm possession. *See United States v. Sheffield*, 104 F.3d 352 (2d Cir. 1996) (unpublished) ("Once the gun handle became visible, there was probable cause for a full arrest."); *see also United States v. Vasquez*, 864 F. Supp. 2d 221, 239-40

(E.D.N.Y. 2012) (collecting cases).[7]  To be sure, some of those cases involved aggravating factors, such as the defendant's presence in a high-crime area.  *See, e.g.*, *Vasquez*, 864 F. Supp. 2d at 239 ("drug prone area"); *Sheffield*, 104 F.3d at 352 (area "plagued by crime"); *but cf. United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (observing that "the mere presence of a partially concealed firearm is highly and immediately incriminating").  However, Benbow has identified no authority that would have counseled the arresting officers to believe, in 2015, that Marshall's observation of the firearm was insufficient to support probable cause.  And the Court has located no such authority, either.  Thus, officers of reasonable competence could at least have disagreed about whether probable cause existed to arrest Benbow for firearm possession.

     ***The Collective Knowledge Doctrine.***  The arguable probable cause arising from Marshall's tip can be imputed to the arresting officers via the collective knowledge doctrine

---

[7] This approach was rooted in the fact that New York's firearm licensing regime was "strict enough that a reasonable officer could have disregarded whether someone with a gun had a firearm license because licenses were so difficult to acquire." *United States v. Homer*, 715 F. Supp. 3d 413, 419 (E.D.N.Y. 2024).  This logic has been revisited following the Supreme Court's holding that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022).  One district court cited *Bruen* for the proposition that "an individual cannot be presumed to be carrying a firearm unlawfully simply because of their possession of a firearm." *United States v. Gaskin*, No. 22-CR-00098, 2023 WL 3998329, at *7 (D. Conn. June 14, 2023).  This Court need not consider *Bruen*, though, because the challenged conduct long pre-dates that case.

(sometimes referred to as the "fellow-officer rule"). *See United States v. Colon*, 250 F.3d 130, 137 (2d Cir. 2001). That doctrine renders an arrest permissible when the arresting officer "lacks the specific information to form the basis for probable cause," but reasonably relies on information communicated to him by "other law enforcement officials initiating or involved with the investigation." *Id.* at 135. The arresting officer need not know the precise facts underlying the initial officer's probable cause determination. *See id.* at 135-36. All that is necessary is that "at some point along the line, some [involved] law enforcement official . . . possess[es] sufficient information to permit the conclusion that a search or arrest is justified." *Id.* at 136.

Marshall qualifies as a "law enforcement official" for purposes of the collective knowledge doctrine. The phrase includes any officer — like an auxiliary officer — with the "training, responsibility or authority" to ascertain probable cause or reasonable suspicion. *Id*. at 135-37; *see also People v. Rosario*, 585 N.E. 2d 766, 768 (N.Y. 1991) (auxiliary officers "possess[] sufficient training and ability to make the determination that there [is] probable cause to support [an]

arrest"); Marshall Grand Jury Test. 43:10-11 (Marshall confirming his title).[8]

Indeed, the officers in this case went further than the collective knowledge doctrine requires.  While Marshall was not obligated to communicate the exact factual basis for his probable cause determination, *see Colon*, 250 F.3d at 135-36, the record reveals that he did so.  *See generally* R&R at 2-4.  After allegedly seeing Benbow's gun, Marshall told Cespedes that "a guy tried to get into the club that he was working at with a gun and [Marshall] turned him away or something like that."  Cespedes Dep. 90:16:19, ECF No. 98-6.  Marshall then spoke with Mitchell, describing "two males," one of whom "had a bag in his hand" and one of whom "had a firearm in his waistband."  Mitchell Dep. 53:17-54:2.  Mitchell and Cespedes, in turn, informed Diab that Marshall had "frisked" a patron at Amarachi Prime who "ha[d] a gun . . . and [was] drunk and . . . acting crazy."  Diab Dep. 80:17-81:8.  Diab relayed this information to the remaining officers, and the group then crafted a "tactical

---

[8] Benbow asserts that the officers could not reasonably credit Marshall's tip because he "had never provided information or tips before." Pl.'s Mem. in Opp. to Summ. J. 9, ECF No. 104.  But "lower courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as part of the probable cause determination."  2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.5(a) (6th ed. 2020).  Here, Marshall was off-duty at the time.  *See* Marshall Grand Jury Test. 44:21-23.  But that does not alter the analysis.  *See Peterec v. Hilliard*, No. 12-CV-3944, 2014 WL 6972475, at *1, *5 & nn. 9-10 (S.D.N.Y. Dec. 8, 2014).

plan on how [they] were going to approach [Benbow]." *Id.* at 85:15-19.

The group drove to Amarachi Prime, parked, and waited. *Id.* at 96:9-11. Mitchell was on the phone with Marshall, who informed him that "a guy with a bag and . . . the guy with the firearm" were leaving the club. Mitchell Dep. 61:2-7, ECF No. 103-10. Diab was in the car with Mitchell, *see* Diab Dep. 95:21-96:1, and he similarly testified that Marshall described "a taller guy and a shorter guy with a bag" about to leave Amarachi Prime, *id.* at 97:3-10. Benbow and a shorter acquaintance (holding a bag) then left the club, prompting Diab to leave his car and attempt to stop them. *Id.* at 98:2-25. Thus, when Diab initiated the stop, he (and his fellow officers) knew virtually everything that Marshall knew.

Benbow claims no probable cause — actual or arguable — existed because he did not have a gun. Pl.'s Mem. in Opp. to Summ. J. 9. This is irrelevant to the collective-knowledge analysis. "[T]he determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). Indeed, as discussed, arguable probable cause exists where the arresting officer reasonably believes he is acting lawfully "in light of clearly established law and the

*information he possessed*." *Rupp*, 91 F.4th at 642 (emphasis added). Benbow has adduced no evidence suggesting that the arresting officers had reason to doubt Marshall's report. Thus, no reasonable jury could conclude, on this record, that such reliance was unreasonable — even if Marshall's information ultimately proved inaccurate. *See Panetta*, 460 F.3d at 395 (reliance on fellow officers is reasonable "absent significant indications to the contrary"); *cf. Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003) (collective knowledge doctrine cannot be used to "impute bad faith to one member of an enforcement team on the basis of another's knowledge").

Accordingly, the officer Defendants had arguable probable cause to arrest Benbow, and they are entitled to qualified immunity on his false arrest claims.

2.  Excessive Force

On Benbow's excessive force claims, Judge Cho recommended granting summary judgment to every officer except Rosiello and Feeley. *See* R&R at 18, 22. He found that because Anderson, Diab, Mitchell, and Minucci had not fired their weapons at Benbow, they could not be liable for the excessive force alleged here. *Id.* at 18. No party objects to that conclusion, and this Court — seeing no error — adopts it.

Rosiello and Feeley, who did fire their weapons, object to the R&R's recommendation that summary judgment be

denied as to the excessive force claims against them.  Defs.'
Obj. to R&R 8-9.

To bring a Section 1983 claim for excessive force, a
plaintiff must show that the officer's use of force was
"objectively unreasonable in light of the facts and
circumstances confronting them, without regard to their
underlying intent or motivation."  *Maxwell v. City of New York*,
380 F.3d 106, 108 (2d Cir. 2004).  And "an officer's decision to
use deadly force is objectively reasonable only if the officer
has probable cause to believe that the suspect poses a
significant threat of death or serious physical injury to the
officer or others."  *Cowan ex rel. Est. of Cooper v. Breen*, 352
F.3d 756, 762 (2d Cir. 2003).

The R&R notes a genuine dispute as to whether Benbow
had pointed a gun at Rosiello and Feeley before they fired.  *See*
R&R at 20-22.  The officers respond that surveillance footage
shows Benbow "clearly reaching for his waistband," and therefore
justifies Rosiello's and Feeley's decisions to shoot.  Defs.'
Obj. to R&R 8.  Benbow denies that he reached for his waistband,
and further denies that he drew a gun on the officers.  Benbow
Dep. 62:11-13, 106:13-107:20, ECF No. 103-4; Pl.'s Rule 56.1
Statement ¶ 158, ECF No. 99-1.  Indeed, Benbow points to medical
and forensic evidence suggesting that he was not even *facing* the

officers when they shot him.  Pl.'s Rule 56.1 Statement ¶¶ 43, 137, 154.

To be sure, "[i]n certain circumstances, video evidence may be so clear and unambiguous that a court deciding a summary judgment motion . . . need not afford weight to conclusory or non-credible assertions that are inconsistent with the blatant video evidence." *Monahan v. City of New York*, No. 20-CV-2610, 2022 WL 954463, at *4 (S.D.N.Y. Mar. 30, 2022) (citing *Scott v. Harris*, 550 U.S. 372, 378-80 (2007)).  But those circumstances are not present here.  Having reviewed the footage, this Court, too, sees genuine questions for the jury. Thus, the Court agrees that Rosiello and Feeley are not entitled to summary judgment.

### 3.   Failure to Intervene

The R&R recommended granting summary judgment on the failure-to-intervene claim as to every officer except Anderson.  *See* R&R at 24-25.  Neither party objects to this recommendation, which was not clearly erroneous on the face of the record.  Accordingly, the Court grants summary judgment to every officer Defendant except Anderson on the failure to intervene claims.

However, the R&R concluded that summary judgment should be denied as to Anderson.  *Id.* at 25.  In reaching this conclusion, the R&R did not specifically discuss the overlay of

qualified immunity on this claim, and understandably so: it is not entirely clear that Anderson briefed the qualified immunity defense as to this specific claim.[9]

The qualified immunity defense can be waived. The Second Circuit has held, for example, that an officer waived the defense when he "made no motion for summary judgment on the basis of qualified immunity" and identified no "part of the record showing that the issue was the subject of any other pretrial motion, or of discovery, or of conferences with the [district] court." *McCardle v. Haddad*, 131 F.3d 43, 52 (2d Cir. 1997). *McCardle*, however, was decided after trial — indeed, after the defendant continued to ignore the qualified immunity issue in his pretrial order and his proposed jury instructions. Id. And it is distinguishable in multiple aspects. For example, in this case, Defendants asserted the qualified immunity defense more clearly than McCardle did, and they did not entirely fail to raise the defense at the summary judgment stage. *See supra* note 9.

---

[9] Anderson did raise the defense in his answer to the complaint. *See* Answer to Amended Compl. 10, ECF No. 75. And the brief in support of summary judgment — submitted collectively on behalf of all Defendants — contains a section titled "Defendants Are Entitled to Qualified Immunity," though that section does not specifically mention Anderson's failure to intervene. Defs.' Mem. in Supp. of Summ. J. 19, ECF No. 103-2. In its treatment of the failure-to-intervene claim, Defendants' brief also cites cases assessing the qualified immunity defense in that context. *See, e.g.*, *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

The issue of qualified immunity should, to the degree possible, be addressed before trial.  The qualified immunity doctrine provides "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  For that reason, the Supreme Court has "repeatedly . . . stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). And even apart from the qualified-immunity context, it makes sense to resolve issues as to which no genuine dispute exists prior to empaneling a jury.

Before addressing the issue, however, the plaintiff should have an opportunity to be heard on this topic.  *See, e.g., Seidman v. Colby*, 18-CV-202, 2021 WL 5585873, at *5 (N.D.N.Y. Nov. 30, 2021) (ordering briefing of qualified immunity issue sua sponte at summary judgment).  Accordingly, the Court's order will set a schedule for letter-briefs on the subject.  The parties should address whether Supreme Court or Second Circuit precedent clearly establishes a duty to intercede against a fellow officer's discharge of a firearm, and whether that duty must (or need not) be established in order to overcome a qualified immunity defense on Anderson's part.  *See generally Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("Th[e] [qualified

immunity] inquiry must be undertaken in light of the case's specific context, not as a broad general proposition.").

### 4. Malicious Prosecution

Judge Cho granted summary judgment to the officer Defendants on Benbow's malicious prosecution claims, because Benbow had presented no evidence of actual malice.[10]  *See* R&R at 26-27.  Benbow identifies no such evidence in his objections. Pl.'s Obj. to R&R 13.  So, the officer Defendants are entitled to summary judgment on the malicious prosecution claims.

### 5. Assault and Battery

"[W]ith the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and [a] state law assault and battery claim[] are substantially identical." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (citing *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)). The Court accepts Judge Cho's analysis of the assault and battery claims for the same reasons it accepts his analysis of the excessive force claims.

---

[10] Although police officers do not typically "commence" criminal prosecutions, a plaintiff may bring a malicious prosecution claim against a police officer if the officer "play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010).

6.   Negligence

The R&R concluded that Benbow's negligence claims were "duplicative of his excessive force, assault, and battery counts," and therefore could not go to the jury.  R&R at 29. Benbow objects.  *See* Pl.'s Obj. to R&R 14.  The Court briefly addresses Benbow's objections here.

Benbow cites cases holding that a plaintiff may pursue an intentional tort claim and a negligence claim as alternative theories of liability.  *See, e.g.*, *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 88 n.14 (E.D.N.Y. 2012) (excessive force and negligence claims could proceed to trial because a jury could "reasonably conclude that any alleged contact . . . was either intentional or inadvertent"); *Kuar v. Mawn*, No. 08-CV-4401, 2011 WL 838911, at *14 (E.D.N.Y. Mar. 4, 2011) (permitting both excessive force and state law negligence claims to proceed past pleading stage).

Benbow misconstrues the applicable law.  District courts in this circuit "have held that when a plaintiff's factual allegations are *only consistent* with a theory of intentional, or perhaps reckless, conduct, negligence claims must be dismissed."  *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015) (emphasis added).  Here, Benbow's allegations are only consistent with intentional or reckless conduct.  "If the officer [D]efendants were not acting as

reasonable officers should — i.e., using excessive force or seizing [Benbow] without probable cause — they will be liable for intentional torts," not negligence. *Rizk v. City of New York*, 462 F. Supp. 3d 203, 229 (E.D.N.Y. 2020). Therefore, Benbow's negligence claims will not lie. *See Mazurkiewicz v. New York City Transit Auth.*, 810 F. Supp. 563, 570-71 (S.D.N.Y. 1993).

The cases on which Benbow relies do not suggest otherwise. In *Hodge*, a defendant sued a police officer for shutting a car door on his prosthetic leg. 838 F. Supp. 2d at 72-73. At summary judgment, the court found that given the facts in the record, a jury could reasonably construe the officer's conduct as either deliberate or accidental. *Id.* at 88 n.14. Therefore, it permitted both theories to proceed to the jury. *Id.* Meanwhile, *Kuar* involved a motion to dismiss, meaning the court lacked a developed record to determine whether the plaintiff's "negligence claims [were] based on the same facts underlying [the] plaintiff's claims for excessive force." 2011 WL 838911, at *14. The court therefore permitted both claims to proceed, rather than risk the "premature" dismissal of one or the other. *Id.*

In sum, the Court agrees with Judge Cho that the officer Defendants are entitled to summary judgment on Benbow's negligence claims.

**IV.    Conclusion**

For the foregoing reasons, the R&R is adopted in part and rejected in part.  The following claims may proceed to trial:

- Benbow's Section 1983 excessive force claims against Rosiello and Feeley.

- Benbow's state law assault and battery claims against Rosiello and Feeley.

The Court reserves judgment on Benbow's Section 1983 failure-to-intervene claim against Anderson, pending review of the parties' supplemental briefing.  Anderson should file his letter-brief (not to exceed five pages) by January 27, 2025 with Benbow's response (also not to exceed five pages) due by February 17.

Defendants are entitled to summary judgment on all other claims.  All Defendants other than Rosiello, Feeley, and Anderson are accordingly dismissed from this action.

The parties should appear for a status conference on February 21 at 10:15 a.m.

SO ORDERED.

_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated:    December 19, 2024
          Brooklyn, New York