```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

  JAMES BENBOW,

                      Plaintiff,              MEMORANDUM & ORDER
                                               17-CV-6457(EK)(JRC)

             -against-


  THE CITY OF NEW YORK; POLICE OFFICER
  BRIAN FEELEY; POLICE OFFICER MATTHEW
  ROSIELLO; et al.,

                      Defendants.

--------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff James Benbow sued the City of New York and several officers of the New York City Police Department, asserting claims under 42 U.S.C. § 1983 and state law. In December 2024, after receiving a report and recommendation from Magistrate Judge Cho, this Court granted summary judgment to the defendants on several of Benbow's claims.

        The Court permitted the following claims to proceed: (1) Section 1983 claims for excessive force against two officers, and (2) state-law assault and battery claims against those same officers. The Court also reserved judgment on Benbow's failure-to-intervene claim against Officer Kenneth Anderson. *See Benbow v. City of New York*, No. 17-CV-6457, 2024 WL 5165073, at *10 (E.D.N.Y. Dec. 19, 2024).

After reviewing the parties' supplemental briefing, the Court concludes that qualified immunity bars Benbow's failure-to-intervene claim against Anderson.

## I. Background

This order assumes familiarity with the procedural and factual background, which is set out in Judge Cho's report and recommendation and the Court's prior order on summary judgment. *See Benbow v. City of New York*, No. 17-CV-6457, 2022 WL 22902936 (E.D.N.Y. Aug. 31, 2022) (report and recommendation); *Benbow*, 2024 WL 5165073 (summary judgment order).

## II. Legal Standard

Summary judgment is appropriate where there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show that there is no such dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). At that point, the non-movant can avoid summary judgment only by identifying "specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998).[1] If the non-movant carries the burden of proof on a given issue, the movant need only point out a dearth of evidence supporting

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2

an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

Qualified immunity shields a state official from a suit for damages unless (1) "the official violated a statutory or constitutional right," and (2) that right was "clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the *particular circumstances* that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (emphasis added).

A state official is liable for failure to intervene when he (1) "observes the use of [excessive] force" by other officers, (2) "has sufficient time to act to prevent it," and (3) fails to do so. *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). In this case, however, the Court need not decide whether a reasonable jury could find Anderson liable under this standard. This is because Benbow has identified no clearly established law that notified Anderson — at the time of the shooting — that he had a duty to intervene. Furthermore, the Court's own research did not reveal a single case in which a

3

federal court permitted a Section 1983 claim to proceed against an officer who failed to intervene against another officer in the act of firing his weapon. Indeed, the cases that do confront this fact pattern regularly proceed in the opposite direction.[2] Accordingly, Anderson is entitled to qualified immunity.

The parties diverge on how to apply the "clearly established law" requirement in the failure-to-intervene context. Benbow argues that the Court need only answer one question: was the illegality of the conduct that Anderson observed — that is, the *other officers'* firing — clearly established? If the answer is yes, he argues, the analysis is over: qualified immunity does not apply. On this view, a failure-to-intervene claim is simply a "pathway to liability" for a bystander officer. *Echavarria v. Roach*, No. 16-CV-11118, 2017 WL 3928270, at *11 (D. Mass. Sept. 7, 2017). Once the plaintiff establishes that he was the victim of clearly excessive force, neither the officer who applied that force nor

---

[2] Such cases often conclude that the defendant lacked any "realistic opportunity" to stop the shooting. *See, e.g.*, *Scott v. City of Saginaw*, 738 F. Supp. 3d 937, 948 (E.D. Mich. 2024) (dismissing claim for failure to intervene in a "shooting that occurred within a few seconds of the Officer Defendants' entrance"); *Allen v. Lo*, 751 F. Supp. 3d 863, 883 (M.D. Tenn. 2024) (no realistic opportunity to intervene when shooting "took less than three seconds"); *Smith v. Sawyer*, 435 F. Supp. 3d 417, 438 (N.D.N.Y. 2020) (no realistic opportunity to intercede "given the fast paced nature of the encounter"). There is evidence in this case that would support a finding that the shooting lasted longer than in these cases — maybe substantially longer. *See* Feeley Dep. 146:17-24, ECF No. 103-11 (defendant testifying that the shooting could have lasted up to thirty seconds). Still, the lack of a clearly established rule governing this circumstance is dispositive.

the officer who failed to oppose it are qualifiedly immune. *Id.*; *cf. Figueroa*, 825 F.3d at 106 ("Liability attaches on the theory that the officer, by failing to intervene, becomes a tacit collaborator in the illegality.").

The defendants respond that this formulation is incomplete. On their view, the Court must answer a second question: was *Anderson's* duty to intervene itself clearly established? Put more concretely, the defendants argue that to overcome the qualified immunity defense, Benbow must show that any reasonable officer in Anderson's position would have known (1) that an ongoing shooting was unlawful, *and* (2) that he had a duty to intervene and stop that shooting.

At least three circuits have expressly adopted the defendants' two-step formulation. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) ("Plaintiffs have the burden to demonstrate . . . [that] any reasonable officer would have known that the Constitution required them to intervene."); *Hammond v. Cnty. of Oakland*, 825 F. App'x 344, 347 (6th Cir. 2020) ("[Plaintiff] cites no caselaw clearly establishing that officers who are not trained as dog handlers have a duty to intervene and control a dog [that was using excessive force] notwithstanding the presence of the dog's handler."); *Robinson v. Payton*, 791 F.3d 824, 826 (8th Cir. 2015) (reversing denial of summary judgment because the

5

defendant's "duty to intervene in the circumstances was not clearly established").[3]

One circuit has adopted Benbow's one-step approach. *See Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021) ("Once this Court establishes that the use of force is not entitled to qualified immunity and other officers could have intervened but did not, the Court does not conduct a separate clearly established analysis pertaining to each officer's failure to intervene.").

Second Circuit precedent at least favors — if not compels — the majority view. The key case is *Lennox v. Miller*, 968 F.3d 150 (2d Cir. 2020). There, the court reviewed a district court's denial, at summary judgment, of qualified immunity for two police officers. *Id.* at 152. The plaintiff brought an excessive force claim against one officer (Clarke), and a failure-to-intervene claim against another (Miller). *Id.* The Second Circuit affirmed the denial of qualified immunity as to Clarke because it could not say, "as a matter of law, that Officer Clarke did not" employ clearly excessive force. *Id.* at 157. Notwithstanding that conclusion, the panel went on to hold

---

[3] Some district courts have also interpreted the First Circuit's case law as impliedly adopting the two-step approach. *See, e.g.*, *Cosenza v. City of Worcester*, 355 F. Supp. 3d 81, 100 (D. Mass. 2019) (citing *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 55 (1st Cir. 2005)); *Echavarria*, 2017 WL 3928270, at *11 (same).

6

that Miller was entitled to qualified immunity on the failure-to-intervene claim:

> There is no dispute that at the time Officer Clarke used force against Lennox, Officer Miller was engaged in crowd control. Even assuming that Officer Miller observed Officer Clarke's use of force, there is no evidence in the record that would suggest he had a realistic opportunity to intervene that he then disregarded. *Nor do we know of any clearly established law that would require him to abandon his crowd control duties and intervene to stop Officer Clarke's use of force.* Thus, Officer Miller was entitled to summary judgment on the basis of qualified immunity . . . .

*Id.* at 158 (emphasis added).

Thus, *Miller* reasoned that an officer is entitled to qualified immunity unless the law clearly established *both* the illegality of the observed conduct and his own duty to intervene. The court acknowledged that Clarke could have used excessive force, *id.* at 157, and it assumed that Miller had witnessed that force. *Id.* at 158. But this was not enough to surmount qualified immunity, because Miller was not on notice of a duty to abandon his other duties and proceed to the victim's defense.[4] *Id.*

---

[4] The Second Circuit offered an alternative basis for its decision — namely, the absence of evidence that Miller had a realistic opportunity to intervene. *Miller*, 968 F.3d at 158. But this does not render its qualified-immunity holding dicta. The court did not "rest its holding on only one of its two stated reasons." *MacDonald, Sommer & Frates v. Cnty. of Yolo*, 477 U.S. 340, 346 n.4 (1986) (distinguishing between dicta and alternative holdings). Rather, it implied that both were independently sufficient. And it is well-established that "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 251 n.4 (2d Cir. 2021) (quoting *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949)).

7

The Second Circuit's approach in *Miller* is consistent with the Supreme Court's qualified immunity jurisprudence. That jurisprudence requires an examination of the specific context in which an officer acted. *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (in excessive force cases, officers are "entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue"); *accord City of Escondido v. Emmons*, 586 U.S. 38, 42-43 (2019). Perhaps more importantly, the Court's cases command an examination of the given officer's *own* conduct, not that of his colleagues. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that *his or her conduct* complies with the law." (emphasis added)). To hold otherwise would risk raising the specter of strict or vicarious liability.[5]

Benbow has identified no case suggesting that Anderson's duty to intervene was clearly established. And the

---

[5] Because liability for failure to intervene requires an underlying violation, it is perhaps analogous to deliberate-indifference liability. There, too, the case law requires a fact-specific assessment of the non-acting supervisor's *own* circumstances. *See, e.g.*, *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (in a deliberate indifference case, "the focus is on what the *supervisor* did or caused to be done" (emphasis in original)); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (framing issue on appeal as "whether a reasonable police commissioner would have understood that *his action or inaction* . . . arguably violated [the plaintiff's] constitutional right to be free from deprivations of property without due process" (emphasis added)).

Court has located none.  Accordingly, Anderson is entitled to qualified immunity on Benbow's failure-to-intervene claim.

### IV. Conclusion

For the foregoing reasons, Anderson's motion for summary judgment on Benbow's failure-to-intervene claim is granted.  The Clerk of Court is respectfully directed to dismiss Anderson from this action.

SO ORDERED.

                                                                                                     /s/ Eric Komitee
                                                        ERIC KOMITEE
                                                        United States District Judge

Dated:   April 25, 2025
        Brooklyn, New York