UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------

JAMES BENBOW,

                          **MEMORANDUM & ORDER**
          Plaintiff,      17-CV-6457(EK)(JRC)

           -against-

POLICE OFFICER BRIAN FEELEY; POLICE
OFFICER MATTHEW ROSIELLO,

          Defendants.[1]

-------------------------------------

ERIC KOMITEE, United States District Judge:

       Trial is scheduled to begin shortly in this case. Plaintiff Benbow and individual defendants have submitted various motions in limine. *See* ECF Nos. 140-41 and 150-51. The Court resolves several of those motions as follows, and reserves judgment on any motion not expressly addressed herein.[2]

       ***Bifurcation (Defendants).*** Defendants seek to bifurcate the trial into liability and damages phases. That motion is granted. Bifurcation will serve the interest of judicial efficiency in this case, given the multiple witnesses

---

[1] The Clerk of Court is respectfully directed to amend the case caption to conform to the above, as the existing caption referred to several parties that have since been dismissed.

[2] Judge Marutollo granted Benbow's request, on consent, to wear civilian clothing during the jury selection process. *See* ECF No. 169. Benbow is hereby also permitted to wear civilian clothing for the duration of trial.

whose proposed testimony will relate primarily or solely to damages.

***Motion to Preclude Plea Allocution (Benbow).*** Benbow seeks to preclude defendants from introducing the transcript of his guilty-plea allocution in the underlying criminal case (which resolved in his favor on appeal). But Benbow cites no basis for excluding the transcript under the Federal Rules of Evidence. *See* ECF No. 151-1, at 12-13. He instead points to a state statute providing that criminal cases terminated in favor of the accused should be sealed. *Id.* (citing CPL 160.50(1)(c)). That statute has no bearing on the admissibility of evidence in this action. Indeed, the transcript of the allocution has appeared on the *public* docket in this case for some time because Benbow provided it to the defendants without seeking sealing or a protective order. *See* ECF No. 98-26 (transcript). The motion is accordingly denied.

***Motion to Judicially Estop Benbow from Contending That He Did Not Possess a Firearm (Defendants).*** Defendants argue that the same plea allocution should judicially estop Benbow from testifying or arguing that he did not possess a firearm at the time of the shooting incident. The Court disagrees. Judicial estoppel requires "(i) that the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (ii) that that position was adopted by the first

2

tribunal in some manner, such as by rendering a favorable judgment." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018).[3]  Neither prong is clearly met here.  The portion of Benbow's plea allocution that defendants reference in their motion, ECF No. 150-1, at 13, contains at least some residual ambiguity.  And Benbow's plea, while accepted by the trial court, was ultimately vacated on appeal.

Benbow will be permitted to testify and argue that he did not possess a firearm.  However, the Court will not admit testimony or argument regarding the *legal* issues or the determination rendered on appeal in the underlying criminal action.

***Motion to Exclude the Testimony of Joseph A. Pollini, Howard J. Ryan and James P. Molinaro, Dr. Dainus A. Drukteinis, Dr. Troy Caron, and Dr. Jeffrey R. Gardere (Defendants).*** Defendants move to exclude Benbow's experts entirely.  This motion is granted in part and denied in part.  Benbow's experts will generally be permitted to testify regarding crime scene reconstruction, the location and extent of Benbow's physical injuries, and the psychological impact of the shooting, to the extent that testimony is based on conclusions properly laid out in their reports.  The Court will entertain specific objections

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

3

to these experts' testimony, as appropriate, notwithstanding the denial of the request to exclude them entirely.

Given the number of experts Benbow has proffered, he is advised that his experts should not duplicate each other's testimony. And both sides are reminded of the time limits the Court set.

**_Joseph A. Pollini._** Defendants' motion to exclude Mr. Pollini is granted. Mr. Pollini offers three main conclusions: (1) defendants used excessive force; (2) defendants' use of force violated New York City Police Department (NYPD) policy and procedures; and (3) the NYPD failed to properly monitor, supervise, and discipline their officers. ECF No. 174-1, at 9-10. The first conclusion regards the ultimate legal issue in this case and is clearly impermissible. _United States v. Bilzerian_, 926 F.2d 1285, 1295 (2d Cir. 1991). The last conclusion is irrelevant and likely to lead to confusion under Federal Rules of Evidence 401 and 403, as this Court already dismissed Benbow's _Monell_ claim. _See_ ECF No. 122. Finally, while defendants' failure to comply with NYPD policy and procedures is arguably relevant, Mr. Pollini's _curriculum vitae_ reveals no expertise in that field. His testimony is therefore excluded.

**_Dr. Dainus A. Drukteinis._** Defendants object to Dr. Drukteinis's testimony to the extent that (1) he does not lay

4

out his specific methodology; and (2) certain of his opinions go beyond his expertise. ECF No. 141-1, at 17-19. Dr. Drukteinis will be permitted to testify to the location of Benbow's bullet wounds based on his examination of the medical records and his own medical experience. However, his opinion that the bullet wounds led to Benbow's current injuries goes beyond his expertise. As defendants note, Dr. Drukteinis is trained in emergency medicine, not neurology. Finally, insofar as Dr. Drukteinis intends to testify that Benbow was "struck by three bullets" and not simply that he "sustained three bullet wounds to his external skin," *see id.* at 18, the Court reserves judgment regarding the admissibility of that opinion. The basis for such an opinion is unclear from Dr. Drukteinis's report. Benbow should offer any clarification he can forthwith and, in any event, no later than end of day on Wednesday, October 22.

***Howard J. Ryan and James P. Molinaro.*** Defendants' motion to exclude testimony based on Mr. Ryan and Mr. Molinaro's joint report effectively amounts to (1) an objection to Dr. Drukteinis's report, on which they rely; and (2) an objection to their conclusions. *Id.* at 19-20. As discussed above, Dr. Drukteinis will be permitted to testify regarding the location of Benbow's bullet wounds, so Mr. Ryan and Mr. Molinaro may reference those conclusions after such testimony. And "gaps or inconsistencies in an expert's reasoning, or arguments that

5

an expert's conclusions are wrong, go to the weight of the evidence, not to its admissibility." *M.B. ex rel. Scott v. CSX Transp., Inc.*, 130 F. Supp. 3d 654, 665 (N.D.N.Y. 2015) (quoting *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001)).  Defendants' motion to exclude Mr. Ryan and Mr. Molinaro is accordingly denied.

**Dr. Troy Caron.**  Defendants object to Dr. Caron's testimony to the extent that his report (1) does not clearly state the factual basis for his conclusions; (2) is based solely on his experience; (3) is confusing; and (4) is undercut by Benbow's own testimony.  ECF No. 141-1, at 21-24.  Expert testimony can rely on "personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).  And, insofar Benbow's testimony regarding his paralysis undermines Dr. Caron's conclusions, "it is up to the opposing party to examine the factual basis for the opinion[s] in cross-examination." *Clark v. Travelers Companies, Inc.*, No. 16-CV-2503, 2020 WL 473616, at *5 (E.D.N.Y. Jan. 29, 2020).

Still, as defendants correctly observe, it is entirely unclear from Dr. Caron's report which medical records he is basing his opinions on.  For this reason, the Court reserves judgment on the motion.  Benbow should offer any clarification he can forthwith and, in any event, no later than end of day on Wednesday, October 22.

6

***Dr. Jeffrey R. Gardere.*** Defendants object to Dr. Gardere's report to the extent that it (1) consists of factual narrative; (2) relies on insufficient data and analysis; and (3) fails to engage in meaningful differential diagnosis. ECF No. 141-1, at 24-26. While Dr. Gardere will not be permitted to engage in lengthy factual recitation intended to bolster Benbow's testimony, statements Benbow made to him for the purpose of medical diagnosis are admissible. Fed. R. Evid. 803(4); *see generally Smith v. Arizona*, 602 U.S. 779 (2024) (describing limits on experts' reliance on *testimonial* hearsay). Defendants' other objections are matters for cross examination.

***Motion to Exclude the Testimony of George G. Krivosta (Benbow).*** Benbow moves to exclude defendants' expert, George G. Krivosta. The motion is granted in part. At the Court's request, *see* Minute Entry dated October 10, 2025, Benbow provided an annotated copy of Mr. Krivosta's report, highlighting the specific portions of the report to which he objects and the bases for his objections. ECF No. 166-1. The Court will address the highlighted portions of the relevant paragraphs in turn:

- Paragraph 2: To the extent that Mr. Krivosta intends to rely on Benbow's x-ray images not for the purpose of offering medical testimony but to explain the trajectory of bullets and shrapnel, the motion to preclude his use of these images entirely is denied. The Court will entertain more individualized

7

- objections to specific images if they are being introduced for improper purposes.

- Paragraph 10:  To the extent that Mr. Krivosta's statement that "[t]he weapon identified as Lab #2015-018912 Item #1 was in the possession of the Plaintiff James Benbow" is predicated on hearsay from fact witnesses, the motion to exclude this testimony is granted.  *See* discussion of Paragraph 11, below.

- Paragraph 11:  Benbow's motion to preclude Mr. Krivosta from testifying to "report[s]" regarding Benbow's possession and brandishing of a weapon during the shooting incident is granted.  Generally speaking, an expert "can testify to opinions based on inadmissible evidence," including some hearsay. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008).  But "[t]he expert may not . . . simply transmit that hearsay to the jury" — instead, she must "must form [her] own opinions by applying [her] extensive experience and a reliable methodology to the inadmissible materials".  *Id.*

- Paragraph 20:  "[R]eport[s]" that Benbow's jacket was "unzipped during the shooting incident" are likewise excluded as impermissible hearsay.  As for testimony regarding "[m]edical x-rays," see the above discussion of Paragraph 2.

- Paragraph 21:  The bases and reasons for Mr. Krivosta's conclusion that "[a] bullet initially struck a buckle and created an atypical bullet hole entrance" remain unclear.  It is likewise unclear how Mr. Krivosta's conclusion that "[t]he trajectory of this shot would have had Benbow facing in the general direction of Feeley" follows from the preceding recitation in his report.  The Court reserves judgment on Benbow's motion to exclude this testimony.  Defendants should offer any clarification they can forthwith and, in any event, no later than end of day on Wednesday, October 22.

- Paragraphs 25-27:  Testimony of this nature will generally be precluded.  While an expert can assume certain facts and draw conclusions thereupon, he cannot simply engage in factual recitation.  *See United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by

8

admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses.").

However, Mr. Krivosta's conclusion that "[t]he trajectory of the bullet fired by P.O. Rosiello . . . supports Mr. Benbow's lower body facing in the general direction of P.O. Feeley" will be permitted, provided an adequate foundation is laid.

The Court reserves judgment on the admissibility of Mr. Krivosta's conclusion that "the recovered position of the loaded Star PD .45 Auto caliber semiautomatic pistol 'SF1' . . . supports the direction that Mr. Benbow was traveling." It remains unclear how this conclusion follows from the preceding analysis. Defendants should offer any clarification they can forthwith and, in any event, no later than end of day on Wednesday, October 22.

- Paragraph 38: To the extent that Mr. Krivosta's conclusion that "Mr. James Benbow [was] clearly in possession of a loaded large caliber semiautomatic pistol" is predicated on hearsay from fact witnesses, that opinion will be excluded. Mr. Krivosta will also be precluded from testifying that defendant Rosiello fired his gun after "seeing his partner at risk." "It is well settled that an expert cannot offer evidence about a party's state of mind." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488, 2019 WL 6242128, at *8 (S.D.N.Y. Aug. 2, 2019).

- Paragraphs 39-40: This testimony is excluded as beyond the scope of Mr. Krivosta's expertise. Mr. Krivosta has not been presented as an expert in police tactics and training or psychology. He therefore has no basis for testifying to, *e.g.*, the length of time it takes an officer to cease firing their weapon after a threat abates or an order to cease firing has been given.

SO ORDERED.

9

                                                            /s/ Eric Komitee  
                                           ERIC KOMITEE  
                                           United States District Judge

Dated:    October 20, 2025  
            Brooklyn, New York