# THE ABOUSHI LAW FIRM

1441 Broadway, 5th Floor, New York, NY 10018
235 Lakeview Avenue, Clifton, NJ 07011

| Tel: 212.391.8500 | Fax: 212.391.8508 | www.Aboushi.com |

---

November 5, 2025

**By: ECF**
Hon. Eric R. Komitee, U.S.D.J.
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

Re: James Benbow v. Feeley, et al.,
    17-cv-06457-ERK-JRC

Dear Judge Komitee,

    I write in response to the Defendants' motion for a mistrial, which should be denied for a host of reasons. First, Defendants' motion for a mistrial, made more than a week after the Court gave them a deadline to do so, is untimely. Tr. at 511:4-6 (The Court "I don't know if the defendants mean to pursue the request for a mistrial. If you do, you should send a letter on that subject tonight giving both facts and law, obviously.") Defendants did not comply with that deadline. They waived this issue because in that early portion of the case, in the second day of what has now become a ten-day trial, Defendants apparently believed they were winning. Defendants belatedly move for a mistrial after six trial days have elapsed since the issue arose, several fact witnesses testified, numerous exhibits were admitted, the experts for each party testified, many motions and objections were resolved, a verdict rendered in regards to liability, and responses by the jury to special interrogatories. Defendants now only move for a mistrial because they do not like the jury's verdict, which is certainly not a legally cognizable basis for a mistrial. Simply stated, Defendants waived any application for a mistrial by their conduct in not moving for one by the deadline imposed by the Court and making the decision to proceed with the trial that they perceived at the time as going in their favor.

    Second, the Court repeatedly issued curative instruction, including from the inception of the case and throughout about disregarding sustained questions and/or answers to which objections were made and sustained. Tr. 29:14-18; 31:9-12; 39:9-14; 249:1-3, 765:23-25; 863:8-9; 1096:14-17. Further, the request made by Defendants for a curative instruction in regards to the single answer that the underlying criminal case was "dismissed," was granted, and given by the Court. Tr. 90:22-25. As to the question regarding DNA that was not answered because the Court sustained an objection, the Court has repeatedly instructed the jury to disregard questions to which objections were sustained. Tr. 31:9-12; 249:1-3; 1096:14-17.

    To the extent that the single question to which an objection was sustained and Plaintiff's testimony that his underlying charge was "dismissed" were improper, the repeated curative instructions provided by the Court properly addressed it. Indeed, there is a high burden to establish

that the jury did not follow the court's instructions. A "Jury will normally be presumed to follow instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that jury would be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant." Greer v Miller, 483 US 756 (1987); U.S. v Romano, 487 Fed Appx 607, 610 (2d Cir 2012)("We must assume a jury will follow a curative instruction unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, ... and a strong likelihood that the effect of the evidence would be devastating to the defendant.")(citations and quotations omitted. In each of the foregoing cases, the courts denied a mistrial based on alleged improper question or answer, as the Court should do here. Indeed, Defendants have not established that the jury here did not follow any number of the curative instructions issued by this Court, nor could they.

Defendants' motion for a mistrial details the lengthy opportunity the Defendants were afforded to adduce in support of their claims that Plaintiff allegedly possessed a gun since the initial two days of trial. They were provided wide latitude in questioning witnesses and introducing evidence, and made their strategic decisions as to whether to do so.[1] As such, they undermine their own claim for a mistrial by cataloguing the evidence that the jury considered, and rejected. They also fail to recount the substantial evidence that undercuts their claim, including that the alleged gun was vouchered in someone else's name, the testimony of Mitchell, their own witness, who testified that he never saw Plaintiff with a gun or point a gun at anyone. They also fail to account for the testimony of Teta who stated that the Defendant named on the voucher is the person from whom the gun was recovered (Eric Bradly), Plaintiff's testimony, and that their supposed evidence is not at all as compelling as they believe, including the grainy video that does not show what they claim it shows. This is to say nothing about Defendants conflicting and incredible testimony, Plaintiff's experts who established that Plaintiff was shot in the back, and many other pieces of evidence that undermined Defendants' credibility and claims that Plaintiff had a gun and ran at them. This is just some of the substantial evidence adduced over a ten-day trial that amply supports the jury's verdict. As the record established, during the deliberations the jury asked to see the gun, pictures, video, testimony, the jacket and bullet holes in it, and other evidence in their deliberations. This was not a quick verdict by a confused jury. The jury reviewed the evidence and testimony during deliberations and the jury made its considered determination.

That the basis of Defendants' claim for a mistrial are the jury's responses to the special interrogatories drafted by the Defendants is not a basis for a mistrial. Indeed, the responses to the special interrogatories are entirely consistent with the jury's verdict on liability. Defendants did not move for a mistrial before or after the liability verdict. And they have no basis to do so now. The responses to special interrogatories only mean that the jury has consistently held over a series of verdicts that Defendants' actions were unreasonable.

Finally, while this issue need not be addressed at length at this time, Defendants did not move to preclude any reference to the Plaintiff's underlying criminal case in the trial court. In fact, they sought to introduce it over the objection of Plaintiff. The Court's Order on the Motion referenced the Appellate Division's decision. But Plaintiff's case was not dismissed by the

---

[1] Critically, and as the Court noted today, the Court gave the Defendants wide latitude in questioning the Plaintiff on this topic, but they declined to do so. See Tr. 89: ("So, my preliminary conclusion is that's all in bounds."). The Defendants also did not make an issue of Plaintiff's allocution in their closing argument. It is respectfully submitted that Defendants' chosen trial strategy is not a basis for seeking a do-over via an untimely and legally unsupported post-verdict for a mistrial.

2

Appellate Court. Rather, the Appellate Court reversed a decision in regards to a suppression motion and remanded the matter to the lower court. It was subsequently at the trial court level that further proceedings were had and the matter was subsequently dismissed. Similarly, Defendants did not move to preclude any reference to DNA. Instead, their motion was entirely focused on the OCME report and DNA that the OCME did not test as indicated in that report. The Court ruled on that specific document. The foregoing is to not make excuses, but rather provide context. Allegations of any purposeful, intentional, or an actual violation of the Court's orders is unfounded. No questions were asked about the OCME report, testing DNA, or why DNA was or was not tested. Defendants should have moved earlier for the relief they seek if they truly believed they were prejudiced. With further clarification, neither of these minor issues arose again during the lengthy trial. Tr. at 88-89. Perhaps clarification could have been sought sooner, and that is understood, but that is not tantamount to an actual or willful violation of the Court's Order, or the basis of a mistrial.

The Court recognized on the second day of trial that, even at that time, a mistrial would have been a "drastic remedy." Tr. at 515:9-10. It would be even more drastic at this late stage in the trial, in light of the Supreme Court and Second Circuit precedent, the substantial number of witnesses and evidence, the record, time and effort of the parties, the Court, and the jurors, and verdicts that have been issued. Plaintiff respectfully request that the Court deny Defendants' untimely and unsupported motion for a mistrial.

    Respectfully submitted,

    s/Aymen A. Aboushi
    Aymen A. Aboushi, Esq.